Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
                                                      :
**In re**                                             :        **Chapter 11**
                                                      :
**CHASSIX HOLDINGS, INC.,** *et al.,*                 :        **Case No. 15-_____ (___)**
                                                      :
                                                      :        **(Joint Administration Pending)**
                          **Debtors.**[1]             :
                                                      :
------------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363(b), 105(a) AND**
**503(b)(9) FOR ENTRY OF ORDER (I) AUTHORIZING DEBTORS TO**
**PAY PREPETITION OBLIGATIONS OWED TO FOREIGN CREDITORS,**
**AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS**
**TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

　　　　　Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and

certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**," and together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

**Background**

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors ("**Creditors Committee**") has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations.  Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the

WEIL:\95271097\1\35076.0003

Southern District of New York, sworn to on the date hereof, which has been filed with the Court contemporaneously herewith.

## Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## Relief Requested

6.      By this Motion, pursuant to sections 363(b), 105(a), and 503(b)(9) of the Bankruptcy Code, the Debtors request entry of an order (i) authorizing, but not directing, them to pay, in their sole discretion in the ordinary course of business, the prepetition claims (the "**Foreign Claims**") owing to certain Foreign Creditors (as herein defined), and (ii) authorizing and directing the Debtors' banks to receive, process, honor, and pay, to the extent of funds on deposit, checks or electronic transfers used by the Debtors to pay the Foreign Claims without further order of the Court.  A proposed form of order granting the relief requested in the Motion on an interim basis is attached hereto as **Exhibit "A."**

7.      Concurrently herewith the Debtors have filed separate motions seeking authority to pay, among other things, the prepetition claims of (i) certain suppliers that are essential to maintaining the going concern value of the Debtors' enterprise (the "**Critical Vendors Motion**"), and (ii) certain shippers, warehouseman and other lien holders (the "**Shippers, Warehousemen and Other Lienholders Motion**" and together with this Motion and the Critical Vendors Motion, the "**Vendor Motions**").[2]  In support of the Vendor Motions, the Debtors submit the Declaration of David J. Woodward (the "**Woodward Declaration**"), the

---

[2] Although the Debtors have endeavored to provide accurate figures and calculations herein, there may, in some instances, be overlap between the amounts sought to be expended herein and these other Vendor Motions.

interim Chief Financial Officer for the Debtors, which has been filed contemporaneously

herewith.  As set forth in the Woodward Declaration, the Debtors are requesting authority to pay

the following amounts pursuant to the Vendor Motions:

### The Debtors' Foreign Creditors

8.    The Debtors and their affiliates are a leading global manufacturer (with

both casting and machining capabilities) and supplier of aluminum and iron chassis sub-frame

components that are designed into original equipment manufacturer (the "**Customers**")

platforms.  In the ordinary course of conducting their businesses, the Debtors incur various

obligations to numerous foreign vendors, suppliers, service providers, independent contractors,

landlords and other entities (collectively, the "**Foreign Vendors**").[3]  The Debtors rely on their

Foreign Vendors, which are primarily located in Europe and Asia, to grant or supply various

goods or services that are crucial to the Debtors' ongoing manufacturing operations in the United

States, including, without limitation, the following:

(a)    Component Suppliers.  In the ordinary course of the Debtors' casting and

machining businesses, the Debtors utilize certain overseas and international suppliers located in,

among other places, Poland, Germany, China, South Korea, and Italy, to provide them with

critical component parts.  The Debtors then process and assemble these parts into finished

products for their Customers, including steering knuckles, control arms, sub-frames and

assemblies.  Many of these foreign component providers are sole-source suppliers and, as

described in further detail below and in the Woodward Declaration, the Debtors may be unable

---

[3] The Debtors generally are not responsible for the payment of any taxes to foreign governmental and quasi-government authorities (collectively, the "**Foreign Governmental Authorities**," and together with the Foreign Vendors, the "**Foreign Creditors**"), which are paid at the local foreign entity level.  This is consistent with certain management service agreements between the Debtors and the Company's foreign subsidiaries, which require that the foreign entity is responsible for paying any foreign tax obligations.  To the extent the Debtors are responsible for paying any Foreign Governmental Authorities, the Debtors request authority to pay those amounts pursuant to this Motion, and such amounts shall constitute Foreign Claims.

