Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------x
                                        :
In re                                   :       Chapter 11
                                        :
CHASSIX HOLDINGS, INC., et al.,         :       Case No. 15-_____ (___)
                                        :
                                        :       (Joint Administration Pending)
                       Debtors.[1]      :
                                        :
--------------------------------------------------------x
```

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363(b), 105(a) AND 503(b) FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO PAY (I) CERTAIN PREPETITION CHARGES FOR SHIPPERS, WAREHOUSEMEN, OTHER LIEN CLAIMANTS AND CUSTOMS DUTIES AND (II) GRANTING ADMINISTRATIVE STATUS FOR CERTAIN GOODS DELIVERED TO DEBTORS POSTPETITION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and

certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**," and together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

**Background**

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors ("**Creditors Committee**") has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations.  Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the

2

Southern District of New York, sworn to on the date hereof, which has been filed with the Court contemporaneously herewith.

**<u>Jurisdiction</u>**

5.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**<u>Relief Requested</u>**

6.        By this Motion, pursuant to sections 363, 105(a), and 503(b) of the Bankruptcy Code, the Debtors request authority to (i) pay those prepetition charges to Shippers, Warehousemen, Equipment Manufacturers, Tool Makers, and Other Lien Claimants (each as defined below and, collectively, the "**Lien Claimants**") that the Debtors determine, in the exercise of their business judgment, to be necessary or appropriate to obtain the release of inventory, supplies, merchandise, goods, tools, equipment, components, materials, or other items (collectively, the "**Goods**") held by any Lien Claimants, (ii) pay prepetition custom duties and such other related prepetition import expenses and charges as the Debtors determine, in the exercise of their business judgment, to be necessary or appropriate to obtain Goods in transit and to satisfy related liens, if any, and (iii) require, prior to paying any claims of Lien Claimants, that the Lien Claimants take all actions necessary to remove any liens obtained by such Lien Claimants in respect of such claims; <u>provided</u> that no such payment shall be deemed to be a waiver of rights regarding the extent, validity, perfection or possible avoidance of any such liens. The Debtors further request authority to condition payment of any prepetition amounts owed to any Lien Claimant on written verification that such Lien Claimant will abide by certain conditions.

7.        The Debtors further request that this Court (i) grant administrative priority

3

status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of Goods ordered prior to the Commencement Date and (ii) authorize the Debtors to pay such obligations in the ordinary course of business.

8.      Finally, the Debtors request that this Court authorize and direct all banks and other financial institutions on which checks are drawn or electronic funds are transferred for the payments of any charges to Lien Claimants and Customs Duties (as herein defined) to receive, process, honor, and pay, to the extent of funds on deposit all checks and electronic transfers, whether the checks or transfers were issued before or after the Commencement Date, upon the receipt by each bank of a notice of authorization from the Debtors without further order of the Court.  A proposed form of order granting the relief requested in the Motion on an interim basis is attached hereto as **Exhibit** "**A**."

9.      Concurrently herewith the Debtors have filed separate motions seeking authority to pay, among other things, the prepetition claims of (i) certain suppliers that are essential to maintaining the going concern value of the Debtors' enterprise (the "**Critical Vendors Motion**"), and (ii) certain foreign vendors, suppliers, and essential service providers (the "**Foreign Vendors Motion**" and together with this Motion and the Critical Vendors Motion, the "**Vendor Motions**").[2]  In support of the Vendor Motions, the Debtors submit the Declaration of David J. Woodward (the "**Woodward Declaration**"), the Interim Chief Financial Officer for the Debtors, which has been filed contemporaneously herewith.

## Shippers and Warehousemen

10.      In operating their businesses, the Debtors use and make payments to domestic and foreign commercial common carriers, movers, shippers, freight forwarders and

---

[2] Although the Debtors have endeavored to provide accurate figures and calculations herein, there may, in some instances, be overlap between the amounts sought to be expended herein and these other Vendor Motions.

consolidators, delivery services, postal services, shipping auditing services, distributors, and other third-party service providers (collectively, the "**Shippers**") to ship, transport, store, and otherwise facilitate the movement of Goods through established national and international distribution networks, as well as third-party warehouses (the "**Warehousemen**") to store Goods in transit (such payments, the "**Shipping and Warehousing Charges**").

