Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
:
**In re**                                        :    **Chapter 11**
:
**CHASSIX HOLDINGS, INC.,** *et al.***,**        :    Case No. 15-_____ (___)
:
:    **(Joint Administration Pending)**
**Debtors.**[1]                                  :
:
------------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363 AND 105(a)
FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO CONTINUE
TOOLING AND WARRANTY PROGRAMS IN THE ORDINARY COURSE OF
BUSINESS AND PAY PREPETITION OBLIGATIONS RELATED THERETO,
AND (II) AUTHORIZING AND DIRECTING THE DISBURSEMENT BANKS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and

certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**," and together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

### Background

1. On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors ("**Creditors Committee**") has been appointed in these chapter 11 cases.

2. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3. The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations. Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4. Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the

Southern District of New York, sworn to on the date hereof (the "**Allan Declaration**"), which has been filed with the Court contemporaneously herewith.

## Jurisdiction

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6. By this Motion, pursuant to sections 363 and 105(a) of the Bankruptcy Code, the Debtors request entry of an order (i) authorizing the Debtors, in their business judgment, to (a) perform and honor their prepetition obligations related to their Tooling and Warranty Programs (as herein defined) as they deem appropriate, and (b) continue, renew, replace, implement new, and/or terminate the Tooling and Warranty Programs as they deem appropriate, in the ordinary course of business, without further application to the Court, and (ii) authorizing and directing the Disbursement Banks (as herein defined) to honor and process related checks and transfers. A proposed form of order granting the relief requested in the Motion on an interim basis is attached hereto as **Exhibit "A."**

## The Debtors' Programs

7. As set forth in the Allan Declaration, the Debtors are a leading global vertically integrated manufacturer (with both casting and machining capabilities) and supplier of aluminum and iron chassis sub-frame components that are designed into original equipment manufacturer ("**OEMs**") platforms and homologated, or crash-tested, in accordance with federal safety standards. The Debtors primarily act as a direct, or Tier One, supplier to the OEMs as well as an indirect supplier to their other customers (collectively, the "**Customers**"). As such, the Debtors primarily supply their Customers directly with specialized component parts and

3

modules. The Debtors' relationship with the Customers begins when the Debtors are awarded a "program," pursuant to which the Debtors are typically the sole supplier of a product or system for a particular vehicle model or platform being assembled by a Customer. Once the Debtors are awarded a program, the Customers typically send letters or blanket purchase orders with detailed requests for parts, which the Debtors must fulfill promptly and in accordance with the terms and conditions agreed to with the Customers. Accordingly, maintaining the loyalty and goodwill of the Customers is essential to the Debtors' ongoing business and is critical to the Debtors' reorganization efforts.

8.  The ability to honor their obligations with respect to tooling equipment, product warranties, and related programs (collectively, the "**Tooling and Warranty Programs**" and the obligations thereunder and related thereto, collectively, the "**Tooling and Warranty Obligations**") in the ordinary course of business is necessary for the Debtors to retain their Customer base and reputation for reliability. As set forth in further detail below, maintaining the Tooling and Warranty Programs is essential to maintain loyalty and ongoing business relationships with the Customers and will be critical to the success of these chapter 11 cases.

**Tooling Programs**

9.  The Debtors purchase tooling equipment on behalf of many of their Customers. The Debtors need to acquire such specialized tooling equipment in order to produce the specific component parts ordered by their Customers. In such instances, the Customers will ultimately own the tooling equipment and use the Debtors to sub-contract the tool production work, perform quality control assessments, or retain the tooling at the Debtors' facilities to be used in the production of the component parts for the Customers.

10. If the tooling is to be owned by the Customers, the Debtors seek reimbursement for funds that they have previously paid to third-party tool makers. In these cases, the Debtors may not have an equitable interest in the tooling. Therefore, the Debtors request authority to continue their tooling programs, regardless of whether any payments involve prepetition or postpetition transfers.

