Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                           :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **CHASSIX HOLDINGS, INC.**, *et al.*, | : | **Case No. 15-_____ (___)** |
| | : | |
| | : | **(Joint Administration Pending)** |
| **Debtors.**[1] | : | |
| | : | |

---------------------------------------------------------x

### AMENDED APPLICATION OF DEBTORS PURSUANT TO 28 U.S.C. §§ 156(c), 11 U.S.C. § 105(a), AND LOCAL RULE 5075-1 FOR AN ORDER APPOINTING PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

       Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of

their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**," and

together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

## Background

1.       On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors ("**Creditors Committee**") has been appointed in these chapter 11 cases.

2.       Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.       The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations.  Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4.       Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (as defined herein), sworn to on the date hereof (the "**Allan Declaration**"), which has been filed with the Court contemporaneously herewith.

WEIL:\95270992\1\35076.0003

## Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.      By this Application (the "**Section 156(c) Application**"), pursuant to section

156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, and Rule

5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local

Rules**"), the Debtors request authority to appoint Prime Clerk LLC ("**Prime Clerk**") as claims

and noticing agent ("**Claims and Noticing Agent**") in the Debtors' chapter 11 cases, in

accordance with the terms and conditions of that certain engagement agreement dated as of

December 29, 2014 (the "**Engagement Agreement**"), effective *nunc pro tunc* to the

Commencement Date.  A proposed form of order granting the relief requested in the Section

156(c) Application is attached hereto as **Exhibit "A"** (the "**Proposed Order**").  A copy of the

Engagement Agreement is annexed as an exhibit to the Proposed Order.  In support of the relief

requested herein, the Debtors submit the Declaration of Michael J. Frishberg, Co-President and

Chief Operating Officer of Prime Clerk (the "**Frishberg Declaration**"), attached hereto as

**Exhibit "B**."

6.      The Debtors request entry of an order appointing Prime Clerk as the Claims and

Noticing Agent for the Debtors and their chapter 11 cases, including assuming full responsibility

for the distribution of notices and the maintenance, processing, and docketing of proofs of claim

filed in the Debtors' chapter 11 cases.  The Debtors' selection of Prime Clerk to act as the Claims

and Noticing Agent has satisfied the Court's Protocol for the Employment of Claims and Noticing

WEIL:\95270992\1\35076.0003

Agents under 28 U.S.C. § 156(c) (the "**Claims Agent Protocol**"), in that the Debtors have

obtained and reviewed engagement proposals from at least two other court-approved claims and

noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit,

based on all engagement proposals obtained and reviewed, that Prime Clerk's rates are

competitive and reasonable given Prime Clerk's quality of services and expertise.  The terms of

Prime Clerk's retention are set forth in the Engagement Agreement; provided that Prime Clerk is

seeking approval solely of the terms and provisions as set forth in this Section 156(c) Application

and the Proposed Order attached hereto.  By separate application, the Debtors are seeking

authorization to retain and employ Prime Clerk as administrative advisor in these chapter 11 cases

pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11

cases will require Prime Clerk to perform duties outside the scope of 28 U.S.C. § 156(c).

   7.  Although the Debtors have not yet filed their schedules of assets and liabilities,

they anticipate that there will be in excess of 2,000 entities to be noticed.  Local Rule 5075-1(b)

provides that "[i]n a case in which the number of creditors and equity security holders, in the

aggregate, is 250 or more, the estate shall retain, subject to approval of the Court, a claims and

noticing agent in accordance with the [Claims Agent Protocol]."  In view of the number of

anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the

appointment of a claims and noticing agent is required by Local Rule 5075-1(b) and is otherwise

in the best interests of both the Debtors' estates and their creditors.

