Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                            :
In re                                       :        Chapter 11
                                            :
CHASSIX HOLDINGS, INC., et al.,             :        Case No. 15-_____ (___)
                                            :
                                            :        (Joint Administration Pending)
                    Debtors.¹               :
                                            :
-------------------------------------------------------x
```

## MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 507(a)(8), AND 541 FOR ENTRY OF AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO PAY PREPETITION TAXES AND ASSESSMENTS, AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and

certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012).  The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**," and together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

**Background**

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors ("**Creditors Committee**") has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations.  Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the

2

Southern District of New York, sworn to on the date hereof (the "**Allan Declaration**"), which

has been filed with the Court contemporaneously herewith.

**Jurisdiction**

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6.      By this Motion, the Debtors seek authority, pursuant to sections 105(a),

363(b), 507(a)(8), and 541 of the Bankruptcy Code, to pay, in the Debtors' sole discretion,

certain taxes, fees, and other charges (collectively, **"Prepetition Taxes and Assessments**"),

whether asserted or accrued prior to or after the Commencement Date, including all Prepetition

Taxes and Assessments subsequently determined upon audit, or otherwise, to be owed.  A

proposed form of order granting the relief requested in the Motion on an interim basis is annexed

hereto as **Exhibit "A"** (the "**Proposed Order**").

7.      The Debtors also request that the Court authorize and direct the banks and

other financial institutions at which the Debtors maintain disbursement accounts, at the Debtors'

direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all

checks drawn or electronic fund transfers requested or to be requested by the Debtors relating to

Prepetition Taxes and Assessments.  The Debtors also seek authority to issue new postpetition

checks, or effect new electronic fund transfers, on account of Prepetition Taxes and Assessments

to replace any prepetition checks or electronic fund transfer requests that may be lost,

dishonored, or rejected as a result of the commencement of the Debtors' chapter 11 cases.

WEIL:\95270989\1\35076.0003

**Prepetition Taxes and Assessments**[2]

8.    In connection with the normal operation of their businesses, the Debtors collect, withhold, or incur an assortment of Prepetition Taxes and Assessments that they remit periodically to various federal, state, and local government and quasi-government authorities (collectively, the "**Governmental Authorities**").  A list of the Governmental Authorities is affixed as an exhibit to the Proposed Order.[3]

9.    The Prepetition Taxes and Assessments generally fall into the following categories, each of which is described in further detail below: Real and Personal Property Taxes, Franchise and Income Taxes, Use Taxes, Intellectual Property Fees, and Tax Administration Obligations (each as herein defined).

*Real and Personal Property Taxes*

10.    State and local laws in many of the jurisdictions in which the Debtors operate generally grant Governmental Authorities the power to levy property taxes against the Debtors' real and personal property (collectively, the "**Real and Personal Property Taxes**"). Currently, the Debtors pay Real and Personal Property Taxes on properties located in New York, Ohio, Indiana, Wisconsin, Michigan, Georgia, and Tennessee.  The Debtors also pay taxes for the real property they lease in New York, Michigan, Indiana, Ohio, Massachusetts, and

---

[2] By this Motion, the Debtors are not seeking authority to pay (i) employee withholding taxes, which are being requested to be paid pursuant to a separate motion seeking payment of employee wages and other benefits, (ii) taxes owed to foreign taxing authorities, which are generally paid at the local level by the Debtors' non-debtor affiliates, or (iii) income taxes, other than certain state and local Franchise and Income Taxes (as herein defined).

[3] Although the list of Governmental Authorities annexed to the Proposed Order is substantially complete, the relief requested herein is to be applicable with respect to all Governmental Authorities and is not limited to those Governmental Authorities set forth therein.  Dharma Holding Corporation and Triomphe Intermediate Holding Corporation are not Debtors in these chapter 11 cases; however, they file tax returns with certain Governmental Authorities on behalf of all or some of the Debtors on a consolidated basis.  All of the references to Dharma and Triomphe in the list of Governmental Authorities refer to situations in which one or some of the Debtors are responsible for the related tax payments.  Further, any amounts owed in connection with such tax returns are paid by Chassix.

