Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                      :
In re                                 :      Chapter 11
                                      :
CHASSIX HOLDINGS, INC., et al.,       :      Case No. 15-_____ (___)
                                      :
                                      :      (Joint Administration Pending)
                   Debtors.¹          :
                                      :
-------------------------------------------------------x
```

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 362, 363(b),
AND 503(b), FOR ENTRY OF AN ORDER (I) AUTHORIZING, BUT NOT
DIRECTING, DEBTORS TO (A) PAY ALL INSURANCE OBLIGATIONS AND
(B) CONTINUE ALL INSURANCE PROGRAMS, (II) MODIFYING THE AUTOMATIC
STAY WITH RESPECT TO THE WORKERS' COMPENSATION CLAIMS, AND
(III) AUTHORIZING AND DIRECTING APPLICABLE BANKS AND OTHER
FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS
PRESENTED FOR PAYMENT AND TO HONOR ALL FUND TRANSFER REQUESTS**

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"), respectfully represent:

<u>**Background**</u>

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (i) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (ii) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations.  Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the

Southern District of New York, sworn to on the date hereof, which has been filed with the Court

contemporaneously herewith.

### Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

6.      By this Motion, pursuant to sections 105(a), 363(b), and 503(b) of the

Bankruptcy Code, the Debtors seek entry of an order authorizing, but not directing, the Debtors

to (a) pay any unpaid prepetition Insurance Obligations (as herein defined), including, without

limitation, amounts owed under the Premium Financing Agreements and to the Insurance

Service Providers (each as herein defined), and (b) continue their Insurance Programs (as herein

defined) and honor their Insurance Obligations in the ordinary course of business during the

administration of these chapter 11 cases.  In addition, to the extent any of the Debtors'

employees hold valid claims under the Workers' Compensation Programs (as herein defined),

the Debtors also seek entry of an order modifying the automatic stay imposed by section 362 of

the Bankruptcy Code (the "**Automatic Stay**") to permit these employees to proceed with such

claims.  For the avoidance of doubt, the request for modification of the Automatic Stay pertains

solely to claims in respect of the Workers' Compensation Programs.  Any other claims relating

to any of the Insurance Programs shall remain subject to the Automatic Stay.

7.      Further, the Debtors request that the Court authorize and direct the banks

and other financial institutions at which the Debtors maintain disbursement accounts, at the

Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and

3

all checks drawn or electronic fund transfers requested or to be requested by the Debtors relating

to the Insurance Obligations.  The Debtors also seek authority to issue new postpetition checks,

or effect new electronic fund transfers, on account of the Insurance Obligations to replace any

prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected as

a result of the commencement of the Debtors' chapter 11 cases.

   8. A proposed form of order granting the relief requested in the Motion on an

interim basis is annexed hereto as **Exhibit "A"** (the "**Proposed Order**").

**The Debtors' Insurance Programs**

   9. In connection with the operation of their casting and machining

businesses, the Debtors maintain workers' compensation programs and various liability,

property, and other insurance programs (collectively, the "**Insurance Programs**" and all

premiums and other obligations related thereto, including any broker or advisor fees, taxes, or

other fees, collectively, the "**Insurance Obligations**") through several different insurance

carriers (the "**Insurance Carriers**") including, but not limited to, those Insurance Programs and

Insurance Carriers listed on **Exhibit "1,"** which is annexed to the Proposed Order.[2]

   10. As of the Commencement Date, the Debtors believe that they owe

approximately $109,000 with respect to prepetition Insurance Obligations.

 *A. Workers' Compensation Programs*

   11. Under the laws of the various states and countries in which they operate,

the Debtors are required to maintain workers' compensation coverage (the "**Workers'**

**Compensation Programs**") for their employees for claims arising from or related to

---

[2] In addition to the Insurance Programs attached to **Exhibit "1,"** the Debtors maintain numerous insurance programs with regard to employee health, dental, disability and life insurance benefits.  These policies are addressed in a separate motion filed in these cases pertaining to employee wage and benefit programs.

