Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
                                                        :
**In re**                                               :        **Chapter 11**
                                                        :
**CHASSIX HOLDINGS, INC.,** *et al.***,**               :        **Case No. 15-_____ (___)**
                                                        :
                                                        :        **(Joint Administration Pending)**
                         **Debtors.**[1]                 :
                                                        :
--------------------------------------------------------x

### APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), BANKRUPTCY RULES 2014(a) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO RETAIN AND EMPLOY LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and

certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

"**Debtors**," and together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

**Background**

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations.  Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on the date hereof, which has been filed with the Court contemporaneously herewith.

2

**Jurisdiction**

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6.      By this application (the "**Application**"), pursuant to sections 327(a) and

328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and rules 2014-1 and 2016-

1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the

Debtors seek entry of an order (i) authorizing the Debtors to retain and employ Lazard Frères &

Co. LLC ("**Lazard**") as their investment banker in accordance with the terms and conditions set

forth in that certain engagement letter, dated as of October 3, 2014 (together with the

Indemnification Letter (as defined below) and any schedules thereto, the "**Engagement**

**Letter**"),[2] *nunc pro tunc* to the Commencement Date, and (ii) approving the terms of Lazard's

employment and retention, including, without limitation, the proposed Fee and Expense

Structure (as defined below) and the related indemnification provisions set forth in the

Indemnification Letter, subject to the standards set forth in section 328 of the Bankruptcy Code.

A proposed form of order granting the relief requested in this Application is annexed hereto as

**Exhibit "A"** (the "**Proposed Order**").  In support of this Application, the Debtors submit a copy

of the Declaration of Andrew Yearley, Managing Director of Lazard, in support of the

Application (the "**Yearley Declaration**"), which is annexed hereto as **Exhibit "B."**

---

[2] A copy of the Engagement Letter is annexed as an exhibit to the Proposed Order as **Exhibit "1."**

**Lazard's Qualifications**

7.      In light of the size and complexity of these reorganization cases, the

Debtors require a qualified and experienced investment banker with the resources, capabilities

and experience of Lazard to assist them in pursuing the transaction(s) that are crucial to the

success of the Debtors' cases.  An investment banker, such as Lazard, fulfills a critical service

that complements the services provided by the Debtors' other professionals.  The Debtors believe

that retaining Lazard as their investment banker is in the best interest of their estates and

creditors because, among other things, Lazard has extensive experience in, and an excellent

reputation for, providing investment banking and financial advisory services to debtors in

bankruptcy reorganizations and other restructurings.

8.      Lazard and its senior professionals have extensive experience in the

reorganization and restructuring of troubled companies, both out-of-court and in chapter 11

proceedings.  Lazard's employees have advised debtors, creditors, equity constituencies, and

government agencies in many complex reorganizations, including within the automotive

industry.  Indeed, since 1990, Lazard's professionals have been involved in over 250

restructurings, representing over 1 trillion dollars in debtors' assets. Moreover, Lazard's

professionals have been retained as investment bankers in a number of troubled company

situations, including, among others, chapter 11 cases in the Southern District of New York such

as The Great Atlantic & Pacific Tea Company, Citadel Broadcasting Corporation, Charter

Communications, Lehman Brothers, WorldCom, Adelphia Communications, MModal,

LightSquared, Nautilus Holdings, Momentive Performance Materials, FGIC Corporation,

American Airlines, and Calpine.  Accordingly, Lazard has developed significant relevant

experience and expertise that will enable Lazard and its professionals to provide necessary investment banking services in these chapter 11 cases.

9.      Additionally, Lazard is already familiar with the Debtors' operations.  As discussed more fully in the Yearley Declaration, the Debtors engaged Lazard on October 3, 2014.  Following such time, the Debtors' management began exploring several options to address their impending liquidity crisis, including a potential restructuring or recapitalization of the Debtors' outstanding indebtedness and a potential financing transaction.  In addition to advising management and negotiating with the Debtors' various key constituencies regarding a potential restructuring, prior to the Commencement Date, professionals at Lazard assisted the Debtors in securing debtor-in-possession financing as well as interim financing that provided the Debtors with the necessary short-term incremental liquidity to allow for a safe and structured entry into chapter 11.  In providing the foregoing prepetition services, Lazard has worked closely with the Debtors, their management, and their other advisors and has become well-acquainted with, among other things, the Debtors' operations, business needs, and capital structure.  Thus, Lazard is well-suited to provide the investment banking services to the Debtors that are contemplated by the Engagement Letter and described herein.

### Scope of Services[3]

10.      Subject to entry of the Proposed Order and consistent with the terms of the Engagement Letter, Lazard has provided, and will continue to provide, the investment banking services as Lazard and the Debtors deem appropriate and feasible to advise the Debtors

---

[3]  The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Engagement Letter.

WEIL:\95271027\1\35076.0003

and their subsidiaries and affiliates in the course of these chapter 11 cases, including, but not limited to, the following (the "**Services**"):

- Reviewing and analyzing the Debtors' businesses, operations, and financial projections;

- Evaluating the Debtors' potential debt capacity in light of their projected cash flows;

- Assisting in the determination of a capital structure for the Debtors;

- Assisting in the determination of a range of values for the Debtors on a going concern basis;

- Advising the Debtors on tactics and strategies for negotiating with certain of its stakeholders;

- Rendering financial advice to the Debtors and participating in meetings or negotiations with their stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

- Advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

- Advising and assisting the Debtors in evaluating a potential Financing transaction by the Debtors, and, if requested, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such a Financing;

- Assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Restructuring;

- Assisting the Debtors in identifying and evaluating candidates for any potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of any Sale Transaction;

- Attending meetings of the Debtors' Board of Directors and their committees with respect to matters on which Lazard has been engaged to advise hereunder;

- Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise hereunder in any proceeding before the Court; and

- Providing the Debtors with other financial advice.

WEIL:\95271027\1\35076.0003

11.     The aforementioned services are necessary to enable the Debtors to maximize the value of their estates and successfully emerge from these chapter 11 cases. Lazard has indicated a willingness to act on behalf of the Debtors, on the terms described herein, and to subject itself to the jurisdiction of the Court.  Additionally, the Debtors have been advised by Lazard that it will endeavor to coordinate with the other retained professionals in these chapter 11 cases to eliminate unnecessary duplication or overlap of work.

**Professional Compensation**

12.     In consideration of the services to be provided by Lazard, and as more fully described in the Engagement Letter, subject to Court approval, and in compliance with the Amended Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York, dated January 23, 2013, and the U.S. Trustee Fee Guidelines (collectively, the "**Fee Guidelines**"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court, the Debtors have agreed to pay Lazard the proposed compensation set forth in the Engagement Letter (the "**Fee and Expense Structure**") whose principal terms may be summarized as follows:

(a)     **Monthly Fees:**  A monthly fee of $150,000 until the earlier of completion of the Restructuring or the termination of Lazard's engagement pursuant to the Engagement Letter.  Additionally, 50% of any Monthly Fees paid in excess of $750,000 shall be credited (without duplication) against any Restructuring Fee subsequently payable.

(b)     **Restructuring Fee:**  A fee equal to $3,250,000, payable upon the consummation of a Restructuring.  A percentage of the Monthly Fees, Sale Transaction Fee(s), and Financing Fee(s) shall be credited (without duplication) against any Restructuring Fee subsequently payable, <u>provided</u> that the maximum credit shall be $2,250,000 and the minimum Restructuring Fee shall be $1,000,000.  In addition, the Board of Directors of Chassix may elect to increase the

7

Restructuring Fee by up to $1,000,000, subject to the terms and conditions of the Engagement Letter.

(c) **Sale Transaction Fee:**    A fee payable upon consummation of any Sale Transaction equal to the greater of (A) 1% of the Aggregate Consideration and (B) $500,000, provided that for any Sale Transaction, the Sale Transaction Fee shall be capped at $2,250,000.  Additionally, 100% of any Sale Transaction Fees paid shall be credited (without duplication) against any Restructuring Fee subsequently payable.

(d) **Financing Fee:**  A fee payable upon consummation of any Financing equal to the greater of (A) 1% of the aggregate gross proceeds and (B) $500,000. Additionally, 66.67% of any Financing Fees paid shall be credited (without duplication) against any Restructuring Fee subsequently payable.

(e) **Reimbursement of Expenses:**  The Debtors have agreed to reimburse Lazard for all reasonable expenses incurred by Lazard as set forth in the Engagement Letter, including the reasonable legal expenses.

13.    The Fee and Expense Structure as described above is comparable to compensation generally charged by other firms of similar stature to Lazard for comparable engagements, both in and out of bankruptcy.  The Fee and Expense Structure is also consistent with Lazard's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.  Lazard and the Debtors believe that the Fee and Expense Structure is reasonable and at favorable market rates.

14.    The hours worked, the results achieved, and the ultimate benefit to the Debtors of the work performed by Lazard in connection with its engagement may vary and the Debtors and Lazard have taken this into account in setting the Fee and Expense Structure.  The Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Lazard expects to undertake and the potential for failure.  The Fee and Expense Structure also reflects Lazard's restructuring expertise, mergers and acquisitions capabilities, as well as its capital markets knowledge and financial skills.   The ultimate benefit to the Debtors of Lazard's

8

services cannot be measured merely by reference to the number of hours to be expended by Lazard's professionals in the performance of such services.

15.     The Debtors intend for Lazard to receive payment of its fees on a fixed-rate and percentage basis, which is customary in the investment banking industry.  As is required by the Engagement Letter, during the pendency of these chapter 11 cases, Lazard will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the Fee Guidelines.

16.     The Debtors have been informed by Lazard that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys or to keep time records on a "project category" basis.  To the extent Lazard would be required to submit more detailed time records for its professionals by the Fee Guidelines, the Debtors request that Lazard be permitted to submit summary time records kept in one-half hour increments in applications for payment of compensation.

17.     Lazard has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of Lazard, in accordance with section 504 of the Bankruptcy Code.

## Indemnification and Related Provisions

18.     As part of the Fee and Expense Structure payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and related obligations pursuant to an indemnification letter dated October 3, 2014 (the "**Indemnification Letter**").  The Indemnification Letter provides, among other things, that the Debtors will indemnify and hold harmless Lazard and its affiliates and their respective directors, officers, agents, employees, and controlling persons subject to customary carve outs for gross negligence

WEIL:\95271027\1\35076.0003

and willful misconduct.  Both the Debtors and Lazard believe that such provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 cases.  In connection with these chapter 11 cases, Lazard has agreed to certain modifications to the Indemnification Letter, as set forth in the Proposed Order.

19.    The provisions of the Indemnification Letter were negotiated by the Debtors, their counsel, and Lazard at arm's-length and in good faith. Further, such provisions, viewed in conjunction with the other terms of Lazard's proposed retention, are reasonable and in the best interests of the Debtors in light of the fact that the Debtors require Lazard's services to successfully restructure.  Accordingly, the Debtors request that the Court approve Lazard's retention, including the provisions reflected in the Indemnification Letter.

