Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                        :
**In re**                               :        **Chapter 11**
                                        :
**CHASSIX HOLDINGS, INC.,** *et al.,*   :        **Case No. 15-_____ (___)**
                                        :
                                        :        **(Joint Administration Pending)**
                    **Debtors.**[1]     :
                                        :
                                        :
-------------------------------------------------------x

### MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN FTI CONSULTING, INC. AND TO PROVIDE THE DEBTORS AN INTERIM CHIEF FINANCIAL OFFICER AND CERTAIN ADDITIONAL PERSONNEL

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and

certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

"**Debtors**," and together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

**Background**

1.  On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors ("**Creditors Committee**") has been appointed in these chapter 11 cases.

2.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.  The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations. Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

4.  Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on the date hereof (the "**Allan Declaration**"), which has been filed with the Court contemporaneously herewith.

2

**Jurisdiction**

5.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6.       By this Motion, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, the Debtors request authority to retain FTI Consulting, Inc. ("**FTI**") and to provide the Debtors with an Interim Chief Financial Officer ("**Interim CFO**") and certain Additional Personnel (as defined below) pursuant to the terms and conditions of that certain agreement between the Debtors and FTI, effective as of January 23, 2015 (the "**New Engagement Letter**").[2]  The New Engagement Letter provides that David J. Woodward, a Senior Managing Director with FTI, will serve as the Debtors' Interim CFO in connection with the Debtors' restructurings.  The New Engagement Letter further provides for the services of additional staff (the "**Additional Personnel**," and, together with the Interim CFO, the "**FTI Professionals**") of FTI to assist the Debtors with their restructuring process.  A proposed form of order granting the relief requested in the Motion is attached hereto as **Exhibit "A"** (the "**P**roposed Order").  A copy of the New Engagement Letter is attached as an exhibit to the Proposed Order.  In support of the Application, the Debtors submit the declaration of Mr. Woodward (the "**Woodward Declaration**") annexed hereto as **Exhibit "B**."

**The Retention of FTI**

7.       In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of

---

[2] In the event of any inconsistencies between the description of the FTI engagement described in this Motion and the terms of the New Engagement Letter, the terms of the New Engagement Letter shall control.

experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates. The Debtors are familiar with the professional standing and reputation of FTI and Mr. Woodward, as well as the other Additional Personnel, who the Debtors understand and recognize have a wealth of experience in providing consulting services in restructuring and reorganizations.

8.    The FTI Professionals are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise regarding chapter 11 proceedings. In particular, Mr. Woodward has over 34 years of financial, operating, and mergers and acquisitions experience in a variety of industrial sectors, including more than 25 years of experience in the transportation (automotive and heavy truck) industries. The FTI Professionals specialize in interim management, crisis management, turnaround consulting, operating due diligence, debtor and creditor advisory, and financial/operational restructuring. FTI's debtor advisory services have included a range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts and business plans, developing and validating weekly cash flow forecasts, monitoring and managing cash, supplier negotiations and strategy, assessing cost reduction strategies, and assisting with customer negotiations and strategy.

9.    FTI is also familiar with the Debtors' businesses, financial affairs, and capital structure. Prior to the Commencement Date, FTI was retained by the Debtors, pursuant to engagement letter dated October 3, 2014 (the "**Financial Advisory Engagement Letter**"), to provide financial advisory and consulting services to the Debtors. Since FTI's initial retention, FTI Professionals have worked closely with the Debtors' management and other professionals in managing and tracking the Debtors' performance, monitoring and forecasting cash flow and

WEIL:\95271016\1\35076.0003

liquidity, engaging in discussions with the Debtors' customers, analyzing and evaluating the

Debtors' vendors and suppliers, evaluating strategic alternatives, and the myriad of requirements

of these chapter 11 cases. Furthermore, since assuming the role of Interim CFO, Mr. Woodward,

and the other professionals at FTI, have assumed an even greater role and responsibilities with

respect to the Debtors' finances and operations. Consequently, the Debtors believe that FTI has

developed significant relevant experience and expertise regarding the Debtors and is thus both

well qualified and uniquely suited to deal effectively and efficiently with matters that may arise

in the context of these cases. Accordingly, the Debtors submit the retention of FTI on the terms

and conditions set forth herein is necessary and appropriate, is in the best interest of their estates,

creditors, and all other parties in interest, and should be granted in all respects.

### Scope of Services

10.     As set forth above, FTI was initially retained by Weil, Gotshal & Manges

LLP ("**Weil**"), pursuant to the Financial Advisory Engagement Letter, to provide financial

advisory and consulting services in support of the Debtors' evaluation of strategic alternatives.

Under the New Engagement Letter, FTI will provide Mr. Woodward to serve as the Debtors'

Interim CFO reporting to the Debtors' chief executive officer (the "**CEO**"), J. Mark Allan, and

the members of the Debtors' board of directors. Mr. Woodward, along with the FTI

Professionals, will have such duties as the CEO and/or the board of directors may from time to

time determine, including, without limitation, such duties and responsibilities as are customary

of an Interim CFO at a company of similar size and operations. These services are necessary to

enable the Debtors to maximize the value of their estates and successfully complete their

restructuring.

WEIL:\95271016\1\35076.0003

**FTI's Disinterestedness**

11.    To the best of the Debtors' knowledge, information and belief, neither FTI nor any professional employee or independent contractor of FTI has any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Woodward Declaration.

12.    Although the Debtors submit that the retention of FTI is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Woodward Declaration.  The Woodward Declaration discloses, among other things, any relationship that either Mr. Woodward or any individual member of the Additional Personnel has with the Debtors, their creditors, or other parties in interest.  Based upon the Woodward Declaration, the Debtors submit that FTI is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy code.

13.    In addition, as set forth in the Woodward Declaration, FTI has conducted a review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, FTI will supplement its disclosure to the Court.

**Terms of Retention**

14.    The Debtors propose to compensate FTI in accordance with the following compensation structure detailed in the form of the New Engagement Letter attached to the Proposed Order and summarized below:

    a.    <u>Monthly Fee</u>:  FTI will receive a monthly, non-refundable advisory fee of $125,000 per month for the services of Mr. Woodward.

    b.    <u>Hourly Rates</u>:  The customary hourly rates, subject to periodic adjustments, charged by FTI professionals anticipated to be assigned to this case are as follows:

| Position | Rate per Hour (USD) |
|---|---|
| Senior Managing Directors | $800-925 |
| Directors / Managing Directors | $580-765 |
| Consultants/Senior Consultants | $300-550 |
| Administrative / Paraprofessionals | $125-250 |

15.    The Debtors understand that FTI revises its rates for services periodically, and the Debtors will pay such rates as reasonably adjusted without altering or limiting the Debtors' obligation to compensate FTI in accordance with the Engagement Letter.  The Debtors further understand that FTI does not provide any assurance regarding the outcome of its work and that its fees will not be contingent on the results of such work.

16.    Prior to any increases in rates as set forth in paragraph 13, FTI shall file a supplemental affidavit with the Court and give ten business days' notice to the Debtors, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") and any official committee, which supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

17.    FTI currently holds $250,000 "on account" to be held as an "evergreen retainer" and as continuing security for the payment of fees and expenses to FTI and to be applied to any unpaid amounts due to FTI at the completion of their engagement, with the unused portion of the retainer refunded to the Debtors upon payment in full of all fees and expenses.

WEIL:\95271016\1\35076.0003

18.    In addition to compensation for professional services rendered by FTI Professionals, FTI will seek reimbursement for reasonable and necessary expenses incurred in connection with the Debtors' chapter 11 cases, including but not limited to telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the engagement.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable allocated direct expenses with respect thereto.

19.    To maintain transparency, FTI will file with the Court and serve on the Debtors, the U.S. Trustee, and all official committees a report on staffing (the "**Staffing Report**") by the 20th of each month for the previous month, which report would include the names and tasks filled by all FTI Professionals involved in this engagement.  The Staffing Report (and FTI's staffing for this matter) would be subject to review by the Court in the event so requested by any party in interest.

20.    If the Court approves the relief requested herein, FTI will be employed as a restructuring officer pursuant to section 363 of the Bankruptcy Code, rather than as a professional under section 327 of the Bankruptcy Code.  Accordingly, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, FTI will file with the Court, and provide notice to the U.S. Trustee, and all official committees, reports of compensation earned and expenses incurred on a monthly basis that shall summarize the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses occurred.  Parties in interest in these chapter 11 cases shall have the right to object to FTI's compensation and expenses within twenty (20) days

8

after FTI files such reports.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed.

21.    Given the numerous issues which the FTI Professionals may be required to address in the performance of their services, FTI's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements in the New Engagement Letter are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## Indemnification

22.    The Engagement Letter contains standard indemnification language with respect to FTI's services.  Notwithstanding such language, the Debtors and FTI have agreed that that the only FTI personnel eligible for indemnification from the Debtors shall be those who are serving as executive officers.  The indemnification provided to FTI personnel serving in these roles shall be on the same terms as provided to the Debtors' other officers and directors under the respective corporate bylaws and applicable state law, along with insurance coverage under the Debtors' director's and officer's liability policies.  FTI will file a supplemental disclosure with the Court regarding any revisions made to the list of officers and directors.  There shall be no other indemnification of FTI or its affiliates as provided in the Jay Alix Protocol.

## Dispute Resolution Provisions

23.    The Debtors and FTI have agreed that this Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with FTI's engagement described in this Motion.  Additionally, FTI and the Debtors irrevocably and unconditionally agree to waive trial by jury in any action, proceeding, or counterclaim arising out of or relating to FTI's services or any such other matter.

9

**Applicable Authority**

24.     The Debtors seek approval of the employment of FTI pursuant to section 363 of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary court of business, property of the estate."  11 U.S.C. § 363(b)(1).  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

25.     Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g.*, *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

26.     The retention of FTI and its professionals is a sound exercise of the Debtors' business judgment.  The FTI Professionals have extensive experience as advisors for many troubled companies.  The Debtors believe that the FTI Professionals will provide services that benefit the Debtors' estates and creditors.

27.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and, therefore, should be granted in these chapter 11 cases.

WEIL:\95271016\1\35076.0003

**Waiver of Bankruptcy Rules 6004(a) and (h)**

28.    Due to the exigencies of this case, and the Debtors' immediate need for

FTI's services, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule

6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property

under Bankruptcy Rule 6004(h).

**Notice**

29.    Notice of this Motion has been provided to (i) the U.S. Trustee; (ii) the

holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the

holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis);

(iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain

Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v)

the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9

1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware

Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK

Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal

Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys

for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity

Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue

Service; and (xiv) the United States Attorney's Office for the Southern District of New York.

The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no

other or further notice need be provided.

30.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

11

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
      New York, New York

          /s/ Ray C. Schrock, P.C.
          Marcia L. Goldstein
          Ray C. Schrock, P.C.