4

to find suitable replacements for these suppliers on an intermediate or expedited basis.
Moreover, even if the Debtors were able to find alternative sources for these components, due to
the Customer's exacting engineering specifications, the development of a new part and the
design of the manufacturing process is rigorous and it can take many months for a new supplier
to be approved by the Debtors' Customers.  Should any of the foreign component suppliers cease
shipping to the Debtors, it would have an immediate effect on the Debtors' supply chain and
would significantly hinder the Debtors' ability to timely fulfill Customer orders.

(b)    Raw Material Suppliers.    The Debtors utilize a significant amount of raw
materials in manufacturing parts for the Customers, including, without limitation, aluminum,
steel, petroleum products, and rubber.  While most of these raw materials are sourced from
domestic companies, certain of the Debtors' raw material suppliers, including at least one of their
most critical steel and scrap metal suppliers, are located outside of the United States.  While the
Debtors could seek out alternative raw material suppliers, any new supplier would likely charge
the Debtors significant premiums and price increases that would negatively impact the Debtors'
liquidity and prospects for a successful reorganization.  Therefore, the Debtors seek permission
to pay these foreign raw material suppliers in order to keep operating costs low at a critical time
in the Debtors' reorganization.

(c)    Equipment Suppliers.    The Debtors also contract with several overseas
suppliers that provide them with fixtures and equipment that are utilized in the Debtors'
production and manufacture processes.  The equipment suppliers are located in, among other
places, Bulgaria, Italy, and Germany.  As the Debtors operate in a highly specialized and
technologically demanding industry, there are but a few qualified suppliers the Debtors can rely
on to supply them with equipment that can reliably produce components that meet the rigorous

WEIL:\95271097\1\35076.0003

engineering specifications of the Debtors' Customers.  Although the Debtors generally prepay

some portion of their equipment supplier obligations prior to shipment, the Debtors are seeking

authority to pay any prepetition amounts owed to these foreign equipment suppliers to continue

operating smoothly.

(d)    <u>Production Maintenance & Quality Inspection</u>.  In addition to part

suppliers, the Debtors also contract with certain international companies to maintain, repair, and

inspect their machinery and equipment.  These companies provide outside services to support the

Debtors' manufacturing and production process.  If these companies were to cease services, the

Debtors' products could fail to meet their Customers' standards and have an immediate impact

on the Debtors' Customer orders, causing the Customers to begin resourcing the products to

alternative suppliers.  The Debtors, therefore, seek authority to pay production maintenance and

quality inspection vendors located outside the United States in order to remain in compliance

with their Customer contracts.

9.    As of the Commencement Date, the Debtors estimate that the amount of

Foreign Claims is approximately $13 million, of which approximately $10 million is due within

30 days of the Commencement Date.

## Basis for Relief Requested

10.    The Debtors are making every effort to avoid interruptions in the supply

chain and the adverse effects that even a temporary break in the supply chain could have on their

businesses.  Any short term disruption could generate instability and thus jeopardize the Debtors'

ability to service their Customers going forward.  Because of the nature of the Debtors'

businesses, many of the Foreign Vendors will make, or have made, credible actionable threats

that, unless paid on account of the prepetition debt, they will cease to supply the Debtors with the

specialized goods and services necessary to maintain the operation of the Debtors' businesses.

To preserve the value of the Debtors' assets, the Debtors must have the ability to continue to fund their Foreign Vendors on an uninterrupted basis.