11.    The services provided by the Shippers and Warehousemen are critical to the Debtors' day-to-day operations.  The automotive supply industry is shipping intensive.  The Debtors, like their original equipment manufacturer customers (the "**Customers**"), use a "just-in-time" supply method and, thus, do not amass large amounts of materials in their manufacturing facilities and instead rely on frequent, often daily, shipments of Goods.  The Debtors' Customers also intentionally keep little or no excess inventory of the Debtors' products on hand and, thus, rely heavily on the Debtors to make timely deliveries, consistent with their contractual obligations.  Accordingly, to meet their delivery deadlines and maintain uninterrupted operations, the Debtors have implemented an efficient system for the receipt of materials which relies heavily on third-parties, including Shippers and Warehousemen.

12.    The Debtors' purchase orders and other agreements typically provide that the Debtors' Customers are responsible for the pick-up and delivery of finished goods and other items from the Debtors' manufacturing facilities.  In contrast, inbound goods received by the Debtors, including, without limitation, raw materials, components, parts and tooling supplies, are typically the responsibility of the Debtors.  At any given time the Debtors may owe the Shippers fees related to a number of different shipments and the Shippers may, in turn, have multiple vehicles in transit carrying Goods on behalf of the Debtors.  Accordingly, the refusal of any

5

Shipper or Warehouseman to perform could impact multiple different product lines and thus severely impact the Debtors' manufacturing capabilities.

13.    In addition, as set forth in further detail in the Woodward Declaration, at any given time, there are countless shipments of Goods en route to and from various locations within the Debtors' distribution and supply networks.  For example, the Debtors receive daily deliveries of aluminum that are transported to the Debtors' facilities by Shippers and Warehousemen.  These daily deliveries only provide the Debtors with enough aluminum to operate for a single day.  The Debtors also receive frequent, often daily, deliveries of various components needed for their product lines that are also transported to the Debtors' facilities by Shippers and Warehousemen.  These frequent deliveries are necessary because the Debtors typically keep only two to three days of excess component stock on hand.  Therefore, certain Shippers and Warehousemen currently possess Goods—including raw materials and components—that are vital to the Debtors' operations.

14.    Because of the commencement of these chapter 11 cases, certain Shippers and Warehousemen who hold Goods for delivery to or from the Debtors may refuse to release the Goods pending receipt of payment for their prepetition services.  Indeed, under some state laws, a Shipper or Warehouseman may have a lien on the Goods in its possession to secure the charges or expenses incurred for the transportation or storage of Goods.[3]  Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Shippers and Warehousemen, as bailees, may be entitled to adequate protection as holders of possessory liens.  As discussed, because of the

---

[3] For example, section 7-307 of the Michigan Uniform Commercial Code provides, in pertinent part that a "carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."

6

Debtors' "just-in-time" supply method, any delay in shipments would disrupt the Debtors'

operations and could harm the Debtors' reorganization efforts.

15.     It is thus imperative that the Debtors be authorized to pay any Shipping

and Warehousing Charges, whether they arose prior to or after the Commencement Date, that the

Debtors determine in their business judgment are necessary to pay to ensure the uninterrupted

shipment and delivery of the Goods.  The Debtors estimate that, as of the Commencement Date,

approximately $5,500,000 in Shipping and Warehousing Charges remain outstanding,

$4,000,000 of which is due within 30 days of the Commencement Date.

### Other Lien Claimants

16.     The Debtors routinely transact business with a number of other third

parties, including, without limitation, equipment manufacturers, tool makers, service technicians,

building contractors, materialmen and other service providers (the "**Other Lien Claimants**")

who may be able to assert liens against the Debtors and their property and, in some cases, the

Customers' property, if the Debtors fail to pay for the goods or services rendered.  The Other

Lien Claimants perform a number of services for the Debtors, including the manufacturing of

equipment, manufacturing and repair of tools, dies, molds, and other parts or components, that

are integral to the Debtors' manufacturing and casting processes and are critical to the Debtors'

successful reorganization.

17.     As set forth in detail below and in the Woodward Declaration, if amounts

owed to the Other Lien Claimants are not paid, certain of the Other Lien Claimants may be able

to assert and perfect mechanics' or artisans' liens against certain of the Debtors' goods, property,

or plant locations, notwithstanding the automatic stay imposed by section 362 of the Bankruptcy

7

Code.[4]  As of the Commencement Date, the Debtors estimate that approximately $17,500,000 is owed to potential Other Lien Claimants, $13,000,000 of which is due within 30 days of the Commencement Date.  Although the Debtors are responsible for making payments to potential Other Lien Claimants, in some cases, the Customers may reimburse the Debtors for these payments, including payments related to tooling.