**Warranty Programs**

11. Customary with industry standards, the Debtors are subject to the standard terms and conditions of their Customers ("**Customer Terms**"), when supplying components, powertrain parts and other products to the Customers. Customer Terms typically include references to warranty clauses that encompass the workmanship of the Debtors' products. To the extent that the Customers identify workmanship issues with the Debtors' products, either upon initial receipt of such products, during the production process, through the post-production period, or subsequent to the final sale of the Customers' vehicles to end-consumers, the Debtors may be held liable to remedy any identified workmanship defects. Typically, remedies are in the form of replacement parts, or monetary damages levied by the Customers. As of December 31, 2014, the Debtors' had no reserves on their balance sheets related to potential warranty liabilities.

**Applicable Banks Should be Authorized to Honor and Pay Checks Issued
and Make Other Transfers to Pay the Tooling and Warranty Program Obligations**

12. The Debtors further request that banks and other financial institutions (collectively, the "**Disbursement Banks**") should be authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the

5

Commencement Date; <u>provided</u> that: (i) funds are available in the Debtors' accounts to cover the checks and fund transfers; and (ii) all the Disbursement Banks are authorized to rely on the Debtors' designation of any particular check as being authorized to be honored. The Debtors also seek authority to issue new postpetition checks, or effect new fund transfers, for Tooling and Warranty Program Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

**Cause Exists Pursuant to Sections 363 and 105(a) of the
<u>Bankruptcy Code to Approve the Debtors' Tooling and Warranty Programs</u>**

13. The Debtors seek authority, but not direction, to perform and honor all obligations with respect to the Tooling and Warranty Programs, including paying all payment obligations, when due. The Court has authority pursuant to sections 363 and 105(a) of the Bankruptcy Code to authorize the Debtors to pay or honor any prepetition obligations with respect to the Tooling and Warranty Programs.

14. A Court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Section 363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b), a Court must find that a "good business reason" exists for the use of the assets. *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

15. The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action

6

taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Courts in this District consistently have declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as those decisions are attributable to any "rational business purpose." *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

16. In addition, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing. Consequently, continuing, renewing, implementing, modifying, and/or terminating the Tooling and Warranty Programs, in the ordinary course of business, is permitted by section 363(c) of the Bankruptcy Code, without further application to the Court. However, out of an abundance of caution, the Debtors request the relief stated herein.

17. Furthermore, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the Debtors to pay any prepetition amounts that may be owed for Tooling and Warranty Programs because the payments are necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the

7

debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee"). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) ("[I]t is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process'") (quoting *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994)).

18.     In a long line of well-established cases, courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *In re Fin. News Network, Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) ("[A] bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization")*; Ionosphere*, 98 B.R. at 175 (citing *Miltenberger v. Logansport, C&S W.R. Co..*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim before reorganization permitted to prevent stoppage of "indispensable business relations")); *Mich. Bureau of Workers' Disability Comp. v.*

8

*Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

19. This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (quoting *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) ("[T]he 'necessity of payment' doctrine…[permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees in reorganization to pay claims [for] goods and services indispensably necessary" to debtors' continued operation); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 ("A general practice has developed…where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code"). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11— "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere*, 98 B.R. at 176.

20. The Debtors' Customers are the lifeblood of their businesses and their loyalty and continued support and patronage is critical to the success of these chapter 11 cases. The continuation of the Tooling and Warranty Programs on an uninterrupted basis is critical to

9

maintain this support and loyalty. Indeed, if the Debtors were not granted the relief requested in this Motion, the consequences would be draconian. The Debtors' Customers would lose confidence, question the Debtors' ability to survive, and likely immediately begin resourcing the programs maintained with the Debtors to alternative suppliers. Simply stated, the obvious disruption and damage that will ensue if Tooling and Warranty Programs are not honored and continued far exceed the costs associated with honoring the related prepetition obligations and continuing these practices.

21. Similar relief has been granted in other automotive supplier cases in this and other districts. *In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009) (ECF 253); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 3, 2009) (ECF No. 145); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 7, 2006) (ECF No. 116); *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 14, 2006) (ECF No. 221); *In re Tower Automotive, Inc.*, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Feb. 3, 2005) (ECF No. 51).

22. Accordingly, the Debtors' request that they be authorized, but not directed, in their business judgment, to (i) perform and honor all Tooling and Warranty Program Obligations as they deem appropriate and (ii) continue, renew, replace, implement new, and/or terminate the Tooling and Warranty Programs as they deem appropriate, in the ordinary course of business, without further application to the Court.