WEIL:\95270992\1\35076.0003

## Prime Clerk's Qualifications

8.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Prime Clerk's active cases include: *In re dELiA*s, Inc.*, No. 14-23678 (RDD) (Bankr. S.D.N.Y.); *In re Aereo, Inc.*, No. 14-13200 (SHL) (Bankr. S.D.N.Y.); *In re Dendreon Corp.*, No. 14-12515 (PJW) (Bankr. D. Del.); *In re ALCO Stores, Inc.*, No. 14-34941 (SGJ) (Bankr. N.D. Tex.); *In re Inversiones Alsacia S.A.*, No. 14-12896 (MG) (Bankr. S.D.N.Y.); *In re SIGA Tech., Inc.*, No. 14-12623 (SHL) (Bankr. S.D.N.Y.); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y.); *In re Trump Entertainment Resorts, Inc.*, No. 14-12103 (KG) (Bankr. D. Del.); *In re Mineral Park, Inc.*, No. 14-11996 (KJC) (Bankr. D. Del.); *In re Entegra Power Group LLC*, No. 14-11859 (PJW) (Bankr. D. Del.); *In re Windsor Petroleum Transp. Corp.*, No. 14-11708 (PJW) (Bankr. D. Del.); *In re Crumbs Bake Shop, Inc.*, No. 14-24287 (MBK) (Bankr. D.N.J.); *In re Tactical Intermediate Holdings, Inc.*, No. 14-11659 (KG) (Bankr. D. Del.); *In re MIG, LLC*, No. 14-11605 (KG) (Bankr. D. Del.); *In re FL 6801 Spirits LLC*, No. 14-11691 (SCC) (Bankr. S.D.N.Y.).

9.      By appointing Prime Clerk as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

WEIL:\95270992\1\35076.0003

## Services to be Provided

10.    This Section 156(c) Application pertains only to the work to be performed by

Prime Clerk under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local

Rule 5075-1, and any work to be performed by Prime Clerk outside of this scope is not covered

by this Section 156(c) Application or by any order granting approval hereof.  Specifically, Prime

Clerk will perform the following tasks in its role as Claims and Noticing Agent, as well as all

quality control relating thereto:

(a)    Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under Section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)    Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d)    Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

6

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)     Provide an electronic interface for filing proofs of claim;

(i)     Maintain the official claims register for each Debtor (collectively, the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor and (vii) any disposition of the claim;

(j)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(k)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(l)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Prime Clerk, not less than weekly;

(m)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(n)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

WEIL:\95270992\1\35076.0003

(p)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(q)     If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Prime Clerk of entry of the order converting the cases;

(r)     Thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Prime Clerk as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(s)     Within seven (7) days of notice to Prime Clerk of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

(t)     At the close of these chapter 11 cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

11.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Prime Clerk.

## Professional Compensation

12.     The Debtors respectfully request that the undisputed fees and expenses incurred by Prime Clerk in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Prime Clerk agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), counsel for the Debtors, counsel for any official committee monitoring the expenses of

the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  If

any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall

meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may

seek resolution of the matter from the Court.

13.     Prior to the Commencement Date, the Debtors provided Prime Clerk a retainer in

the amount of $25,000.00.  Prime Clerk seeks to first apply the retainer to all prepetition invoices,

and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to

hold the retainer under the Engagement Agreement during these chapter 11 cases as security for

the payment of fees and expenses incurred under the Engagement Agreement.

14.     Additionally, under the terms of the Engagement Agreement, the Debtors have

agreed to indemnify, defend and hold harmless Prime Clerk and its members, officers, employees,

representatives and agents under certain circumstances specified in the Engagement Agreement,

except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct

or as otherwise provided in the Engagement Agreement or Retention Order.  The Debtors believe

that such an indemnification obligation is customary, reasonable and necessary to retain the

services of a Claims and Noticing Agent in these chapter 11 cases.

WEIL:\95270992\1\35076.0003

## Disinterestedness

15.      Although the Debtors do not propose to employ Prime Clerk under section 327 of

the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought

by separate application), Prime Clerk has nonetheless reviewed its electronic database to

determine whether it has any relationships with the creditors and parties in interest provided by

the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as

disclosed in the Frishberg Declaration, Prime Clerk has represented that it neither holds nor

represents any interest materially adverse to the Debtors' estates in connection with any matter on

which it would be employed.

16.      Moreover, in connection with its retention as Claims and Noticing Agent, Prime

Clerk represents in the Frishberg Declaration, among other things, that:

(a)      Prime Clerk is not a creditor of the Debtors;

(b)      Prime Clerk will not consider itself employed by the United States
government and shall not seek any compensation from the United States
government in its capacity as the Claims and Noticing Agent in these
chapter 11 cases;

(c)      By accepting employment in these chapter 11 cases, Prime Clerk waives
any rights to receive compensation from the United States government in
connection with these chapter 11 cases;

(d)      In its capacity as the Claims and Noticing Agent in these chapter 11 cases,
Prime Clerk will not be an agent of the United States and will not act on
behalf of the United States;

(e)      Prime Clerk will not employ any past or present employees of the Debtors
in connection with its work as the Claims and Noticing Agent in these
chapter 11 cases;