4

Tennessee, which is calculated based on the value of the real property.  These taxes are often billed to the Debtors by their lessors who then remit payment to the relevant Governmental Authorities.

11.    In addition, the Debtors utilize a significant amount of equipment pursuant to various leases and other financing arrangements.  The Debtors are generally contractually obligated to pay any tax liabilities associated with leased equipment.  Typically, the Debtors pay such tax liabilities to the relevant lessor who is then responsible for remitting payment to the relevant Governmental Authorities.  Prompt payment of any such amounts is necessary to maintain the Debtors' relationships with their lessors and to avoid potential penalties.  As of the Commencement Date, the Debtors estimate that they owe approximately $80,000 in tax liabilities associated with leased equipment, $60,000 of which is due within 30 days of the Commencement Date.  Although the Debtors believe that generally the lessors, and not the Debtors, are directly responsible for tax payments related to leased equipment, the Debtors request authority to pay any such outstanding amounts out of an abundance of caution.

12.    To avoid the imposition of statutory liens on their real, personal, and leased properties, the Debtors typically pay these taxes in the ordinary course of business on a monthly, quarterly, semi-annual, and annual basis.  Real and Personal Property Taxes constitute the most significant tax obligations of the Debtors.  The Debtors estimate that, as of the Commencement Date, they owe approximately $10,000 to the Governmental Authorities in Real and Personal Property Taxes, none of which is due within 30 days of the Commencement Date.

*State and Local Franchise and Income Taxes and Fees*

13.    The Debtors are also required to pay federal income taxes, as well as state and local franchise and income taxes in certain taxing jurisdictions (collectively, the "**Franchise and Income Taxes**").  Franchise and Income Taxes are typically assessed by Governmental

5

Authorities against the applicable business for the privilege of doing business within a particular jurisdiction. The Franchise Taxes paid by the Debtors are based on capital employed. Certain jurisdictions assess both franchise taxes and income taxes, while others assess either franchise taxes or income taxes depending on which results in a higher tax. Other Governmental Authorities assess only income taxes or only franchise taxes. Franchise Taxes are remitted on a semi-annual basis to the relevant Governmental Authority. As of the Commencement Date, the Debtors estimate that they owe approximately $300,000 in Franchise and Income Taxes. Of this sum, approximately $290,000 is due within 30 days of the Commencement Date. The Debtors have no outstanding obligations for federal income taxes for the 2014 year.

*Use Taxes*

14.    The sale of products to the Debtors' customers is typically exempt from sales tax under applicable state and local law. Accordingly, the Debtors do not collect traditional sales taxes. The Debtors may, however, be responsible for the payment of use taxes (collectively, the "**Use Taxes**") when, for example, they purchase certain tangible personal property from vendors that do not collect a sales tax. Certain vendors do not collect a sales tax because they do not sell the type of products subject to sales tax or because the vendor lacks a nexus to the resident states of the Debtors and is not obligated to charge or remit sales taxes for sales to parties outside the state of the vendor's operations. In other cases, the vendor may fail to collect a sales tax in error, nevertheless, purchasers such as the Debtors are obligated to self-assess and pay the Use Taxes, when applicable, to the states in which they operate. The Debtors also occasionally purchase goods to be used for a tax exempt purpose. If the goods are ultimately used for another purpose, the Debtors are obligated to self-assess and pay the related Use Taxes to the relevant Governmental Authorities. The Debtors remit Use Taxes in arrears based upon a review of their general ledger on either a monthly or quarterly basis, depending on

6

the jurisdiction. The Debtors' generally pay no more than $20,000 in Use Taxes each month. As of the Commencement Date, the Debtors estimate that they owe approximately $20,000, all of which is due within 30 days of the Commencement Date.

*Intellectual Property Fees*

15.    The Debtors have over 60 foreign registered and pending trademarks in over ten countries. The Debtors rely on trademark associates both domestically and abroad to monitor and prevent inadvertent expiration or abandonment of their intellectual property, by, among other things, facilitating payment of regulatory and filing fees on behalf of the Debtors to regulatory agencies and Governmental Authorities (collectively, the **"Intellectual Property Fees"**). In certain circumstances, the Debtors pay fees owed to regulatory agencies and Governmental Authorities directly; however, the remaining fees are paid by the Debtors' trademark associates who are subsequently reimbursed for payment of the fees by the Debtors. In addition, the Debtors have approximately 10 trademark registrations and applications in the United States. The Debtors rely on a domestic firm to assist the Debtors with monitoring and preventing inadvertent expiration or abandonment of the foregoing intellectual property but pay any fees owed to domestic regulatory agencies and Governmental Authorities directly. Failure to pay these amounts could severely compromise the Debtors' ability to protect and utilize this intellectual property both domestically and abroad. The Debtors are unable to calculate the amount owed in Intellectual Property Fees as of the Commencement Date; however, based on past practice, they do not believe that this number is significant.