WEIL:\95271054\1\35076.0003

employment with the Debtors (the **"Workers' Compensation Claims"**).  The Debtors maintain

two Workers' Compensation Programs—one that covers Workers' Compensation Claims for

those employees that work in the Debtors' facilities located in Massachusetts and Wisconsin

(the "**Retrospective Workers' Compensation Program**") and another that covers claims for

those employees that work in facilities located throughout the other various states where the

Debtors maintain their businesses (the "**Large Deductible Workers' Compensation**

**Program**").  The Workers' Compensation Programs cover all of the Debtors' domestic

employees and are administered by Travelers Property Casualty Company and Travelers

Indemnity Company of America (collectively, "**Travelers**"), respectively.

12.    The Large Deductible Workers' Compensation Program is a "large

deductible plan," which means the Debtors are responsible for paying any claims in excess of

the deductible amount of $350,000 per occurrence, subject to the aggregate stop loss limit.[3]

The Debtors pay the deductible premium for the Large Deductible Workers' Compensation

Program in monthly installments to Marsh USA, Inc. ("**Marsh**"), the Debtors' third party

administrator for the Workers' Compensation Programs.  The Retrospective Workers'

Compensation Program, on the other hand, is a retrospective plan, which means that annual

premiums are calculated based on the Debtors' historical loss run and forecasted growth in

payroll during the period of coverage.  The Debtors pay the annual premium for the

Retrospective Workers' Compensation Program in monthly installments to Marsh.  Following

the period of coverage, Travelers is entitled to conduct an audit to determine the accuracy of any

projections based specifically on the Debtors' actual growth in payroll during the period of

coverage, and determine whether a retrospective adjustment is needed.  The Debtors anticipate

---

[3] The aggregate stop loss limit for both Workers' Compensation Programs is approximately $12,000,000 per year.

WEIL:\95271054\1\35076.0003

that there will be a retrospective adjustment made after their next audit (expected to occur in April 2015) on account of the premium paid for the Retrospective Workers' Compensation Program for the period ended December 31, 2014.

13.     To maintain the Workers' Compensation Programs, the Debtors maintain a reserve with Marsh in the approximate amount of $90,000, which is replenished by the Debtors on a monthly basis.  To provide security for amounts owed pursuant to the Workers' Compensation Claims, the Debtors maintain funds with Travelers in the amount of approximately $1,250,000.  Additionally, the Debtors have provided Travelers with two standby letters of credit issued by the Debtors' primary bank, BMO Harris Bank, N.A., totaling approximately $3,860,000.

14.     The Workers' Compensation Claims are, in the first instance, administered and paid for by Travelers and the Debtors subsequently reimburse Travelers for such payments on a monthly basis, subject to the deductible per occurrence and the aggregate stop loss limit, as applicable.  As of the Commencement Date, there are approximately one hundred (100) open Workers' Compensation Claims against the Debtors.  On average, the Debtors remit approximately $100,000 to $175,000 per month to Travelers on account of the Workers' Compensation Claims (which includes amounts necessary to replenish the reserve held with Marsh).  As of the Commencement Date, the Debtors do not believe they owe any amounts to Marsh or Travelers pertaining to the Workers' Compensation Claims.

15.     The total premium amounts owed and paid to maintain the Workers' Compensation Programs for the term ended on December 31, 2014 were approximately $1,400,000.  For the term ending December 31, 2015, the Debtors have made two premium payments for the Workers' Compensation Programs, totaling approximately $330,000.  As of

6

the Commencement Date, the Debtors owe Marsh approximately $107,000 on account of the

premium payments for the Workers' Compensation Programs.[4]

### B. The Liability and Property Insurance Programs

16.    The Debtors also maintain various liability and property insurance

programs, which provide the Debtors with insurance coverage for liabilities relating to, among

other things, property damage, domestic and international general commercial claims, directors'

and officers' liability, employment practices, umbrella, and various other property-related and

general liabilities (collectively, the "**Liability and Property Insurance Programs**").  The

Debtors maintain the Liability and Property Insurance Programs to help manage the various

risks associated with their businesses.  Therefore, continuation of the Liability and Property

Insurance Programs is essential to the ongoing operation of the Debtors' businesses.