### Lazard's Disinterestedness

20.    To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Yearley Declaration, Lazard is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors or their estates in connection with the matters for which Lazard is to be retained by the Debtors.

21.    Prior to the Commencement Date, the Debtors paid Lazard aggregate fees of $900,000.00 and reimbursed Lazard for aggregate expenses of $85,531.98.  Of these payments, $600,000 in fees and $79,021.99 in reimbursed expenses were paid in the 90 days prior to the Commencement Date.  The Debtors have paid Lazard for all fees incurred and expense reimbursement billed to the Debtors prior to the Commencement Date.

22.     If any new material facts or relationships with Potential Parties in Interest

(as defined in the Yearley Declaration) are discovered or arise, Lazard will inform this Court.

**The Court Should Approve the Engagement Letter**
**and Authorize the Retention of Lazard**

23.     The Debtors seek authority to employ and retain Lazard as their financial

advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a

debtor is authorized to employ professional persons "that do not hold or represent an interest

adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in

carrying out their duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the

Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases

under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for

employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely

because of such person's employment by or representation of the debtor before the

commencement of the case."  11 U.S.C. § 1107(b).

24.     The Debtors also seek approval of the Engagement Letter (including the

Fee and Expense Structure and the Indemnification Letter), pursuant to section 328(a) of the

Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval,

may employ or authorize the employment of a professional person under section 327 . . . on any

reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on

a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 328

of the Bankruptcy Code permits the compensation of professionals, including investment

bankers, on flexible terms that reflect the nature of their services and market conditions.  Thus,

section 328 is a significant departure from prior bankruptcy practice relating to the

compensation of professionals.  Indeed, as the United States Court of Appeals for the Fifth

WEIL:\95271027\1\35076.0003

Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum (In re National Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee) (internal citations omitted).

25.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee* basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added).  This change makes clear that the Debtors may retain a professional on a fixed fee basis with Court approval, such as the Fee and Expense Structure for Lazard in the Engagement Letter.

26.     The terms set forth in the Engagement Letter appropriately reflect the nature and scope of services to be performed by Lazard, Lazard's substantial experience with respect to investment banking and financial advisory services, and the Fee and Expense Structure utilized by Lazard and other leading investment bankers.  As described herein, the Debtors selected Lazard as their investment banker because of Lazard's extensive experience with situations to that of the Debtors and familiarity with the Debtors' businesses and operations.  Not granting the relief requested herein would deprive the Debtors of the assistance

12

of a highly qualified investment banking firm, which would disadvantage the Debtors and all parties in interest in these chapter 11 cases. Moreover, engaging a new investment banker would necessarily require the Debtors to expend additional time and resources during a critical juncture of these chapter 11 cases.

27. The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter reflects reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. As described herein, the Fee and Expense Structure adequately reflects the following: (i) the nature of the services to be provided by Lazard, and (ii) a fee and expense structure and indemnification provisions typically utilized by Lazard and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe the Fee and Expense Structure creates a proper balance between fixed, monthly fees, and contingency fees based on the successful raises of new capital and the overall success of these chapter 11 cases. Moreover, Lazard's substantial experience with respect to investment banking services, coupled with the nature and scope of work already performed by Lazard before the Commencement Date, further support the reasonableness of the Fee and Expense Structure. In light of the foregoing, the Fee and Expense Structure is fair and reasonable and meets the standards set forth in section 328(a) of the Bankruptcy Code.

28. Additionally, as set forth above, notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the Fee Guidelines.

**The Court Should Approve the Indemnification Letter**

29.      The Debtors and Lazard believe that the terms of the Indemnification

Letter are customary and reasonable for investment banking and financial advisory engagement,

both out of court and in chapter 11 proceedings.  *See United Artists Theatre Co. v. Walton (In re*

*United Artists Theatre Co.)*, 315 F. 3d 217, 234 (3d Cir. 2003) (finding that indemnification

agreement between debtor and financial advisor was reasonable under section 328 of the

Bankruptcy Code).

30.      The terms and conditions of the Engagement Letter, including the

Indemnification Letter, were negotiated by the Debtors and Lazard at arm's length and in good

faith.  The Debtors respectfully submit that the provisions of the Indemnification Letter, viewed

in conjunction with the other terms of Lazard's proposed retention, are reasonable and in the

best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors

require Lazard's services for a successful result in these cases.

**Notice**

31.      Notice of this Application has been provided to (i) the Office of the

United States Trustee for the Southern District of New York; (ii) the holders of the five largest

secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40)

largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for

BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated

Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S.

Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured

Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as

successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due

2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of

Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP

Term lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC;

(xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the

United States Attorney's Office for the Southern District of New York.  The Debtors submit

that, in view of the facts and circumstances, such notice is sufficient and no other or further

notice need be provided.

     32.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

     WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
     New York, New York

           /s/ Ray C. Schrock, P.C.
           Marcia L. Goldstein
           Ray C. Schrock, P.C.

           **WEIL, GOTSHAL & MANGES LLP**
           767 Fifth Avenue
           New York, New York 10153
           Telephone:  (212) 310-8000
           Facsimile:  (212) 310-8007

           *Proposed Attorneys for Debtors*
           *and Debtors in Possession*

WEIL:\95271027\1\35076.0003

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
:
In re                                                    :    **Chapter 11**
                                                         :
**CHASSIX HOLDINGS, INC.,** *et al.,*                    :    **Case No. 15-_____ (___)**
                                                         :
                                                         :    **Jointly Administered**
                    **Debtors.**[1]                      :
                                                         :
---------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), BANKRUPTCY**
**RULES 2014(a) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1**
**AUTHORIZING DEBTORS TO RETAIN AND EMPLOY**
**LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER**
***NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

Upon the application, dated March ___, 2015 (the "**Application**[2]"), of Chassix

Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates

and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to sections

327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014

and 2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rules

2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"**Local Rules**") for entry of an order (i) authorizing the Debtors to retain and employ Lazard

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012).  The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Application.

Frères & Co. LLC ("**Lazard**") as their investment banker in accordance with the terms and conditions set forth in the Engagement Letter, *nunc pro tunc* to the Commencement Date, and (ii) approving the terms of Lazard's employment and retention, including, without limitation, the proposed Fee and Expense Structure and the provisions set forth in the Indemnification Letter, subject to the standards set forth in section 328 of the Bankruptcy Code, all as more fully described in the Application and upon the Declaration of Andrew Yearley, Managing Director of Lazard, in support of the Application (the "**Yearley Declaration**"); and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"); (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers;

WEIL:\95271027\1\35076.0003

(xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange

Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office

for the Southern District of New York, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Application; and

upon the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules

for the Southern District of New York; and the Court being satisfied, based on the

representations made in the Application and in the Yearley Declaration, that Lazard is a

"disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as

modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and

referenced by section 328(c) of the Bankruptcy Code, neither represents nor holds an interest

adverse to the Debtors and their estates; and the Court having found and determined that the

terms and conditions of Lazard's employment, including but not limited to the Fee and Expense

Structure set forth in the Engagement Letter and summarized herein, are reasonable as required

by section 328(a) of the Bankruptcy Code; and the Court having found and determined that the

relief sought in the Application is in the best interests of the Debtors, their estates, creditors, and

all parties in interest, and that the legal and factual bases set forth in the Application establish

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Application is granted *nunc pro tunc* to the Commencement

Date, as set forth herein; and it is further

ORDERED that the Debtors are authorized, pursuant to sections 327(a) and

328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a) and Local Rules 2014-1

and 2016-1, to retain and employ Lazard as their investment banker in these chapter 11 cases

*nunc pro tunc* to the Commencement Date and in accordance with terms and conditions set forth

in the Engagement Letter, as further described herein; and it is further

ORDERED that the compensation terms set forth in the Engagement Letter are

approved pursuant to section 328(a) of the Bankruptcy Code and Lazard shall be compensated

and reimbursed by the Debtors for its expenses in these chapter 11 cases in accordance with the

terms of the Engagement Letter, subject to the applicable procedures set forth in the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and the Fee Guidelines; provided that the U.S.

Trustee shall retain all rights to object or otherwise respond to Lazard's interim and final

applications for allowance of its compensation and reimbursement of its expenses on all grounds,

including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code;

and it is further

ORDERED that, as set forth in the Engagement Letter, Lazard shall file interim

and final fee applications for allowance of its compensation and reimbursement of its expenses

with respect to services rendered in these chapter 11 cases with this Court in accordance with the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the

Fee Guidelines; provided that Lazard shall be excused from keeping time records for the services

rendered in one-tenth of an hour increments, and instead Lazard shall be permitted to submit

summary time records kept in one-half hour increments; and it is further

ORDERED that none of the fees payable to Lazard under the Engagement Letter

and this Order shall constitute a "bonus" or fee enhancement under applicable law; and it is

further

ORDERED that in the event that Lazard seeks reimbursement for attorneys' fees

pursuant to the terms of the Engagement Letter, the invoices and supporting time records from

4

such attorneys shall be included in Lazard's own interim and final fee applications and such

invoices and time records shall be subject to the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules, the Fee Guidelines, and such other procedures as may be fixed by order of the

Court under the standards of sections 330 and 331 of the Bankruptcy Code; and it is further

ORDERED that the Debtors shall be bound by the provisions of the

Indemnification Letter and will indemnify and hold harmless Lazard and its affiliates, and its and

their respective directors, officers, members, agents, employees, and controlling persons

(collectively, the "**Indemnified Persons**"), pursuant to the terms of the Engagement Letter and,

during the pendency of these chapter 11 cases, subject to the following conditions:

a. All requests of Indemnified Persons for payment of indemnity or otherwise pursuant to the Indemnification Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, this Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court; provided that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that this Court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person;

b. In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter if the Debtors, their estates. or the creditors' committee assert a claim, to the extent that this Court determines by final order that such claim resulted from the bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person;

c. In the event that an Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Indemnification Letter, the invoices and supporting time records from such attorneys shall be included in Lazard's own applications, both interim and final, and such invoices and time records shall be subject to approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without

WEIL:\95271027\1\35076.0003

regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the
Bankruptcy Code.

and it is further

ORDERED that to the extent the provisions of this Order are inconsistent with the

provisions of the Application or the Engagement Letter, the provisions of this Order shall

govern; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out

this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: _____, 2015
     New York, New York


                                _____
                                United States Bankruptcy Judge

WEIL:\95271027\1\35076.0003

**Exhibit "1"**

**Engagement Letter**

# LAZARD

As of October 3, 2014

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

Dear Marcia:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Weil, Gotshal & Manges LLP ("Weil").

*Assignment Scope:*

Weil hereby retains Lazard as investment banker to provide Chassix Holdings Inc. ("Chassix") and its direct and indirect subsidiaries, including without limitation Chassix, Inc. (collectively, with Chassix and any entity formed or used for the purposes set forth herein, the "Company") with general restructuring advice and advice in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein.   As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), asbestos and other litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions.  By signing this Agreement, we hereby accept our appointment as investment banker under the terms hereof.