          **WEIL, GOTSHAL & MANGES LLP**
          767 Fifth Avenue
          New York, New York 10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007

          *Proposed Attorneys for Debtors*
          *and Debtors in Possession*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
                                        :

In re                                 :        **Chapter 11**
                                          :

**CHASSIX HOLDINGS, INC.,** *et al.*,     :       **Case No. 15-_____ (___)**
                                          :

                                          :       **Jointly Administered**
                   **Debtors.**[1]       :
                                          :
-------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 363(b)**
**AND 105(a) AUTHORIZING THE DEBTORS TO RETAIN FTI**
**CONSULTING, INC. AND TO PROVIDE THE DEBTORS AN INTERIM**
**CHIEF FINANCIAL OFFICER AND CERTAIN ADDITIONAL PERSONNEL**

Upon the motion, dated March ___, 2015 (the "**Motion**"),[2] of Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the Debtors to retain FTI Consulting, Inc. ("**FTI**") and to provide the Debtors with an Interim Chief Financial Officer ("**Interim CFO**") and certain Additional Personnel pursuant to the terms and conditions of that certain agreement between the Debtors and FTI, effective as of January 23, 2015 (the "**New Engagement Letter**"), all as more fully set forth in the Motion;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

and upon the Declaration of David J. Woodward filed in support of the Motion (the "**Woodward Declaration**"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28. U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"); (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New York; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York (the "**Allan Declaration**")

WEIL:\95271016\1\35076.0003

filed contemporaneously with the Motion, the record of the Hearing and all of the proceedings

had before the Court; and the Court having found and determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest,

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that in accordance with Section 363 of the Bankruptcy Code, the

Debtors are authorized to retain FTI pursuant to the terms and conditions of the  New

Engagement Letter, a copy of which is annexed hereto as **Exhibit "1,"** as modified herein; and it

is further

ORDERED that the fees set forth in the New Engagement Letter are approved;

and it is further

ORDERED that FTI and its affiliates will not act in any other capacity (for

example, and without limitation, as a financial advisor, claims agent/administrator, or

investor/acquirer) in connection with the Debtors' chapter 11 cases; and it is further

ORDERED that in the event the Debtors seek to have FTI personnel assume

executive officer positions that are different than the positions disclosed in the Motion, or to

materially change the terms of the engagement by either (i) modifying the functions of

personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement,

a motion to modify the retention shall be filed; and it is further

ORDERED that no principal, employee, or independent contractor of FTI and its

affiliates shall serve as a director of any of the Debtors during the pendency of these chapter 11

cases; and it is further

WEIL:\95271016\1\35076.0003

ORDERED that notwithstanding the indemnification provisions in the New

Engagement Letter, the Debtors and FTI have agreed that that the only FTI personnel eligible for

indemnification from the Debtors shall be those who are serving as executive officers.  The

indemnification provided to FTI personnel serving in these roles shall be on the same terms as

provided to the Debtors' other officers and directors under the respective corporate bylaws and

applicable state law, along with insurance coverage under the Debtors' director's and officer's

liability policies.  There shall be no indemnification of FTI or its affiliates; and it is further

ORDERED that prior to any increases in FTI's rates as set forth in New

Engagement Letter, FTI shall file a supplemental affidavit with the Court and give ten business

days' notice to the Debtors, the U.S. Trustee, and any official committee, which supplemental

affidavit shall explain the basis for the requested rate increases in accordance with

section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received

notice of and approved the proposed rate increase; and it is further

ORDERED that FTI will file with the Court and serve on the Debtors, the U.S.

Trustee, and all official committees a report on staffing (the "**Staffing Report**") by the 20th of

each month for the previous month, which report would include the names and tasks filled by all

FTI Professionals involved in this engagement.  The Staffing Report (and FTI's staffing for this

matter) shall be subject to review by the Court in the event so requested by any party in interest;

and it is further

ORDERED that FTI will not be required to submit fee applications pursuant to

sections 330 and 331 of the Bankruptcy Code.  Instead, FTI will file with the Court, and provide

notice to the U.S. Trustee, and all official committees, reports of compensation earned and

expenses incurred on a monthly basis that shall summarize the services provided, identify the

4

compensation earned by each executive officer and staff employee provided, and itemize the expenses occurred. Parties in interest in these chapter 11 cases shall have the right to object to FTI's compensation and expenses within twenty (20) days after FTI files such reports. Such compensation and expenses shall be subject to Court review in the event that an objection is filed; and it is further

ORDERED that for a period of three years after the conclusion of FTI's engagement, neither FTI nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors, as applicable; and it is further

ORDERED that FTI shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. This obligation is a continuing obligation; and it is further

ORDERED that to the extent this Order is inconsistent with the New Engagement Letter, this Order shall govern; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(a) are hereby waived; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the Debtors are authorized to take all steps necessary to carry out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation and/or enforcement of this

Order.

Dated: _____, 2015
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**New Engagement Letter**



FTI Consulting Inc.
223 West Monroe Street
www.fticonsulting.com

CONFIDENTIAL

January 14, 2015

Mr. J. Mark Allan
300 Galleria Officentre
Suite 501
Southfield, MI 48034

**Re:  Chassix Interim Management**

Dear Mr. Allan:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") between Chassix Holdings, Inc. and its subsidiaries (the "Client," "Company," or "Chassix") and FTI Consulting, Inc. ("FTI") concerning the Client's engagement of FTI to provide the Temporary Officer and Hourly Temporary Employees (each as herein defined), and  the services set forth herein, in connection with a restructuring or recapitalization of the Company's long-term indebtedness (the "Engagement").  This Agreement is effective on January 23, 2015 (the "Effective Date"). The FTI Standard Terms and Conditions attached hereto as Exhibit "A" are also incorporated herein and is part of this Agreement.

1.    **Temporary Officers, Hourly Temporary Employees and Services**

FTI will provide David J. Woodward to serve as the Client's Interim Chief Financial Officer (the "CFO" or the "Temporary Officer") reporting to Chassix's Chief Executive Officer ("CEO") and the members of Chassix's board of directors (the "Board"), in connection with the Engagement. The Temporary Officer, as well as any additional Hourly Temporary Staff shall have such duties as the CEO and/or the Board may from time to time determine, including, without limitation, such duties and responsibilities as are customary of a chief financial officer at a company of similar size and operations (the "Services"). Without limiting the foregoing, the Temporary Officer, as well as any Hourly Temporary Staff, shall work with other senior management of the Client, and other professionals, to provide the Services.

In addition to the Temporary Officer, FTI may also provide the Client with additional staff (the "Hourly Temporary Staff" and, together with the Temporary Officer, the "FTI Professionals"), subject to the terms and conditions of this Agreement. The Hourly Temporary Staff may be assisted by or replaced by other FTI professionals reasonably satisfactory to the CEO, as required, who shall also become Hourly Temporary Staff for purposes hereof. FTI will keep the CEO reasonably informed as to FTI's staffing and will not add additional Hourly Temporary Staff to the assignment without first consulting with the Client.

For the avoidance of doubt, the Services do not include (i) audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice or similar specialist and other professional services which are typically outsourced and which shall be obtained directly where required by the Client at Client's expense; or (ii) investment banking, including valuation or securities analysis, including advising any

1



party or representation of the Client on the purchase, sale or exchange of securities or representation of the Client in securities transactions. FTI is not a registered broker-dealer in any jurisdiction and will not offer advice, opinions, or any testimony on valuation or exchanges of securities or on any matter for which FTI is not appropriately licensed or accredited. An affiliate of FTI is a broker-dealer but is not being engaged by the Client to provide any investment banking or broker-dealer services. The Client agrees to supply office space and office and support services to FTI as reasonably requested by FTI in connection with the performance of its duties hereunder.

The parties previously entered into an engagement letter dated as of October 3, 2014 (the "October Engagement Letter") to provide the Client with certain financial advisory services. The parties acknowledge and agree that, as of the date herein, the October Engagement Letter is terminated and, except with respect to any provisions that expressly survive termination, is no longer in effect.

## 2.    **Compensation to FTI**

Monthly Fee

For services rendered in connection with this assignment, the Client agrees to pay FTI a monthly, non-refundable advisory fee of $ 125,000  for the services of David J. Woodward.

Hourly Temporary Staff

For services rendered by Hourly Temporary Staff, the Client will be billed at the current hourly rate for such staff. Fees are payable in advance and may be billed as frequently as weekly but  not less frequently than monthly.

### United States

|  | Per Hour (USD) |
| --- | --- |
| Senior Managing Directors | $800- 925 |
| Directors / Managing Directors | 580- 765 |
| Consultants / Senior Consultants | 300- 550 |
| Administrative / Paraprofessionals | 125- 250 |

Hourly rates are revised periodically.  To the extent this engagement requires services of our International divions or personnel, the time will be multiplied by our standard hourly rates applicable on International engagements.  Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

In addition to the fees outlined above, FTI will bill for reasonable allocated and direct expenses which are likely to be incurred on your behalf during this Engagement.  Allocated expenses include the cost of items which are not billed directly to the engagement, including administrative support and other overhead expenses that are not billed through as direct reimbursable expenses, and are calculated at 6.0% of FTI's standard professional rates.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.  Travel expenses shall be incurred in accordance with Chassix's travel policy, a copy of which shall be provided to FTI upon request.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.  FTI employees shall have no rights to any of the Company's employee

2



benefits, including, but not limited to, workers' compensation or disability benefits. FTI shall be responsible for the payment of all taxes due hereunder, including, but not limited to, all federal, state, or local taxes with respect to all amounts paid to FTI under this Agreement; however, excluding taxes based upon the Company's income. For the avoidance of doubt, since FTI is not an employee of Chassix or any Chassix affiliated entity, in no event shall Chassix be responsible to pay or withhold any employment-related taxes, fees, or other such similar amount.

While onsite at a Chassix facility, FTI and its employees shall at all times abide by the rules and regulations that apply generally to all employees and visitors, a copy of which shall be provided to FTI upon request. FTI agrees to promptly replace any employee who, in Chassix's sound judgment, Chassix requests the removal of due to such employee's inability or unwillingness to fulfill the obligations and commitments set forth herein. In such an event, Chassix shall not be charged for FTI's time for any Services that must be repeated due to the replacement of personnel as contemplated herein.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may include estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time and as herein defined) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

**Cash on Account:**

Initially, the Company will forward to us the amount of $250,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

Client agrees that FTI is not an employee of the Client and the FTI employees and independent FTI contractors who perform the Services are not employees of the Client, and they shall not receive a W-2 from the Client for any fees earned under this engagement, and such fees are not subject to any form of withholding by the Client. The Client shall provide FTI a standard form 1099 on request for fees earned

3



under this Engagement.

a)  Copies of Invoices shall be sent by facsimile or email as follows:

To the Client at:
300 Galleria Officentre
Suite 501
Southfield, MI 48034

Attention: Mr J. Mark Allan

## 3.    **Availability of Information**

In connection with FTI's activities on the Client's behalf, the Client agrees (i) to furnish FTI with all information and data concerning the business and operations of the Client which FTI reasonably requests, and (ii) to provide FTI with reasonable access to the Client's officers, directors, partners, employees, retained consultants, independent accountants, and legal counsel. FTI shall not be responsible for the truth or accuracy of materials and information received by FTI under this agreement.