11.    Most of the Foreign Creditors have little or no connection to the United States.  Although the scope of the automatic stay set forth in section 362 of the Bankruptcy Code is universal, the Court is well aware of the difficulty (if not impossibility) of enforcing the stay in foreign jurisdictions if the creditor to which enforcement is sought has no presence in the United States.  As a result, despite the commencement of these cases and the imposition of the automatic stay, the Foreign Creditors likely would be able to immediately pursue remedies and seek to collect prepetition amounts owed to them.  Indeed, there is the real risk that Foreign Creditors may attach or seize the Company's assets in their jurisdictions even before obtaining a judgment—which would significantly disrupt operations.

12.    Payment of the Foreign Claims is also necessary because the Debtors' Customers rely heavily on their just-in-time supply chain.  As set forth in the Woodward Declaration, use of the just-in-time supply method means that the Customers intentionally seek to keep little or no excess inventory of the Debtors' products, and they sometimes rely on daily or more frequent shipments of particular products from the Debtors to keep vehicle assembly lines operating.  Indeed, deliveries from the Debtors are often made directly onto the Customers' assembly lines, which arrangement leaves no margin of error for late deliveries.  Within this system, an uncooperative vendor's actions (or inactions) can compromise the Debtors' ability to fulfill commitments to their Customers.  Accordingly, the Debtors rely upon frequent and, in many cases, daily shipments of components from such Foreign Vendors to keep their own manufacturing facilities operating.

WEIL:\95271097\1\35076.0003

13.     As described in further detail in the Woodward Declaration, the Debtors also rely on certain Foreign Vendors as sole-source suppliers.  The Debtors use sole-source suppliers to reduce the cost of production startup, capital investment, and validation costs necessary to make each part.  Many of the component parts supplied by Foreign Vendors are not standard parts and were custom-designed to fit the Debtors' specific needs.  Due to the Customers' exacting engineering specification, the development of a new part and the design of the manufacturing process are necessarily rigorous and can last many months.  As a part of this process, any time a new or modified component is introduced to production, such component must undergo a detailed component validation testing process, in addition to the production part approval process (the "**PPAP Process**")—*i.e.*, an inspection, testing and approval regime governing the component parts utilized in the manufacture of Customer vehicles and other products—prior to the integrations of any of the Debtors' products into Customer vehicles. Together, the component validation testing and PPAP Process are time-consuming and resource intensive endeavors that complicate product launches and impose significant obstacles to the Debtors' ability to re-source to alternative supplier.  Failure to maintain the supply of parts could therefore devastate the Debtors' businesses as well as significantly disrupt the businesses of their Customers and other suppliers.

14.     In light of the potential for serious and potentially irreparable consequences if the Foreign Vendors do not continue to make uninterrupted and timely deliveries—and the lack of any enforcement mechanism against them—the Debtors have determined, in the exercise of their business judgment, that payment of the Foreign Vendors' claims is essential to avoid costly disruptions to the Debtors' operations and, accordingly, the relief requested herein should be granted.

WEIL:\95271097\1\35076.0003

**Customary Trade Terms**

15.      In connection with the payment of the Foreign Claims, the Debtors propose (unless otherwise waived by the Debtors in their discretion) that in exchange for payment of their prepetition Foreign Claims, the Foreign Creditors continue to provide goods and services to the Debtors that are consistent with the historical trade terms between the parties (the "**Customary Trade Terms**").  The Debtors propose that the Customary Trade Terms will apply for the remaining term of each Foreign Vendor's agreement with the Debtors; provided that the Debtors agree to pay for such goods in accordance with such terms.  If any Foreign Creditor is paid its prepetition Foreign Claim and thereafter does not continue to provide goods, services, or other items to the Debtors on Customary Trade Terms, any payments made will be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code and will be recoverable by the Debtors in cash upon written request.  Upon recovery by the Debtors, the Foreign Claims will be reinstated as a prepetition claim in the amount recovered.  The Debtors also seek authorization, but shall not be obligated, to obtain written verification, before issuing payment to a Foreign Creditor, that the Foreign Creditor will continue to provide goods and services to the Debtors on Customary Trade Terms as described above; provided that the absence of written verification will not limit the Debtors' rights and relief sought herein.