Equipment Manufacturers

18.    In the ordinary course of their businesses, the Debtors are required to contract with third party equipment manufacturers (the "**Equipment Manufacturers**") to make specialized equipment and parts needed to support production of the Debtors' various products. The Debtors require the Equipment Manufacturers' services when, for example, the Debtors need to expand production to support new business or need to replace existing equipment to improve the operating efficiency on existing business.

19.    Typically the Equipment Manufacturers are paid at intervals based upon progress or milestones relative to the completion of the item(s) they are manufacturing.  To the extent that the Debtors are unable to fulfill their payment obligations to the Equipment Manufacturers, the Equipment Manufacturers may choose to assert liens against the partially and/or fully constructed equipment in their possession.  Such actions could severely hinder the Debtors' ability to fulfill production obligations to their Customers on both existing and new programs.

---

[4] The Debtors do not concede that any liens described in this Motion, including contractual liens, mechanics' liens, and statutory liens, are valid and expressly reserve the right to contest the extent, validity, perfection or possible avoidance of all such liens.

WEIL:\95270998\1\35076.0003

Tool Makers

20.    In the ordinary course of their businesses, the Debtors regularly contract with independent tool and die shops (the "**Tool Makers**"), on behalf of both the Debtors and the Customers, for the production of specialized tools, moldings, fixtures and special machines necessary for the production of the Debtors' various products.  The selection of a Tool Maker and the design and manufacture of tools can take considerable time; in fact, it is not uncommon for this process to take over a year.  Therefore, a number of Tool Makers may be in the process of producing tools which the Debtors need to continue existing lines of business or to launch new lines of business at the same time.

21.    The Debtors typically pay for tools either by providing a deposit at the beginning of the production process and the balance owed once production is complete or by making progress payments to the Tool Makers throughout the production process.  Oftentimes, the Debtors take possession of tools prior to paying the Tool Makers in full for such tools so that all necessary quality and performance-related tests can be performed.  Accordingly, the majority of the tools being produced by the Tool Makers have not yet been fully paid for.

22.    As noted above, however, many states, including Michigan, have legislatively granted Tool Makers security interests in finished or unfinished tools.[5]  Moreover, the Debtors frequently contract with the same Tool Makers to produce various tools for various product lines.  The Debtors believe that, upon the commencement of these chapter 11 cases, certain of the Tool Makers may, in enforcing their state law rights, refuse to deliver new tooling

---

[5] *See*, *e.g.* Mich. Comp. Laws §§ 5790.541 *et seq.* (defining "special tool" for which a statutory lien is granted as "tools, dies, jigs, gauges, gauging fixtures, special machinery, cutting tools, or metal castings manufactured by a special tool builder" and "special tool builder" as "a person who designs, develops, manufactures, or assembles special tools for sale").

9

in the future or to return tooling that they are servicing, unless the Tool Makers are paid in full for such tools or provided assurance of future payment.

<u>Miscellaneous Other Lien Claimants</u>

23.    The Debtors operate sixteen facilities in the United States, including casting plants, manufacturing facilities, and the Debtors' headquarters.  Numerous third parties, in addition to the Tool Makers, render services related to the Debtors' property or the Customers' property.  For example, certain third parties treat or paint certain products and parts before the products are finished and delivered to the Customers.  Other third parties re-process materials that the Debtors were unable to convert to finished goods during the production process, such as off-specification or scrap materials, thereby allowing the Debtors to subsequently re-use such materials in future productions.  Certain of these third parties may have the right to perfect state law statutory liens or mechanics' liens on the Debtors' property and, thus, may be able to hinder the Debtors' use of property needed to operate their businesses.

24.    To the extent any Other Lien Claimant has perfected a lien on any of the Debtors' property or the Customers' property or, in the Debtors' estimation, could assert and perfect a lien on any such property, it is imperative that the Debtors be authorized to immediately pay such Other Lien Claimants regardless of whether their claims arose prior to or after the Commencement Date to secure the release of any such lien and the Debtors' continued uninterrupted access to the goods and services provided by the Other Lien Claimants.

**<u>Condition Payment on Customary Trade Terms</u>**

25.    In order to ensure that the Debtors have continued access to Goods and services offered by the Lien Claimants, the Debtors request authority to condition payment of any prepetition amounts owed to any Lien Claimant on written verification that such Lien

10

Claimant will abide by certain conditions, including that it will (i) continue to provide services to

the Debtors during the pendency of these chapter 11 cases on the most favorable terms that

existed before the Commencement Date and (ii) not cancel on less than 90-days' notice any

contract or agreement pursuant to which it provides services to the Debtors; provided that the

absence of such written verification shall not limit the Debtors' rights sought hereunder.  To the

extent any Lien Claimant accepts payment from the Debtors premised on its compliance with

(i) and (ii) above, and thereafter fails to comply with such conditions, the Debtors request that

any payment made to such a Lien Claimant on account of prepetition obligations be deemed an

avoidable postpetition transfer under section 549 of the Bankruptcy Code that is recoverable by

the Debtors in cash upon written request.  Upon recovery by the Debtors of any such payment,

the claim for which payment was recovered would be reinstated as a prepetition claim in the

amount so recovered.  The Debtors continued access to the Goods and services provided by the

Lien Claimants on customary trade terms is necessary to the Debtors' continued operation and

successful reorganization.