**Reservation of Rights**

23. Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

10

Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Satisfy Bankruptcy Rule 6003(b)

24.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date. Fed. R. Bankr. P. 6003(b). As described above, the success of the Debtors' reorganization effort depends upon their Customers' continued loyalty and support. If the relief requested herein is not promptly implemented, the Customers may immediately begin re-sourcing casting and machining orders to alternative suppliers, which will irreparably harm the Debtors' businesses. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Waiver of Bankruptcy Rules 6004(a) and (h)

25.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

26.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan,

11

Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New York. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

27. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
      New York, New York

                                         /s/ Ray C. Schrock, P.C.
                                         Marcia L. Goldstein
                                         Ray C. Schrock, P.C.

                                         **WEIL, GOTSHAL & MANGES LLP**
                                         767 Fifth Avenue
                                         New York, New York 10153
                                         Telephone: (212) 310-8000
                                         Facsimile: (212) 310-8007

                                         *Proposed Attorneys for Debtors*
                                         *and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                  :

In re                                         :         Chapter 11
                                                  :

**CHASSIX HOLDINGS, INC.,** *et al.*,     :         Case No. 15-_____ (___)
                                                  :
                                                  :         Jointly Administered

                      Debtors.[1]              :
                                                  :
---------------------------------------------------------x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 105(a)
(I) AUTHORIZING DEBTORS TO CONTINUE TOOLING AND WARRANTY
PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND
PAY PREPETITION OBLIGATIONS RELATED THERETO, AND
(II) AUTHORIZING AND DIRECTING THE DISBURSEMENT BANKS
TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

        Upon the motion, dated March ___, 2015 (the "**Motion**"),[2] of Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to sections 363 and 105(a) of the Bankruptcy Code, for an order (i) authorizing the Debtors to pay and honor all obligations with respect to tooling equipment, product warranties, and related programs (collectively, the **"Tooling and Warranty Programs"** and the obligations thereunder and related thereto, collectively, the **"Tooling and Warranty Obligations"**) and to otherwise

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

continue the Tooling and Warranty Programs and practices in the ordinary course of business, and (ii) authorizing and directing the banks and other financial institutions (collectively, the "**Disbursement Banks**") to honor and process related checks and transfers, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28. U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New York (the "**Notice Parties**"); and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested

2

in the Motion (the "**Hearing**"); and upon the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, filed contemporaneously with the Motion, the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis, as provided herein; and it is further

ORDERED that, pursuant to sections 363 and 105(a) of the Bankruptcy Code, the Debtors are authorized, but not directed, to (i) pay, perform and honor the Tooling and Warranty Program Obligations, and (ii) continue, renew, replace, implement new, and/or terminate the Tooling and Warranty Programs as they deem appropriate, in the ordinary course of business, without further application to the Court, including making all payments, honoring and satisfying all obligations and permitting and effecting all setoffs in connection therewith, whether relating to the period prior or subsequent to the Commencement Date; and it is further

ORDERED that the banks and other financial institutions at which the Debtors maintain their disbursement accounts are authorized and directed at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors in respect of the Tooling and Warranty Obligations; and it is further

3

ORDERED that the Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the Tooling and Warranty Program Obligations to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases; and it is further

ORDERED that nothing contained in this Interim Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently; and it is further

ORDERED that notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that the requirements set forth in Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the

4

hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**"); and it is further

ORDERED that the Final Hearing on the Motion shall be held on _____, **2015, at \_\_\_\_\_ (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on _____, 2015**; and it is further

ORDERED that notwithstanding anything to the contrary contained herein, (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "**DIP Documents**") and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto) and (b) to the extent there is any inconsistency between the terms of such orders approving the DIP Documents or the Debtors' use of cash collateral and any action taken or proposed to be taken hereunder, the terms of such orders approving the DIP Documents and use of cash collateral shall control; and it is further

ORDERED that this Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; <u>provided</u> that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2015
       New York, New York

                                              _____
                                              UNITED STATES BANKRUPTCY JUDGE