(f)      Prime Clerk is a "disinterested person" as that term is defined in section
101(14) of the Bankruptcy Code with respect to the matters upon which it
is engaged;

(g)      In its capacity as Claims and Noticing Agent in these chapter 11 cases,
Prime Clerk will not intentionally misrepresent any fact to any person;

WEIL:\95270992\1\35076.0003

(h)     Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Prime Clerk as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

### Compliance with Claims and Noticing Agent Protocol

17.     This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard Section 156(c) Application in use in this Court.  To the extent that there is any inconsistency between this Section 156(c) Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

### Notice

19.     Notice of this Section 156(c) Application has been provided to (i) the U.S. Trustee; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders;

WEIL:\95270992\1\35076.0003

(ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for

Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal

Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New

York.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient

and no other or further notice need be provided.

20.    No previous request for the relief sought herein has been made by the Debtors to

this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
       New York, New York

CHASSIX HOLDINGS, INC.
(for itself and on behalf of its affiliates
as Debtors and Debtors in Possesion)


/s/ J. Mark Allan
NAME:  J. Mark Allan
TITLE:  President, Chassix Holdings, Inc.

WEIL:\95270992\1\35076.0003

**Exhibit A**

**Proposed Order**

Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
                           :

**In re**                    :     **Chapter 11**
                           :

**CHASSIX HOLDINGS, INC.,** *et al.,*   :     **Case No. 15-_____ (___)**
                           :

                           :     **(Joint Administration Pending)**

               **Debtors.**[1]   :
                           :
---------------------------------------------------------x

**ORDER PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a),**
**AND LOCAL RULE 5075-1 APPOINTING PRIME CLERK LLC**
**AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS**

Upon the application, dated March ___, 2015 (the "**Application**[2]") of Chassix Holdings,

Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

§156(c), section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule

5075-1of the Local Bankruptcy Rules for the Southern District of New York (the "**Local**

**Rules**"), for an order authorizing the Debtors to retain Prime Clerk LLC ("**Prime Clerk**") as

claims and noticing agent ("**Claims and Noticing Agent**"), in accordance with the terms and

conditions of that certain engagement agreement dated as of December 29, 2014 (the

"**Engagement Agreeement**"), all as more fully set forth in the Application; and upon the

Declaration of Michael J. Frishberg, Co-President and Chief Operating Officer of Prime Clerk (the

"**Frishberg Declaration**") filed in support of the Application; and the Court having jurisdiction to

consider the Application and the relief requested therein in accordance with 28. U.S.C. §§ 157

and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Application and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided

to (i) the Office of the United States Trustee for the Southern District of New York (the "**U.S.**

**Trustee**"); (ii) the holders of the five largest secured claims against the Debtors (on a

consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors

(on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent

under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of

July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain

Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the

attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10%

/ 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys

for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders;

(ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for

Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal

Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New

York; and it appearing that no other or further notice need be provided; and upon the Declaration

of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York; and a hearing having been held to consider the relief requested in the Application

(the "**Hearing**"); and the Debtors having estimated that there are in excess of 2,000 creditors in

these chapter 11 cases, many of which are expected to file proofs of claim; and it appearing that

the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and

burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at

the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases

and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being

satisfied that Prime Clerk has the capability and experience to provide such services and that

Prime Clerk does not hold an interest adverse to the Debtors or the estates respecting the matters

upon which it is to be engaged; and the Court having found and determined that the relief sought

in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in

interest, and that the legal and factual bases set forth in the Application establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that the Debtors are authorized to retain Prime Clerk as Claims and

Noticing Agent effective *nunc pro tunc* to the Commencement Date under the terms of the

Engagement Agreement annexed hereto as "**Exhibit 1**," as set forth herein, and Prime Clerk is

authorized and directed to perform noticing services and to receive, maintain, record and

otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as

described in the Application; and it is further

ORDERED that notwithstanding the terms of the Engagement Agreement, the

Application is approved solely as set forth in this Order; and it is further

ORDERED that the Debtors are authorized to retain Prime Clerk as Claims and

Noticing Agent effective *nunc pro tunc* to the Commencement Date under the terms of the

Engagement Agreement, and Prime Clerk is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application; and it is further

ORDERED that Prime Clerk shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk; and it is further

ORDERED that Prime Clerk is authorized and directed to obtain a post office box or address for the receipt of proofs of claim; and it is further

ORDERED that Prime Clerk is authorized to take such other action to comply with all duties set forth in the Application; and it is further