*Tax Administration Obligations*

16.    The Debtors employ the services of a number of entities (the "**Tax Administrators**") to assist the Debtors with the administration of certain taxes, fees, and other

WEIL:\95270989\1\35076.0003

charges, including the preparation of audits and tax returns.  The Tax Administrators charge the

Debtors fees for their services (the "**Tax Administration Obligations**").  The Debtors rely

heavily on the Tax Administrators to facilitate the payment of certain taxes and assessments,

including certain Real and Personal Property Taxes, federal, state and local Franchise and

Income Taxes.  As of the Commencement Date, the Debtors estimate that approximately

$125,000 of Tax Administration Obligations incurred or related to the period before the

Commencement Date have not yet been paid.  Failure to pay the Tax Administration Obligations

could impact the Debtors' ability to pay certain of the Prepetition Taxes and Assessments.

Accordingly, the Debtors request authority to pay the Tax Administration Obligations accrued

prior to the Commencement Date.

### Cause Exists to Authorize the Debtors to Pay Prepetition Taxes and Assessments

17.    The Debtors seek authority to pay, in their discretion, the Prepetition

Taxes and Assessments in order to, among other things, prevent Governmental Authorities from

taking actions that may interfere with the Debtors' successful reorganization, including asserting

liens on the Debtors' property, asserting penalties and/or significant interest on past-due taxes,

and possibly bringing personal liability actions against directors, officers, and other employees in

connection with non-payment of Prepetition Taxes and Assessments.

18.    Ample cause exists to authorize the payment of the Prepetition Taxes and

Assessments.  There are various bases for granting the relief requested in this Motion, including:

(i) certain of the Prepetition Taxes and Assessments may be entitled to priority status pursuant to

section 507(a)(8) of the Bankruptcy Code; (ii) interest and penalties may accrue on certain

unpaid Real and Personal Property Taxes even after the Commencement Date; (iii) certain of the

Prepetition Taxes and Assessments may constitute "trust fund" taxes and thus may not be

property of the Debtors' estates; (iv) governmental entities may sue the Debtors' directors and

8

officers for certain unpaid Prepetition Taxes and Assessments, thereby distracting them from the

Debtors' reorganization efforts; and (v) the Court has authority pursuant to sections 105(a) and

363(b) of the Bankruptcy Code to grant the relief sought herein.

*Many of the Prepetition Taxes and Assessments Are Priority Claims*

19.     Many, if not all, of the Prepetition Taxes and Assessments are entitled to

priority status under section 507(a)(8) of the Bankruptcy Code.  For example, priority status is

afforded to unsecured claims of governmental units for a tax on or measured by income or gross

receipts for a taxable year ending on or before the Commencement Date (11 U.S.C.

§ 507(a)(8)(A)), property taxes incurred before the Commencement Date and last payable

without penalty after one year before the Commencement Date (11 U.S.C. § 507(a)(8)(B)), and

taxes required to be collected or withheld and for which the debtor is liable in whatever capacity

(11 U.S.C. § 507(a)(8)(C)).

20.     As priority claims, such Prepetition Taxes and Assessments must be paid

in full before any general unsecured obligations of the Debtors may be satisfied.  Accordingly,

the relief requested herein will only affect the timing of the payment of the Prepetition Taxes and

Assessments and will not prejudice the rights of general unsecured creditors or other parties in

interest.