17.    Pursuant to the Liability and Property Insurance Programs, the Debtors

are required to pay premiums based upon a fixed rate established and billed by each Insurance

Carrier in addition to various deductibles.  The premiums for the current Liability and Property

Insurance Programs total approximately $2,500,000 in the aggregate, almost all of which is paid

on a lump-sum basis by AFCO Premium Credit LLC ("**AFCO**"), a joint venture of AFCO

Credit Corporation and Marsh pursuant to various premium financing agreements with the

Debtors, described in further detail below.[5]

---

[4] Additionally, the Debtors owe Marsh approximately $2,000 on account of premium payments for the automobile insurance program.

[5] As reflected on Exhibit "1" to the Proposed Order, the automobile insurance policy is the only Liability and Property Insurance Program that is not financed through AFCO.  Instead, the Debtors make monthly payments to Travelers.

WEIL:\95271054\1\35076.0003

18.     As of the Commencement Date, the Debtors are not aware of any

outstanding premium payments owed to the various insurance carriers for the Liability and

Property Insurance Programs.

### The Debtors' Insurance Financing Arrangements

19.     Most of the Debtors' Insurance Programs require annual premium

payments to be made at the beginning of the applicable policy period.  Because it is not always

economically advantageous for the Debtors to pay premiums on a lump-sum basis, the Debtors

finance certain of their premiums, including, without limitation, the premium payments

pertaining to the Insurance Program covering directors and officers, employment practices,

fiduciary duties, and criminal activity.  The Debtors finance such premiums pursuant to three

separate commercial premium financing agreements entered into with AFCO (collectively, the

"**Premium Financing Agreements**").[6]  Under Premium Financing Agreements, the Debtors

finance all premium payments owed on account of the Liability and Property Insurance

Programs, totaling approximately $2,400,000 (which amount does not include finance charges

totaling approximately $28,000).  The financed premium payments were paid by AFCO to the

Debtors' respective Insurance Carriers when due (at the beginning of the applicable policy

period).  In exchange, the Debtors repay AFCO monthly installments under each of the

Premium Financing Arrangements.[7]  The amounts financed on each of the Insurance Policies

---

[6] The three premium finance agreements are (i) that certain *Commercial Premium Finance Agreement* with AFCO for the financing of property insurance, dated as of June 27, 2014 (the "**Property Insurance Financing Agreement**"); (ii) that certain *Commercial Premium Finance Agreement* with AFCO, for the financing of general liability insurance, dated as of December 19, 2014 (the "**General Insurance Financing Agreement**"); and (iii) certain *Commercial Premium Finance Agreement* with AFCO, for the financing of blended directors & officers liability insurance, dated as of May 12, 2014 (the "**D&O Insurance Financing Agreement**").

[7] The Debtors pay AFCO the following monthly installment payments pursuant to the Premium Financing Agreements: (i) approximately $85,000, beginning on August 1, 2014 for the Property Financing Agreement, (ii) approximately $100,000, beginning on January 30, 2015 for the General Insurance Financing Agreement, and (iii) approximately $14,000, beginning on June 1, 2014 for the blended D&O Insurance Financing Agreement.

WEIL:\95271054\1\35076.0003

accrue interest at rates ranging between 2.4% and 3.5% depending on the Premium Financing

Agreement.  As part of the Premium Financing Agreements, the Debtors granted AFCO a

security interest in, among other things, any and all unearned premiums or dividends which may

become payable for any reason under the Liability and Property Insurance Programs financed.

Further, if the Debtors do not satisfy their obligations under the Premium Financing Agreement,

AFCO has the right to terminate any covered Liability and Property Insurance Programs.

Further, the Debtors are billed by Marsh on account of their automobile insurance program and

Workers' Compensation Programs on a monthly installment basis.  Such payments are not

subject to interest rate or financing charges, as with the AFCO Premium Financing Agreements.

20.    As of the Commencement Date, the Debtors are current on payments

owed to AFCO under the Premium Financing Agreements.

<b><u>Insurance Service Providers</u></b>

21.    In connection with the Insurance Programs, the Debtors employ certain

insurance service providers (the "**Insurance Service Providers**") to help them procure,

negotiate, and evaluate the Insurance Programs and claims related thereto.

*A.  Insurance Broker*

22.    The Debtors utilize Marsh as their insurance broker to assist with the

procurement and negotiation of certain Insurance Programs and, in certain circumstances, to

remit payment to the Insurance Carriers on behalf of the Debtors for the current policy periods.