Lazard Frères & Co. LLC
30 Rockefeller Plaza
New York, NY 10112

*Description of Services:*

1.  Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as Weil or the Company may reasonably request, including:

(a)  Reviewing and analyzing the Company's business, operations and financial projections;

(b)  Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)  Assisting in the determination of a capital structure for the Company;

(d)  Assisting in the determination of a range of values for the Company on a going concern basis;

(e)  Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f)  Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g)  Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

(h)  Advising and assisting the Company in evaluating any potential Financing [1] transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such Financing;

(i)  Assisting the Company in preparing documentation within our area of expertise that is required in connection with any Restructuring;

(j)  Assisting the Company in identifying and evaluating candidates for any potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of any Sale Transaction [2];

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with

(k)     Attending meetings of the Board of Directors of Chassix with respect to matters on which we have been engaged to advise hereunder;

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

(m)     Providing the Company with other financial restructuring advice.

2.    While onsite at a Company facility, employees of Lazard shall at all times abide in all material respects by the rules and regulations that apply generally to visitors at the Company, a copy of which was provided to Lazard on October 4, 2014.  Lazard agrees to promptly replace any employee who, in the Company's reasonable judgment, the Company requests the removal of due to such employee's failure (following notice and an opportunity to cure) to fulfill the obligations set forth in this Section 2.

*Fees:*

3.    As consideration for the services to be provided, the Company shall pay Lazard the following fees:

(a)     A monthly fee of $150,000 (the "Monthly Fee"), payable on execution of this Agreement and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10.

(b)     A fee equal to $3,250,000, payable upon the consummation of a Restructuring (the "Restructuring Fee").  In addition, Chassix may elect to increase the Restructuring Fee by up to $1,000,000, at the sole discretion of the Board of Directors of Chassix, based on its good faith assessment of the outcome achieved and the services provided by Lazard. Notwithstanding anything to the contrary set forth herein, 50% of any Monthly Fees paid in excess of $750,000, 100% of any Sale Transaction Fee(s) (as defined below) paid and 66.67% of any Financing Fee(s) (as defined below) paid shall be credited (without duplication) against any Restructuring Fee subsequently payable; provided, however, that in all cases the maximum credit shall be $2,250,000 and, for the avoidance of any doubt, a minimum of $1,000,000 shall be payable upon consummation of a Restructuring notwithstanding any such crediting.

---

another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party.  For purposes hereof, any sale of newly issued securities (including securities held in treasury) shall be deemed a Financing and not a Sale Transaction.

3

(c)    If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction, a fee upon consummation thereof (the "Sale Transaction Fee") equal to the greater of (A) 1.0% of the Aggregate Consideration[3] and (B) $500,000; provided, however, that for any Sale Transaction (other than a Sale Transaction that (i) occurs or is otherwise consummated not in conjunction with chapter 11 proceedings or other court-assisted process and (ii) which involves all or a majority of the assets of the Company or all or a majority of the equity securities of the Company or an otherwise controlling interest in the Company), the Sale Transaction Fee shall be capped at $2,250,000.

(d)    A fee, payable upon consummation of any Financing, equal to the greater of (A) 1.0% of the aggregate gross proceeds and (B) $500,000 (the "Financing Fee").

(e)    For the avoidance of any doubt, more than one fee may be payable pursuant to each of clauses (c) and (d) above.

(f)    In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including reasonable travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable fees and expenses of counsel, if any, retained by Lazard. For purposes hereof, it is understood that (i) any air travel shall only be reimbursed at the cost of "coach class" and (ii) any rental car shall only be reimbursed at the economy or midsize model rate, unless, in each case, such class or level was not available at the time of the required travel or a higher class or level has been approved by the Company in advance.

---

[3]  For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed, cancelled, exchanged or forgiven by a third party. Aggregate Consideration shall also include the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable. For purposes of calculating Aggregate Consideration, (i) all shares will be deemed transferred where a Sale Transaction is effected by the transfer of shares, (a) constituting more than 30% of the then outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, or (b) possessing more than 30% of the then outstanding voting power of the outstanding equity securities of or equity interest in the Company or relevant Company entity, as applicable, and (ii) the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradable) received shall be valued at 85% of the public market price of such stock. Aggregate Consideration shall also be deemed to include pension liabilities and guarantees of monies borrowed assumed, cancelled, exchanged or forgiven  directly or indirectly by a third party.  If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

4

(g) As part of the compensation payable to Lazard hereunder, the Company agrees to the indemnification, contribution and related provisions (the "Indemnification Letter") attached to this Agreement as Addendum A and incorporated herein in their entirety.

(h) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

For the avoidance of any doubt, Weil shall not be responsible for the payment of any fees or expenses described in this Engagement Letter. The parties acknowledge their intention that attorney-client privilege between Weil and Lazard shall remain notwithstanding the fact that the Company is billed directly for services under this Agreement.

*Retention in Chapter 11 Proceedings:*

4.   In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. The retention application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, Sale Transaction Fee and Financing Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred fees shall not be considered to be "bonuses" or fee enhancements under applicable law.

5

*Other:*

5.  No fee payable to any third party, by the Company or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to us.

6.  The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement.  The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete at the time it is furnished, and agrees to keep Lazard advised of all developments materially affecting the Company or its financial position.  In performing its services pursuant to this Agreement, Lazard shall be entitled to rely upon information furnished to it by the Company or any third party and information that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information.  Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party.

7.  In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or other transaction.  Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing or deemed to have provided any tax, accounting, actuarial, legal or other specialist advice.

8.  It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or any of our affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

9.  Simultaneously herewith, the Company and Lazard are entering into the Indemnification Letter.  Weil also agrees that no Indemnified Person (as defined in the Indemnification Letter) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to Weil or its partners related to, arising out of or in connection with our engagement.  The Indemnification Letter and this paragraph 9 shall survive any termination or expiration of our engagement hereunder.

10. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

6

11. Our engagement hereunder will automatically expire on consummation of a Restructuring and may be earlier terminated by Weil (acting on behalf of the Company), the Company or us at any time without liability or continuing obligation to Weil, the Company or us, except that (a) following any termination or expiration of our engagement we shall remain entitled to any fees accrued pursuant to Section 3 but not yet paid by the Company prior to such termination or expiration, as the case may be, and to reimbursement of expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by Weil or the Company or any expiration of our engagement, we shall remain entitled to full payment, by the Company, of all fees contemplated by Section 3 hereof in respect of any Restructuring, any Sale Transaction and any Financing announced or resulting from negotiations occurring during the period from the date hereof until one year following such termination or expiration, as the case may be.

12. Lazard has been retained under this Agreement by Weil as an independent contractor to Chassix, and nothing herein is intended to confer any rights or remedies as against Lazard upon any person (including Weil or the management, Board of Directors, employees, securityholders and creditors of the Company) other than Chassix. In addition, it is understood and agreed that this Agreement and our engagement do not create a fiduciary relationship between Lazard and any person, including Weil, the Company or its management, Board of Directors, employees, securityholders and creditors. No one, other than senior management or the Board of Directors of Chassix (in their capacities as such) is authorized to rely upon Weil's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered in the course of Weil's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of Chassix (in their capacities as such) in evaluating the relevant Restructuring, Sale Transaction or Financing and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Sale Transaction or Financing. Weil and the Company each agree that, notwithstanding any termination or expiration of our engagement, any advice, written or oral, rendered by Lazard and the terms of our engagement hereunder may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit the Company from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure.

13. Lazard and Chassix, Inc. entered into a Mutual Confidentiality Agreement dated as of September 30, 2014 (the "NDA"). In the event of any conflict between the text of this Agreement and the NDA, (i) in the case of information provided by the Company, the terms set forth in the NDA (except for section 5 thereof) shall govern and (ii) in the case of advice of Lazard, the terms of this Agreement shall govern.

14. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any nonpublic information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to

7

Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its expenses on the same basis as Lazard.

15. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of Weil, the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. The Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

16. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to our engagement hereunder) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. Each of the parties hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The parties waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____

Andrew Yearley
Managing Director

AGREED TO AND ACCEPTED
as of the date first written above:

CHASSIX HOLDINGS, INC., on behalf of itself
and its controlled subsidiaries

By_____
Name: JM ALLAN
Title: PRESIDENT

AGREED TO AND ACCEPTED
as of the date first written above:

WEIL, GOTSHAL & MANGES LLP

By_____
~~Marcia Goldstein~~ Ray Schrock, P.C.
Partner

As of October 3, 2014

Chassix Holdings, Inc.
300 Galleria Officentre
Suite 501
Southfield, MI 48034

Gentlemen:

In connection with our engagement to advise and assist Chassix Holdings, Inc. and its controlled subsidiaries (collectively, "you") with the matters set forth in the engagement letter of even date herewith, you and we are entering into this letter agreement. It is understood and agreed that in the event that Lazard Frères & Co. LLC or any of our affiliates, or any of our or their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing, including Lazard Frères & Co. LLC, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including your securityholders, related to, arising out of or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its reasonable and documented legal expenses for one set of counsel (in addition to any local counsel) and other actual, reasonable and documented out of pocket expenses (including the reasonable and documented out of pocket cost of any investigation and preparation) as and when they are incurred in connection therewith. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with our engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expenses is initiated or brought by you or on your behalf and whether or not in connection with any action, claim, proceeding or investigation in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct, or gross negligence. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to you or your securityholders or creditors related to, arising out of or in connection with our engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct, or gross negligence. If multiple claims are brought against any Indemnified Person in an arbitration related to, arising out of or in connection with our engagement, and indemnification is permitted under applicable law with respect to at least one such claim, you agree that any arbitration award shall be conclusively deemed to be based on

10

claims as to which indemnification is permitted and provided for hereunder, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then you shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations. You agree that for the purposes hereof the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that, to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such claim, action, proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action, proceeding or investigation.

In the event an Indemnified Person receives notice of a claim or receives notice of the commencement of any investigation which is based, directly or indirectly, upon any matter in respect of which indemnification may be sought from you hereunder, we or such Indemnified Person shall promptly notify you in writing of the particulars thereof, provided that the omission to so notify you promptly shall not relieve you of any liability, which you may have to an Indemnified Person hereunder except to the extent that any such delay in failure to give notice as herein required materially prejudices the defense of such claim or results in any material increase in the liability which you have under this indemnify. You shall have 14 days after receipt of the notice to undertake, conduct and control through counsel of your own choosing that is reasonably satisfactory to us and at your own expense, the settlement or defense of the claim or investigation (subject to the terms of this agreement). If you undertake, conduct and control the settlement or defense of the claim or investigation, we and the other Indemnified Persons shall

11

have the right to participate in the settlement or defense of the claim or investigation and to retain our own counsel but you shall not be liable for any legal fees or expenses of such other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless you have agreed to pay such fees and expenses. Notwithstanding the foregoing, you shall not be entitled to assume the defense of any such claim or investigation in any bankruptcy proceeding or if we or another Indemnified Person shall have been advised by counsel that there is an actual or potential conflicting interest between you and the Indemnified Person that would reasonably be expected to make it inappropriate or inadvisable for the same counsel to represent both you and the Indemnified Person. No Indemnified Person shall settle, compromise, or consent to the entry of any judgment of any action, claim, suit, proceeding or investigation for which indemnification or contribution is being sought hereunder without your prior written consent (which shall not be unreasonably withheld).