## 4.    **Notices**

Notices under this Agreement to the Client shall be provided as set forth in paragraph 2(e).

Notices to FTI shall be to:
223 West Monroe Street
Chicago, Illinois 60606
Attn: David J. Woodward
Phone: 312 252 4058
Fax: 312 759 8119
Email: david.woodward@fticonsulting.com

Notices shall be provided by (a) fax and email, (b) hand delivery, or (c) overnight delivery. If provided by fax and email or hand delivery, the notices shall be deemed effective as of the date given. If provided by overnight delivery, the notices shall be deemed effective as of the date of actual receipt.

## 5.    **Miscellaneous**

This Agreement: represents the entire understanding of the parties hereto and supersedes any and all other prior agreements among the parties regarding the subject matter hereof; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors and assigns; may be executed by facsimile (followed by originals sent via regular mail), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; and may not be waived, modified or amended unless in writing and signed by a representative of the Client and FTI. To the extent that any term or provision of the October Engagement Letter is intended to survive termination, such provision shall be made a part of, and incorporated into, this Agreement. The provisions of this Agreement shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof.

Based on our understanding of the parties involved in this matter, we have compiled a list of interested parties (the "Potentially Interested Parties") and have undertaken a limited review of our records to

4



determine FTI's professional relationships with the Company and such Potentially Interested Parties. From the results of such review, we are not aware of any conflicts of interest or relationships that we believe would preclude us from performing the Services.

As you know, however, we are a large consulting firm with numerous offices throughout the world.  We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

If this letter correctly sets forth our understanding, please so acknowledge by signing below and returning a signed copy of this letter to us.

Very truly yours,

FTI CONSULTING, INC.


By: _____
Name: David L. Woodward
Title: Senior Managing Director



ACCEPTED AND AGREED this _____ day of January 2015.


On behalf of Chassix Holdings, Inc.

By: _____
    Name:    JM ALLAN
    Title:    PRESIDENT

By: _____
    Name:
    Title:

Date: _____22nd January 2015._____

5



**EXHIBIT A**

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Chassix dated as of January 23, 2015 (the "Engagement Letter"). The Engagement Letter and these Standard Terms and Conditions annexed thereto (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.  The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.    Reports and Advice**

1.1     **Use and purpose of advice and reports**— Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned upon the execution of a third party release letter in the form provided by FTI. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.    Information and Assistance**

2.1     **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2     **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required.  You and the Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3     **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof.  Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information.  Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.  Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4     **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information.  There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material.  We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

6



**3.    Additional Services**

3.1    **Responsibility for other parties**— You and the Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the Engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

**4.    Confidentiality**

4.1    **Restrictions on confidential information**— All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

    4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect to the information; or

    4.1.3    is or has been independently developed by the recipient (without the use of confidential information).

4.2    **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than two business days' notice in writing is first given to the other parties.

4.3    **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4    **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews; *provided*, that we shall cause such persons to keep such information confidential in accordance with the terms of this Engagement Contract.

4.5    **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies; *provided*, that we shall keep such materials confidential in accordance with the terms of this Engagement Contract.

4.6    **Mutual Confidentiality Agreement with Chassix** – We acknowledge and agree that we have entered into a Mutual Confidentiality Agreement with Chassix, dated September 30, 2014 ("NDA"), and that nothing contained in this Engagement Contract or the provision of Services shall serve to modify, amend, or terminate the NDA, the terms and conditions of which shall survive as intended in the NDA.

**5.    Termination and Assignment**

5.1    **Termination of Engagement with notice**— Termination of Engagement with notice –This Agreement is terminable by the Client or by FTI at any time upon the giving of thirty (30) days' written notice. Upon

7



such termination by the Client (the "Termination Date"), FTI shall cease work and the Client shall have no further obligation for fees and expenses of FTI arising or incurred after the Termination Date.

5.2     **Continuation of terms**— The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

5.3     **Assignment**—The services outlined in this Agreement are personal services provided by FTI to Chassix. These services may not be assigned without the express consent of Chassix in its sole judgment.

6.     **Indemnification, Insurance and Liability Limitation**

6.1     **Indemnification** – The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted  (an "Adverse Determination").  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

In the event of a bankruptcy, subject to any limitation required by the Bankruptcy Court, the Client agrees to indemnify and hold harmless FTI and its shareholders, directors, officers, managers, employees, contractors, agents and controlling persons (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of the Client, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Indemnified Party shall promptly forward to the Client all written notifications and other matter communications regarding any claim that could trigger the Client's indemnification obligations under this Section 6. If the Client so elects or is requested by an Indemnified Party, the Client will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Client, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Client, or if the Client fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Client will pay the reasonable fees and disbursements of such counsel; provided, however, that the Client will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Client assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. The Client further agrees that the Client will not, without the prior written consent of the Indemnified Party (which consent shall not

8



be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, the Client has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Client's indemnification obligations under this Section 6 without the written consent of the Client, which shall not unreasonably be withheld or delayed or conditioned. The Client will not be liable for any settlement of any action, claim, suit or proceeding affected without the Client's prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of the Client or if there be a final judgment for the plaintiff, the Client agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

This indemnity shall not apply to any portion of any such losses, claims, damages, liabilities, and expenses to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence, willful misconduct or violation of law of any such Indemnified Party.

6.2     **Insurance** –In addition to the above indemnification and provision regarding advancement of fees/expenses, FTI employees serving as directors or officers of the Company or its affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise. The Company shall specifically include and cover employees and agents serving as directors and officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees. Prior to FTI accepting any director or officer position, the Company shall, at the request of FTI, provide FTI a copy of its current D&O policy, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other document that FTI may reasonably request evidencing the appointment and coverage of the indemnitees. The Company shall maintain such D&O insurance for the period through which claims can be made against such persons. In the event the Company is unable to include FTI employees and agents under the Company's policy or does not have first dollar coverage acceptable to FTI in effect for at least $10 million, FTI may, subject to the prior written consent of the Company, attempt to purchase a separate D&O insurance policy that will cover the FTI employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. Notwithstanding anything to the contrary, the Company's indemnification obligations in this Section 6 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of FTI, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by FTI or otherwise).

6.3     **Limitation of liability** – You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

You and the Company agree that no Indemnified Person shall have any liability as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined

9



by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of an Indemnified Person or Persons. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

7.    **Governing Law, Jurisdiction and WAIVER OF JURY TRIAL** — The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction. In the event Chassix commences a case under title 11 of the United States Code, the bankruptcy court having jurisdiction over such case or cases shall have exclusive jurisdiction over any and all matters arising under or in connection with the obligations hereunder. TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

<u>**Confirmation of Standard Terms and Conditions**</u>

Subject to the terms and conditions of the Engagement Letter, we agree that FTI Consulting, Inc. is engaged upon the terms set forth in these Standard Terms and Conditions as outlined above.

**On behalf of Chassix Holdings, Inc.**

By: _____

    Name: _____ JIM ALLAN _____

    Title: _____ PRESIDENT _____

Date: _____ 22nd January 2015 _____

10



**EXHIBIT B**

**INITIAL SCHEDULE OF HOURLY TEMPORARY STAFF**

| Staff | Level |
|---|---|
| Armen Emrikian | Managing Director |
| Brendan Joyce | Senior Director |
| Michael Paykin | Senior Consultant |
| Ryan Wong | Senior Consultant |
| Kathleen Cullen | Consultant |

11

**Exhibit B**

**Declaration of David J. Woodward**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                              :
In re                                         :        Chapter 11
                                              :
CHASSIX HOLDINGS, INC., *et al.*,             :        Case No. 15-_____ (___)
                                              :
                                              :        Jointly Administered
                    Debtors.[1]               :
                                              :
---------------------------------------------------------x

### DECLARATION OF DAVID J. WOODWARD IN SUPPORT OF DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AUTHORIZING THE DEBTORS TO RETAIN FTI CONSULTING, INC. AND TO PROVIDE THE DEBTORS AN INTERIM CHIEF FINANCIAL OFFICER AND CERTAIN ADDITIONAL PERSONNEL

David J. Woodward makes this declaration under 28 U.S.C. § 1746:

1.      I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees "**FTI**"), a financial and restructuring advisory services firm with numerous offices throughout the country. I submit this Declaration on behalf of FTI (the "**Declaration**") in support of the motion (the "**Motion**") of Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**"), for an order pursuant to Sections 363(b) and 105(a) of title 11 of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

Code (the "**Bankruptcy Code**") authorizing the employment and retention of FTI in connection

with a restructuring or recapitalization of the Company's long-term indebtedness under the terms

and conditions set forth in the Motion.  I have over 34 years of financial, operating, and mergers

and acquisitions experience in a variety of industrial sectors, including more than 25 years of

experience in the transportation (automotive and heavy truck) industries.  Except as otherwise

noted,[2] I have personal knowledge of the matters set forth herein.

**Scope of Services**

2.       As set forth in the Motion, prior to the Commencement Date, FTI was

retained by Weil, Gotshal & Manges LLP ("**Weil**"), pursuant to engagement letter dated October

3, 2014 (the "**Financial Advisory Engagement Letter**"), to provide financial advisory and

consulting services to the Debtors.   Pursuant to the Financial Advisory Engagement Letter, FTI

Professionals worked closely with the Debtors' management and other professionals in

managing and tracking the Debtors' performance, monitoring and forecasting cash flow and

liquidity, engaging in discussions with the Debtors' customers, analyzing and evaluating the

Debtors' vendors and suppliers, evaluating strategic alternatives, and the myriad of requirements

of these chapter 11 cases.

3.       Under the certain agreement between the Debtors and FTI, effective as of

January 23, 2015 (the "**New Engagement Letter**"), I will serve as the Debtors' Interim CFO

reporting to the Debtors' chief executive officer (the "**CEO**"), J. Mark Allan, and the members

of the Debtors' board of directors.  The New Engagement Letter further provides for the services

of additional staff (the "**Additional Personnel**," and, together with the Interim CFO, the "**FTI**

**Professionals**") of FTI to assist the Debtors with their restructuring process.  Myself, along with

---

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

2

the FTI Professionals, will have such duties as the CEO and/or the board of directors may from

time to time determine, including, without limitation, such duties and responsibilities as are

customary of an Interim CFO at a company of similar size and operations. These services are

necessary to enable the Debtors to maximize the value of their estates and successfully complete

their restructuring.

### Disinterestedness and Eligibility

4.      In connection with the preparation of this Declaration, FTI conducted a

review of its contacts with the Debtors, their affiliates and certain entities holding large claims

against or interests in the Debtors that were made reasonably known to FTI. A listing of the

parties reviewed is reflected on **Annex "A"** to this Declaration. FTI's review, completed under

my supervision, consisted of a query of the Annex A parties within an internal computer

database containing names of individuals and entities that are present or recent former clients of

FTI. A summary of such relationships that FTI identified during this process is set forth on

**Annex "B"** to this Declaration.

5.      Based on the results of its review, except as otherwise discussed herein,

FTI does not have a relationship with any of the parties on Annex A in matters related to these

proceedings. FTI has provided and could reasonably be expected to continue to provide services

unrelated to the Debtors' cases for the various entities shown on Annex B. FTI's assistance to

these parties has been related to providing various financial restructuring, litigation support,

strategic communications, and/or economic consulting services. To the best of my knowledge,

apart from (i) an ordinary course collateral review on behalf of Chassix's then ABL lender, Bank

of Montreal, completed in the summer of 2014, and (ii) ongoing litigation support services

provided to Chassix through counsel by a separate business unit within FTI, no services have

been provided to these parties in interest which involve their rights in the Debtors' cases, nor

3

does FTI's involvement in this case compromise its ability to continue such consulting services. Going forward, FTI's litigation support services will be provided on an as-needed basis to the Debtors' outside special litigation counsel.