**Cause Exists Pursuant Sections 363(b), 105(a), and 503(b)(9) of the
Bankruptcy Code to Authorize the Payment of Foreign Creditors**

16.      The Court has authority pursuant to sections 363(b), 105(a), and 503(b)(9) of the Bankruptcy Code to authorize the Debtors to pay any prepetition obligations outstanding to Foreign Creditors.

17.      A Court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  *See In re Ionosphere Clubs, Inc.*, 98 B.R.

9

174, 175 (Bankr. S.D.N.Y. 1989). Section 363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b), a Court must find that a "good business reason" exists for the use of the assets. *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

18.    The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this District consistently have declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as those decisions are attributable to any "rational business purpose." *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

19.    Courts have properly relied on section 363(b)'s broad authority to expend money to authorize debtors in possession to pay prepetition claims of foreign creditors in circumstances where, as here, the estate will obtain more value for all creditors or avoid more

10

harm by making the prepetition payments.  *See, e.g., In re Tropical Sportswear Int'l Corp.*, 320

B.R. 15, 20 (Bankr. M.D. Fla. 2005) (authorizing debtor to pay, pursuant to 363(b), certain

foreign creditors' prepetition claims where the payments were "necessary" and "appropriate" to

debtor's reorganization).  Here, because the relief requested in this Motion is critical to the

maintenance of the Debtors' operations, and generally contemplates that payments will be made

to Foreign Creditors who agree to provide goods or services on Customary Trade Terms, the

relief is warranted under section 363(b) of the Bankruptcy Code.

20.    Furthermore, due to the nature of their businesses, including their use of a

just-in-time inventory supply method, certain of the Foreign Vendors that the Debtors are

seeking authority to pay pursuant to this Motion delivered tooling or other goods in the ordinary

course to the Debtors within the twenty days before the Commencement Date and are entitled to

administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.  Payment

to any Foreign Vendors on account of such deliveries at the onset of these chapter 11 cases,

therefore, merely accelerates the timing of payment and not the ultimate treatment of such

claims.  Additionally, all creditors will benefit from the seamless transition of the Debtors'

operations into bankruptcy.

21.    The Bankruptcy Code does not prohibit a debtor from paying such

administrative claims prior to confirmation.  As administrative claims incurred in the ordinary

course of business, the Debtors believe they may pay such claims in accordance with their

business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.  *See, e.g.*, *In re Dura*

*Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21-23 ("I think

arguably the [D]ebtor could pay its 503(b)(9) claimants without court approval.").  The timing of

such payments also lies squarely within the Court's discretion. *See In re Global Home Prods.*,

LLC, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing

with parties that "the timing of the payment of that administrative expense claim is left to the

discretion of the Court").

       22.    In addition, the Court has the authority, pursuant to its equitable powers

under section 105(a) of the Bankruptcy Code, to authorize the Debtors to pay any prepetition

amounts that may be owed to Foreign Creditors because the payments are necessary for the

Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.

Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession"

to act as a fiduciary to "protect and preserve the estate, including an operating business' going-

concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI

Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R.

487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle

(In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its

petition, the Debtor became debtor in possession and, through its management . . . was burdened

with the duties and responsibilities of a bankruptcy trustee"). Section 105(a) of the Bankruptcy

Code empowers the Court to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see

Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d

Cir. 2003) (Straub, J., concurring) ("[I]t is axiomatic that bankruptcy courts are 'courts of equity,

empowered to invoke equitable principles to achieve fairness and justice in the reorganization

process'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

       23.    In a long line of well-established cases, courts consistently have permitted

postpetition payment of prepetition obligations where necessary to preserve or enhance the value

of a debtor's estate for the benefit of all creditors. *See, e.g.*, *In re Fin. News Network, Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) ("[A] bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization")*; Ionosphere*, 98 B.R. at 175 (citing *Miltenberger v. Logansport, C&S W.R. Co..*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim before reorganization permitted to prevent stoppage of "indispensable business relations")); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

24.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (quoting *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) ("[T]he 'necessity of payment' doctrine…[permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees in reorganization to pay claims [for] goods and services indispensably necessary" to debtors' continued operation); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 ("A general practice has developed…where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code"). The

13

rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11—

"facilitating the continued operation and rehabilitation of the debtor." *Ionosphere*,

98 B.R. at 176.

25.     Similar relief has been granted in other automotive supplier cases in this

and other districts.  *See, e.g., In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July

31, 2009 (ECF 248); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 19,

2009) (ECF No. 373); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. May 22,

2006) (ECF No. 1287); *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Mar. 9,

2006) (ECF No. 2754).