### Customs Duties

26.      In the ordinary course of their businesses, the Debtors make payments,

themselves and through third party customs brokers (the "**Customs Brokers**"), of customs

duties, import-related taxes, and other incidental import and related expenses (collectively, the

"**Customs Duties**") to the U.S. Customs and Border Protection Agency (the "**U.S. Customs**

**Service**") and to non-U.S. customs authorities in connection with the importation and/or

exportation of goods purchased from or delivered overseas (collectively, the

"**Imported/Exported Goods**").  The Debtors rely on a number of Customs Brokers, as well as

certain Shippers, to facilitate and assist the Debtors with this process.  The Debtors pay certain of

11

the Customs Brokers in advance for Imported/Exported Goods that are scheduled to be imported

or exported at a future date, and certain of the Customs Brokers after delivery, for

Imported/Exported Goods that have already been imported into or exported from the United

States.  These payments include the Customs Duties which are ultimately paid by the Customs

Brokers to the U.S. Customs Service and non-U.S. customs authorities as well as related fees

charged by the Customs Brokers.

   27.  The Imported/Exported Goods include components, parts and equipment

vital to the Debtors' business operations that the Debtors could not readily obtain from other

suppliers.  Further, because the Debtors use a "just-in-time" inventory process, the Debtors have

a limited supply of Imported/Exported Goods on hand at any given time.  If Customs Duties are

not timely paid, the U.S. Customs Service and non-U.S. customs authorities may demand

liquidated damages, assess interest, or impose other sanctions, including by asserting liens

against the Imported/Exported Goods under 19 C.F.R. § 141.1 (2005).  Further, the Customs

Brokers may, in some instances, assert shipper's and warehousemen's liens against the

Imported/Exported Goods.  Any liens or sanctions would be costly to the Debtors and their

estates and inhibit the Debtors' receipt of the Imported/Exported Goods.  Accordingly, to ensure

continuous operations and avoid unnecessary costs and expenses, the Debtors request authority

to pay the Customs Duties and related fees and expenses.  As of the Commencement Date, the

Debtors estimate that they owe approximately $100,000 in prepetition Customs Duties.  This

amount does not include Customs Duties owed to parties who also act as Shippers for the

Debtors; such amounts are accounted for in the Debtors' estimate of outstanding prepetition

Shipping and Warehousing Charges.

WEIL:\95270998\1\35076.0003

**Prepetition Orders**

28.        As of the Commencement Date, the Debtors have certain prepetition purchase orders (the "**Prepetition Orders**") outstanding with various third party vendors and suppliers (the "**Vendors**") for Goods ordered by the Debtors that have not yet been delivered to the Debtors' facilities.  These Vendors may be concerned that, because the Debtors' obligations under the Prepetition Orders arose prior to the Commencement Date, such obligations will be treated as general unsecured claims in these chapter 11 cases.  Accordingly, certain Vendors may refuse to provide Goods to the Debtors (or may recall shipments thereof) purchased pursuant to the Prepetition Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court (i) providing that all undisputed obligations of the Debtors arising from the postpetition delivery of Goods subject to Prepetition Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and (ii) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

29.        As discussed, the Debtors, and their Customers, rely heavily on the timely delivery of Goods to operate their businesses.  Any delay in the shipment or delivery of Goods could bring the Debtors operations to a halt, harming the Debtors' businesses as well as the Customers' businesses.  Further, the administrative burden of re-issuing the Prepetition Orders would be significant and could delay the delivery of Goods necessary to operate the Debtors' businesses.  Although it is difficult to estimate the total amount due and owing under the Prepetition Orders for Goods that are not scheduled to be delivered until after the Commencement Date, the Debtors submit that the total amount to be paid to the Vendors in connection therewith, if the relief requested herein is granted, is *de minimis* compared with the importance and necessity of the Goods.