ORDERED that the Debtors are authorized to compensate Prime Clerk in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Prime Clerk and the rates charged for each, and to reimburse Prime Clerk for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Prime Clerk to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses; and it is further

ORDERED that Prime Clerk shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices; and it is further

ORDERED that the parties shall meet and confer in an attempt to resolve any

dispute which may arise relating to the Engagement Agreement or monthly invoices; provided

that the parties may seek resolution of the matter from the Court if resolution is not achieved; and

it is further

ORDERED that pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the

fees and expenses of Prime Clerk under this Order shall be an administrative expense of the

Debtors' estates; and it is further

ORDERED that Prime Clerk may apply its retainer to all prepetition invoices,

which retainer shall be replenished to the original retainer amount, and thereafter, Prime Clerk

may hold its retainer under the Engagement Agreement during the chapter 11 cases as security for

the payment of fees and expenses incurred under the Engagement Agreement; and it is further

ORDERED that the Debtors shall indemnify Prime Clerk under the terms of the

Engagement Agreement, as modified pursuant to this Order; and it is further

ORDERED that all requests by Prime Clerk for the payment of indemnification as

set forth in the Engagement Agreement shall be made by means of an application to the Court and

shall be subject to review by the Court to ensure that payment of such indemnity conforms to the

terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or

settlement in respect of which indemnity is sought, provided that in no event shall Prime Clerk be

indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross

negligence or willful misconduct; and it is further

ORDERED that in the event Prime Clerk seeks reimbursement from the Debtors

for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to

the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and

expenses shall be included in Prime Clerk's own applications, both interim and final, but determined by this Court after notice and a hearing; and it is further

ORDERED that in the event Prime Clerk is unable to provide the services set out in this order, Prime Clerk will immediately notify the Clerk and the Debtors' attorney and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney; and it is further

ORDERED that the Debtors may submit a separate retention application, pursuant to Section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Prime Clerk but is not specifically authorized by this Order; and it is further

ORDERED that the Debtors and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

ORDERED that notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that Prime Clerk shall not cease providing claims processing services during the chapter 11 case(s) for any reason, including nonpayment, without an order of the Court; and it is further

ORDERED that in the event of any inconsistency between the Engagement Agreement and the Order, the Order shall govern; and it is further

ORDERED that notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2015
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Engagement Agreement**



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of December 29, 2014 between Prime Clerk LLC ("*Prime Clerk*") and Chassix Holdings, Inc. (together with its affiliates and subsidiaries, the "*Company*").

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Prime Clerk agrees to provide the Company with consulting services regarding a consent solicitation and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders, including legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) (all such services collectively, the "*Services*").

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "*Company Parties*") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

   (d) While onsite at a Company facility, Prime Clerk and its employees shall at all times abide in all material respects by the rules and regulations that apply generally to all employees and visitors at the Company, a copy of which shall be provided to Prime Clerk upon request. Prime Clerk agrees to promptly replace any employee who in the Company's sound judgment, the Company requests the removal of due to such employee's inability or unwillingness to fulfill the obligations and commitments set forth herein. In such an event, the Company shall not be charged for Prime Clerk's time for any services that must be repeated due to the replacement of personnel as contemplated herein.

2. **Rates, Expenses and Payment**

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "*Rate Structure*"). The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder; *provided, however,* that travel and lodging expenses shall be incurred in accordance with the Company's travel policy, a copy of which shall be provided to Prime Clerk upon request.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

Prime Clerk

(c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $25,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

3. **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**") and selects Prime Clerk as its claims and noticing agent, the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4. **Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed,

2

**Prime Clerk**

lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

### 5. Property Rights

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Prime Clerk for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

### 6. Bank Accounts

Solely at the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

### 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "*Cause*" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

3

**Prime Clerk** ⟲

8.  **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

9.  **Indemnification**

   (a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Prime Clerk's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

   (b)  Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

   (c)  The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

   (d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

   (a)  The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

   (b)  The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

4

**Prime Clerk**

(c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.