*Interest and Penalties May Accrue on Certain Unpaid Property Taxes*

21.     Pursuant to applicable state law, the obligation to pay real property taxes

and, depending on the jurisdiction, personal property taxes, is generally secured by a lien on the

property for which these taxes are incurred.  *See, e.g.*, *Conseco Fin. Servicing Corp. v. J&J

Mobile Homes, Inc.*, 120 S.W.3d 878, 881 (Tex. App. 2003) ("[O]n January 1 of each year, a tax

lien attaches to property to secure the payment of all taxes imposed for the year . . . ."); *James T.

Bush Constr. Co., Inc. v. Patel*, 21 Va. Cir. 353, 357 (Va. Cir. Ct. 1990) (noting that the city's

liens for real property taxes commenced in the years during which the taxes were assessed); *In re Helms*, 284 S.E.2d 553, 554 (N.C. Ct. App. 1981) (noting that liens attached to real property where real property taxes were past due).

22.    Section 506(b) of the Bankruptcy Code provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).  Thus, any interest or penalties related to the Debtors' real and personal property likely will continue to accrue after the Commencement Date.  *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238–49 (1989) (holding that section 506(b) entitles a creditor to receive post-petition interest on a nonconsensual oversecured claim allowed in a bankruptcy case).  Further, to the extent the Real and Personal Property Taxes are oversecured claims, they will accrue interest until they are paid.  Any such interest will ultimately be included in the secured claim of each applicable Governmental Authority.  Paying the Real and Personal Property Taxes on the requested timeframe will avoid such interest and penalties and conserve resources of the Debtors' estates.  Accordingly, the Debtors believe that the relief requested in this Motion is in the best interest of the Debtors' estates and creditors.

*Certain of the Prepetition Taxes and Assessments May Not Be Property of the Debtors' Estates*

23.    Certain of the Prepetition Taxes and Assessments may be considered "trust fund" taxes which are collected or withheld by the Debtors on behalf of the applicable Governmental Authority and thus are held in trust by the Debtors for such Governmental Authorities.  *See, e.g.*, I.R.C. § 7501(certain federal sales and other excise taxes are held in trust).  Any Prepetition Taxes and Assessments that are held in trust by the Debtors belong to the

10

relevant Governmental Authority and are not property of the Debtors' estates under section 541

of the Bankruptcy Code.  *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 59–61 (1990) (withholding taxes

are property held by the debtor in trust for another and, therefore, are not property of the debtors'

estates); *see generally In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059–61 (3d Cir. 1993)

(even if a statute does not establish an express trust, a constructive trust may be found).

Traditional "trust fund" taxes include sales taxes which are collected by sellers from their

customers and then remitted to the relevant Governmental Authorities.  *See, e.g.*, *Shank v. Wash.

State Dep't of Revenue (In re Shank)*, 792 F.2d 829, 830–33 (9th Cir. 1986) (sales taxes required

by state law to be collected by sellers from their customers are "trust fund" taxes); *DeChiaro v.

N. Y. State Tax Comm'n*, 760 F.2d 432, 433 (2d Cir. 1985) (sales taxes are "trust fund" taxes).  In

certain situations, however, courts have extended the definition of "trust fund" taxes to include

taxes that would not traditionally fall into the definition of "trust fund" taxes, such as use taxes.

*See Illinois Dept. of Revenue v. Hayslett/Judy Oil, Inc.*, 426 F.3d 899, 902 (7th Cir. 2005) (noting

that a use tax is similar to traditional "trust fund" taxes and can never be discharged in

bankruptcy).  Accordingly, here, certain of the Prepetition Taxes and Assessments, including the

Use Taxes, may be considered "trust fund" taxes.  Such Prepetition Taxes and Assessments may

not be property of the Debtors' estates and thus may not be available for the satisfaction of

creditors' claims.  Further, any Prepetition Taxes and Assessments that may be considered "trust

fund" taxes for purposes of the Bankruptcy Code will likely also be afforded priority status under

section 507(a)(8)(A) of the Bankruptcy Code.