Marsh procured the Workers' Compensation Programs and certain of the Liability and Property

Insurance Programs, including the programs pertaining to general liability, automobile liability,

commercial umbrella liability, and excess liability.  Marsh's fees (the "**Broker's Fees**") are

generally paid through the premium payments made on account of the Insurance Programs.

9

Thus, the Debtors do not believe that they have any outstanding obligations owed to Marsh for

Broker's Fees.  However, because of Marsh's intimate familiarity with the Debtors and the

Insurance Programs, the Debtors request authority, but not direction, to pay any prepetition

sums that may be owed.

### B.  Insurance Advisor

23.    The Debtors also employ Willis of Minnesota, Inc. ("**Willis**") to advise

them on insurance related matters, including, without limitation, risk profile analysis, annual

renewal support, and other related risk management services.  In connection with these services,

the Debtors pay Willis four quarterly installments of $18,750 (the "**Advisor's Fees**" and,

together with the Broker's Fees, the "**Service Providers' Fees**").  As of the Commencement

Date, the Debtors are not aware of any prepetition amounts owed to Willis.

### The Court Should Waive the Automatic Stay as it Applies to Valid Workers' Compensation Claims

24.    Section 362(a) of the Bankruptcy Code, commonly known as the

"Automatic Stay," operates to stay,

> (1)  the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . .

11 U.S.C. § 362(a)(1).

25.    Section 362, however, permits a debtor, or other parties in interest, to

request a modification or termination of the automatic stay for "cause."  11 U.S.C. § 362(d)(1).

26.    To the extent the Debtors' employees hold valid Workers' Compensation

Claims, the Debtors seek authority, under section 362(d) of the Bankruptcy Code, to permit

these employees to proceed with their Workers' Compensation Claims in the appropriate

10

judicial or administrative forum; provided that employees may only pursue their Workers'

Compensation Claims in accordance with applicable Workers' Compensation Programs.  The

Debtors believe cause exists to modify the Automatic Stay because staying the Workers'

Compensation Claims could have a detrimental effect on the financial well-being and morale of

the Debtors' employees and lead to the departure of certain employees.  Such departures could

cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

To this end, the Debtors seek to waive the Automatic Stay as it relates to valid Workers'

Compensation Claims.

27.    Pursuant to this Motion, the Debtors do not seek a waiver, termination, or

modification of the automatic stay with respect to any claims other than the Workers'

Compensation Claims.

**The Court Should Authorize, But Not Direct, the Debtors to
(i) Pay Outstanding Insurance Obligations; (ii) Continue Their Insurance
Programs; and (iii) Pay Any Outstanding Service Providers' Fees**

28.    As set forth above, the Debtors are seeking authority to (i) pay any

unpaid prepetition Insurance Obligations, including, without limitation, amounts owed under

the Premium Financing Agreements and to the Insurance Service Providers, and continue their

Insurance Programs and honor their Insurance Obligations in the ordinary course of business.

The Court has authority pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code

to grant the relief requested by the Debtors.

29.    Section 503(b)(1) of the Bankruptcy Code provides that:

>    After notice and a hearing, there shall be allowed,
>    administrative expenses [ ], including –
>    . . . the actual, necessary costs and expenses of
>    preserving the estate.

11 U.S.C. § 503(b)(1)(A).  The Court, therefore, can authorize the Debtors to use estate funds to

pay any Insurance Obligations arising or relating to the period after the Commencement Date.

30.     The Court may authorize the Debtors to pay Insurance Obligations

arising or relating to the period before the Commencement Date pursuant to section 363(b) of

the Bankruptcy Code.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y.

1989) (authorizing payment of certain prepetition obligations under section 363(b)).  Section

363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in

the ordinary course of business, property of the estate."  11 U.S.C. §363(b)(1).  To approve the

use of the Debtors' assets outside the ordinary course of business pursuant to section 363(b), a

Court must find that a "good business reason" exists for the use of such assets.  *See, e.g.*,

*Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27–28

(S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)).