No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of us hereby submits to the jurisdiction of such courts. You hereby waive on behalf of yourself and your successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable. You (on your own behalf and, to the extent permitted by applicable law, on behalf of your securityholders and creditors) waive all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to, arising out of or in connection with this agreement or our engagement. This agreement shall remain in effect indefinitely, notwithstanding any termination or expiration of our engagement.

Very truly yours,

LAZARD FRERES & CO. LLC

By _____
Andrew Yearley
Managing Director

AGREED TO AND ACCEPTED
as of the date first written above:

CHASSIX HOLDINGS, INC., on behalf of itself
and its controlled subsidiaries

By _____
Name: J.M. ALLAN
Title: PRESIDENT

12

**Exhibit B**

**Declaration of Andrew Yearley**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                             :

In re                       :       **Chapter 11**
                             :

**CHASSIX HOLDINGS, INC.,** *et al.*,  :      **Case No. 15-_____ (___)**
                             :

                             :       **(Joint Administration Pending)**

             **Debtors.**[1]    :
                             :
-----------------------------------------------------------x

**DECLARATION OF ANDREW YEARLEY IN SUPPORT OF THE DEBTORS'**
**APPLICATION PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), BANKRUPTCY**
**RULES 2014(a) AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY**
**TO RETAIN AND EMPLOY LAZARD FRÈRES & CO. LLC AS INVESTMENT**
**BANKER _NUNC PRO TUNC_ TO THE COMMENCEMENT DATE**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), Andrew Yearley declares:

            1.     I am a Managing Director of Lazard Frères & Co. LLC ("**Lazard**"),

which has its principal office at 30 Rockefeller Plaza, New York, New York.  I am authorized to

execute this declaration on behalf of Lazard.  Unless otherwise stated in this declaration, I have

personal knowledge of the facts set forth herein.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012).  The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Lazard and are based on information provided by them.

2.      This declaration is being submitted in connection with the proposed
retention of Lazard as financial advisor and investment banker for Chassix Holdings, Inc.
("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries,
as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively,
including Chassix Holdings and Chassix, the "**Debtors**," and together with their non-Debtor
subsidiaries, the "**Company**") to perform services as set forth in the application seeking to
retain Lazard (the "**Application**").

3.      Lazard is the primary U.S. operating subsidiary of a preeminent
international investment banking, financial advisory, and asset management firm.  Lazard is
registered as a broker-dealer with the United States Securities and Exchange Commission and
the Financial Industry Regulatory Authority.  Together with its predecessors and affiliates,
Lazard has been advising clients around the world for over 150 years.  Lazard and its
professionals have considerable expertise and experience in providing investment banking and
financial advisory services to financially distressed companies and to creditors, equity holders,
and other constituencies in reorganization proceedings and complex financial restructurings,
both in and out of court.  In addition, Lazard's investment banking professionals have extensive
experience in advising debtors in chapter 11 cases and have served as investment bankers to
numerous debtors, chapter 11 trustees, creditors' committees and buyers in chapter 11
proceedings.

4.      In connection with its proposed retention by the Debtors in these cases,
Lazard undertook to determine whether Lazard had any conflicts or other relationships that
might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.
Specifically, Lazard obtained from the Debtors and/or their representatives the names of

2

individuals and entities that may be parties in interest in these chapter 11 cases (the "**Potential Parties in Interest**"), which parties are listed on **Schedule 1** annexed hereto.

        5.        Lazard has researched its electronic client files and records to determine its connections with the Potential Parties in Interest.  To the extent that I have been able to ascertain that Lazard has been retained within the last three years to represent any of the other Potential Parties in Interest (or their apparent affiliates or entities that we believe to be affiliates, as the case may be) in matters unrelated to these cases, such parties are listed on **Schedule 2** annexed hereto.[3]  Lazard's representation of each entity listed on **Schedule 2** (or its apparent affiliate or entity that we believe to be affiliated, as the case may be), however, was or is only on matters that are unrelated to the Debtors and these cases.  Other than as listed on Schedule 2 or in this paragraph 5, I am unaware of any engagements of Lazard by the Potential Parties in Interest within the last three years.

        6.        Given the size of the firm and the breadth of Lazard's client base, it is possible that Lazard may now or in the future be retained by one or more of the Potential Parties in Interest in unrelated matters without my knowledge.  To the extent that Lazard discovers any, or enters into any new, material relationship with Potential Parties in Interest, it will supplement this disclosure to the Court promptly.

---

[3] Effective May 10, 2005, Lazard Frères transferred its then existing alternative investments business (which included fund management and investment, but which did not include (and was prior to Lazard' acquisition of) Edgewater (as defined below)) and capital markets business (which included equity research, syndicate, sales and trading) to new privately-held companies, Lazard Alternative Investments LLC ("LAI") and FM Partners Holdings LLC (formerly Lazard Capital Markets LLC) ("FM"), respectively, which were and are neither owned nor controlled by Lazard.  LAI and FM were and are owned and operated by LMDC Holdings LLC (formerly LFCM Holdings LLC ("LMDC"), which is owned in large part by former and current Lazard managing directors.  LMDC was and is separate from Lazard and its businesses.  From May 10, 2005 to August 14, 2014, Lazard and FM referred business to one another, and paid fees to one another, pursuant to a business alliance agreement that is no longer in effect.  To the extent that FM acted as underwriter in connection with offerings by Potential Parties in Interest in the last three years (and during the term of the business alliance agreement), such parties have been listed on Schedule 2.

3

7.      In addition to the parties listed on **Schedule 2**, Lazard may also represent, or may have represented, affiliates of Potential Parties in Interest and Lazard may have worked with, continue to work with, and/or have mutual clients with, certain accounting and law firms who appear on the Potential Parties in Interest list.  Lazard may also represent, or may have represented in the past, committees or groups of lenders or creditors in connection with certain restructuring or refinancing engagements, which committees or groups include, or included, entities that appear on the Potential Parties in Interest list.

8.      Although Lazard has researched the Potential Parties in Interest list, the Debtors may have customers, creditors, competitors, and other parties with whom they maintain business relationships that are not included as Potential Parties in Interest and with whom Lazard may maintain business relationships. Additionally, as noted above, Lazard is a U.S. operating subsidiary of an international investment banking, financial advisory, and asset management firm and thus has legally separate and distinct affiliates.  Although it is possible that employees of certain affiliates may assist Lazard in connection with Lazard's engagement, as Lazard is the only entity being retained by the Debtors, we have researched only the electronic client files and records of Lazard, not of all of its affiliates, to determine connections with any Potential Parties in Interest.

9.      Lazard also has asset management affiliates, Lazard Asset Management LLC ("**LAM**") and Lazard Frères Gestion SAS ("**LFG**"), and an affiliate, Edgewater HoldCo LLC, that holds interests in the management companies for certain private funds (collectively, "**Edgewater**").  Although Lazard receives payments from LAM, LFG, and Edgewater generated by their respective business operations, each of LAM, LFG, and Edgewater is operated as a separate and distinct affiliate and is separated from Lazard's other businesses.

4

10.    As part of their regular business operations, LAM and LFG may act as investment advisor for or trade securities (including in discretionary client accounts, and through the operation of hedge funds and mutual funds, in which cases investment decisions are made by LAM or LFG), including on behalf of creditors, equity holders or other parties in interest in these cases, and Lazard or its respective affiliates, managing directors and employees. Some of these LAM or LFG accounts and funds may have held, may now hold or may in the future hold debt or equity securities of the Debtors or the Debtors' creditors, equity holders, or other parties in interest in these cases, and LAM or LFG may have relationships with such parties. Furthermore, some of the investment funds managed by Edgewater may have held, may now hold or may in the future hold debt or equity securities of the Debtors or the Debtors' creditors, equity holders, or other parties in interest in these cases. Additionally, the Debtors, creditors, equity holders, or other parties in interest in these cases, and Lazard or its affiliates, managing directors, and employees, may be investors in investment funds that are managed by Edgewater. Lazard has in place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has been or will be available to employees of LAM, LFG, or Edgewater.

11.    Other than as disclosed herein, Lazard has no relationship with the Debtors of which I am aware after due inquiry.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WEIL:\95271027\1\35076.0003

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct to the best of my knowledge.

LAZARD FRÈRES & CO. LLC

Dated:  March 11, 2015

By: /s/ Andrew Yearley
      Andrew Yearley
      Managing Director

WEIL:\95271027\1\35076.0003

**SCHEDULE 1**

**Potential Parties-in-Interest**

WEIL:\95271027\1\35076.0003

**Potential Parties-in-Interest**

**Debtors, Affiliates & Subsidiaries**
Automotive Properties of New York, LLC
Chassix Holdings, Inc.
UC Holdings, Inc.
Chassix, Inc.
Diversified Machine, Inc.
Diversified Machine Bristol, LLC
Chassix Georgia Machining, LLC
DMI Columbus, LLC
Diversified Machine Montague, LLC
Diversified Machine, Milwaukee LLC
DMI Edon LLC
Mexico Products I, LLC
DMI China Holding LLC
Concord International, Inc.
SMW Automotive, LLC
Automotive, LLC
Chassis Co. of Michigan, LLC
AluTech, LLC

**Trade Names and Aliases (up to 8 years)**
**(a/k/a, f/k/a, d/b/a)**
Automotive Corporation, Inc.
Chassis Corp. of Michigan
Dharma Merger Corporation
Diversified Machine Bristol, Inc.
Diversified Machine Montague, Inc.
DMI Columbus Real Estate Holdings, LLC
DMI SMW Holding Corporation
Metaldyne Chassis Products, LLC
SMW Automotive Corporation

**Joint Venture of Debtors**
Tirumala Prasad Dhanekula and Associates

**Top 100 Accounts Payable**
Active Aero Charter Inc.
Acument Global Technologies
Acuren Inspection
Aerotek Inc.
AFCO
Akebono Brake Corporation
Akebono Corp.