6.      Further, as part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who may represent claimants and parties in interest in the Debtors' chapter 11 cases. Also, FTI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, FTI has in the past, may currently, and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which FTI is to be employed, and none are in connection with these cases.

7.      FTI does not believe it is a "creditor" with respect to fees and expenses of any of the Debtors within the meaning of Section 101(10) of the Bankruptcy Code. Further, neither I nor any other member of the FTI engagement team serving the Debtors, to the best of my knowledge, is a holder of any outstanding debt instruments or shares of the Debtors' stock.

8.      As such, to the best of my knowledge, FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that FTI (i) is not a creditor, equity security holder, or insider of the Debtors, (ii) has not been, within three years before the date of the filing of the Debtors' chapter 11 petitions, (a) an investment banker for a security of the Debtors or (b) an attorney for such an

4

investment banker in connection with the offer, sale, or issuance of a security of the Debtors, (iii) was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors or of any investment banker as specified in part (ii) of this paragraph, and (iv) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders.

9.       In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, FTI neither holds nor represents an interest adverse to the Debtors.

10.       It is FTI's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner.  If any new material relevant facts or relationships are discovered or arise, FTI will promptly file a supplemental declaration.

## Professional Compensation

9.       Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable United States Trustee guidelines and the Local Bankruptcy Rules for the Southern District of New York, FTI will seek payment for compensation in the form of a monthly fee, along with hourly rates for additional work, plus reimbursement of actual and necessary expenses incurred by FTI, as set forth in the New Engagement Letter.

10.       FTI's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Motion for the employment of FTI.  The Debtors understand that FTI revises its rates for services periodically, and the Debtors will pay such rates as reasonably adjusted without altering or limiting the Debtors' obligation to compensate FTI in accordance with the Engagement Letter.

5

FTI does not provide any assurance regarding the outcome of its work and that its fees will not be contingent on the results of such work.

11.    Prior to any increases in rates as set forth in the New Engagement Letter, FTI shall file a supplemental affidavit with the Court and give ten business days' notice to the Debtors, the Office of the United States Trustee for the Southern District of New York, and any official committee, which supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and indicate whether the Debtors have received notice of and approved the proposed rate increase.

12.    FTI currently holds $250,000 "on account" to be held as an "evergreen retainer" and as continuing security for the payment of fees and expenses to FTI and to be applied to any unpaid amounts due to FTI at the completion of their engagement, with the unused portion of the retainer refunded to the Debtors upon payment in full of all fees and expenses.

13.    In addition to compensation for professional services rendered by FTI personnel, FTI will seek reimbursement for reasonable and necessary expenses incurred in connection with the Debtors' chapter 11 cases, including but not limited to telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable direct expenses with respect thereto.

14.    According to FTI's books and records, during the approximately four month period prior to the Debtors' petition date, FTI received $3,000,000 from the Debtors for

6

professional services performed and expenses incurred.  Further, FTI's current estimate is that it

has received unapplied advance payments from the Debtors in excess of pre-petition billings in

the amount of $250,000.  The Debtors and FTI have agreed that any portion of the advance

payments not used to compensate FTI for its pre-petition services and expenses will be held and

applied against its final post-petition billing and will not be placed in a separate account.

15.    To the best of my knowledge, a) no commitments have been made or

received by FTI with respect to compensation or payment in connection with these cases other

than in accordance with the provisions of the Bankruptcy Code and b) FTI has no agreement

with any other entity to share with such entity any compensation received by FTI in connection

with these chapter 11 cases.

I declare under penalty of perjury that, to the best of my knowledge and after

reasonable inquiry, the foregoing is true and correct.

/s/ David J. Woodward
David J. Woodward
Senior Managing Director
FTI Consulting, Inc.

7

## Annex A

## Listing of Parties in Interest Reviewed for Current Relationship

**Debtors, Affiliates & Subsidiaries**
Automotive Properties of New York, LLC
Chassix Holdings, Inc.
UC Holdings, Inc.
Chassix, Inc.
Diversified Machine, Inc.
Diversified Machine Bristol, LLC
Chassix Georgia Machining, LLC
DMI Columbus, LLC
Diversified Machine Montague, LLC
Diversified Machine, Milwaukee LLC
DMI Edon LLC
Mexico Products I, LLC
DMI China Holding LLC
Concord International, Inc.
SMW Automotive, LLC
Automotive, LLC
Chassis Co. of Michigan, LLC
AluTech, LLC

**Trade Names and Aliases (up to 8 years)
(a/k/a, f/k/a, d/b/a)**
Automotive Corporation, Inc.
Chassis Corp. of Michigan
Dharma Merger Corporation
Diversified Machine Bristol, Inc.
Diversified Machine Montague, Inc.
DMI Columbus Real Estate Holdings, LLC
DMI SMW Holding Corporation
Metaldyne Chassis Products, LLC
SMW Automotive Corporation

**Joint Venture of Debtors**
Tirumala Prasad Dhanekula and Associates

**Top 100 Accounts Payable**
Active Aero Charter Inc.
Acument Global Technologies
Acuren Inspection
Aerotek Inc.
AFCO
Akebono Brake Corporation
Akebono Corp.
Akebono Glasgow
Alcoa
Alfe Heat Treating Inc.
Allegiant International
Alumalloy Metalcasting Co.

American Colloid Company
Anderson Express
Automation Systems & Designs
Automotive Casting Technology Inc.
BDI
Beck Aluminum Corp.
Bennett Tooling Solutions
Bosello High Tech – Italy
Brembo North America
Brembo S.p.A.
C.H. Robinson
C.H. Robinson Company, Inc.
Cadillac Casting Inc.
CE Capital
Central Corporation Ctr.
Cobra Trading
CTC Casting Technologies
CTR Central Corporation
Dalton Corp. Warsaw Manufacturing
(Dalton Corporation)
David J. Joseph Co.
Dewolff Boberg & Assoc. Inc.
Dongah America Inc.
DTR Industries
Dynamic Machine of Detroit
Empire Refractory Service
Employment Plus Inc.
ETA Engineering
Fabri Form Company
Fagor Ederlan S. Coop.
Fanuc Robotics America Inc.
Ferrosource Division of Stemcor USA Inc.
Fuchs Lubricants Co.
General Aluminum
Globe Metallurgical Inc.
GMR Design Inc.
Grede LLC- Reedsburg
Grede LLC- St. Cloud
Griffin Tool Inc.
GSM Recycling
HHI Formtech, LLC
Iljin USA
Industrial Control Repair
Jinyoung Industrial Co.
Kendall Electric Inc.
Koyo Bearings North America LLC
Larpen Metallurgical
Laurand Associates In.

Makino Inc.
Manpower
MCM USA
Metal Technologies Inc.
Motion Industries Inc.
MSC Industrial Supply Co.
Muscogee County Tax Commissioner
Nissan Trading Corp. Americas
NTN Bearing Corporation
NTN Bearings
Omnisource Corp Scrap
P.F. Markey Inc.
Pacific Western Bank
Pro Services Inc.
Pusan Cast Iron Co., Ltd.
Pyrotek Inc.
Ravenna Pattern
Roy Metal Finishing Co.
Rubber Enterprises Inc.
Schmolz Bickenbach
Schnitzer Southeast
Setco
Shells Inc.
SKF USA Inc.
SSA & Company
Tenneco Automotive
Test Equipment Distributors
Tool North Inc.
Trelleborg Automotive
Triple M Metal LP
Tuopu North America Ltd.
Valicor Separation Technologies (SRS)
Vibracoustic GmBH & Company
Vigel Manufacturing Technologies
Walker Forge Tennessee LLC
Wuhan Caiec
XY Tool & Die Inc.
Zeman Tool and Mtg
ZF Chassis Components LLC
ZF Lemforder Corporation
Zhongding USA Inc.

**Regulatory Agencies** (Federal, State and Local)
Internal Revenue Service

**Agent for ABL Loan**
BMO Capital Markets, Syndication Agent,
Joint Lead Arranger and Joint Book Runner
BMO Harris Bank N.A., Agent

PNC Bank NA, Documentation Agent, Joint
Lead Arranger and Joint Book Runner

**ABL Syndicated Lenders**
Bank of Montreal
Comerica Bank
PNC Bank NA
Siemens

**Trustee for Senior Secured Notes**
U.S. Bank National Association, Trustee and
Collateral Agent

**Holders of Senior Secured Notes**
Advent Capital
Aegon USA Investment Management LLC
Allstate Life Insurance Company
Anchorage Advisors LLC
Apollo Dif Management LLP
Ares Management LLC
Aristeia Capital, LLC
Armored Wolf LLC
Arrowgrass Capital Partners Llp
Aston Hill Asset Management Inc.
Avenue Investments
AXA Investment Managers Inc.
Balyasny Asset Management LP
Beach Point Capital Management
BlackRock Financial Management
BlueCrest Capital Management Limited
Bnp Paribas (Miami)
Brigade Capital Management LLC
Calvert Asset Management Company Inc
Capstone Investment Advisors LLC
CI Investments Inc.
Ckc Capital LLC
CNA Financial Corporation
Coherence Capital Partners LLC
Credit Suisse Asset Management LLC
Crescent Capital LLC
Delaware Management - Philadelphia
Deutsche Asset Management
Fidelity Management & Research Company
Fore Research & Management LP
General Electric Investment Corp
Global Credit Advisers LLC
Golden Gate Capital Holdings LLC
Golub Capital Partners LLC
GSO Capital Partners LP

2

Guardian Life Insurance
Hartford Life Insurance Co
Hegemony Capital Management Llc
Henderson Global Investors
Hotchkis and Wiley Capital Management LLC
ING Asset Management Bv
ING Investment Management LLC
JP Morgan Investment Management
KLS Diversified Asset Management LP
Liberty Harbor, LLC
Linnfield Capital Corp
Logan Circle Partners LP
Lord Abbett & Company
Lucidus Capital Partners LLP
Mackay Shields LLC
Mackenzie Finan Corp
Metropolitan Life Insurance Company
Metropolitan West Securities LLC
Mid Atlantic Capital Management LLC
MidOcean Credit Opportunity Master Fund, L.P
Millennium Partners
Morgan Stanley Investment Management, Inc.
Neuberger Berman Fixed Income LLC
Nicholas-Applegate Capital Management
Nomura Corporate Research Asset Management Inc
Northern Trust Investment, NA
Nuveen Asset Management
Oaktree Capital Management, LLC
OCH Ziff Capital Management LP
Oppenheimer Funds Inc.
Orchard Hill Capital Management LP
Osterweis Capital Management LLC
Pacific Life Insurance Co
Pax World Mgmt Corp
Penn Capital Management
Pentwater Capital Management LP
Pinebridge Investments LLC
Pioneer Investment Management Inc
PPM America Inc
Providence Equity Partners Inc
Raven Rock Capital LLC
Roystone Capital Management LP
Scottish Widows Investment Partnership Ltd.
Seix Investment Advisors Inc