26.     As stated, the limitations of the enforceability of the automatic stay, the

risk of Foreign Vendors' exercising remedial rights, the critical nature of goods and services

provided by the Foreign Vendors, and the lack of qualified alternative suppliers mandate that the

relief requested in this Motion be granted.  Absent a continued, uninterrupted supply of

component parts and other goods, the Debtors' overall ability to operate their businesses will be

jeopardized.  Simply stated, payment of the Foreign Claims as proposed will assure the orderly

operation of the Debtors' businesses and avoid costly disruptions and the significant loss of value

and irreparable harm arising therefrom.

### The Court Should Authorize and Direct Banks and Other Financial Institutions to Honor and Pay Checks Issued and Make Other Transfers to Pay Foreign Creditors

27.     The Debtors request that the Court authorize and direct the Debtors' banks

and other financial institutions at which the Debtors maintain disbursement accounts, at the

Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, all

checks drawn or electronic fund transfers requested or to be requested by the Debtors relating to

the Debtors' obligations to the Foreign Vendors or for the Foreign Claims.  The Debtors also

14

seek authority to issue new postpetition checks, or effect new electronic fund transfers, on account of those obligations to replace any prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected because of the commencement of the Debtors' chapter 11 cases.

### Reservation of Rights

28.    Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Satisfy Bankruptcy Rule 6003(b)

29.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date. Fed. R. Bankr. P. 6003(b). As described above, absent the relief requested herein, Foreign Vendors are likely to take action either remedially or by not providing critical goods, supplies, and services, which will cause serious, adverse consequences to the Debtors' ongoing operations and negatively impact the Debtors' ability to continue to operate on a global basis. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Waiver of Bankruptcy Rules 6004(a) and (h)

30.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

31.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New York.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

32.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WEIL:\95271097\1\35076.0003

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
      New York, New York

<u>/s/ Ray C. Schrock, P.C.</u>
Marcia L. Goldstein
Ray C. Schrock, P.C.

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

17

**Exhibit A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                          :

In re                        :        Chapter 11
                          :

CHASSIX HOLDINGS, INC., *et al.*,   :        Case No. 15-_____ (___)
                          :

                          :        Jointly Administered
          Debtors.[1]     :
                          :
-------------------------------------------------------x

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 363(b), 105(a), AND 503(b)(9) (I) AUTHORIZING DEBTORS TO PAY PREPETITION OBLIGATIONS OWED TO FOREIGN CREDITORS, AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion, dated March ___, 2015 (the "**Motion**"),[2] of Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to sections 363(b), 105(a), and 503(b)(9) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing, but not directing, the Debtors to pay, in their sole discretion, prepetition claims owing to Foreign Creditors, and (ii) authorizing and directing the Debtors' banks to receive, process, honor, and pay, to the extent of funds on deposit, any prepetition checks drawn or fund transfer requests made for payment of claims owing to Foreign Creditors without further

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

order of the Court, all as more fully set forth in the Motion; and upon the Declaration of David J.