13

## The Relief Requested is in the Best Interests
## of the Debtors and their Estates and Creditors

30.     A court may authorize a debtor to pay certain prepetition obligations

pursuant to section 363(b) of the Bankruptcy Code outside the ordinary course of business if the

court finds that a good business reason exists for the use of such assets.  *See* 11 U.S.C. §

363(b)(1) ("[T]he trustee, after notice and a hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174,

175 (Bankr. S.D.N.Y. 1989); *Official Comm. of Unsecured Creditors v. Enron Corp. (In re

Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005).

31.     The business judgment rule is satisfied where "'the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company.'"  *Official Comm. of Subordinated Bondholders

v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting

*Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir.

1993).  "Where the debtor articulates a reasonable basis for its business decisions (as distinct

from a decision made arbitrarily or capriciously), courts will generally not entertain objections to

the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re

Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this District have

consistently declined to interfere with corporate decisions absent a showing of bad faith, self-

interest, or gross negligence, and have upheld a board's decisions as long as such decisions are

attributable to a "'rational business purpose.'"  *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp.

v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

32.     The relief requested is also authorized by section 105(a) of the Bankruptcy

Code.  Section 105(a) empowers the Court to "issue any order, process, or judgment that is

WEIL:\95270998\1\35076.0003

necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C.

§ 105(a); *see Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.)*, 352 F.3d 671,

680 (2d Cir. 2003) (Straub, J., concurring) ("[I]t is axiomatic that bankruptcy courts are 'courts

of equity, empowered to invoke equitable principles to achieve fairness and justice in the

reorganization process.'") (citation omitted). Here, the relief requested is necessary to carry out

the provision discussed above and to meet the duties ascribed to the Debtors in section 1107(a)

of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of

the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an

operating business' going-concern value," on behalf of the debtor's creditors and other parties in

interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re

CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of

Equity Holders v. McManigle (In re Penick Pharm. Inc.)*, 227 B.R. 229, 233 (Bankr. S.D.N.Y.

1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its

management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

> 33.    In a long line of well-established cases, courts consistently have permitted

postpetition payment of prepetition obligations where necessary to preserve or enhance the value

of a debtor's estate for the benefit of all creditors. *See, e.g.*, *In re Fin. News Network, Inc.*, 134

B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) ("[A] bankruptcy court may allow pre-plan payments

of prepetition obligations where such payments are critical to the debtor's reorganization")*;

Ionosphere*, 98 B.R. at 175 (citing *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286,

312 (1882) (payment of pre-receivership claim before reorganization permitted to prevent

stoppage of "indispensable business relations")); *Mich. Bureau of Workers' Disability Comp. v.*

WEIL:\95270998\1\35076.0003

*Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving

lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

34.    This "doctrine of necessity" functions in a chapter 11 reorganization as a

mechanism by which the Court can exercise its equitable power to allow payment of critical

prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Lehigh & New*

*England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (quoting *In re Penn Cent. Transp. Co.*, 467

F.2d 100, 102 n.1 (3d Cir. 1972) ("[T]he 'necessity of payment' doctrine…[permits] immediate

payment of claims of creditors where those creditors will not supply services or material

essential to the conduct of the business until their pre-reorganization claims shall have been

paid."); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence

of a judicial power to authorize trustees in reorganization to pay claims [for] goods and services

indispensably necessary" to debtors' continued operation); *In re Quality Interiors, Inc.*, 127 B.R.

391, 396 ("A general practice has developed…where bankruptcy courts permit the payment of

certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to

reorganize without such payment."); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr.

S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of pre-petition indebtedness may well

be too inflexible to permit the effectuation of the rehabilitative purposes of the Code").  The

rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11—

"facilitating the continued operation and rehabilitation of the debtor." *Ionosphere*,

98 B.R. at 176.

35.    The critical need for the continued receipt and distribution of Goods that

Lien Claimants may hold on the Commencement Date or assert liens against amply justifies the

relief sought herein.  The Lien Claimants are vital to the Debtors' continued operations.  The

Debtors rely heavily on the Shippers and Warehousemen, many of whom currently hold property of the Debtors, to expeditiously transport their Goods.  Similarly, the Other Lien Claimants provide valuable services to the Debtors and also currently hold Goods, including tooling, that are necessary to the Debtors' continued operations.  If the Debtors are unable to access the Goods held by the Lien Claimants and the services provided by the Lien Claimants, their operations will likely halt, derailing these chapter 11 cases.  If the Debtors' operations are interrupted, they will not be able to meet the needs of their Customers.  The prompt payment to the Lien Claimants, and satisfaction of any liens asserted against the Debtors' property or the Customers' property is thus in the Debtors' sound business judgment and crucial for the orderly and efficient operation of the Debtors' businesses.