16. **Integration; Severability; Modifications; Assignment**

    (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

    (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

    (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**Prime Clerk**

### 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| If to Prime Clerk: | Prime Clerk LLC |
| | 830 3rd Avenue, 9th Floor |
| | New York, NY 10022 |
| | Attn: Shai Waisman |
| | Tel: (212) 257-5450 |
| | Email: swaisman@primeclerk.com |

If to the Company:    Chassix Inc.
300 Galleria Officentre, Suite 501
Southfield, MI 48034
Attn: *Mark Allan*
Tel: *(248) 728-8636*
Email: *mark.allan@chassix.com*

With a copy to:    Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Ray C. Schrock, P.C.
Tel: (212) 310-8210
Email: ray.schrock@weil.com

**Prime Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

Prime Clerk LLC

By: Shai Waisman
Title: CEO

Chassix Holdings, Inc.

By: Brad Frederick
Title: CFO

8

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
|---|---|
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $45 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $110 |
| **Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. | $135 |
| **Senior Consultant**<br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. | $160 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. | $190 |

### Solicitation, Balloting and Tabulation Rates

| | |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Analyst prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. | $185 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. | $210 |

---

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

**Prime Clerk** ○

## Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[1] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

## Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

## Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

## Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

---

[1] Volume discounts will be applied to large mailings

**Prime Clerk**

**On-line Claim Filing Services**

On-line claim filing                                        No charge


**Call Center Services**

Case-specific voice-mail box                               No charge

Interactive Voice Response ("IVR")                         Set-up fee waived,
                                                           $0.34 per minute

Monthly maintenance                                        No charge

Call center personnel                                      Standard hourly rates

Live chat                                                  Standard hourly rates


**Disbursement Services**

Check issuance and/or Form 1099                            Available on request

W-9 mailing and maintenance of TIN database                Standard hourly rates

Prime Clerk

**Exhibit B**

**Frishberg Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11
                                          :
CHASSIX HOLDINGS, INC., *et al.*,         :        Case No. 15-_____ (___)
                                          :
                                          :        (Joint Administration Pending)
                  Debtors.[1]             :
                                          :
------------------------------------------------------------x

### DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT OF DEBTORS' APPLICATION PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), AND LOCAL RULE 5075-1 FOR AN ORDER APPOINTING PRIME CLERK LLC AS CLAIMS AND NOTICING AGENT

I, Michael J. Frishberg, under penalty of perjury, declare as follows:

1.    I am the Co-President and Chief Operating Officer of Prime Clerk LLC ("**Prime Clerk**"), a chapter 11 administrative services firm whose offices are located at 830 Third Avenue, 9th Floor, New York, New York 10022.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.    This Declaration is made in support of the application (the "**Section 156(c) Application**")[2] of Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012).  The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Section 156(c)

captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"),

for Appointment of Prime Clerk LLC as Claims and Noticing Agent, which was filed

contemporaneously herewith.

3.      Prime Clerk is comprised of leading industry professionals with significant

experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Prime

Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and

facilitating other administrative aspects of chapter 11 cases and experience in matters of this size

and complexity.  Prime Clerk's professionals have acted as debtor's counsel or official claims and

noticing agent in many large bankruptcy cases in this District and in other districts nationwide.

Prime Clerk's active cases include: *In re dELiA*s, Inc.*, No. 14-23678 (RDD) (Bankr. S.D.N.Y.);

*In re Aereo, Inc.*, No. 14-13200 (SHL) (Bankr. S.D.N.Y.); *In re Dendreon Corp.*, No. 14-12515

(PJW) (Bankr. D. Del.); *In re ALCO Stores, Inc.*, No. 14-34941 (SGJ) (Bankr. N.D. Tex.); *In re

Inversiones Alsacia S.A.*, No. 14-12896 (MG) (Bankr. S.D.N.Y.); *In re SIGA Tech., Inc.*, No.

14-12623 (SHL) (Bankr. S.D.N.Y.); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr.

S.D.N.Y.); *In re Trump Entertainment Resorts, Inc.*, No. 14-12103 (KG) (Bankr. D. Del.); *In re

Mineral Park, Inc.*, No. 14-11996 (KJC) (Bankr. D. Del.); *In re Entegra Power Group LLC*, No.

14-11859 (PJW) (Bankr. D. Del.); *In re Windsor Petroleum Transp. Corp.*, No. 14-11708 (PJW)

(Bankr. D. Del.); *In re Crumbs Bake Shop, Inc.*, No. 14-24287 (MBK) (Bankr. D.N.J.); *In re

Tactical Intermediate Holdings, Inc.*, No. 14-11659 (KG) (Bankr. D. Del.); *In re MIG, LLC*, No.

14-11605 (KG) (Bankr. D. Del.); *In re FL 6801 Spirits LLC*, No. 14-11691 (SCC) (Bankr.