*Personal Liability of Officers and Directors*

24.    The relief requested will also avoid potential unnecessary litigation against

the Debtors' officers and directors which could distract the Debtors from their restructuring

WEIL:\95270989\1\35076.0003

efforts.  Many federal, state, and local statutes hold officers and directors of collecting entities

personally liable or criminally responsible for certain taxes owed by those entities.  To the extent

that certain Prepetition Taxes and Assessments remain unpaid, the Debtors and the Debtors'

officers, directors, and other employees may be subject to lawsuits or criminal prosecution

during the pendency of these chapter 11 cases.  *United States v. Energy Res. Co.*, 495 U.S. 545,

546–47 (1990) (to the extent that an employer fails to pay income taxes or social security taxes,

26 U.S.C. § 6672 authorized the government to collect an equivalent sum directly from the

employer's officers or employees who are responsible for collecting the tax); *IRS v. Kaplan (In

re Kaplan)*, 104 F.3d 589, 591 n.1 (3d Cir. 1997) (the Internal Revenue Code authorizes the

government to collect certain taxes directly from the corporation's officers or employees who are

responsible for collecting these taxes).  Any such lawsuit or criminal prosecution, and any

ensuing liability, would distract the Debtors and their personnel from important tasks related to

the Debtors' chapter 11 cases.  The active participation of the Debtors' officers, directors and

other employees is integral to the Debtors' continued, uninterrupted operations so as to ensure

the orderly administration of these cases and thus to maximize the estate for creditors.

**The Court Has Authority Pursuant to
Sections 363(b) and 105(a) to Grant the Relief Requested**

25.    Section 363(b)(3) provides that "the trustee, after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11

U.S.C. §363(b)(1).  Under this provision, a court may authorize a debtor to pay certain

prepetition claims or obligations.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.

S.D.N.Y. 1989).  To approve the use of a debtor's assets outside the ordinary course of business

pursuant to section 363(b), a court must find that a "good business reason" exists for the use of

such assets.  *See, e.g.*, *Official Comm. Of Unsecured Creditors v. Enron Corp. (In re Enron*

12

*Corp.)*, 335 B.R. 22, 27–28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

26.     The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

27.     The relief requested by the Debtors satisfies this standard.  Payment of the Prepetition Taxes and Assessments is critical to the Debtors' uninterrupted operations and successful administration of these chapter 11 cases.  Nonpayment of these obligations may cause certain Governmental Authorities to take precipitous action, including, but not limited to, preventing the Debtors from conducting business in applicable jurisdictions, seeking to modify the automatic stay, subjecting the Debtors' directors and officers to personal liability for nonpayment of taxes, and attempting to file liens against the Debtors' real and personal property, all of which would disrupt the Debtors' day-to-day operations, hinder the Debtors' efficient and effective administration of these chapter 11 cases, and burden the Debtors' estates with unnecessary expenses.  Further, payment of the Prepetition Taxes and Assessments may actually reduce the amounts ultimately paid to the Governmental Authorities, and thus expand the Debtors' estates, because penalties and interest will be avoided by prompt payment.  As such,

paying the Prepetition Taxes and Assessments is well within the Debtors' sound business judgment.

28.    The relief requested is also authorized by section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) ("[I]t is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.'") (citation omitted).  Here, the relief requested is necessary to carry out the provisions discussed above and to meet the duties ascribed to the Debtors in section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm. Inc.)*, 227 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

29.    Courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending

WEIL:\95270989\1\35076.0003

doctrine for payment of prepetition claims beyond railroad reorganization cases), cert. denied

325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re*

*Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order

authorizing payment of prepetition wages, salaries, expenses, and benefits).

30.     The Debtors submit that the relief requested herein is necessary and

appropriate to carry out the above provisions of the Bankruptcy Code, to minimize the possibility

that the Governmental Authorities will pursue remedies that may disrupt the Debtors' operations

and the orderly administration of these chapter 11 cases, and to maximize the value of the

Debtors' estates for all creditors.

### The Court Should Authorize and Direct Banks and Other
### Financial Institutions to Honor and Pay Checks Issued and Make
### Other Transfers to Pay Prepetition Taxes and Assessments

31.     The Debtors request that the Court authorize and direct the Debtors' banks

and other financial institutions at which the Debtors maintain disbursement accounts, at the

Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and

all checks drawn or electronic fund transfers requested or to be requested by the Debtors relating

to the payment of Prepetition Taxes and Assessments.  The Debtors also seek authority to issue

new postpetition checks, or effect new electronic fund transfers, on account of Prepetition Taxes

and Assessments to replace any prepetition checks or electronic funds transfer requests that may

be lost, dishonored, or rejected as a result of the commencement of the Debtors' chapter 11

cases.