31.     The business judgment rule is satisfied where "'the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company.'"  *Official Comm. of Subordinated Bondholders

v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992)

(quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), appeal dismissed, 3 F.3d 49 (2d

Cir. 1993).  "Where the debtor articulates a reasonable basis for its business decisions (as

distinct from a decision made arbitrarily or capriciously), courts will generally not entertain

objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville

Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this

District have consistently declined to interfere with corporate decisions absent a showing of bad

faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such

decisions are attributable to any "rational business purpose." *In re Integrated Res., Inc.*, 147 B.R. at 656.

32.    Furthermore, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the Debtors to pay or otherwise satisfy any Insurance Obligations because such payments are necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including the operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) ("upon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee").  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a); *see Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.)*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) ("[I]t is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process'") (citation omitted).

33.    In a long line of well-established cases, courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., In re Fin. News Network, Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) ("[A] bankruptcy court may allow pre-plan payments

13

of prepetition obligations where such payments are critical to the debtor's reorganization"); *Ionosphere*, 98 B.R. at 175 (citing *Miltenberger v. Logansport, C&S W.R. Co..*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim before reorganization permitted to prevent stoppage of "indispensable business relations")); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

34.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (quoting *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) ("[T]he 'necessity of payment' doctrine . . . [permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees in reorganization to pay claims [for] goods and services indispensably necessary" to debtors' continued operation); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 ("A general practice has developed…where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("[A] *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code").  The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11—"facilitating the continued operation and rehabilitation of the debtor."

WEIL:\95271054\1\35076.0003

*Ionosphere*,

98 B.R. at 176.

35.      As noted herein, the Debtors are required legally and contractually to maintain certain Insurance Programs and the nature of the Debtors' businesses makes it essential for them to maintain all Insurance Programs on an ongoing and uninterrupted basis. For example, many states mandate maintenance of the Workers' Compensation Programs.  If the Debtors' Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability to the detriment of all parties in interest.  Additionally, the Debtors must maintain most of the Insurance Programs to comply with the guidelines of the Office of the United States Trustee. With respect to amounts owed to the Insurance Service Providers, Marsh and Willis are intimately familiar with the Debtors' Insurance Programs, and the Debtors believe that the loss of either Insurance Service Provider would be detrimental to the Debtors' reorganization efforts, because the Debtors' would need to shift some of their focus from reorganization to managing and renewing the Debtors' multitude of insurance policies. Accordingly, the continuation of the Insurance Programs and the ability to pay, in the Debtors' discretion, all Insurance Obligations, including, without limitation, Service Providers' Fees, is essential to preserve the Debtors' businesses and the value of the Debtors' estates for all parties in interest.

**The Court Should Authorize and Direct Banks and Other Financial Institutions to Honor and Pay Checks Issued and Make Other Transfers to Pay the Insurance Obligations**

36.      The Debtors request that the Court authorize and direct the Debtors' banks and other financial institutions at which the Debtors maintain disbursement accounts at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors

WEIL:\95271054\1\35076.0003

relating to the Insurance Obligations.  The Debtors also seek authority to issue new postpetition

checks, or effect new electronic funds transfers, on account of such obligations to replace any

prepetition checks or electronic fund transfer requests that may be lost, dishonored, or rejected

as a result of the commencement of the Debtors' chapter 11 cases.

### Reservation of Rights

37.    Nothing contained herein is intended to be or shall be construed as (i) an

admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or

any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption

of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's

order is not intended to be and should not be construed as an admission to the validity of any

claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Have Satisfied Bankruptcy Rule 6003(b)

38.    Bankruptcy Rule 6003(b) provides that to the extent "relief is necessary

to avoid immediate and irreparable harm," a Bankruptcy Court may approve a motion to "pay

all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days

after the Commencement Date.  Fed. R. Bankr. P. 6003(b).  As described herein and in the

Allan Declaration, the Debtors' are legally and contractually required to maintain many of their

Insurance Programs.  In addition, Insurance Carriers' refusal to renew any Insurance Program as

a result of the Debtors' failure to pay any Insurance Obligations could subject the Debtors to

substantial liability as well as a potential cessation of operations, to the detriment of all parties

in interest.  Accordingly, the Debtors submit that the relief requested herein is necessary to

avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003(b) is satisfied.