Akebono Glasgow
Alcoa
Alfe Heat Treating Inc.
Allegiant International
Alumalloy Metalcasting Co.
American Colloid Company
Anderson Express
Automation Systems & Designs
Automotive Casting Technology Inc.
BDI
Beck Aluminum Corp.
Bennett Tooling Solutions
Bosello High Tech – Italy
Brembo North America
Brembo S.p.A.
C.H. Robinson
C.H. Robinson Company, Inc.
Cadillac Casting Inc.
CE Capital
Central Corporation Ctr.
Cobra Trading
CTC Casting Technologies
CTR Central Corporation
Dalton Corp. Warsaw Manufacturing
(Dalton Corporation)
David J. Joseph Co.
Dewolff Boberg & Assoc. Inc.
Dongah America Inc.
DTR Industries
Dynamic Machine of Detroit
Empire Refractory Service
Employment Plus Inc.
ETA Engineering
Fabri Form Company
Fagor Ederlan S. Coop.
Fanuc Robotics America Inc.
Ferrosource Division of Stemcor USA Inc.
Fuchs Lubricants Co.
General Aluminum
Globe Metallurgical Inc.
GMR Design Inc.
Grede LLC- Reedsburg
Grede LLC- St. Cloud

8

Griffin Tool Inc.
GSM Recycling
HHI Formtech, LLC
Iljin USA
Industrial Control Repair
Jinyoung Industrial Co.
Kendall Electric Inc.
Koyo Bearings North America LLC
Larpen Metallurgical
Laurand Associates In.
Makino Inc.
Manpower
MCM USA
Metal Technologies Inc.
Motion Industries Inc.
MSC Industrial Supply Co.
Muscogee County Tax Commissioner
Nissan Trading Corp. Americas
NTN Bearing Corporation
NTN Bearings
Omnisource Corp Scrap
P.F. Markey Inc.
Pacific Western Bank
Pro Services Inc.
Pusan Cast Iron Co., Ltd.
Pyrotek Inc.
Ravenna Pattern
Roy Metal Finishing Co.
Rubber Enterprises Inc.
Schmolz Bickenbach
Schnitzer Southeast
Setco
Shells Inc.
SKF USA Inc.
SSA & Company
Tenneco Automotive
Test Equipment Distributors
Tool North Inc.
Trelleborg Automotive
Triple M Metal LP
Tuopu North America Ltd.
Valicor Separation Technologies (SRS)
Vibracoustic GmBH & Company
Vigel Manufacturing Technologies
Walker Forge Tennessee LLC

Wuhan Caiec
XY Tool & Die Inc.
Zeman Tool and Mtg
ZF Chassis Components LLC
ZF Lemforder Corporation
Zhongding USA Inc.

**Regulatory Agencies** (Federal, State and Local)
Internal Revenue Service

**Agent for ABL Loan**
BMO Capital Markets, Syndication Agent,
Joint Lead Arranger and Joint Book Runner
BMO Harris Bank N.A., Agent
PNC Bank NA, Documentation Agent, Joint
Lead Arranger and Joint Book Runner

**ABL Syndicated Lenders**
Bank of Montreal
Comerica Bank
PNC Bank NA
Siemens

**Trustee for Senior Secured Notes**
U.S. Bank National Association, Trustee and
Collateral Agent

**Holders of Senior Secured Notes**
Advent Capital
Aegon USA Investment Management LLC
Allstate Life Insurance Company
Anchorage Advisors LLC
Apollo Dif Management LLP
Ares Management LLC
Aristeia Capital, LLC
Armored Wolf LLC
Arrowgrass Capital Partners Llp
Aston Hill Asset Management Inc.
Avenue Investments
AXA Investment Managers Inc.
Balyasny Asset Management LP
Beach Point Capital Management
BlackRock Financial Management
BlueCrest Capital Management Limited
Bnp Paribas (Miami)

2

Brigade Capital Management LLC
Calvert Asset Management Company Inc
Capstone Investment Advisors LLC
CI Investments Inc.
Ckc Capital LLC
CNA Financial Corporation
Coherence Capital Partners LLC
Credit Suisse Asset Management LLC
Crescent Capital LLC
Delaware Management - Philadelphia
Deutsche Asset Management
Fidelity Management & Research Company
Fore Research & Management LP
General Electric Investment Corp
Global Credit Advisers LLC
Golden Gate Capital Holdings LLC
Golub Capital Partners LLC
GSO Capital Partners LP
Guardian Life Insurance
Hartford Life Insurance Co
Hegemony Capital Management Llc
Henderson Global Investors
Hotchkis and Wiley Capital Management
LLC
ING Asset Management Bv
ING Investment Management LLC
JP Morgan Investment Management
KLS Diversified Asset Management LP
Liberty Harbor, LLC
Linnfield Capital Corp
Logan Circle Partners LP
Lord Abbett & Company
Lucidus Capital Partners LLP
Mackay Shields LLC
Mackenzie Finan Corp
Metropolitan Life Insurance Company
Metropolitan West Securities LLC
Mid Atlantic Capital Management LLC
MidOcean Credit Opportunity Master Fund,
L.P
Millennium Partners
Morgan Stanley Investment Management,
Inc.
Neuberger Berman Fixed Income LLC
Nicholas-Applegate Capital Management

Nomura Corporate Research Asset
Management Inc
Northern Trust Investment, NA
Nuveen Asset Management
Oaktree Capital Management, LLC
OCH Ziff Capital Management LP
Oppenheimer Funds Inc.
Orchard Hill Capital Management LP
Osterweis Capital Management LLC
Pacific Life Insurance Co
Pax World Mgmt Corp
Penn Capital Management
Pentwater Capital Management LP
Pinebridge Investments LLC
Pioneer Investment Management Inc
PPM America Inc
Providence Equity Partners Inc
Raven Rock Capital LLC
Roystone Capital Management LP
Scottish Widows Investment Partnership
Ltd.
Seix Investment Advisors Inc
Silver Rock Financial Llc
Sky Harbor Capital Management LLC
Sound Point Capital Management, Lp
Standard Life Investments Ltd
Standard Life Investments Ltd.
State Of New Jersey
State Street Global Advisors Inc
Susquehanna Investment
Symphony Asset Management
TD Securities (USA) LLC
Tennenbaum Capital Partners
Thornburg Investment Management Inc
Thrivent Financial for Lutherans
Tricadia Capital Mgmt LLC
UBS O'Connor LLC
Wells Capital Management
Whitebox Advisors LLC
York Capital Management

**Trustee for Unsecured Notes**
U.S. Bank National Association, Trustee and
Collateral Agent

**Holders of Unsecured Notes**
Aston Hill
Avenue Investments
Capstone Investment
Fidelity Management
General Electric Investment Corp.
Global Capital Advisers
Golden Gate Capital
Henderson Global Investors
Medley Capital LLC
Morgan Stanley Investments
MidOcean Credit Opportunity
Millennium Partners
Nomura Corporate Research
Northern Trust Investment
Oaktree Capital Management
Providence Equity Partners
Raven Rock Capital
Sky Harbour Capital Management

**Capital Lease Counterparties**
Bank of America Leasing & Capital, LLC
California First National Bank
CapitalSource Bank
De Lage Landen Financial Services, Inc.
Dell Financial Services L.L.C.
Fifth Third Bank
GE Business Financial Services, Inc.
General Electric Capital Corporation
IBM Credit LLC
Key Equipment Finance
Key Equipment Finance, Inc.
Keybank National Association
Konica Minolta Premier Finance
NMHG Financial Services, Inc.
NXT Capital, LLC
Pacific Western Bank
People's Capital and Leasing Corp.
PNC Equipment Finance, LLC
The Huntington National Bank
Universal Equipment Leasing Company, LLC
Verizon Credit Inc.
Wells Fargo Equipment Finance, Inc.

**Officers and Directors (current & former up to last 3 years)**
**Directors**
*Current Directors*
Bob Wymbs
Eva Kawalski
Mary Ann Sigler
Phil Norment

*Former Directors (Past 6 years)*
Robert Remenar

**Officers**
*Current Officers*
Brad Frederick
Dawn Walloch
Eric Rouchy
Eva Kawalski
J. Mark Allan
Julie Samson
Mary Ann Sigler
Robert Wymbs
Safi Hamid
Sally Ward
Stephen Zollo

*Former Officers (Past 6 years)*
Robert Remenar

**Professionals to be Retained**
Ernst & Young, LLP
FTI Consulting Inc.
Joele Frank, Wilkinson Brimmer Katcher
Lazard Frères & Co.
Oliver Wyman Inc.
Weil, Gotshal & Manges LLP

**Ordinary Course Professionals**
Alston & Bird LLP
Baker & McKenzie
Brown Rudnick LLP
Capstan Avocats
Ernst & Young
Fragomen Global LLP

4

Harness Dickey
Howard & Howard
KPMG, LLC
Paradigm
The Dobrusin Law Firm, P.C.
Valu Tec
Warner Norcross & Judd LLP

**Insurance Providers**
Allianz
Chartis Specialty Insurance Corporation
First Specialty Insurance Corporation
Great American Assurance Corporation
Insurance Corporation State of Pennsylvania
National Union Fire Insurance Company of
Pittsburgh PA
National Union Fire Insurance Corporation
Travelers Property Casualty Corporation
Travelers Property Casualty Corporation of
America
US Specialty

**Litigation Parties**
Albreit
Allison Transmission, Inc.
Bougerol
C.M.R. Manufacturing Company
Roofcore International
Uzan

**Taxing Authorities (Federal, State, Local)**
Alabama Department of Revenue
Ashland Chamber of Commerce
Bedford County Trustee
Benton Charter Township, Michigan
Bureau of Workers' Compensation
Bureau Veritas Mexicana
California Board of Equalization
City of Benton Harbor, Michigan
City of Milwaukee
City of Milwaukee, Office of the City
Treasurer
City of Montague, Michigan
City of Morristown
City of Morristown

City of Port Huron Treasurer
City of Shelbyville, Tennessee
City of Southfield, Michigan
City of St. Joseph, Missouri
City of Warren, Michigan Treasurer's Office
City of Warren, Ohio Water Department
City of Wixom
City School District of Batavia, New York
City School District of Broken Arrow,
Oklahoma
Commonwealth of Virginia
Comptroller of Public Accounts
Connecticut Department of Revenue
Connecticut Department of Revenue
Connecticut Department of Revenue
Corporation Division
CRIM
Delaware Secretary of State
Department de Hacienda
Department of Revenue Services, State of
Connecticut
Department of Revenue Services, State of
Connecticut
Elkhart County Treasurer
Estado Libre Asociado de Puerto Rico
Florida Department of Revenue
Florida Department of Revenue
Florida Department of Revenue
Franchise Tax Board
Franchise Tax Board
Georgia Department of Revenue
Hamblen County Trustee
Henderson County Trustee
Howell Township, Michigan
Illinois Department of Revenue
Indiana Department of Environmental
Management
Indiana Department of Revenue
Internal Revenue Service
Internal Revenue Service
Jackson County Payment Center
John Baskette, Trustee
Kentucky Department of Revenue
Kentucky State Treasury
Lexington City Recorder