Silver Rock Financial Llc
Sky Harbor Capital Management LLC
Sound Point Capital Management, Lp
Standard Life Investments Ltd
Standard Life Investments Ltd.
State Of New Jersey
State Street Global Advisors Inc
Susquehanna Investment
Symphony Asset Management
TD Securities (USA) LLC
Tennenbaum Capital Partners
Thornburg Investment Management Inc
Thrivent Financial for Lutherans
Tricadia Capital Mgmt LLC
UBS O'Connor LLC
Wells Capital Management
Whitebox Advisors LLC
York Capital Management

**Trustee for Unsecured Notes**

U.S. Bank National Association, Trustee and Collateral Agent

**Holders of Unsecured Notes**

Aston Hill
Avenue Investments
Capstone Investment
Fidelity Management
General Electric Investment Corp.
Global Capital Advisers
Golden Gate Capital
Henderson Global Investors
Medley Capital LLC
Morgan Stanley Investments
MidOcean Credit Opportunity
Millennium Partners
Nomura Corporate Research
Northern Trust Investment
Oaktree Capital Management
Providence Equity Partners
Raven Rock Capital
Sky Harbour Capital Management

**Capital Lease Counterparties**

Bank of America Leasing & Capital, LLC
California First National Bank
CapitalSource Bank
De Lage Landen Financial Services, Inc.

3

Dell Financial Services L.L.C.
Fifth Third Bank
GE Business Financial Services, Inc.
General Electric Capital Corporation
IBM Credit LLC
Key Equipment Finance
Key Equipment Finance, Inc.
Keybank National Association
Konica Minolta Premier Finance
NMHG Financial Services, Inc.
NXT Capital, LLC
Pacific Western Bank
People's Capital and Leasing Corp.
PNC Equipment Finance, LLC
The Huntington National Bank
Universal Equipment Leasing Company,
LLC
Verizon Credit Inc.
Wells Fargo Equipment Finance, Inc.

### Officers and Directors (current & former up to last 3 years)
**Directors**
*Current Directors*
Bob Wymbs
Eva Kawalski
Mary Ann Sigler
Phil Norment

*Former Directors (Past 6 years)*
Robert Remenar

**Officers**
*Current Officers*
Brad Frederick
Dawn Walloch
Eric Rouchy
Eva Kawalski
J. Mark Allan
Julie Samson
Mary Ann Sigler
Robert Wymbs
Safi Hamid
Sally Ward
Stephen Zollo

*Former Officers (Past 6 years)*
Robert Remenar

### Professionals to be Retained
Ernst & Young, LLP
FTI Consulting Inc.
Joele Frank, Wilkinson Brimmer Katcher
Lazard Frères & Co.
Oliver Wyman Inc.
Weil, Gotshal & Manges LLP

### Ordinary Course Professionals
Alston & Bird LLP
Baker & McKenzie
Brown Rudnick LLP
Capstan Avocats
Ernst & Young
Fragomen Global LLP
Harness Dickey
Howard & Howard
KPMG, LLC
Paradigm
The Dobrusin Law Firm, P.C.
Valu Tec
Warner Norcross & Judd LLP

### Insurance Providers
Allianz
Chartis Specialty Insurance Corporation
First Specialty Insurance Corporation
Great American Assurance Corporation
Insurance Corporation State of Pennsylvania
National Union Fire Insurance Company of Pittsburgh PA
National Union Fire Insurance Corporation
Travelers Property Casualty Corporation
Travelers Property Casualty Corporation of America
US Specialty

### Litigation Parties
Albreit
Allison Transmission, Inc.
Bougerol
C.M.R. Manufacturing Company
Roofcore International
Uzan

### Taxing Authorities (Federal, State, Local)
Alabama Department of Revenue
Ashland Chamber of Commerce
Bedford County Trustee

WEIL:\95271016\1\35076.0003

Benton Charter Township, Michigan
Bureau of Workers' Compensation
Bureau Veritas Mexicana
California Board of Equalization
City of Benton Harbor, Michigan
City of Milwaukee
City of Milwaukee, Office of the City Treasurer
City of Montague, Michigan
City of Morristown
City of Morristown
City of Port Huron Treasurer
City of Shelbyville, Tennessee
City of Southfield, Michigan
City of St. Joseph, Missouri
City of Warren, Michigan Treasurer's Office
City of Warren, Ohio Water Department
City of Wixom
City School District of Batavia, New York
City School District of Broken Arrow, Oklahoma
Commonwealth of Virginia
Comptroller of Public Accounts
Connecticut Department of Revenue
Connecticut Department of Revenue
Connecticut Department of Revenue
Corporation Division
CRIM
Delaware Secretary of State
Department de Hacienda
Department of Revenue Services, State of Connecticut
Department of Revenue Services, State of Connecticut
Elkhart County Treasurer
Estado Libre Asociado de Puerto Rico
Florida Department of Revenue
Florida Department of Revenue
Florida Department of Revenue
Franchise Tax Board
Franchise Tax Board
Georgia Department of Revenue
Hamblen County Trustee
Henderson County Trustee
Howell Township, Michigan
Illinois Department of Revenue
Indiana Department of Environmental Management
Indiana Department of Revenue

Internal Revenue Service
Internal Revenue Service
Jackson County Payment Center
John Baskette, Trustee
Kentucky Department of Revenue
Kentucky State Treasury
Lexington City Recorder
Lincoln Charter Township, Michigan
Los Angeles County Tax Collector
Massachusetts Department of Revenue
Michigan Department of Treasury
Missouri Department of Revenue
Municipio de Salinas
Muscogee County Tax Commissioner
Muskegon County Treasurer
Muskegon Lakeshore Chamber of Commerce
New York State Department of Taxation and Finance
North Carolina Department of Revenue
NYS Assessment Receivables
NYS Corporation Tax
Ohio Department of Taxation
Oregon Department of Revenue
Secretary of State - Delaware
Secretary of State - North Carolina Budget Office
Secretary of State - Oregon
Secretary of State - Tennessee, Division of Business Services
Secretary of State Commercial Division
South Carolina Department of Revenue
State of Michigan Department of Environmental Quality
State of Michigan Department of Licensing and Regulatory Affairs
State of New Jersey - Filing Fee and Tax on Partnerships
Tennessee Department of Revenue
Tesoreria de la Federacion (TESOFE)
Town of Batavia Tax Collector
U.S. Department of Homeland Security
United States Treasury
US Gov. Federal Mediation and Conciliation Service
Village of Edon, Ohio
Village of Stevensville, Michigan
Williams County Combined Health District (Ohio Department of Health)

5

Williams County Treasurer
Wisconsin Department of Revenue

**Utility Companies**
ANXeBusiness Corp. (ANX)
AT&T Mobility
Atmos Energy Marketing LLC
Bedford County Utility District
Benton Charter Township
City of Benton Harbor
City of Montague, MI (Department of Public Works)
City of Port Huron
City of St. Joseph
City of Warren, MI
Columbus Water Works
Comcast Cable
Comision Federal de Electricidad
Compass Energy Gas Services, LLC
Consumers Energy
DTE Energy Company
Duck River Electric Membership Corporation
EDF Trading North America
Georgia Power Company
Howell Township, NJ
iConnect, Inc.
Indiana Fluid Power
Indiana Michigan Power
Infor (US), Inc.
Integrys Energy Services
Lakeshore Energy Services LLC
Liberty Utilities Columbus, Georgia
Martech Enterprise LLC
MegaPath Inc.
Michigan Gas Utilities
Milwaukee Water Works
National Fuel Gas Company
National Grid
New York Power Authority
NIPSCO (Northern Indiana Public Service Company)
Northern Electric Co.
Northern Indiana Public Service Co. (NIPSCO)
Ohio Gas Company
Power Authority of the State of New York (NYPA)
Republic Services, Inc.

Secure-24
SEMCO Energy Gas Company
Shelbyville Power Water & Sewerage Systems
Sterling Sanitation, Inc.
Toledo Edison- FirstEnergy
Town of Batavia, NY
Verizon
Verizon Business
Village of Edon
Waste Management, Inc.
We Energies

**Vendors**
Ahaus Tool & Engineering
Akebono Brake Corporation
Akebono Brake Corporation, Glasgow Plant
Akebono Corporation
Akebono Corporation – Columbia Plant
Alcoa Primary Metals
Alloy Resources Corp.
Anderson Express
Automotive Casting Technology Inc.
B&H Pattern Inc.
Beck Aluminum Corp.
Bennett Tooling Solutions
Brembo S.p.A
Cadillac Casting, Inc.
Carlson Tool & Manufacturing Corp.
Casting Technologies Co.
Co-op Tool
General Aluminum
Grede Foundries, Inc.
Grede Holdings, LLC
Grede Holdings, LLC – Reedsburg
Grede LLC
Grede LLC – St. Cloud
GSM Recycling
Koyo Bearings North America LLC
Laurand Associates Inc.
Multi Precision Detail Inc.
P.F. Markey, Inc.
Perfect Patterns South
PRZ Technologies
Ravenna Pattern
Standard Tool and Die Inc.
Walker Forge Tennessee LLC
Zeman Tool & MFG Inc.
ZF Chassis Components LLC

WEIL:\95271016\1\35076.0003

Accountemps
Bridgette Wood
Daewoo
Dalton Foundry
Kerlin Metalurgical
Schnitzer Steel Industries, Inc.
SW North America, Inc.
Schwäbische Werkzeugmaschinen GmbH
Verizon Business
Verizon Wireless
Verizon Credit
ATT Wireless
Citrix
EMC
Barracuda
Kaspersky Antivirus
Microsoft Software
Infor
TAI
MKA
Vision Solutions
IBM
Intermec
  3-STARZ CLEANING SERV INC
  A1 METERS AND SHIPPING
  ADVANCED OFFICE PRODUCT
  AEI
  AGC HEAT TRANSFER INC
  ANALYTICAL REF. MATERIALS
  ANDERSON COOK INC
  ARAMARK UNIFORM COMPANY
  ARCADIA CHEMICALS INC
  ARP GMBH & CO KG
  ARTIS SYSTEMS, INC.
  AUBURN ARMATURE INC
  AUTOMATIC SPRING PROD CORP
  AVERY DENNISON
  B.E.R. REFRIGIRATION
  BAKER PROTOTYPE & ENGINEE
  BLUEGRASS SUPPLY CHAIN SER
  BOHL CRANE INC
  BOND FLUIDAIRE
  BRAMMALL SUPPLY
  CAVAGLIA' F.LLI S.N.C
  CHEM-STATION OF NORTHERN
  CINTAS CORPORATION #256
  CLOVER MACHINERY MOVERS