Woodward, Interim Chief Financial Officer of the Debtors, submitted in support of the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-

431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the Office of the United States Trustee for the Southern

District of New York; (ii) the holders of the five largest secured claims against the Debtors (on a

consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the

Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as

administrative agent under that certain Amended and Restated Loan, Security and Guaranty

Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as

trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July

23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain

Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13,

2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the

Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers;

(xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange

Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office

for the Southern District of New York (the "**Notice Parties**"); and it appearing that no other or

further notice need be provided; and a hearing having been held to consider the relief requested

in the Motion (the "**Hearing**"); and upon the Declaration of J. Mark Allan Pursuant to Rule

2

1007-2 of the Local Bankruptcy Rules for the Southern District of New York, filed

contemporaneously with the Motion, the record of the Hearing and all of the proceedings had

before the Court; and the Court having found and determined that the relief sought in the Motion

is necessary to avoid immediate and irreparable harm to the Debtors and their estates as

contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates,

creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted on an interim basis, as provided herein; and

it is further

ORDERED that pursuant to sections 363(b), 105(a), and 503(b)(9) of the

Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their

business judgment, to pay some or all of the Foreign Claims, upon such terms and in the manner

provided in this Interim Order and the Motion; _provided_ that prior to a final hearing to consider

the relief requested in the Motion (the "**Final Hearing**") the amount paid with respect to Foreign

Claims shall not exceed the aggregate amount of $10 million; and it is further

ORDERED that in exchange for payment of the Foreign Claims, unless otherwise

waived by the Debtors, the Foreign Creditors shall be required to continue to provide goods and

services to the Debtors on the most favorable terms in effect between such Foreign Creditor and

the Debtors in the twelve (12) month period preceding the Commencement Date or on such other

terms as the Foreign Creditor and the Debtors may otherwise agree (the "**Customary Trade

Terms**").  The Customary Trade Terms shall apply for the remaining term of the Foreign

Vendors' agreements with the Debtors; _provided_ that the Debtors pay for the goods and services

WEIL:\95271097\1\35076.0003

in accordance with the payment terms provided in the agreement; and it is further

ORDERED that the Debtors are hereby authorized, but not directed, to obtain written verification, before issuing payment to a Foreign Creditor, that such Foreign Creditor will, if applicable, continue to provide goods and services to the Debtors on Customary Trade Terms for the remaining term of the Foreign Creditor's agreement with the Debtors; provided that the absence of such written verification shall not limit the Debtors' rights hereunder; and it is further

ORDERED that if any Foreign Creditor is paid with respect to its Foreign Claim and thereafter does not continue to provide goods or services to the Debtors on Customary Trade Terms, any payments made to the Foreign Creditor shall be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code and shall be recoverable by the Debtors in cash upon written request.  Upon recovery by the Debtors, the Foreign Claim shall be reinstated as a prepetition claim in the amount recovered; and it is further

ORDERED that the banks and other financial institutions at which the Debtors maintain their disbursement accounts are authorized and directed at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors in respect of the Foreign Claims; and it is further

ORDERED that the Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the Foreign Claims to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases; and it is further

4

ORDERED that nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**"); and it is further

ORDERED that nothing contained in this Interim Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Interim Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently; and it is further

ORDERED that notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that the requirements of Bankruptcy Rule 6003(b) have been satisfied; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Final Hearing on the Motion shall be held on _____, **2015, at _____ (Prevailing Eastern Time)** and any objections or responses to the Motion shall

WEIL:\95271097\1\35076.0003

be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors,

Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C.

Schrock, P.C.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00**

**p.m. (Prevailing Eastern Time) on _____, 2015**; and it is further

        ORDERED that notwithstanding anything to the contrary contained herein, (a)

any payment to be made, or authorization contained, hereunder shall be subject to the

requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the

"**DIP Documents**") and any orders approving the DIP Documents and governing the Debtors'

use of cash collateral (including with respect to any budgets governing or relating thereto) and

(b) to the extent there is any inconsistency between the terms of such orders approving the DIP

Documents or the Debtors' use of cash collateral and any action taken or proposed to be taken

hereunder, the terms of such orders approving the DIP Documents and use of cash collateral

shall control; and it is further

        ORDERED that the Debtors are authorized to take all steps necessary to carry out

this Interim Order; and it is further

        ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Interim Order.

Dated: _____, 2015
      New York, New York

                           _____
                           UNITED STATES BANKRUPTCY JUDGE

WEIL:\95271097\1\35076.0003