36.    Furthermore, due to the nature of their businesses, including their use of a "just-in-time" inventory supply method, certain of the Lien Claimants that the Debtors are seeking authority to pay pursuant to this Motion delivered tooling or other Goods in the ordinary course to the Debtors within the twenty days before the Commencement Date and are entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.  Payment to any Lien Claimants on account of such deliveries at the onset of these chapter 11 cases, therefore, merely accelerates the timing of payment and not the ultimate treatment of such claims.  Additionally, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy.

37.    The Bankruptcy Code does not prohibit a debtor from paying such administrative claims prior to confirmation.  As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.  *See, e.g.*, *In re Dura*

17

*Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21-23 ("I think

arguably the debtor could pay its 503(b)(9) claimants without court approval."). The timing of

such payments also lies squarely within the Court's discretion. *See In re Global Home Prods.,*

*LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing

with parties that "the timing of the payment of that administrative expense claim is left to the

discretion of the Court").

38.     It is also critical that the Debtors are authorized to continue to pay the

Customs Duties.  Any delay in payment of the Customs Duties could result in the Customs

Brokers, the U.S. Customs Service, or non-U.S. customs authorities asserting liens against the

Imported/Exported Goods or imposing fines, which would impact delivery of the Goods and

significantly interfere with the Debtors' operations.

39.     Additionally, a substantial portion, if not all, of the Customs Duties sought

to be paid hereunder would be entitled to priority pursuant to section 507(a)(8)(F) of the

Bankruptcy Code.  Section 507(a)(8)(F), in pertinent part, affords eighth priority in payment to

the allowed unsecured claims of governmental units for:

> (F) a customs duty arising out of the importation of merchandise –
>
> > (i)    entered for consumption within one year before the date of
> > the filing of the petition;
> >
> > (ii)   covered by an entry liquidated or reliquidated within one
> > year before the date of the filing of the petition; or
> >
> > (iii)  entered for consumption within four years before the date
> > of the filing of the petition but unliquidated on such date, if
> > the Secretary of the Treasury certifies that failure to
> > liquidate such entry was due to an investigation pending on
> > such date into assessment of antidumping or countervailing
> > duties or fraud, or if information needed for the proper
> > appraisement or classification of such merchandise was not
> > available to the appropriate customs officer before such
> > date.

18

11 U.S.C. § 507(a)(8).  As priority claims, the Customs Duties must be paid in full before the Debtors make any distributions to holders of general unsecured claims in connection with a chapter 11 plan.  Accordingly, the proposed relief most likely will affect only the timing of the payment of the Customs Duties and, therefore, will not prejudice the rights of general unsecured creditors.

40.    Finally, it is necessary to the uninterrupted operations of the Debtors' businesses that obligations owed under the Prepetition Orders related to Goods delivered postpetition be explicitly granted administrative expense status.  Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority status.  *See, e.g., Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956 (2d Cir. 1993) ("[A] claim will be afforded priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'") (quoting *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976))); *In re Blockbuster Inc.*, No. 10-14997, 2010 WL 5559538, at *3 (Bankr. S.D.N.Y. Oct. 27, 2010) (final order ruling that the "Debtors' undisputed obligations . . . that arise from the postpetition delivery of materials, goods, and services that were ordered in the prepetition period shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.").  Thus, the granting of the relief requested herein will not provide the Vendors with any greater priority than they otherwise would have if the relief were not granted, and will not prejudice any other parties in interest.

19

41.    Although the relief requested herein will not alter any Vendor's position in the case, the relief will provide Vendors with assurance of payment and thus avoid potential disruption in the Debtors' operations.  As discussed, any delay in the shipment or delivery of Goods could cause significant harm to the Debtors who use a "just-in-time" supply method.  Further, absent the relief requested herein, the Debtors may be required to expend substantial time and effort re-issuing the Prepetition Orders.  The disruption to the continuous flow of Goods to the Debtors that would be caused by this administrative burden could seriously impact the Debtors' ability to operate their businesses.

42.    Moreover, the Debtors' satisfaction of undisputed obligations owed to Vendors in respect of the Prepetition Orders is consistent with their customary practices and thus also authorized under section 363(c)(1) of the Bankruptcy Code, which provides that a debtor in possession "may use property of the estate in the ordinary course of business without notice or a hearing."  Without the support of these Vendors, the Debtors will incur significant costs and lose valuable business relationships to the detriment of all parties in interest.