S.D.N.Y.).

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Prime

---

Application.

Clerk will perform, at the request of the Office of the Clerk of the Bankruptcy Court

(the "**Clerk**"), the services specified in the Section 156(c) Application and that certain

engagement agreement dated as of December 29, 2014 (the "**Engagement Agreement**"), and, at

the Debtors' request, any related administrative, technical and support services as specified in the

Section 156(c) Application and the Engagement Agreement.  In performing such services, Prime

Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is attached

as **Exhibit "1"** to the Proposed Order.

      5.      Prime Clerk represents, among other things, the following:

      (a)      Prime Clerk is not a creditor of the Debtors;

      (b)      Prime Clerk will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

      (c)      By accepting employment in these chapter 11 cases, Prime Clerk waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

      (d)      In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not be an agent of the United States and will not act on behalf of the United States;

      (e)      Prime Clerk will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

      (f)      Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

      (g)      In its capacity as Claims and Noticing Agent in these chapter 11 cases, Prime Clerk will not intentionally misrepresent any fact to any person;

      (h)      Prime Clerk shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    Prime Clerk will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by Prime Clerk as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

6.    Although the Debtors do not propose to retain Prime Clerk under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these chapter 11 cases. The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, the Debtors' affiliates and subsidiaries, current and former directors and officers of the Debtors, shareholders, secured creditors, the Debtors' 40 largest unsecured creditors on a consolidated basis, the Debtors' major vendors, and other parties. The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision. At this time, and as set forth in further detail herein, Prime Clerk is not aware of any relationship that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to promptly file a supplemental declaration.

7.    To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or in

connection with cases in which Prime Clerk serves or has served in a neutral capacity as Claims and Noticing Agent and/or Administrative Advisor for another chapter 11 debtor.

8.    Certain of Prime Clerk's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Such firms include Weil, Gotshal & Manges LLP; Kirkland & Ellis LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Willkie Farr & Gallagher LLP; Togut, Segal & Segal LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell & Giuliani LLP; Proskauer Rose LLP; McKinsey & Company; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC.  Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

9.    Shai Waisman is the Chief Executive Officer of Prime Clerk.  From approximately May 1997 until December 2003, Mr. Waisman was an associate of Weil, Gotshal & Manges LLP ("**Weil**"), the attorneys for the Debtors, and was a Partner of Weil from January 2004 until his departure in 2011. During his tenure at Weil, Mr. Waisman was neither involved with, nor advised the Debtors, with respect to any aspect of their businesses, or their strategy, preparation, or filing of their Chapter 11 cases.

10.    Stephen Karotkin is a partner of Weil, the attorneys for the Debtors.   Mr. Karotkin's son, Joshua Karotkin, has been an employee of Prime Clerk since April 2014.  Joshua Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon Prime Clerk's revenue.

11.    Benjamin Steele, a Vice President of Prime Clerk, was formerly an associate at

Kirkland & Ellis LLP.   While there, he represented Carlyle Strategic Partners ("**Carlyle**") in connection with Carlyle's 2009 acquisition (with certain other entities) of substantially all of the assets of Metaldyne Corporation ("**Metaldyne**") during Metaldyne's chapter 11 cases.   During his representation of Carlyle, Mr. Steele also provided advice to Diversified Machine, Inc. ("**DMI**"), a debtor in these chapter 11 cases, which was then owned by Carlyle and which acquired certain Metaldyne assets from Carlyle.   Since Carlyle's sale of DMI in 2011, Mr. Steele has not had any connection to DMI.

12.     Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases.   In addition, Prime Clerk and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' chapter 11 cases in matters unrelated to these cases.   Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

13.     Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors.   Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest.   All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

14.     From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their

affiliates, often without Prime Clerk's or its personnel's knowledge. Each Prime Clerk partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Prime Clerk partners or employees make an investment in the Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

15.    From time to time, Prime Clerk partners or employees may personally directly acquire a debt or equity security of a company which may be one of the Debtors or their affiliates. Prime Clerk has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, all Prime Clerk partners and employees are barred from trading in securities with respect to which they possess confidential information.

16.    To the best of my knowledge, neither Prime Clerk nor any of its partners or employees represents any interest materially adverse to the Debtors' estates with respect to any matter upon which Prime Clerk is to be engaged. Based on the foregoing, I believe that Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on March 12, 2015

/s/ Michael J. Frishberg
Michael J. Frishberg
Co-President and Chief Operating Officer
Prime Clerk LLC