### Reservation of Rights

32.     Nothing contained herein is intended to be or shall be construed as (a) an

admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any

appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any

WEIL:\95270989\1\35076.0003

agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.
Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's
order is not intended to be and should not be construed as an admission to the validity of any
claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Have Satisfied Bankruptcy Rule 6003

33.     Bankruptcy Rule 6003 provides that to the extent "relief is necessary to
avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay all or
part of a claim that arose before the filing of the petition" prior to twenty-one days after the
Commencement Date. Fed. R. Bankr. P. 6003. As described herein and in the Allan
Declaration, the Debtors' ability to pay Prepetition Taxes and Assessments in their discretion is
critical to the Debtors' successful reorganization and the preservation of the Debtors' estates.
Failure to pay any of the Prepetition Taxes and Assessments may result in Governmental
Authorities taking action that may interfere with the Debtors' successful reorganization,
including asserting liens on the Debtors' property, asserting penalties and/or significant interest
on past-due taxes, and possibly bringing personal liability actions against the Debtors' directors,
officers, and other employees. Accordingly, the Debtors submit that the relief requested herein
is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is
satisfied.

### Waiver of Bankruptcy Rules 6004(a) and (h)

34.     To implement the foregoing immediately, the Debtors seek a waiver of the
notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order
authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

16

**Notice**

35.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; (xiv) the United States Attorney's Office for the Southern District of New York; and (xv) the Governmental Authorities.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

36.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
       New York, New York

/s/ Ray C. Schrock, P.C.
Marcia L. Goldstein
Ray C. Schrock, P.C.

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for Debtors
and Debtors in Possession*

18

**Exhibit A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :

In re                                    :        Chapter 11
                                            :

CHASSIX HOLDINGS, INC., *et al.*,    :        Case No. 15-_____ (___)
                                            :

                                            :        Jointly Administered
                Debtors.[1]          :
                                            :
------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 507(a)(8), AND 541 (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO PAY PREPETITION TAXES AND ASSESSMENTS, AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

        Upon the motion, dated March _____, 2015 (the "**Motion**"),[2] of Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order (i) authorizing, but not directing, the Debtors to pay Prepetition Taxes and Assessments, and (ii) authorizing and directing financial institutions to honor and process related checks and transfers, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee, LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31,

2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to

(i) the Office of the United States Trustee for the Southern District of New York (the "**U.S.**

**Trustee**"); (ii) the holders of the five largest secured claims against the Debtors (on a

consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the

Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as

administrative agent under that certain Amended and Restated Loan, Security and Guaranty

Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as

trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July

23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain

Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13,

2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the

Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers;

(xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange

Commission; (xiii) the Internal Revenue Service; (xiv) the United States Attorney's Office for

the Southern District of New York; and (xv) the Governmental Authorities (the "**Notice**

**Parties**"), and it appearing that no other or further notice need be provided; and a hearing having

been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the

Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the

Southern District of New York, filed contemporaneously with the Motion, and the record of the

Hearing and all of the proceedings had before the Court; and the Court having found and

WEIL:\95270989\1\35076.0003

determined that the relief sought in the Motion is necessary to avoid immediate and irreparable

harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the

best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis, as provided herein; and

it is further

ORDERED that the Debtors are authorized, but not directed, in their sole

discretion, to pay Prepetition Taxes and Assessments (including, without limitation, all Tax