WEIL:\95271054\1\35076.0003

## Waiver of Bankruptcy Rules 6004(a) and (h)

39.      To implement the foregoing immediately, the Debtors seek a waiver of

the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order

authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Waiver of Bankruptcy Rule 4001(a)(3) and Local Rule 4001-1

40.      The Debtors request a waiver of any stay of the effectiveness of the order

approving this Motion under Bankruptcy Rule 4001(a)(3).  The Debtors also request a waiver of

the procedures that may be required pursuant to Rule 4001-1 of the Local Bankruptcy Rules for

the Southern District of New York (the "**Local Rules**").  Pursuant to Bankruptcy Rule

4001(a)(3), "[a]n order granting a motion for relief from an automatic stay made in accordance

with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order,

unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).  Local Rule 4001-1 sets forth

certain procedures for movants seeking to modify the Automatic Stay.  As set forth above,

modifying the Automatic Stay to allow valid Workers' Compensation Claims to proceed is

essential to prevent a detrimental effect on the financial well-being and morale of the Debtors'

employees and lead to the departure of certain employees.  As discussed above, such departures

could cause a severe disruption in the Debtors' businesses to the detriment of all parties in

interest.  Accordingly, the Debtors submit that ample cause exists to justify the waiver of the

fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies, and

of the procedures set forth in Local Rule 4001-1, to the extent such procedures apply.

## Notice

41.      Notice of this Motion has been provided to (i) the Office of the United

States Trustee for the Southern District of New York; (ii) the holders of the five largest secured

claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest

unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO

Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan,

Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank

National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes

due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as

successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due

2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of

Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP

Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC;

(xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; (xiv) the

United States Attorney's Office for the Southern District of New York; (xv) the Insurance

Carriers listed on Exhibit 1 to the Proposed Order; and (xvi) AFCO Premium Credit LLC.  The

Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no

other or further notice need be provided.

       42.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WEIL:\95271054\1\35076.0003

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
       New York, New York

                                         /s/ Ray C. Schrock, P.C.
                                         Marcia L. Goldstein
                                         Ray C. Schrock, P.C.

                                         **WEIL, GOTSHAL & MANGES LLP**
                                         767 Fifth Avenue
                                         New York, New York 10153
                                         Telephone:  (212) 310-8000
                                         Facsimile:  (212) 310-8007

                                         *Proposed Attorneys for Debtors*
                                         *and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                                  :

In re                                       :        Chapter 11
                                       :

CHASSIX HOLDINGS, INC., *et al.*,     :        Case No. 15-_____ (___)
                                       :

                                       :        Jointly Administered
               Debtors.[1]         :
                                       :
------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 362, 363(b),
AND 503(b) (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO
(A) PAY ALL INSURANCE OBLIGATIONS AND (B) CONTINUE ALL
INSURANCE PROGRAMS, (II) MODIFYING THE AUTOMATIC STAY
WITH RESPECT TO THE WORKERS' COMPENSATION CLAIMS, AND
(III) AUTHORIZING AND DIRECTING APPLICABLE BANKS AND OTHER
FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS
PRESENTED FOR PAYMENT AND TO HONOR ALL FUND TRANSFER REQUESTS**

Upon the motion, dated March __, 2015 (the "**Motion**"),[2] of Chassix Holdings,

Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to sections

105(a), 362(d), 363(b), and 503(b) of title 11 of the United States Code (the "**Bankruptcy

Code**"), for entry of an order (i) authorizing, but not directing, the Debtors to (a) pay any unpaid

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012).  The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

prepetition Insurance Obligations, including, without limitation, amounts owed under Premium

Financing Agreements and to Insurance Service Providers, and (b) continue their Insurance

Programs and their honor Insurance Obligations in the ordinary course of their businesses;

(ii) modifying the Automatic Stay only with respect to the Workers' Compensation Claims; and

(iii) authorizing and directing applicable banks and other financial institutions to receive,

process, and pay any and all checks drawn on the Debtors' disbursement accounts and all

automatic transfers requested to the extent that such checks or transfers relate to the Insurance

Obligations, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.);

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the

United States Trustee for the Southern District of New York; (ii) the holders of the five largest

secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40)

largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for

BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan,

Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank

National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes

due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor

trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated

as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders;

(viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders;

2

(x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the

Securities and Exchange Commission; (xiii) the Internal Revenue Service; (xiv) the United

States Attorney's Office for the Southern District of New York; (xv) the Insurance Carriers listed

on Exhibit 1 to the Proposed Order; and (xvi) AFCO Premium Credit LLC (the "**Notice**

**Parties**"), and it appearing that no other or further notice need be provided; and a hearing having

been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the

Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Rules for the Southern

District of New York, filed contemporaneously with the Motion, and the record of the Hearing

and all of the proceedings had before the Court; and the Court having found and determined that

the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the

Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests

of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis, as provided herein; and

it is further

ORDERED that the Debtors are authorized, but not directed, to pay all Insurance

Obligations (including, without limitation, amounts owed under Premium Financing Agreements

and to Insurance Service Providers) arising under or relating to the Insurance Programs,

including those Insurance Programs listed on **Exhibit "1"** hereto, regardless of whether accruing

or relating to the period before or after the Commencement Date; provided that the Debtors are

authorized, but not directed, to pay only amounts due and payable as of the Commencement Date

and amounts that are or become due and payable between the Commencement Date and the date

that a final order on the Motion is entered, unless otherwise ordered by this Court; and it is

further

ORDERED that the Debtors are authorized, but not directed, to maintain their

Insurance Programs in accordance with practices and procedures that were in effect before the

commencement of these chapter 11 cases; and it is further

ORDERED that the Debtors are authorized, but not directed, to revise, extend,

supplement, or modify their insurance coverage as needed, including without limitation, through

the purchase or renewal of new or existing insurance policies; and it is further

ORDERED that the automatic stay under section 362(a) of the Bankruptcy Code

is modified solely to allow the Debtors' employees to proceed with their Workers'

Compensation Claims in the appropriate judicial or administrative forum; provided that

employees may only pursue their Workers' Compensation Claims in accordance with the

Workers' Compensation Programs; and it is further

ORDERED that the banks and other financial institutions at which the Debtors

maintain their disbursement accounts are authorized and directed at the Debtors' direction, to

receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or

electronic fund transfers requested or to be requested by the Debtors in respect of the Insurance

Obligations; and it is further

ORDERED that the Debtors are authorized, but not directed, to issue new

postpetition checks, or effect new electronic fund transfers, on account of the Insurance

Obligations to replace any prepetition checks or electronic fund transfer requests that may be

lost, dishonored, or rejected as a result of the commencement of the Debtors' chapter 11 cases;

and it is further

4

ORDERED that the Debtors shall serve this Interim Order within three (3) business days of its entry on the Notice Parties and the Insurance Carriers identified on **Exhibit "1"** hereto; and it is further

ORDERED that nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**"); and it is further

ORDERED that nothing contained in this Interim Order or in the Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Interim Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently; and it is further

ORDERED that notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that the requirements set forth in Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Interim Order shall be immediately effective and enforceable upon its entry; and it is further

5

WEIL:\95271054\1\35076.0003

ORDERED that the requirements set forth in Bankruptcy Rule 4001(a)(3) and Local Rule 4001-1 are hereby waived; and it is further

ORDERED that the Final Hearing on the Motion shall be held on _____, **2015 at __:__ _.m. (Eastern Time)**, and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-399, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Eastern Time) on** _____, **2015**; and it is further

ORDERED that notwithstanding anything to the contrary contained herein, (i) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "**DIP Documents**") and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto) and (ii) to the extent there is any inconsistency between the terms of such orders approving the DIP Documents or the Debtors' use of cash collateral and any action taken or proposed to be taken hereunder, the terms of such orders approving the DIP Documents and use of cash collateral shall control; and it is further

ORDERED that this Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out this Interim Order; and it is further

6

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Interim Order.