5

Lincoln Charter Township, Michigan
Los Angeles County Tax Collector
Massachusetts Department of Revenue
Michigan Department of Treasury
Missouri Department of Revenue
Municipio de Salinas
Muscogee County Tax Commissioner
Muskegon County Treasurer
Muskegon Lakeshore Chamber of Commerce
New York State Department of Taxation and Finance
North Carolina Department of Revenue
NYS Assessment Receivables
NYS Corporation Tax
Ohio Department of Taxation
Oregon Department of Revenue
Secretary of State - Delaware
Secretary of State - North Carolina Budget Office
Secretary of State - Oregon
Secretary of State - Tennessee, Division of Business Services
Secretary of State Commercial Division
South Carolina Department of Revenue
State of Michigan Department of Environmental Quality
State of Michigan Department of Licensing and Regulatory Affairs
State of New Jersey - Filing Fee and Tax on Partnerships
Tennessee Department of Revenue
Tesoreria de la Federacion (TESOFE)
Town of Batavia Tax Collector
U.S. Department of Homeland Security
United States Treasury
US Gov. Federal Mediation and Conciliation Service
Village of Edon, Ohio
Village of Stevensville, Michigan
Williams County Combined Health District (Ohio Department of Health)
Williams County Treasurer
Wisconsin Department of Revenue

**Utility Companies**
ANXeBusiness Corp. (ANX)
AT&T Mobility
Atmos Energy Marketing LLC
Bedford County Utility District
Benton Charter Township
City of Benton Harbor
City of Montague, MI (Department of Public Works)
City of Port Huron
City of St. Joseph
City of Warren, MI
Columbus Water Works
Comcast Cable
Comision Federal de Electricidad
Compass Energy Gas Services, LLC
Consumers Energy
DTE Energy Company
Duck River Electric Membership Corporation
EDF Trading North America
Georgia Power Company
Howell Township, NJ
iConnect, Inc.
Indiana Fluid Power
Indiana Michigan Power
Infor (US), Inc.
Integrys Energy Services
Lakeshore Energy Services LLC
Liberty Utilities Columbus, Georgia
Martech Enterprise LLC
MegaPath Inc.
Michigan Gas Utilities
Milwaukee Water Works
National Fuel Gas Company
National Grid
New York Power Authority
NIPSCO (Northern Indiana Public Service Company)
Northern Electric Co.
Northern Indiana Public Service Co. (NIPSCO)
Ohio Gas Company
Power Authority of the State of New York (NYPA)

WEIL:\95271027\1\35076.0003

Republic Services, Inc.
Secure-24
SEMCO Energy Gas Company
Shelbyville Power Water & Sewerage
Systems
Sterling Sanitation, Inc.
Toledo Edison- FirstEnergy
Town of Batavia, NY
Verizon
Verizon Business
Village of Edon
Waste Management, Inc.
We Energies

**Vendors**
Ahaus Tool & Engineering
Akebono Brake Corporation
Akebono Brake Corporation, Glasgow Plant
Akebono Corporation
Akebono Corporation – Columbia Plant
Alcoa Primary Metals
Alloy Resources Corp.
Anderson Express
Automotive Casting Technology Inc.
B&H Pattern Inc.
Beck Aluminum Corp.
Bennett Tooling Solutions
Brembo S.p.A.
Cadillac Casting, Inc.
Carlson Tool & Manufacturing Corp.
Casting Technologies Co.
Co-op Tool
General Aluminum
Grede Foundries, Inc.
Grede Holdings, LLC
Grede Holdings, LLC – Reedsburg
Grede LLC
Grede LLC – St. Cloud
GSM Recycling
Koyo Bearings North America LLC
Laurand Associates Inc.
Multi Precision Detail Inc.
P.F. Markey, Inc.
Perfect Patterns South
PRZ Technologies

Ravenna Pattern
Standard Tool and Die Inc.
Walker Forge Tennessee LLC
Zeman Tool & MFG Inc.
ZF Chassis Components LLC
Accountemps
Bridgette Wood
Daewoo
Dalton Foundry
Kerlin Metalurgical
Schnitzer Steel Industries, Inc.
SW North America, Inc.
Schwäbische Werkzeugmaschinen GmbH
Verizon Business
Verizon Wireless
Verizon Credit
ATT Wireless
Citrix
EMC
Barracuda
Kaspersky Antivirus
Microsoft Software
Infor
TAI
MKA
Vision Solutions
IBM
Intermec

   3-STARZ CLEANING SERV INC
   A1 METERS AND SHIPPING
   ADVANCED OFFICE PRODUCT
   AEI
   AGC HEAT TRANSFER INC
   ANALYTICAL REF. MATERIALS
   ANDERSON COOK INC
   ARAMARK UNIFORM COMPANY
   ARCADIA CHEMICALS INC
   ARP GMBH & CO KG
   ARTIS SYSTEMS, INC.
   AUBURN ARMATURE INC
   AUTOMATIC SPRING PROD CORP
   AVERY DENNISON
   B.E.R. REFRIGIRATION

7

BAKER PROTOTYPE & ENGINEE
BLUEGRASS SUPPLY CHAIN SER
BOHL CRANE INC
BOND FLUIDAIRE
BRAMMALL SUPPLY
CAVAGLIA' F.LLI S.N.C
CHEM-STATION OF NORTHERN
CINTAS CORPORATION #256
CLOVER MACHINERY MOVERS
COLE PARMER
COMMUNITY OCCUPATIONAL ME
CONSOLIDATED CONTROLS LLC
COPACO
CURTIS INDUSTRIES, INC.
CUSTOM MOLD ENGINEERING I
CUTLER'S SUPPLY INC.
CUTTING TOOLS INC
D&D MACHINERY MOVERS
D&M PRECISION LLC
DANCORP INC
DEARBORN OVERHEAD CRANE
DECKER MANUFACTURING CO
DELL MARKETING LP
DHL GLOBAL FORWARDING FRGH
DIDION MFG CO
DTE ENERGY
ENDEAVOR TECHNOLOGIES
ENVIRONMENTAL & RECYCLING
FIVES NORTH AMERICAN COMB
FLUKE BIOMEDICAL, LLC
FOSTER BLUE WATER OIL LLC
G&J OUTFITTERS
GARDNER WILLIS SWEAT HANDE
GENERAL INSPECTION LLC
GEO T SCHMIDT INC
GLOBAL GAGE AND TOOL CO
GREAT LAKES METROLOGY
GREAT LAKES PUMP & SUPPLY
GUDEL RAPINDEX INC
H&P TECHNOLOGIES INC
H&R INDUSTRIES INC
HENKEL CORP

HINES INDUSTRIES
HRU TECHNICAL RESOURCES
HYDRADYNE ALLEN-ORTON
HYDRA-TECH INC
IBC C/O ABRASIVE TOOL CORP
INDIANA FLUID POWER
INDUSTRIAL ASSET RECYCLING
INDUSTRIAL FURNACE CLEANIN
INSPEC INC
INTEGRITY STAFFING GROUP,
INTERNATIONAL MACHINE TOOL
JERICO INC
JIT PACKAGING
JM PACK/DET TAPE & LABEL
K&L TOOL SUPPLY
KAMAX LP
KENNY PIPE & SUPPLY INC
KEYENCE CORPORATION OF AME
KNOLL AMERICA INC
KONICA MINOLTA PREMIER FIN
LEO J. ROTH CORPORATION
LIBERTY SAW TECHNOLOGY
LIVINGSTON HAVEN
LOADING DOCK SYSTEMS
LTR RIGGING & HAULING, LLC
LUBRICATION ENGINEERS INC
M FORCE STAFFING CORP
M&I MACHINE INC.
MACHINE TOOL RESEARCH INC
MACO INDUSTRIES
MAINTENANCE WELDING SERV
MAPAL AARO
MCNAUGHTON MCKAY ELECTRIC
MICHIANA SUPPLY CO.
MIDWEST BRAKE
MORRELL
MUSKEGON COMMUNITY COLLEG
NATIONAL ELEMENT INC.
NON-STOP INDUSTRIAL SERV
NORFOLK SOUTHERN RAILWAY
OMNI TECH SALES
ORION INTERNATIONAL LLC

8

| | |
|---|---|
| OTTAWA GAGE INC | ABB ROBOTICS |
| PAASCHE AIRBRUSH CO | ABC EXCAVATING |
| PALM ENGINEERING & SALES | AB'S GLOVES & ABRASIVES |
| PARTNERS BULK LOGISTICS | ACCRETIVE SOLUTIONS |
| PHOENIX PERSONNEL | ADAMS BURKE & ASSOCIATES |
| PINE HOLLOW INC | ADDY MACHINE |
| PIRTEK USA | ADVANCED MACHINE & ENGINEE |
| PORTER STEEL & WELDING INC | AIRGAS GREAT LAKES |
| QME INC | AIRGAS SOUTH |
| R&D MACHINE INC | ALL THERM SERVICES INC |
| RAPID PRINT | ALLOY RESOURCES |
| RENO REFRACTORIES INC | ALRO STEEL CORPORATION |
| S&N MACHINE & FABRICATION | ALTA EQUIPMENT COMPANY |
| SAFETY KLEEN CORPORATION | AMERICAN LUBRICANTS INC |
| SCHOTT SAW CO | ASA SAFETY SUPPLY |
| SECURITAS | ATI LADISH DIECAST TOOLING |
| SENTINEL FLUID CONTROLS | ATLAS COPCO TOOL ASSM SYST |
| SHIP PAC, INC. | ATR INCORPORATED |
| SPARTAN CARBIDE | AUGUST WENZLER GMBH |
| SPRAYING SYSTEMS | AZTECNOLOGY SYSTEMS LLC |
| STAPLES | B&B DESIGN INC |
| TFT GLOBAL INC | B&H PATTERN |
| THE PIC GROUP INC | B&T ELECTRIC |
| TMI COMPRESSED AIR SYSTEM | BEAUDOIN ELECT. CONST INC |
| TOLEDO TOOL & DIE CO | BEDFORD COUNTY |
| TRADEMARK PARTNERS LLC | BLAKE & PENDLETON INC |
| TRANSFER INTERNATIONAL | BOGE RUBBER & PLASTICS USA |
| UNITED EQUIPMENT ACCESS | BORG WARNER EMISSIONS SYST |
| UNIVERSAL SERVO GROUP LLC | BRADLEY-MORRIS LLC |
| UPS | BRISTOL TOOL AND DIE |
| USF HOLLAND INC | BUWW COVERINGS, INC. |
| VIBRANT CORP. | C&E SALES INC |
| VRT ENTERPRISES INC | CA PICARD INC |
| WALMART | CARLSON TOOL & MFG CORP |
| WASTEBIZ ENTERPRISE CORP | CARRIER VIBRATING EQUIP |
| WATCON | CED |
| WICK FAB INC | CERAMSOURCE USA INC |
| WOODBRIDGE VENTURES INC | CHIRON AMERICA INC |
| Z ALLOY INC | COASTAL ENERGY |
| ZELLER CORPORATION | COLD HEADING COMPANY |
| | COLONIAL BUSHING |
| ABB INC | COMFORT SUITES |

WEIL:\95271027\1\35076.0003

CONDAT CORPORATION

CONTROL CONCEPTS

COOPER STANDARD AUTOMOTIVE

CORE TECH 1

CORRIGAN OIL COMPANY

DADCO INC

DANIEL J. RENYA

DAY FLUID POWER

D-BOY WELDING, LLC.