COLE PARMER
COMMUNITY OCCUPATIONAL ME
CONSOLIDATED CONTROLS LLC
COPACO
CURTIS INDUSTRIES, INC.
CUSTOM MOLD ENGINEERING I
CUTLER'S SUPPLY INC.
CUTTING TOOLS INC
D&D MACHINERY MOVERS
D&M PRECISION LLC
DANCORP INC
DEARBORN OVERHEAD CRANE
DECKER MANUFACTURING CO
DELL MARKETING LP
DHL GLOBAL FORWARDING FRGH
DIDION MFG CO
DTE ENERGY
ENDEAVOR TECHNOLOGIES
ENVIRONMENTAL & RECYCLING
FIVES NORTH AMERICAN COMB
FLUKE BIOMEDICAL, LLC
FOSTER BLUE WATER OIL LLC
G&J OUTFITTERS
GARDNER WILLIS SWEAT HANDE
GENERAL INSPECTION LLC
GEO T SCHMIDT INC
GLOBAL GAGE AND TOOL CO
GREAT LAKES METROLOGY
GREAT LAKES PUMP & SUPPLY
GUDEL RAPINDEX INC
H&P TECHNOLOGIES INC
H&R INDUSTRIES INC
HENKEL CORP
HINES INDUSTRIES
HRU TECHNICAL RESOURCES
HYDRADYNE ALLEN-ORTON
HYDRA-TECH INC
IBC C/O ABRASIVE TOOL CORP
INDIANA FLUID POWER
INDUSTRIAL ASSET RECYCLING
INDUSTRIAL FURNACE CLEANIN
INSPEC INC
INTEGRITY STAFFING GROUP,
INTERNATIONAL MACHINE TOOL
JERICO INC

WEIL:\95271016\1\35076.0003

JIT PACKAGING
JM PACK/TAPE & LABEL
K&L TOOL SUPPLY
KAMAX LP
KENNY PIPE & SUPPLY INC
KEYENCE CORPORATION OF AME
KNOLL AMERICA INC
KONICA MINOLTA PREMIER FIN
LEO J. ROTH CORPORATION
LIBERTY SAW TECHNOLOGY
LIVINGSTON HAVEN
LOADING DOCK SYSTEMS
LTR RIGGING & HAULING, LLC
LUBRICATION ENGINEERS INC
M FORCE STAFFING CORP
M&I MACHINE INC.
MACHINE TOOL RESEARCH INC
MACO INDUSTRIES
MAINTENANCE WELDING SERV
MAPAL AARO
MCNAUGHTON MCKAY ELECTRIC
MICHIANA SUPPLY CO.
MIDWEST BRAKE
MORRELL
MUSKEGON COMMUNITY COLLEG
NATIONAL ELEMENT INC.
NON-STOP INDUSTRIAL SERV
NORFOLK SOUTHERN RAILWAY
OMNI TECH SALES
ORION INTERNATIONAL LLC
OTTAWA GAGE INC
PAASCHE AIRBRUSH CO
PALM ENGINEERING & SALES
PARTNERS BULK LOGISTICS
PHOENIX PERSONNEL
PINE HOLLOW INC
PIRTEK USA
PORTER STEEL & WELDING INC
QME INC
R&D MACHINE INC
RAPID PRINT
RENO REFRACTORIES INC
S&N MACHINE & FABRICATION
SAFETY KLEEN CORPORATION
SCHOTT SAW CO

SECURITAS
SENTINEL FLUID CONTROLS
SHIP PAC, INC.
SPARTAN CARBIDE
SPRAYING SYSTEMS
STAPLES
TFT GLOBAL INC
THE PIC GROUP INC
TMI COMPRESSED AIR SYSTEM
TOLEDO TOOL & DIE CO
TRADEMARK PARTNERS LLC
TRANSFER INTERNATIONAL
UNITED EQUIPMENT ACCESS
UNIVERSAL SERVO GROUP LLC
UPS
USF HOLLAND INC
VIBRANT CORP.
VRT ENTERPRISES INC
WALMART
WASTEBIZ ENTERPRISE CORP
WATCON
WICK FAB INC
WOODBRIDGE VENTURES INC
Z ALLOY INC
ZELLER CORPORATION

ABB INC
ABB ROBOTICS
ABC EXCAVATING
AB'S GLOVES & ABRASIVES
ACCRETIVE SOLUTIONS
ADAMS BURKE & ASSOCIATES
ADDY MACHINE
ADVANCED MACHINE & ENGINEE
AIRGAS GREAT LAKES
AIRGAS SOUTH
ALL THERM SERVICES INC
ALLOY RESOURCES
ALRO STEEL CORPORATION
ALTA EQUIPMENT COMPANY
AMERICAN LUBRICANTS INC
ASA SAFETY SUPPLY
ATI LADISH DIECAST TOOLING
ATLAS COPCO TOOL ASSM SYST
ATR INCORPORATED

8

| | |
|---|---|
| AUGUST WENZLER GMBH | FEDERAL MOGUL CORPORATION |
| AZTECNOLOGY SYSTEMS LLC | FEDEX |
| B&B DESIGN INC | FERRELLGAS |
| B&H PATTERN | FINCH AUTOMATION |
| B&T ELECTRIC | FIVE STAR FOOD SERVICE |
| BEAUDOIN ELECT. CONST INC | FLINT MACHINE TOOLS INC |
| BEDFORD COUNTY | FLOW LOGIC |
| BLAKE & PENDLETON INC | FOSECO INC |
| BOGE RUBBER & PLASTICS USA | FREUDENBERG NOK GENERAL PA |
| BORG WARNER EMISSIONS SYST | GANESH INC |
| BRADLEY-MORRIS LLC | GENTRY MACHINE WORKS |
| BRISTOL TOOL AND DIE | GOKOH CORPORATION |
| BUWW COVERINGS, INC. | GOSIGER MICHIGAN |
| C&E SALES INC | GRAINGER |
| CA PICARD INC | GRAINGER INC |
| CARLSON TOOL & MFG CORP | GRAND RIVER HOWELL LLC |
| CARRIER VIBRATING EQUIP | GRAND TRAVERSE CONTAINER |
| CED | GRANITE FLUID POWER MACHI |
| CERAMSOURCE USA INC | GREAT LAKES AUTOMATION SUP |
| CHIRON AMERICA INC | GREAT LAKES DOCK & DOOR |
| COASTAL ENERGY | GREAT LAKES TOOL LLC |
| COLD HEADING COMPANY | GUARDIAN PLUMBING & HEATIN |
| COLONIAL BUSHING | GUHRING |
| COMFORT SUITES | HAMMITT & ASSOCIATES INC |
| CONDAT CORPORATION | HEAVY LIFT INC |
| CONTROL CONCEPTS | HELLER MACHINE TOOLS LP |
| COOPER STANDARD AUTOMOTIVE | HENNIG INC |
| CORE TECH 1 | HERAEUS ELECTRO NITE CO |
| CORRIGAN OIL COMPANY | HERITAGE CRYSTAL CLEAN |
| DADCO INC | HERSCHAL PRODUCTS INC |
| DANIEL J. RENYA | HEXAGON METROLOGY INC |
| DAY FLUID POWER | HH BARNUM |
| D-BOY WELDING, LLC. | HILL & GRIFFITH COMPANY |
| DELAWARE SECRETARY OF STAT | HOLMAN MANAGEMENT |
| DIVERSIFIED PATTERN AND EN | HOT CREWS INC |
| E&R INDUSTRIAL SALES | HOUGHTON INTERNATIONAL INC |
| EHD TECHNOLOGIES LLC | HY TECH AUTOMATION REPAIR |
| ELLISON TECHNOLOGIES | IFM EFECTOR INC |
| EMPIRE SOLUTIONS INC. | IHS GLOBAL, INC. |
| EMSCO GROUP | INDIANA FLUID SYSTEM TECH |
| ENFORGE,LLC | INDIANA WOOD PRODUCTS |
| EPOCH ROBOTICS | INDUSTRIAL CONTROL SYSTEMS |
| EXPEDITE EXPR TRANSPOR INC | INDUSTRIAL TOOL SALES INC |
| EXPERIS | INSIGHT DIRECT USA INC |
| FASTENAL COMPANY | INTER SOURCE INC |

WEIL:\95271016\1\35076.0003

IPI INC
ISLAND MACHINE & ENGR LLC
IST SERVICES & COMMUNICAT
JACKSON AND ASSOCIATES
JADE TOOL
JIM BELT INC
JO WINTER & ASSOCIATES I
JOINT PRODUCTION TECHNOLOG
JONES ELECTRIC
JUS RITE ENGINEERING INC
JUST PACKAGING
K&S SERVICES INC
KELLY SERVICES INC
KOMA PRECISION
KONECRANES INC DBA CRANE
KONICA MINOLTA
LIBERTY STEEL FABRICATING
LIBERTY UTILITIES GEORGIA
LOGAN TOOL & ENGINEER INC
LYNDEX NIKKEN
LYON MECHANICAL INC
MAHLE ENGINE COMPONENTS
MARK PACK INC
MARLING & ASSOCIATES INC
MARSH PLATING CORP
MARSHALL E. CAMPBELL CO
MARTIN FOUNDRY SERVICES
MATERIALS RESOURCES
MAXIMUM MOLD
MAZAK CORPORATION-MIDWEST
MCKENZIE CONCRETE
MCNAUGHTON-MCKAY
MDS OF MICHIGAN INC
MESK CONSTRUCTION, INC.
METAL AND QUALITY SYSTEMS
METOKOTE CORPORATION
MICHIGAN TOOL & GAUGE INC
MID CITY SUPPLY CO INC
MIDWEST METROLOGY INC
MILLER BROACH INC
MINADEO INDUSTRIAL SERV
MOCAP INC
MORRISON INDUSTRIAL EQUIP
MS COMPANIES
MUNSELL ENTERPRISES

NEW CENTURY HEATERS LTD
NORTH AMERICAN PRODUCTS
NORTH SHORE MECHANICAL LLC
NORTHBEND PATTERN WORKS
NUGENT SAND COMPANY INC
OHIO DEPT OF TAXATION
OMEGA ENGINEERING INC
ORCON INDUSTRIES
OTIS ELEVATOR CO
OXFORD GLOBAL RESOURCES
PARKWAY ELECTRIC
PATRIOT CRANE & HOIST INC
PCS COMPANY
PDQ WORKHOLDING, LLC
PEOPLELINK LLC
PIEDMONT NATIONAL CORP
PRECISION GAGE
PRECISION SPINDLE SERVICES
PREFERRED INC - FORT WAYNE
PRESSURE & PIPES INC
PRIDE GAGE ASSOCIATES LLC
PROCESS ENGINEERING & EQUI
PRODUCTION TOOL SUPPLY
PROMESS INC
PRYOR GIGGEY COMPANY
PURE POWER TECHNOLOGIES
PVF SUPPLY COMPANY
RABEN OUTSOURCING SC
RADAR
RANDSTAD
RASSINI
REDLINE
RELIANCE MANUFACTURING
RELIANT PROF CLEANING CONT
RESOURCE RECOVERY CORP OF
RICHARD J BAGAN INC
RIMROCK
RIVER BEND HOSE SPECIALTY
RL CAST TECH LLC
ROBERT'S BALLSCREW REPAIR
RODGERS METAL CRAFT INC
ROTOR CLIP CO INC
S&K GROUP LLC
S&S INDUSTRIAL SUPPLY I
SAFETY WEAR