43.    Similar relief has been granted in other automotive supplier cases in this and other districts.  *In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009) (ECF No. 246); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 1, 2009) (ECF No. 103); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (ECF No. 723); *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005) (ECF No. 202).

44.    Based upon the foregoing, the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors and, therefore, should be granted.

WEIL:\95270998\1\35076.0003

## Reservation of Rights

45.      Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## The Debtors Satisfy Bankruptcy Rule 6003(b)

46.      Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  As discussed, the Debtors rely heavily on a number of third parties, including Shippers, Warehousemen, Equipment Manufacturers, Tool Makers, and Customs Brokers to operate their businesses efficiently.  If there is any delay in, for example, the delivery of Goods by Shippers or tools by Tool Makers, the Debtors' operations, and possibly the Customers' operations, could be thrown off kilter, seriously derailing the Debtors' reorganization.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, the requirements of Bankruptcy Rule 6003 are satisfied.

## Waiver of Bankruptcy Rules 6004(a) and (h)

47.      To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

WEIL:\95270998\1\35076.0003

## **Notice**

48.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New York.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

49.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WEIL:\95270998\1\35076.0003

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.


Dated: March 12, 2015
      New York, New York

                /s/ Ray C. Schrock, P.C.
                Marcia L. Goldstein
                Ray C. Schrock, P.C.

                **WEIL, GOTSHAL & MANGES LLP**
                767 Fifth Avenue
                New York, New York  10153
                Telephone:  (212) 310-8000
                Facsimile:  (212) 310-8007

                *Proposed Attorneys for Debtors*
                *and Debtors in Possession*

WEIL:\95270998\1\35076.0003

**Exhibit A**

**Interim Order**

WEIL:\95270998\1\35076.0003

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                          :
In re                                     :    Chapter 11
                                          :
CHASSIX HOLDINGS, INC., *et al.*,         :    Case No. 15-_____ (___)
                                          :
                                          :    Jointly Administered
                Debtors.[1]               :
                                          :
-------------------------------------------------------x

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 363(b), 105(a), AND 503(b) AUTHORIZING THE DEBTORS TO PAY (I) CERTAIN PREPETITION CHARGES FOR SHIPPERS, WAREHOUSEMEN, OTHER LIEN CLAIMANTS AND CUSTOMS DUTIES AND (II) GRANTING ADMINISTRATIVE STATUS FOR CERTAIN GOODS DELIVERED TO DEBTORS POSTPETITION

Upon the motion, dated March ___, 2015 (the "**Motion**"),[2] of Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to sections 363(b), 105(a), and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the Debtors to pay (i) certain prepetition charges to the Lien Claimants, including Shippers, Warehousemen, Tool Makers, and Other Lien Claimants, and Customs Duties and related fees, and (ii) granting administrative status to claims related to certain Goods ordered prepetition but delivered to the Debtors postpetition, all as more fully set forth in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012).  The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference

M-431, dated January 31, 2012 (Preska, C.J.); upon the Declaration of David J. Woodward (the

"**Woodward Declaration**"), interim chief financial officer for the Debtors, contemporaneously

filed herewith; and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to

(i) the Office of the United States Trustee for the Southern District of New York (the "**U.S.**

**Trustee**"); (ii) the holders of the five largest secured claims against the Debtors (on a

consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the

Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as

administrative agent under that certain Amended and Restated Loan, Security and Guaranty

Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as

trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July

23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain

Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13,

2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the

Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers;

(xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange

Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office

for the Southern District of New York (the "**Notice Parties**"); and it appearing that no other or

further notice need be provided; and a hearing having been held to consider the relief requested

in the Motion (the "**Hearing**"); and upon the Declaration of J. Mark Allan Pursuant to Rule

2

1007-2 of the Local Bankruptcy Rules for the Southern District of New York, filed

contemporaneously with the Motion, the record of the Hearing and all of the proceedings had

before the Court; and the Court having found and determined that the relief sought in the Motion

is necessary to avoid immediate and irreparable harm to the Debtors and their estates as

contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates,

creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted on an interim basis, as provided herein; and

it is further

ORDERED that the Debtors are authorized, but not directed, to make payments to

Lien Claimants, including, without limitation, Shippers, Warehousemen, Equipment

Manufacturers, Tool Makers, and Other Lien Claimants, whether relating to the period before or

after the Commencement Date, as the Debtors determine, in the exercise of their business