Administration Obligations) due and owing to all Governmental Authorities or Tax

Administrators, including all of those Prepetition Taxes and Assessments subsequently

determined upon audit, or otherwise, to be owed to Governmental Authorities; and it is further

ORDERED that the banks and other financial institutions at which the Debtors

maintain their disbursement accounts are authorized and directed at the Debtors' direction, to

receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or

electronic fund transfers requested or to be requested by the Debtors in respect of Prepetition

Taxes and Assessments; and it is further

ORDERED that the Debtors are authorized, but not directed, to issue new

postpetition checks, or effect new electronic funds transfers, on account of Prepetition Taxes and

Assessments to replace any prepetition checks or electronic fund transfer requests that may be

lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases;

and it is further

3

ORDERED that nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**"); and it is further

ORDERED that nothing contained in this Interim Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise any payment made pursuant to this Interim Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently; and it is further

ORDERED that notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that the requirements of Bankruptcy Rule 6003(b) have been satisfied; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

4

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Debtors shall serve this Interim Order within three (3) business days of its entry on the Notice Parties and the Governmental Authorities listed on **Exhibit "1"** hereto; and it is further

ORDERED that the Final Hearing on the Motion shall be held on _____, **2015, at _____ (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Prevailing Eastern Time) on _____, 2015**; and it is further

ORDERED that notwithstanding anything to the contrary contained herein, (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "**DIP Documents**") and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto) and (b) to the extent there is any inconsistency between the terms of such orders approving the DIP Documents or the Debtors' use of cash collateral and any action taken or proposed to be taken hereunder, the terms of such orders approving the DIP Documents and use of cash collateral shall control; and it is further

ORDERED that this Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate

disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out this Interim Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: _____, 2015
      New York, New York

_____
United States Bankruptcy Judge

6

**Exhibit 1**

**List of Governmental Taxing Authorities**

| Taxing Authority | Debtor Entity[1] | Tax Return Type |
|---|---|---|
| Alabama Department of Revenue | Diversified Machine Bristol, Inc. | Business Privilege Tax |
| Alabama Department of Revenue | Diversified Machine Montague, Inc. | Business Privilege Tax |
| Alabama Department of Revenue | Diversified Machine Bristol, Inc. | Corporation Income Tax |
| Alabama Department of Revenue | Diversified Machine Montague, Inc. | Corporation Income Tax |
| Alabama Department of Revenue | Diversified Machine, Inc. | Corporation Income Tax |
| Bedford County Trustee | SMW Automotive, LLC | Personal Property |
| Bedford County Trustee | SMW Automotive, LLC | Real Property |
| City of Benton Harbor | AluTech, LLC | Personal Property |
| City of Benton Harbor | AluTech, LLC | Real Property |
| City of Montague | Diversified Machine Montague, LLC | Personal Property |
| City of Montague | Diversified Machine Montague, LLC | Real Property |
| City of Shelbyville | SMW Automotive, LLC | Personal Property |
| City of Southfield | Chassix, Inc. | Personal Property |
| City of Warren | SMW Automotive, LLC | Personal Property |
| City of Warren | SMW Automotive, LLC | Real Property |
| City of Wixom | Chassix, Inc. | Personal Property |
| City School District of Batavia | Automotive, LLC | Real Property |
| City Treasurer | Diversified Machine Milwaukee, LLC | Personal Property |
| City Treasurer | Diversified Machine Milwaukee, LLC | Real Property |
| Elkhart County Treasurer | Diversified Machine Bristol, LLC | Personal Property |
| Elkhart County Treasurer | Diversified Machine Bristol, LLC | Real Property |
| Franchise Tax Board | Dharma Holding Corporation | Franchise Tax |
| Georgia Department of Revenue | Chassix, Inc. | Corporation Tax |
| Georgia Department of Revenue | Diversified Machine, Inc. | Corporation Tax |
| Georgia Department of Revenue | Chassix Georgia Machining, LLC | Use Tax |
| Georgia Department of Revenue | DMI Columbus, LLC | Use Tax |
| Howell Township Treasurer | Diversified Machine, Inc. | Personal Property |
| Howell Township Treasurer | Diversified Machine, Inc. | Real Property |

[1] Dharma Holding Corporation and Triomphe Intermediate Holding Corporation are not Debtors in these chapter 11 cases; however, they file tax returns with certain Governmental Authorities on behalf of all or some of the Debtors on a consolidated basis. All of the references to Dharma and Triomphe herein refer to situations in which one or some of the Debtors are responsible for the related tax payments. Further, any amounts owed in connection with such tax returns are paid by Chassix, Inc.

| Taxing Authority | Debtor Entity[1] | Tax Return Type |
|---|---|---|
| Illinois Department of Revenue | Dharma Holding Corporation | Corporation Income and Replacement Tax |
| Indiana Department of Revenue | Dharma Holding Corporation | Corporate Adjusted Gross Income Tax |
| Indiana Department of Revenue | Diversified Machine Bristol, LLC | Use Tax |
| Kentucky Department of Revenue | Diversified Machine Montague, Inc. | Corporation Income Tax |
| Kentucky Department of Revenue | Diversified Machine, Inc. | Corporation Income Tax |
| Lincoln Charter Township | AluTech, LLC | Personal Property |
| Lincoln Charter Township | AluTech, LLC | Real Property |
| Massachusetts Department of Revenue | Dharma Holding Corporation | Massachusetts Excise Tax |
| Michigan Department of Treasury | Dharma Holding Corporation | Corporate Income Tax |
| Michigan Department of Treasury | Chassix, Inc. | Use Tax |
| Michigan Department of Treasury | Diversified Machine Montague, LLC | Use Tax |
| Michigan Department of Treasury | Diversified Machine, Inc. | Use Tax |
| Michigan Department of Treasury | SMW Automotive, LLC | Use Tax |
| Missouri Department of Revenue | Diversified Machine, Inc. | Corporation Income Tax |
| Muscogee Co. Tax Commissioner | Chassix Georgia Machining, LLC | Personal Property |
| Muscogee Co. Tax Commissioner | DMI Columbus, LLC | Personal Property |
| Muscogee Co. Tax Commissioner | Chassix Georgia Machining, LLC | Real Property |
| Muscogee Co. Tax Commissioner | DMI Columbus, LLC | Real Property |
| New York State Department of Taxation and Finance | Automotive Corporation | Business Corporation Franchise Tax |
| New York State Department of Taxation and Finance | Chassix, Inc. | Business Corporation Franchise Tax |
| New York State Department of Taxation and Finance | Concord International, Inc. | Business Corporation Franchise Tax |
| North Carolina Department of Revenue | Diversified Machine, Inc. | Corporate Income Tax |
| Ohio Department of Taxation | Diversified Machine, Inc. | Commercial Activity Tax |

WEIL:\95270989\1\35076.0003

| Taxing Authority | Debtor Entity[1] | Tax Return Type |
|---|---|---|
| South Carolina Department of Revenue | Diversified Machine, Inc. | Annual Report |
| South Carolina Department of Revenue | Diversified Machine Montague, Inc. | Corporation Income Tax |
| South Carolina Department of Revenue | Diversified Machine, Inc. | Corporation Income Tax |
| Tennessee Department of Revenue | Chassix, Inc. | Franchise, Excise Tax |
| Tennessee Department of Revenue | Concord International, Inc. | Franchise, Excise Tax |
| Tennessee Department of Revenue | Diversified Machine Montague, Inc. | Franchise, Excise Tax |
| Tennessee Department of Revenue | Diversified Machine, Inc. | Franchise, Excise Tax |
| Tennessee Department of Revenue | SMW Automotive Corporation | Franchise, Excise Tax |
| Tennessee Department of Revenue | Triomphe Intermediate Holding Corporation | Franchise, Excise Tax |
| Town of Batavia Tax Collector | Automotive, LLC | Real Property |
| Treasurer, City of Port Huron | Dharma Holding Corporation | Corporation Income Tax |
| Treasurer, City of Port Huron | Chassix Corp. of Michigan, Inc. | Corporation Income Tax |
| Treasurer, City of Port Huron | Chassis Co of Michigan, LLC | Personal Property |
| Treasurer, City of Port Huron | SMW Automotive, LLC | Personal Property |
| Treasurer, City of Port Huron | Chassis Co of Michigan, LLC | Real Property |
| Treasurer, City of Port Huron | SMW Automotive, LLC | Real Property |
| Village of Edon | Diversified Machine, Inc. | Income Tax |
| Village of Stevensville | AluTech, LLC | Personal Property |
| Village of Stevensville | AluTech, LLC | Real Property |
| Williams County Treasurer | DMI Edon, LLC | Real Property |
| Wisconsin Department of Revenue | Dharma Holding Corporation | Corporation Franchise or Income Tax |
| Wisconsin Department of Revenue | Diversified Machine Milwaukee, LLC | Use Tax |

WEIL:\95270989\1\35076.0003