Dated: _____, 2015
      New York, New York


                                    _____
                                    United States Bankruptcy Judge

Exhibit "1"

List of Insurance Programs

| Type of Coverage | Insurance Carrier | Policy Number | Duration | Annual Premium[1] | Description of Payment | Next Payment |
|---|---|---|---|---|---|---|
| Property – All Risks | National Union Fire Insurance Corporation | #025032308 | 07/01/14 through 07/01/15 | $1,013,964.36 | Prepaid and financed through AFCO | Approximately $85,000 due on 04/01/15 |
| General Liability Insurance | First Specialty Insurance Corporation | #IRG200063002 | 12/31/14 through 12/31/15 | $543,531.00 | Prepaid and financed through AFCO | Approximately $45,000 due on 03/31/15 |
| International Liability Insurance | Insurance Corporation State of Pennsylvania | #WR10005064 | 12/31/14 through 12/31/15 | $50,265.36 | Prepaid and financed through AFCO | Approximately $4,000 due on 03/31/15 |
| Workers' Compensation Insurance | Travelers Property Casualty Company of America<br><br>Travelers Indemnity Company of America | (WI & MI) - #TRJUB466K5956-14<br><br>(AOS) #TC2H UB 466K5944-14 | 12/31/14 through 12/31/15<br><br>12/31/14 through 12/31/15 | $1,394,115.00 | Paid to Travelers in monthly installments | Approximately $107,000 outstanding<br><br>Approximately $107,000 due on 03/31/15 |
| Automobile Liability Insurance | Travelers Property Casualty Company of America | #TJ CAP 466K5979A-TIL-14 | 12/31/14 through 12/31/15 | $25,810.00<br><br>Paid monthly to Travelers/Marsh | Paid to Travelers in monthly installments | Approximately $2,000 outstanding<br><br>Approximately $2,200 due on 03/31/15 |

---

[1] All amounts set forth in the Annual Premium column are the amounts that must be paid in U.S. dollars by the Debtors and do not include amounts paid by non-Debtor entities. Additionally, such amounts include fees owed to Marsh in its capacity as the Debtors' insurance broker and may, in some instances, include amounts incurred on account of other taxes and fees paid to AFCO and/or the applicable Insurance Carriers related to the Insurance Programs.

| Type of Coverage | Insurance Carrier | Policy Number | Duration | Annual Premium[1] | Description of Payment | Next Payment |
|---|---|---|---|---|---|---|
| Umbrella Liability Insurance | Allianz | #USA2004747 | 12/31/14 through 12/31/15 | $484,835.40 | Prepaid and financed through AFCO | Approximately $40,000 due on 03/31/15 |
| Excess Liability Insurance | Great American Assurance Corporation | #EXC1910553 | 12/31/14 through 12/31/15 | $118,683.72<br><br>Paid annually and financed through AFCO | Prepaid and financed through AFCO | Approximately $10,000 invoiced on 03/31/15 |
| Directors' and Officers' Liability Insurance | National Union Fire Insurance Company of Pittsburgh, PA | #06-485-02-48 | 05/01/14 through 05/01/15 | $45.437.04<br><br>Paid annually and financed through AFCO | Prepaid and financed through AFCO | Approximately $45,000 invoiced on 04/01/15 |
| Employment Practices Liability Insurance | National Union Fire Insurance Company of Pittsburgh, PA | #06-485-02-48 | 05/01/14 through 05/01/15 | $95,203.80<br><br>Paid annually and financed through AFCO | Prepaid and financed through AFCO | Approximately $94,000 due to AFCO on 04/01/15 |
| Fiduciary Liability Insurance | National Union Fire Insurance Company of Pittsburgh, PA | #06-485-02-48 | 05/01/14 through 05/01/15 | $16,104.36<br><br>Paid annually and financed through AFCO | Prepaid and financed through AFCO | Approximately $18,000 invoiced on 04/01/15 |
| Crime Insurance | National Union Fire Insurance Company of Pittsburgh, PA | #06-485-02-48 | 05/01/14 through 05/01/15 | $18,675.00<br><br>Paid annually and financed through AFCO | Prepaid and financed through AFCO | Approximately $16,000 invoiced on 04/01/15 |
| Special Crime | US Specialty | #U71385318 | 05/01/13 through 05/01/16 | $17,763<br><br>Three year premium paid on year one | Prepaid and financed through AFCO | Not Applicable |

2

| Type of Coverage | Insurance Carrier | Policy Number | Duration | Annual Premium[1] | Description of Payment | Next Payment |
|---|---|---|---|---|---|---|
| **Environmental Liability** | Chartis Specialty Insurance Corporation | #PLS18174940 | 04/16/12 through 04/16/17<br><br>Five year premium paid on year one | $296,014 | Prepaid and financed through AFCO | Not Applicable |

WEIL:\95271054\1\35076.0003