DELAWARE SECRETARY OF STAT

DIVERSIFIED PATTERN AND EN

E&R INDUSTRIAL SALES

EHD TECHNOLOGIES LLC

ELLISON TECHNOLOGIES

EMPIRE SOLUTIONS INC.

EMSCO GROUP

ENFORGE,LLC

EPOCH ROBOTICS

EXPEDITE EXPR TRANSPOR INC

EXPERIS

FASTENAL COMPANY

FEDERAL MOGUL CORPORATION

FEDEX

FERRELLGAS

FINCH AUTOMATION

FIVE STAR FOOD SERVICE

FLINT MACHINE TOOLS INC

FLOW LOGIC

FOSECO INC

FREUDENBERG NOK GENERAL PA

GANESH INC

GENTRY MACHINE WORKS

GOKOH CORPORATION

GOSIGER MICHIGAN

GRAINGER

GRAINGER INC

GRAND RIVER HOWELL LLC

GRAND TRAVERSE CONTAINER

GRANITE FLUID POWER MACHI

GREAT LAKES AUTOMATION SUP

GREAT LAKES DOCK & DOOR

GREAT LAKES TOOL LLC

GUARDIAN PLUMBING & HEATIN

GUHRING

HAMMITT & ASSOCIATES INC

HEAVY LIFT INC

HELLER MACHINE TOOLS LP

HENNIG INC

HERAEUS ELECTRO NITE CO

HERITAGE CRYSTAL CLEAN

HERSCHAL PRODUCTS INC

HEXAGON METROLOGY INC

HH BARNUM

HILL & GRIFFITH COMPANY

HOLMAN MANAGEMENT

HOT CREWS INC

HOUGHTON INTERNATIONAL INC

HY TECH AUTOMATION REPAIR

IFM EFECTOR INC

IHS GLOBAL, INC.

INDIANA FLUID SYSTEM TECH

INDIANA WOOD PRODUCTS

INDUSTRIAL CONTROL SYSTEMS

INDUSTRIAL TOOL SALES INC

INSIGHT DIRECT USA INC

INTER SOURCE INC

IPI INC

ISLAND MACHINE & ENGR LLC

IST SERVICES & COMMUNICAT

JACKSON AND ASSOCIATES

JADE TOOL

JIM BELT INC

JO WINTER & ASSOCIATES I

JOINT PRODUCTION TECHNOLOG

JONES ELECTRIC

JUS RITE ENGINEERING INC

JUST PACKAGING

K&S SERVICES INC

KELLY SERVICES INC

KOMA PRECISION

KONECRANES INC DBA CRANE

KONICA MINOLTA

LIBERTY STEEL FABRICATING

LIBERTY UTILITIES GEORGIA

10

LOGAN TOOL & ENGINEER INC
LYNDEX NIKKEN
LYON MECHANICAL INC
MAHLE ENGINE COMPONENTS
MARK PACK INC
MARLING & ASSOCIATES INC
MARSH PLATING CORP
MARSHALL E. CAMPBELL CO
MARTIN FOUNDRY SERVICES
MATERIALS RESOURCES
MAXIMUM MOLD
MAZAK CORPORATION-MIDWEST
MCKENZIE CONCRETE
MCNAUGHTON-MCKAY
MDS OF MICHIGAN INC
MESK CONSTRUCTION, INC.
METAL AND QUALITY SYSTEMS
METOKOTE CORPORATION
MICHIGAN TOOL & GAUGE INC
MID CITY SUPPLY CO INC
MIDWEST METROLOGY INC
MILLER BROACH INC
MINADEO INDUSTRIAL SERV
MOCAP INC
MORRISON INDUSTRIAL EQUIP
MS COMPANIES
MUNSELL ENTERPRISES
NEW CENTURY HEATERS LTD
NORTH AMERICAN PRODUCTS
NORTH SHORE MECHANICAL LLC
NORTHBEND PATTERN WORKS
NUGENT SAND COMPANY INC
OHIO DEPT OF TAXATION
OMEGA ENGINEERING INC
ORCON INDUSTRIES
OTIS ELEVATOR CO
OXFORD GLOBAL RESOURCES
PARKWAY ELECTRIC
PATRIOT CRANE & HOIST INC
PCS COMPANY
PDQ WORKHOLDING, LLC
PEOPLELINK LLC

PIEDMONT NATIONAL CORP
PRECISION GAGE
PRECISION SPINDLE SERVICES
PREFERRED INC - FORT WAYNE
PRESSURE & PIPES INC
PRIDE GAGE ASSOCIATES LLC
PROCESS ENGINEERING & EQUI
PRODUCTION TOOL SUPPLY
PROMESS INC
PRYOR GIGGEY COMPANY
PURE POWER TECHNOLOGIES
PVF SUPPLY COMPANY
RABEN OUTSOURCING SC
RADAR
RANDSTAD
RASSINI
REDLINE
RELIANCE MANUFACTURING
RELIANT PROF CLEANING CONT
RESOURCE RECOVERY CORP OF
RICHARD J BAGAN INC
RIMROCK
RIVER BEND HOSE SPECIALTY
RL CAST TECH LLC
ROBERT'S BALLSCREW REPAIR
RODGERS METAL CRAFT INC
ROTOR CLIP CO INC
S&K GROUP LLC
S&S INDUSTRIAL SUPPLY I
SAFETY WEAR
SAFETY-KLEEN
SCHEID PLUMBING HEATING
SCHUSTER SHEET METAL, INC
SEAVERS LAWN SERVICE INC
SECURITAS SECURITY
SEEGER-ORBIS
SHORELINE METAL FABRICATO
SIEMENS INDUSTRY INC
SIEMENS-WEISS SPINDLE TECH
SIMPSON TECHNOLOGIES
SKF SEALING SOLUTIONS
SL GREEN SHEET METAL FAB

11

SOUTHERN STATE TOYOTA
SPLUNK INC
STANDARD MEASUREMENT SYSTE
STANDARD TOOL AND DIE INC
STAPLES BUSINESS ADVANTAG
SUMMIT FUNDING GROUP
SUN COAST PACKAGING INC
SUNBELT RENTALS
SUNSOURCE ACTIVATION
SUPER AUTO FORGE INC
SUR-FORM CORPORATION
TECHNICAL EQUIPMENT
TECHNICAL REPAIR SOLUTIONS
TELESIS TECHNOLOGIES INC
TENNANT SALES & SERVICE
TENURGY
THERMAL PRODUCTS CO
THERMALTEK INC
TIE TENNESSEE IND ELECT
TK SERVICES LLC
TONI CERVELLO
TOOL CRAFT CORP.
TOOLING CONCEPTS, INC
TRIDONN CONSTRUCTION CO
UHY LLC
ULINE
UNIFIRST CORPORATION
UNITED STEELWORKERS
USHER OIL COMPANY
UTSI FINANCE
VALU TEC INC
VEYANCE INDUSTRIAL SER INC
VGAGE
VICO PRODUCTS
VISI TRAK WORLDWIDE LLC
VJ TECHNOLOGIES INC
WASTE MANAGEMENT
WES-TECH AUTOMATION
WOODMARK FOREST INDUSTRIES
WORKER TRAINING FUND
YAREMA DIE & ENGINEERING
YOUNGBLOOD AUTOMATION

ZF LEMFORDER SISTEMAS

ACTION INDUSTRIAL SUPPLY
ALEXANDERS INDUSTRIAL SERV
AMERICAN CONST. TRADES INC
APPLIED FOUNDRY SOLUTIONS
BRUSS NORTH AMERICA INC
BUILDING UNLIMITED
CENTRAL CMS
CNC SYSTEM SALES INC
CONTINENTAL CARBONIC PROD
CUSTOM COATING INC
DAYS MACHINERY MOVERS
DELTA DENTAL
DME COMPANY
DYNAMIC INTERNATIONAL OF
EMERGENCY RADIO SERVICES
ERICKSONS INC
FEDERAL SCREW WORKS
FRAZA FORKLIFTS
HA INTERNATIONAL LLC
HICKMAN, WILLIAMS & CO
HOWARD AND HOWARD
I SQUARED R ELEMENT CO
IMPERIAL DESIGN
INDIANA MICHIGAN POWER
INDUCTOTHERM
INDUSTRIAL COMBUSTION
INDUSTRIAL METAL FABRICATO
INDUSTRIAL PIPING & MAINT
INTERNATIONAL PAPER
JNB MACHINE INC
KINGSBURY AN OPTIMATION CO
KUEHNE & NAGEL INC
LEVIATHAN CUTTING TOOL INC
LMC TECHNOLOGY LLC
MAGMA FOUNDRY TECHNOLOGIES
MAGNAFLUX
MCBROOM ELECTRIC COMPANY
MICHIGAN FLUID POWER INC
MIDWEST SAFETY PRODUCTS
MK & ASSOCIATES

12

MNP CORPORATION
MORGANITE CRUCIBLE INC
MSC LLC
MTS SYSTEMS CORPORATION
MULTI PRECISION DETAIL INC
NEFF ENGINEERING CO INC
NORTHERN ELECTRIC CO
OIL CHEM INC
PERFECT PATTERNS INC
PLUMMERS ENVIRONMENTAL
PRAXAIR DISTRIBUTION, INC.
PRECISION STEEL SERVICES
PRZ TECHNOLOGIES
REFRACTORY SALES
RMT WOODWORTH
SATTLER INC
SERVICE ONE
SIMCO SUPPLY LLC
SKYWAY PRECISION INC
SNAVELY'S MACHINE & MFG C
SNELLING STAFFING SERVICES
SOMERSET CONTRACTING, INC
SPECIALTY FOUNDRY PRODUCT
STRONG INDUSTRIAL SUPPLY
STS OPERATING INC
THE P.P.M. GROUP INC.
UMETCO INC
VIGEL NORTH AMERICA INC
WABASH ELECTRIC SUPPLY IN
WEST MICHIGAN RUBBER AND S
WESTPACK
WHEEL ABRATOR
WINOA USA INC

ACTIVE AERO CHARTER INC.
ACUMENT GLOBAL TECHNOLOGIE
ACUREN INSPECTION
AEROTEK INC.
AFCO
AHAUS TOOL & ENGINEERING,
ALEASTUR OF AMERICA LLC
ALFE HEAT TREATING INC

ALLEGIANT INTERNATIONAL
ALLIED MINERAL PRODUCTS
ALUMALLOY METALCASTING CO
AMERICAN EXPRESS
ANDERSON GLOBAL
ARROW UNIFORM
ATD ENGINEERING AND MACHIN
AUTOMATIC DATA PROCESSING
B&H PATTERN INC
BDI
BOSELLO HIGH TECH - ITALY
BREMBO NORTH AMERICA
C.H. ROBINSON
CARPENTER BROTHERS INC
CIFUNSA DEL BAJO SA DE CV
CPC EUROPE EOOD
CTR CENTRAL CORPORATION
DALTON CORP WARSAW MANUF
DAUBER COMPANY INC
DAVID J JOSEPH CO
DEWOLFF BOBERG & ASSOC INC
DISA
DTR INDUSTRIES
ELECTRIC MELTING SERVICES
EMO TRANS COSTOMIZED
EMPIRE REFRACTORY SERVICE
ERNST & YOUNG LLP
ETA ENGINEERING
FABRI FORM COMPANY
FANUC CNC AMERICA
FANUC ROBOTICS AMERICA INC
FELMAN TRADING INC
FERROSOURCE DIVN OF STE
FIBRO INC
FUCHS LUBRICANTS CO
GMR DESIGN INC
GRIFFIN TOOL INC
INDIANA REFRACTORIES INC
JR AUTOMATION TECHNOLOGIE
KENDALL ELECTRIC INC
KOBE ALUMINUM AUTO PROD
LARPEN METALLURGIAL

13

LEE INDUSTRIAL CONTRACTING
MAKINO INC
MATRIX QUALITY SERVICES
MAZAK CORP
MCM USA
MCMASTER CARR
MELTEX/MARTIN BROTHERS
METAL TECHNOLOGIES INC
MOLTEN METAL EQUIPMENT
MSC INDUSTRIAL SUPPLY CO
MUSCOGEE COUNTY TAX COMM
NBJX USA INC
NEC ELECTRICAL SUPPLY
NTN BEARINGS
NXT CAPITAL LLC
PACIFIC WESTERN BANK
PARAGON ATLANTIC
PERFECT PATTERNS SOUTH
PORTER WARNER
PRO SERVICES INC
PROGRESSIVE FINISHES INC
PYROTEK INC
RAVENNA PATTERN
REFRACTORY SPECIALIST LLC
ROCKNELL FASTENER, INC
ROY METAL FINISHING CO
SCHMOLZ BICKENBACH
SCHNITZER SOUTHEAST
SETCO
SHELLS INC
SMITH GRAY ELECTRONIC CO
SPECIALTY FOUNDRY PRODUCTS
SSA & COMPANY
SSI TECHNOLOGIES
STRATOSPHERE QUALITY LLC
SUSTAINED QUALITY
SW INDUSTRIES INC
TEST EQUIPMENT DISTRIBUTO
TOOL NORTH
TOTAL MANUFACTURING
TPS LLC RIVERSIDE
TRIPLE M METAL LP

TRW CANADA LTD
ULTRA TECH
UNIVERSAL CONTAINER CORP
VALICOR SEPERATION (SRS)
VEKTEK INC
VIBRACOUSTIC GMBH & COMPA
VIGEL MANUFACTURING TECH
VORWERK AUTOTEC GMBH & CO
WALKER FORGE TENNESSE LLC
WESTAFF
WUHAN CAIEC
XY TOOL & DIE INC
YODER OIL CO INC
ZEMAN TOOL AND MTG
ZOLLER INC

AKEBONO GLASGOW
AMERICAN COLLOID COMPANY
ANDERSON EXPRESS
AUTOMATION SYSTEMS & DESI
BENNETT TOOLING SOLUTIONS
BREMBO S.P.A.
CENTRAL CORPORATION CTR
DONGAH AMERICA INC
EMPLOYMENT PLUS INC
GLOBE METALLURGICAL INC
HHI FORMTECH, LLC.
INDUSTRIAL CONTROL REPAIR
JINYOUNG INDUSTRIAL CO
LAURAND ASSOCIATES INC
MANPOWER
MOTION INDUSTRIES INC
NISSAN TRADING CORP AMERIC
PUSAN CAST IRON CO.,LTD
RUBBER ENTERPRISES INC
TENNECO AUTOMOTIVE
TRELLEBORG AUTOMOTIVE

**Over $1M**
AKEBONO BRAKE CORPORATION
AKEBONO CORP
ALCOA

14

AUTOMOTIVE CASTING TECHNOL
BECK ALUMINUM CORP
C.H. ROBINSON COMPANY, INC
CADILLAC CASTING INC
COBRA TRADING
CTC CASTING TECHNOLOGIES
DYNAMIC MACHINE OF DETROIT
FAGOR EDERLAN S COOP
GE CAPITAL
GENERAL ALUMINUM
GREDE LLC - REEDSBURG
GREDE LLC - ST. CLOUD
GSM RECYCLING
ILJIN USA
KOYO BEARINGS NORTH AMERIC
NTN BEARING CORPORATION
OMNISOURCE CORP SCRAP
PF MARKEY INC
SKF USA INC
TUOPU NORTH AMERICA LTD
ZF CHASSIS COMPONENTS LLC
ZF LEMFORDER CORPORATION
ZHONGDING USA INC

**Landlords**
Bravo Family L.L.C.
CMX Investment Associates Limited
Partnership
Consulting Project Managers, Inc.
Galleria Properties, LLC
iStar DMI, LLC
Petit Street Industrial, L.L.C.
UTSI Finance, Inc.
O'Keefe & Associates Consulting, L.L.C.
NS Dedham Acquisition LLC

**United States Bankruptcy Judges for the S.D.N.Y.**
Honorable James L. Garrity
Honorable Cecelia G. Morris
Honorable Martin Glenn
Honorable Robert D. Drain

Honorable Robert E. Gerber
Honorable Robert E. Grossman
Honorable Sean H. Lane
Honorable Shelley C. Chapman
Honorable Stuart M. Bernstein
Honorable Michael E. Wiles
Honorable Allan L. Gropper

**Office of the United States Trustee**
Andrea B. Schwartz
Andy Velez-Rivera
Anna M. Martinez
Brian S. Masumoto
Catletha Brooks
Danny A. Choy
Elisabetta Gasparini
Elizabeth C. Dub
Ercilia A. Mendoza
Greg M. Zipes
Linda A. Riffkin
Maria Catapano
Marilyn Felton
Mary V. Moroney
Myrna R. Fields
Nadkarni Joseph
Nazar Khodorovsky
Paul K. Schwartzberg
Richard C. Morrissey
Savitri Nguyen
Serene Nakano
Stephanie B. Crowder
Susan Golden
Sylvester Sharp
Victor Abriano

**Shareholders**
Platinum Dharma Principals, LLC
Platinum Equity Capital Dharma Partners, L.P.
Platinum Equity Capital Dharma Partners-A, L.P.
Platinum Equity Capital Dharma Partners-PF, L.P.
Platinum Equity Capital Partners III, L.P.

WEIL:\95271027\1\35076.0003

Platinum Equity Capital Partners-A III, L.P.
Platinum Equity Capital Partners-B III, L.P.
Platinum Equity Capital Partners-C III, L.P.

**Non-Debtor Parents**
Dharma Holding Corporation
Triomphe Intermediate Holding Corporation

**Holders of 5 Largest Secured Claims**
BMO Harris Bank, N.A.
NHMG Financial Services, Inc.
NXT Capital, LLC
Pacific Western Bank
U.S. Bank National Association

**Customers**
AEB Dienstleistungen
Alliance of Automobile Manufacturers
American Axle & Manufacturing ("AAM")
Android Industries L.L.C.
Bayerische Motoren Werke AG ("BMW")
Bendix Commercial Vehicles Systems LLC
Benteler Automobiltechnick GmbH
Benteler International AG
Bentley Motors Limited
Bilstein & BWI
Brembo S.p.A.
Busche-CNC
BWI Group
Chery Quantum Auto. Co., Ltd. ("CQAC")
a/k/a/ Qoros Automotive Co., Ltd.
Chrysler Group LLC
Continental Teves, Inc. a/k/a/ Continental
Automotive
Daimler Group
Dana Holding Corporation
Detroit Diesel Corporation ("DDC")
Dongfeng Peugeot-Citroen ("DPCA")
Fiat Chrysler Automobiles
Fiat S.p.A.
Ford Motor Company ("Ford")
Geely
General Motors ("GM")
GEP
Huizhong Electrical Auto Parts

Hyundai Mobis
Magna International Inc.
Mando Corporation
Mazda Motor Corporation
Mercedes-Benz USA, LLC
Metric Manufacturing Company
Nexteer Automotive
Nissan Motor Co., Ltd. ("Nissan")
Paragon Automotive
PSA Peugeot
Reliance Automotive, Inc.
Renault S.A.
The Piston Group
Toyota Motor Corporation ("Toyota")
TRW Automotive
Volkswagen Group ("VW")
ZF Lemforder Corporation
Zhejiang Geely Holding Group ("Geely")

**Unions**
International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, Local Union 481
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial
and Service Workers International Union –
Local Union #2948

**Competitors**
3Point Machine, Inc.
Brembo S.p.A.
Busche
Cadillac Casting Inc.
CTC Casting
Fagor Ederlan Group
Fujiwa/ Liufeng (FJW)
General Aluminum Mfg. Company
(GAMCO)
Georg Fischer
GF Automotive
GF Machining Solutions
GF Pipin Systems
Grede Casting Integrity
Hitachi Metals America
KSM Castings Group

WEIL:\95271027\1\35076.0003

Le Belier
Montupet SA
Saint Jean Industries
The Sakthi Group

17

**SCHEDULE 2**

**Lazard's Connection with Potential Parties-in-Interest**

WEIL:\95271027\1\35076.0003

### Lazard's Connection with Potential Parties-in-Interest

American Colloid Company
American Express
Android Industries
Apollo Dif Management LLP
Ares Management LLC
AT&T Mobility
ATT Wireless
Bank of Montreal
Bank of America Leasing & Capital LLC
BNP Paribas
Compass Energy Gas Services, LLC
DTE Energy
DTE Energy Company
Ericksons Inc.
Fiat S.p.A.
GE Business Financial Services, Inc.
GE Capital
General Electric Capital Corporation
General Electric Investment Corp
General Motors
GSO Capital Partners
IBM Credit LLC
IBG Asset Management Bv
ING Investment Management LLC
Intergys Energy services
Intermec
Microsoft Software
New York Power Authority
Oaktree Capital Management
Oaktree Capital Management, LLC
Och-Ziff Capital Management LP
Platinum Dharma Principals, LLC
Platinum Equity Capital Partners, L.P.
Platinum Equity Capital Partners-A, L.P.
Platinum Equity Capital Partners-PF, L.P.
Platinum Equity Capital Partners III, L.P.
Platinum Equity Capital Partners A-III, L.P.
Platinum Equity Capital Partners B-III, L.P.
Platinum Equity Capital Partners C-III, L.P.
Power Authority of the State of New York
(NYPA)
Siemens
Siemens Industry Inc

Siemens-Weiss Spindle Tech
United States Treasury

3