10

SAFETY-KLEEN
SCHEID PLUMBING HEATING
SCHUSTER SHEET METAL, INC
SEAVERS LAWN SERVICE INC
SECURITAS SECURITY
SEEGER-ORBIS
SHORELINE METAL FABRICATO
SIEMENS INDUSTRY INC
SIEMENS-WEISS SPINDLE TECH
SIMPSON TECHNOLOGIES
SKF SEALING SOLUTIONS
SL GREEN SHEET METAL FAB
SOUTHERN STATE TOYOTA
SPLUNK INC
STANDARD MEASUREMENT SYSTE
STANDARD TOOL AND DIE INC
STAPLES BUSINESS ADVANTAG
SUMMIT FUNDING GROUP
SUN COAST PACKAGING INC
SUNBELT RENTALS
SUNSOURCE ACTIVATION
SUPER AUTO FORGE INC
SUR-FORM CORPORATION
TECHNICAL EQUIPMENT
TECHNICAL REPAIR SOLUTIONS
TELESIS TECHNOLOGIES INC
TENNANT SALES & SERVICE
TENURGY
THERMAL PRODUCTS CO
THERMALTEK INC
TIE TENNESSEE IND ELECT
TK SERVICES LLC
TONI CERVELLO
TOOL CRAFT CORP.
TOOLING CONCEPTS, INC
TRIDONN CONSTRUCTION CO
UHY LLC
ULINE
UNIFIRST CORPORATION
UNITED STEELWORKERS
USHER OIL COMPANY
UTSI FINANCE
VALU TEC INC
VEYANCE INDUSTRIAL SER INC
VGAGE

VICO PRODUCTS
VISI TRAK WORLDWIDE LLC
VJ TECHNOLOGIES INC
WASTE MANAGEMENT
WES-TECH AUTOMATION
WOODMARK FOREST INDUSTRIES
WORKER TRAINING FUND
YAREMA DIE & ENGINEERING
YOUNGBLOOD AUTOMATION
ZF LEMFORDER SISTEMAS

ACTION INDUSTRIAL SUPPLY
ALEXANDERS INDUSTRIAL SERV
AMERICAN CONST. TRADES INC
APPLIED FOUNDRY SOLUTIONS
BRUSS NORTH AMERICA INC
BUILDING UNLIMITED
CENTRAL CMS
CNC SYSTEM SALES INC
CONTINENTAL CARBONIC PROD
CUSTOM COATING INC
DAYS MACHINERY MOVERS
DELTA DENTAL
DME COMPANY
DYNAMIC INTERNATIONAL OF
EMERGENCY RADIO SERVICES
ERICKSONS INC
FEDERAL SCREW WORKS
FRAZA FORKLIFTS
HA INTERNATIONAL LLC
HICKMAN, WILLIAMS & CO
HOWARD AND HOWARD
I SQUARED R ELEMENT CO
IMPERIAL DESIGN
INDIANA MICHIGAN POWER
INDUCTOTHERM
INDUSTRIAL COMBUSTION
INDUSTRIAL METAL FABRICATO
INDUSTRIAL PIPING & MAINT
INTERNATIONAL PAPER
JNB MACHINE INC
KINGSBURY AN OPTIMATION CO
KUEHNE & NAGEL INC
LEVIATHAN CUTTING TOOL INC
LMC TECHNOLOGY LLC

11

MAGMA FOUNDRY TECHNOLOGIES
MAGNAFLUX
MCBROOM ELECTRIC COMPANY
MICHIGAN FLUID POWER INC
MIDWEST SAFETY PRODUCTS
MK & ASSOCIATES
MNP CORPORATION
MORGANITE CRUCIBLE INC
MSC LLC
MTS SYSTEMS CORPORATION
MULTI PRECISION DETAIL INC
NEFF ENGINEERING CO INC
NORTHERN ELECTRIC CO
OIL CHEM INC
PERFECT PATTERNS INC
PLUMMERS ENVIRONMENTAL
PRAXAIR DISTRIBUTION, INC.
PRECISION STEEL SERVICES
PRZ TECHNOLOGIES
REFRACTORY SALES
RMT WOODWORTH
SATTLER INC
SERVICE ONE
SIMCO SUPPLY LLC
SKYWAY PRECISION INC
SNAVELY'S MACHINE & MFG C
SNELLING STAFFING SERVICES
SOMERSET CONTRACTING, INC
SPECIALTY FOUNDRY PRODUCT
STRONG INDUSTRIAL SUPPLY
STS OPERATING INC
THE P.P.M. GROUP INC.
UMETCO INC
VIGEL NORTH AMERICA INC
WABASH ELECTRIC SUPPLY IN
WEST MICHIGAN RUBBER AND S
WESTPACK
WHEEL ABRATOR
WINOA USA INC

ACTIVE AERO CHARTER INC.
ACUMENT GLOBAL TECHNOLOGIE
ACUREN INSPECTION
AEROTEK INC.
AFCO

AHAUS TOOL & ENGINEERING,
ALEASTUR OF AMERICA LLC
ALFE HEAT TREATING INC
ALLEGIANT INTERNATIONAL
ALLIED MINERAL PRODUCTS
ALUMALLOY METALCASTING CO
AMERICAN EXPRESS
ANDERSON GLOBAL
ARROW UNIFORM
ATD ENGINEERING AND MACHIN
AUTOMATIC DATA PROCESSING
B&H PATTERN INC
BDI
BOSELLO HIGH TECH - ITALY
BREMBO NORTH AMERICA
C.H. ROBINSON
CARPENTER BROTHERS INC
CIFUNSA DEL BAJO SA DE CV
CPC EUROPE EOOD
CTR CENTRAL CORPORATION
DALTON CORP WARSAW MANUF
DAUBER COMPANY INC
DAVID J JOSEPH CO
DEWOLFF BOBERG & ASSOC INC
DISA
DTR INDUSTRIES
ELECTRIC MELTING SERVICES
EMO TRANS COSTOMIZED
EMPIRE REFRACTORY SERVICE
ERNST & YOUNG LLP
ETA ENGINEERING
FABRI FORM COMPANY
FANUC CNC AMERICA
FANUC ROBOTICS AMERICA INC
FELMAN TRADING INC
FERROSOURCE DIVN OF STE
FIBRO INC
FUCHS LUBRICANTS CO
GMR DESIGN INC
GRIFFIN TOOL INC
INDIANA REFRACTORIES INC
JR AUTOMATION TECHNOLOGIE
KENDALL ELECTRIC INC
KOBE ALUMINUM AUTO PROD
LARPEN METALLURGIAL

12

LEE INDUSTRIAL CONTRACTING
MAKINO INC
MATRIX QUALITY SERVICES
MAZAK CORP
MCM USA
MCMASTER CARR
MELTEX/MARTIN BROTHERS
METAL TECHNOLOGIES INC
MOLTEN METAL EQUIPMENT
MSC INDUSTRIAL SUPPLY CO
MUSCOGEE COUNTY TAX COMM
NBJX USA INC
NEC ELECTRICAL SUPPLY
NTN BEARINGS
NXT CAPITAL LLC
PACIFIC WESTERN BANK
PARAGON ATLANTIC
PERFECT PATTERNS SOUTH
PORTER WARNER
PRO SERVICES INC
PROGRESSIVE FINISHES INC
PYROTEK INC
RAVENNA PATTERN
REFRACTORY SPECIALIST LLC
ROCKNELL FASTENER, INC
ROY METAL FINISHING CO
SCHMOLZ BICKENBACH
SCHNITZER SOUTHEAST
SETCO
SHELLS INC
SMITH GRAY ELECTRONIC CO
SPECIALTY FOUNDRY PRODUCTS
SSA & COMPANY
SSI TECHNOLOGIES
STRATOSPHERE QUALITY LLC
SUSTAINED QUALITY
SW INDUSTRIES INC
TEST EQUIPMENT DISTRIBUTO
TOOL NORTH
TOTAL MANUFACTURING
TPS LLC RIVERSIDE
TRIPLE M METAL LP
TRW CANADA LTD
ULTRA TECH
UNIVERSAL CONTAINER CORP

VALICOR SEPERATION (SRS)
VEKTEK INC
VIBRACOUSTIC GMBH & COMPA
VIGEL MANUFACTURING TECH
VORWERK AUTOTEC GMBH & CO
WALKER FORGE TENNESSE LLC
WESTAFF
WUHAN CAIEC
XY TOOL & DIE INC
YODER OIL CO INC
ZEMAN TOOL AND MTG
ZOLLER INC

AKEBONO GLASGOW
AMERICAN COLLOID COMPANY
ANDERSON EXPRESS
AUTOMATION SYSTEMS & DESI
BENNETT TOOLING SOLUTIONS
BREMBO S.P.A.
CENTRAL CORPORATION CTR
DONGAH AMERICA INC
EMPLOYMENT PLUS INC
GLOBE METALLURGICAL INC
HHI FORMTECH, LLC.
INDUSTRIAL CONTROL REPAIR
JINYOUNG INDUSTRIAL CO
LAURAND ASSOCIATES INC
MANPOWER
MOTION INDUSTRIES INC
NISSAN TRADING CORP AMERIC
PUSAN CAST IRON CO.,LTD
RUBBER ENTERPRISES INC
TENNECO AUTOMOTIVE
TRELLEBORG AUTOMOTIVE

AKEBONO BRAKE CORPORATION
AKEBONO CORP
ALCOA
AUTOMOTIVE CASTING TECHNOL
BECK ALUMINUM CORP
C.H. ROBINSON COMPANY, INC
CADILLAC CASTING INC
COBRA TRADING
CTC CASTING TECHNOLOGIES
DYNAMIC MACHINE OF DETROIT

13

FAGOR EDERLAN S COOP
GE CAPITAL
GENERAL ALUMINUM
GREDE LLC - REEDSBURG
GREDE LLC - ST. CLOUD
GSM RECYCLING
ILJIN USA
KOYO BEARINGS NORTH AMERIC
NTN BEARING CORPORATION
OMNISOURCE CORP SCRAP
PF MARKEY INC
SKF USA INC
TUOPU NORTH AMERICA LTD
ZF CHASSIS COMPONENTS LLC
ZF LEMFORDER CORPORATION
ZHONGDING USA INC

**Landlords**
Bravo Family L.L.C.
CMX Investment Associates Limited
Partnership
Consulting Project Managers, Inc.
Galleria Properties, LLC
iStar DMI, LLC
Petit Street Industrial, L.L.C.
UTSI Finance, Inc.
O'Keefe & Associates Consulting, L.L.C.
NS Dedham Acquisition LLC

**United States Bankruptcy Judges for the S.D.N.Y.**
Honorable James L. Garrity
Honorable Cecelia G. Morris
Honorable Martin Glenn
Honorable Robert D. Drain
Honorable Robert E. Gerber
Honorable Robert E. Grossman
Honorable Sean H. Lane
Honorable Shelley C. Chapman
Honorable Stuart M. Bernstein
Honorable Michael E. Wiles
Honorable Allan L. Gropper

**Office of the United States Trustee**
Andrea B. Schwartz
Andy Velez-Rivera
Anna M. Martinez

Brian S. Masumoto
Catletha Brooks
Danny A. Choy
Elisabetta Gasparini
Elizabeth C. Dub
Ercilia A. Mendoza
Greg M. Zipes
Linda A. Riffkin
Maria Catapano
Marilyn Felton
Mary V. Moroney
Myrna R. Fields
Nadkarni Joseph
Nazar Khodorovsky
Paul K. Schwartzberg
Richard C. Morrissey
Savitri Nguyen
Serene Nakano
Stephanie B. Crowder
Susan Golden
Sylvester Sharp
Victor Abriano

**Shareholders**
Platinum Dharma Principals, LLC
Platinum Equity Capital Dharma Partners,
L.P.
Platinum Equity Capital Dharma Partners-A,
L.P.
Platinum Equity Capital Dharma Partners-
PF, L.P.
Platinum Equity Capital Partners III, L.P.
Platinum Equity Capital Partners-A III, L.P.
Platinum Equity Capital Partners-B III, L.P.
Platinum Equity Capital Partners-C III, L.P.

**Non-Debtor Parents**
Dharma Holding Corporation
Triomphe Intermediate Holding Corporation

**Holders of 5 Largest Secured Claims**
BMO Harris Bank, N.A.
NHMG Financial Services, Inc.
NXT Capital, LLC
Pacific Western Bank
U.S. Bank National Association

**Customers**

14

AEB Dienstleistungen
Alliance of Automobile Manufacturers
American Axle & Manufacturing ("AAM")
Android Industries L.L.C.
Bayerische Motoren Werke AG ("BMW")
Bendix Commercial Vehicles Systems LLC
Benteler Automobiltechnick GmbH
Benteler International AG
Bentley Motors Limited
Bilstein & BWI
Brembo S.p.A.
Busche-CNC
BWI Group
Chery Quantum Auto. Co., Ltd. ("CQAC")
a/k/a/ Qoros Automotive Co., Ltd.
Chrysler Group LLC
Continental Teves, Inc. a/k/a/ Continental
Automotive
Daimler Group
Dana Holding Corporation
Detroit Diesel Corporation ("DDC")
Dongfeng Peugeot-Citroen ("DPCA")
Fiat Chrysler Automobiles
Fiat S.p.A.
Ford Motor Company ("Ford")
Geely
General Motors ("GM")
GEP
Huizhong Electrical Auto Parts
Hyundai Mobis
Magna International Inc.
Mando Corporation
Mazda Motor Corporation
Mercedes-Benz USA, LLC
Metric Manufacturing Company
Nexteer Automotive
Nissan Motor Co., Ltd. ("Nissan")
Paragon Automotive
PSA Peugeot
Reliance Automotive, Inc.
Renault S.A.
The Piston Group
Toyota Motor Corporation ("Toyota")
TRW Automotive
Volkswagen Group ("VW")
ZF Lemforder Corporation
Zhejiang Geely Holding Group ("Geely")

**Unions**

International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America, Local Union 481

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial
and Service Workers International Union –
Local Union #2948

**Competitors**

3Point Machine, Inc.
Brembo S.p.A.
Busche
Cadillac Casting Inc.
CTC Casting
Fagor Ederlan Group
Fujiwa/ Liufeng (FJW)
General Aluminum Mfg. Company
(GAMCO)
Georg Fischer
GF Automotive
GF Machining Solutions
GF Pipin Systems
Grede Casting Integrity
Hitachi Metals America
KSM Castings Group
Le Belier
Montupet SA
Saint Jean Industries
The Sakthi Group

15

WEIL:\95271016\1\35076.0003

**Annex B**

**Parties in Interest Noted for Court Disclosure**

**Debtor**
Chassix, Inc.
SMW Automotive, LLC
SMW Automotive Corporation

**Unsecured Creditor**
Alcoa
C.H. Robinson Company, Inc.

**Government/Agency**
Internal Revenue Service
Illinois Department of Revenue

**Vendors**
Accretive Solutions
Control Concepts
Fastenal Company
Gentry Machine Works
Grainger Inc
Guhring
Heritage Crystal Clean
Hill & Griffith Company
Houghton International Inc
Insight Direct Usa Inc
Kelly Services Inc
Marshall E. Campbell Co
Metokote Corporation
Omega Engineering Inc
Oxford Global Resources
Radar
Redline
Rimrock
Safety-Kleen
Securitas Security
Sunbelt Rentals
Telesis Technologies Inc
Uline
Unifirst Corporation
Acument Global Technologie
Automatic Data Processing
Disa
Ferrosource Divn Of Ste
Mcmaster Carr
Universal Container Corp
Aramark Uniform Company
Automatic Spring Prod Corp

Cole Parmer
Cutting Tools Inc
Livingston Haven
Orion International LLC
Safety Kleen Corporation
Securitas
Spraying Systems
Delta Dental
HA International LLC
Hickman, Williams & Co
Howard And Howard
Industrial Piping & Maint
Perfect Patterns Inc
Praxair Distribution, Inc.
Umetco Inc
Accountemps
Akebono Corporation
Grede Foundries, Inc.
Grede Holdings, LLC
Infor
Intermec
MKA
Schnitzer Steel Industries, Inc.

**Bondholder**
Allstate Life Insurance Company
Aristeia Capital, LLC
AXA Investment Managers Inc.
BlackRock Financial Management
BlueCrest Capital Management Limited
Golden Gate Capital
Golden Gate Capital Holdings LLC
GSO Capital Partners LP
Guardian Life Insurance
Henderson Global Investors
ING Investment Management LLC
JP Morgan Investment Management
Lord Abbett & Company
Metropolitan Life Insurance Company
Metropolitan West Securities LLC
Neuberger Berman Fixed Income LLC
Nuveen Asset Management
Oaktree Capital Management
OCH Ziff Capital Management LP
Pacific Life Insurance Co

Pioneer Investment Management Inc
Providence Equity Partners
Providence Equity Partners Inc
State Of New Jersey
State Street Global Advisors Inc
York Capital Management

**Capital Lease Counterparties**
De Lage Landen Financial Services, Inc.
Keybank National Association
NMHG Financial Services, Inc.
The Huntington National Bank

**Competitors**
Hitachi Metals America

**Customers**
Busche-CNC
Continental Teves, Inc. a/k/a/ Continental Automotive
Mazda Motor Corporation
Mercedes-Benz USA, LLC
Nissan Motor Co., Ltd. ("Nissan")
Volkswagen Group ("VW")

**Former Director**
Robert Remenar

**Ordinary Course Professionals**
Paradigm

**Other**
Alliance of Automobile Manufacturers
American Axle & Manufacturing ("AAM")
Android Industries L.L.C.
Bank of America Leasing & Capital, LLC
Dell Financial Services L.L.C.
DTE Energy Company
Fiat S.p.A.
Fifth Third Bank
Ford Motor Company ("Ford")
GE Business Financial Services, Inc.
Georgia Power Company
International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union 481

Key Equipment Finance
Lazard Frères & Co.
Magna International Inc.
Mando Corporation
National Grid
Oliver Wyman Inc.
Robert  Wymbs
Toledo Edison - FirstEnergy
Toyota Motor Corporation ("Toyota")
TRW Automotive
Weil, Gotshal & Manges LLP
Northern Electric Co.
Joele Frank, Wilkinson Brimmer Katcher

**Shareholders**
Platinum Equity Capital Dharma Partners, L.P.

**Taxing Authorities**
Comptroller of Public Accounts
Delaware Secretary of State
Florida Department of Revenue
Franchise Tax Board
Georgia Department of Revenue
Los Angeles County Tax Collector
Massachusetts Department of Revenue
Michigan Department of Treasury
Ohio Department of Taxation
Tennessee Department of Revenue
Wisconsin Department of Revenue

**Top 100 Accounts Payable**
Aerotek Inc.
AFCO
Akebono Glasgow
Alfe Heat Treating Inc.
American Colloid Company
BDI
Beck Aluminum Corp.
General Aluminum
Globe Metallurgical Inc.
Grede LLC- Reedsburg
Grede LLC- St. Cloud
Larpen Metallurgical
Manpower
Metal Technologies Inc.

2

Motion Industries Inc.
Nissan Trading Corp. Americas
NTN Bearing Corporation
Pyrotek Inc.
Setco
SKF USA Inc.
SSA & Company
Trelleborg Automotive
David J Joseph Co
Fanuc Robotics America Inc.
MSC Industrial Supply Co
Muscogee County Tax Commissioner

**Trade Names and Aliases**
Dharma Merger Corporation

**Trustee**
U.S. Bank National Association, Trustee and
Collateral Agent

**Unions**
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial
and Service Workers International Union –
Local Union #2948

**United States Bankruptcy Judges for the
S.D.N.Y.**
Robert E. Gerber

**Utility Companies**
Consumers Energy
Integrys Energy Services
Northern Indiana Public Service Co.
(NIPSCO)
WE Energies

**Holder of Senior Secured Notes**
Advent Capital
Aegon USA Investment Management LLC
Ares Management LLC
Avenue Investments
Brigade Capital Management LLC
CNA Financial Corporation
Delaware Management - Philadelphia
Fidelity Management & Research Company
Hartford Life Insurance Co
Hotchkis and Wiley Capital Management
LLC
Mackay Shields LLC
Oppenheimer Funds Inc.
Pinebridge Investments LLC
PPM America Inc
TD Securities (USA) LLC
Tennenbaum Capital Partners
Thornburg Investment Management Inc
Thrivent Financial for Lutherans
Millennium Partners

**Holder of Unsecured Notes**
Millennium Partners
Avenue Investments
Fidelity Management
Medley Capital LLC

**Insurance Providers**
Allianz
National Union Fire Insurance Corporation

**Lender**
Bank of Montreal
BMO Capital Markets, Syndication Agent,
Joint Lead Arranger and Joint Book Runner
BMO Harris Bank N.A., Agent
Comerica Bank
PNC Bank NA
PNC Bank NA, Documentation Agent, Joint
Lead Arranger and Joint Book Runner
Siemens

**Litigation Parties**
Allison Transmission, Inc.

WEIL:\95271016\1\35076.0003

**Unsecured Creditor**
Alcoa
American Express
Avery Dennison
C.H. Robinson Company, Inc.
Citrix
Comfort Suites
Cooper Standard Automotive
Daewoo
DTE Energy
EMC
Experis
Federal Mogul Corporation
Federal Screw Works
Fedex
Grainger
International Paper
Konica Minolta
Kuehne & Nagel Inc
MSC LLC
Norfolk Southern Railway
Otis Elevator Co
Siemens Industry Inc
UPS
Walmart
Waste Management
Westaff
AEI
Staples
Barracuda
United Steelworkers (USW)

WEIL:\95271016\1\35076.0003