judgment, to be necessary or appropriate to obtain access to Goods; provided that the Debtors are

authorized, but not directed, to pay only amounts due and payable as of the Commencement Date

and amounts that are or become due and payable between the Commencement Date and the date

that a final order on the Motion is entered, unless otherwise ordered by this Court, which amount

shall not exceed the aggregate amount of $17,000,000; and it is further

ORDERED that for any payments that are made to Lien Claimants on account of

prepetition charges, unless otherwise waived by the Debtors, the Lien Claimants receiving the

payments shall (i) continue to provide services to the Debtors during the pendency of these

chapter 11 cases on the most favorable terms that existed in the twelve (12) months before the

3

Commencement Date and (ii) agree that they shall not be permitted to cancel on less than 90-days' notice any contract or agreement pursuant to which they provide services to the Debtors. If any Lien Claimant accepts payment pursuant to this Interim Order for a prepetition obligation of the Debtors premised upon its compliance with (i) and (ii) above, and thereafter fails to comply with those conditions, any payments made pursuant to this Interim Order shall be deemed an avoidable postpetition transfer under section 549 of the Bankruptcy Code, and, therefore, shall be recoverable by the Debtors in cash upon written request.  Upon recovery by the Debtors, the claim shall be reinstated as a prepetition claim in the amount so recovered; and it is further

ORDERED that the Debtors are authorized, but not directed, to obtain written verification, before issuing payment hereunder, from any Lien Claimant that the Lien Claimant shall (i) continue to provide services to the Debtors during the pendency of these chapter 11 cases on the most favorable terms that existed in the twelve (12) months before the Commencement Date and (ii) agree that it shall not be permitted to cancel on less than 90-days' notice any contract or agreement pursuant to which it provides services to the Debtors; provided that the absence of such written verification shall not limit the Debtors' rights hereunder; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay Lien Claimants, regardless of whether their claims arose prior to or after the Commencement Date, if such Lien Claimants have perfected one or more liens in respect of such claim, or if the Debtors determine, in their business judgment, that the Lien Claimants are capable of perfecting such liens; provided that no such payment shall be deemed to be a waiver of rights regarding the extent, validity, perfection or possible avoidance of any such liens; and it is further

4

ORDERED that for any payments to Lien Claimants on account of liens obtained by the Lien Claimants, the Lien Claimants receiving the payments shall take whatever action is necessary to remove such liens, if any, at such Lien Claimant's sole cost and expense; and it is further

ORDERED that the Debtors, any third parties acting as their Customs Brokers, and their agents are hereby authorized, but not directed, to make all payments with respect to Customs Duties, including related fees, whether relating to the period before or after the Commencement Date; and it is further

ORDERED that the undisputed obligations of the Debtors arising under the Prepetition Orders shall be afforded administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code; and it is further

ORDERED that, pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized to pay in the ordinary course of their businesses all undisputed obligations arising from the postpetition delivery or shipment by Vendors of Goods under Prepetition Orders consistent with their customary practice; and it is further

ORDERED that nothing herein or in the Motion shall be construed as to limit, or in any way affect, the Debtors' ability to dispute or contest the amount of or basis for any claims against the Debtors arising in connection with the Prepetition Orders; and it is further

ORDERED that the banks and other financial institutions at which the Debtors maintain their disbursement accounts are authorized and directed at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors in respect of payments to Lien Claimants; and it is further

WEIL:\95270998\1\35076.0003

ORDERED that the Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of payments to Lien Claimants to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases; and it is further

ORDERED that nothing contained in this Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently; and it is further

ORDERED that notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**"); and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

6

ORDERED that the Final Hearing on the Motion shall be held on _____,

**2015, at _____ (Prevailing Eastern Time)** and any objections or responses to the Motion shall

be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors,

Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C.

Schrock, P.C.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00**

**p.m. (Prevailing Eastern Time) on _____, 2015**; and it is further

ORDERED that notwithstanding anything to the contrary contained herein, (a)

any payment to be made, or authorization contained, hereunder shall be subject to the

requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the

"**DIP Documents**") and any orders approving the DIP Documents and governing the Debtors'

use of cash collateral (including with respect to any budgets governing or relating thereto) and

(b) to the extent there is any inconsistency between the terms of such orders approving the DIP

Documents or the Debtors' use of cash collateral and any action taken or proposed to be taken

hereunder, the terms of such orders approving the DIP Documents and use of cash collateral

shall control; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out

this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: _____, 2015
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE