Marcia L. Goldstein
Ray C. Schrock, P.C.
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------x
                                          :
In re                                     :       Chapter 11
                                          :
CHASSIX HOLDINGS, INC., et al.,           :       Case No. 15-_____ (___)
                                          :
                                          :       (Joint Administration Pending)
                     Debtors.¹            :
                                          :
--------------------------------------------------------x
```

**APPLICATION OF DEBTORS PURSUANT TO 11 U.S.C. § 327(a),**
**FED. R. BANKR. P. 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND**
**2016-1 FOR AUTHORITY TO EMPLOY AND RETAIN PRIME CLERK LLC AS**
**ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of

their affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**," and

together with their non-Debtor subsidiaries, the "**Company**"), respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

**Background**

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors ("**Creditors Committee**") has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      The Debtors commenced their chapter 11 cases on a prearranged basis with the support of their (a) secured and unsecured noteholders, which have committed to make significant and immediate capital infusions into the Debtors' businesses, and (b) major automotive manufacturing customers, which have committed to long-term pricing commitments and other valuable accommodations. Consistent with their obligations under the restructuring support agreement, the Debtors have filed a plan of reorganization and proposed disclosure statement with the Court and are seeking to emerge from chapter 11 on an expedited timeframe.

3.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Declaration of J. Mark Allan Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), sworn to on the date hereof (the "**Allan Declaration**"), which has been filed with the Court contemporaneously herewith.

2

### Jurisdiction and Venue

4.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

5.      By this Application, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, the Debtors request authority to employ and retain Prime Clerk LLC ("**Prime Clerk**") as administrative advisor ("**Administrative Advisor**") in the Debtors' chapter 11 cases, in accordance with the terms and conditions of that certain engagement agreement dated as of December 29, 2014 (the "**Engagement Agreement**"), effective *nunc pro tunc* to the Commencement Date.  A proposed form of order granting the relief requested in the Application is attached hereto as **Exhibit "A"** (the "**Proposed Order**").  A copy of the Engagement Agreement is annexed as an exhibit to the Proposed Order.  In support of this Application, the Debtors submit the Declaration of Michael J. Frishberg, Co-President and Chief Operating Officer of Prime Clerk (the "**Frishberg Declaration**"), attached hereto as **Exhibit "B."**

6.      Contemporaneously herewith, the Debtors have also filed an application (the "**Section 156(c) Application**") to appoint Prime Clerk as claims and noticing agent pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, and Local Rule 5075-1.  The Debtors believe that administration of these chapter 11 cases will require Prime Clerk to perform duties outside the scope requested in the Section 156(c) Application.  Therefore, to enable Prime Clerk to provide services outside the scope of the order approving the Section 156(c) Application, the Debtors submit this Application in accordance with the Engagement Agreement.

WEIL:\95271010\1\35076.0003

## Prime Clerk's Qualifications

7.      Prime Clerk is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Prime Clerk's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Prime Clerk's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide. Prime Clerk's active cases include: *In re dELiA*s, Inc.*, No. 14-23678 (RDD) (Bankr. S.D.N.Y.); *In re Aereo, Inc.*, No. 14-13200 (SHL) (Bankr. S.D.N.Y.); *In re Dendreon Corp.*, No. 14-12515 (PJW) (Bankr. D. Del.); *In re ALCO Stores, Inc.*, No. 14-34941 (SGJ) (Bankr. N.D. Tex.); *In re Inversiones Alsacia S.A.*, No. 14-12896 (MG) (Bankr. S.D.N.Y.); *In re SIGA Tech., Inc.*, No. 14-12623 (SHL) (Bankr. S.D.N.Y.); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y.); *In re Trump Entertainment Resorts, Inc.*, No. 14-12103 (KG) (Bankr. D. Del.); *In re Mineral Park, Inc.*, No. 14-11996 (KJC) (Bankr. D. Del.); *In re Entegra Power Group LLC*, No. 14-11859 (PJW) (Bankr. D. Del.); *In re Windsor Petroleum Transp. Corp.*, No. 14-11708 (PJW) (Bankr. D. Del.); *In re Crumbs Bake Shop, Inc.*, No. 14-24287 (MBK) (Bankr. D.N.J.); *In re Tactical Intermediate Holdings, Inc.*, No. 14-11659 (KG) (Bankr. D. Del.); *In re MIG, LLC*, No. 14-11605 (KG) (Bankr. D. Del.); *In re FL 6801 Spirits LLC*, No. 14-11691 (SCC) (Bankr. S.D.N.Y.).

## Services to be Provided

8.      Pursuant to the Engagement Agreement, the Debtors seek to retain Prime Clerk to provide, among other things, the following bankruptcy administration services, if and to the extent requested:

4

(a)     Assist with, among other things, solicitation, balloting and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

(b)     Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

(c)     Assist with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith;

(d)     Provide a confidential data room, if requested;

(e)     Manage and coordinate any distributions pursuant to a chapter 11 plan; and

(f)     Provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement, but not included in the Section 156(c) Application, as may be requested from time to time by the Debtors, the Court or the Office of the Clerk of the Bankruptcy Court (the "**Clerk**").

### **Professional Compensation**

9.      The fees Prime Clerk will charge in connection with providing services to the Debtors are set forth in the Engagement Agreement.  The Debtors respectfully submit that Prime Clerk's rates are competitive and comparable to the rates its competitors charge for similar services.  Indeed, the Debtors conducted a review and competitive comparison of other firms and reviewed the rates of other firms before selecting Prime Clerk as Administrative Advisor.  The Debtors believe Prime Clerk's rates are more than reasonable given the quality of Prime Clerk's services and its professionals' bankruptcy expertise.  Additionally, Prime Clerk will seek reimbursement from the Debtors for reasonable expenses in accordance with the terms of the Engagement Agreement.

10.     Prime Clerk intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Commencement Date in connection with the

services it provides as Administrative Advisor pursuant to the Engagement Agreement.  Prime Clerk will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders entered in these chapter 11 cases regarding professional compensation and reimbursement of expenses.

11.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless Prime Clerk and its members, officers, employees, representatives and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Prime Clerk's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement.  The Debtors believe that such an indemnification obligation is customary, reasonable and necessary to retain the services of an Administrative Advisor in these chapter 11 cases.

### Disinterestedness

12.     Prime Clerk has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Frishberg Declaration, Prime Clerk is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

13.     Prime Clerk believes that it does not have any relationships with creditors or parties in interest that would present a disqualifying conflict of interest.  Prime Clerk will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

WEIL:\95271010\1\35076.0003

## Basis for Relief

14.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court

approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

15.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

16.     In light of the size and complexity of these chapter 11 cases, the Debtors

respectfully submit that retaining and employing Prime Clerk pursuant to the terms of the

Engagement Agreement is necessary and in the best interests of the Debtors' estates and all

parties in interest to these chapter 11 cases.  The Debtors also believe that the terms and

conditions of the Engagement Agreement are reasonable in light of the anticipated high volume

of creditors and other parties-in-interest that will be involved in these cases.

17.     Accordingly, to help manage administrative tasks with respect to the thousands of

creditors and other parties in interest that are expected to be involved in the Debtors' chapter 11

cases, and the complexity of such cases, the Debtors respectfully request the Court enter an order

appointing Prime Clerk as the Administrative Advisor in these chapter 11 cases.

7

## Waiver of Bankruptcy Rules 6004(a) and (h)

4.      Due to the exigencies of this case, and the Debtors' immediate need for Prime Clerk's services, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

5.      Notice of this Application has been provided to (i) the Office of the United States Trustee for the Southern District of New York; (ii) the holders of the five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States Attorney's Office for the Southern District of New York.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

WEIL:\95271010\1\35076.0003

6.      No previous request for the relief sought herein has been made by the Debtors to

this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: March 12, 2015
       New York, New York

/s/ Ray C. Schrock, P.C.
Marcia L. Goldstein
Ray C. Schrock, P.C.

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\95271010\1\35076.0003

**Exhibit A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
CHASSIX HOLDINGS, INC., *et al.*,       :        Case No. 15-_____ (___)
                                        :
                                        :        (Joint Administration Pending)
                     Debtors.[1]        :
                                        :
--------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. § 327(a), FED. R. BANKR. P. 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND 2016-1 FOR AUTHORITY TO EMPLOY AND RETAIN PRIME CLERK LLC AS ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Upon the application, dated March ___, 2015 (the "**Application**")[2] of Chassix

Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their affiliates

and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, including Chassix Holdings and Chassix, the "**Debtors**"), pursuant to section

327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and

2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules

2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"**Local Rules**"), for authority to employ and retain Prime Clerk LLC ("**Prime Clerk**") as

administrative advisor ("**Administrative Advisor**"), in accordance with the terms and conditions

set forth in that certain engagement agreement, dated as of December 29, 2014 (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

"**Engagement Agreement**"), *nunc pro tunc* to the Commencement Date, all as more fully

described in the Application; and upon the Declaration of Michael J. Frishberg, Co-President and

Chief Operating Officer of Prime Clerk (the "**Frishberg Declaration**") filed in support of the

Application; and the Court having jurisdiction to consider the Application and the relief

requested therein in accordance with 28. U.S.C. §§ 157 and 1334 and the Amended Standing

Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided to (i) the Office of the United

States Trustee for the Southern District of New York (the "**U.S. Trustee**"); (ii) the holders of the

five largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the

forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iv) the

attorneys for BMO Harris Bank, N.A., as administrative agent under that certain Amended and

Restated Loan, Security and Guaranty Agreement, dated as of July 23, 2013; (v) the attorneys for

U.S. Bank National Association, as trustee under that certain Indenture for 9 1/4% Senior

Secured Notes due 2018, dated as of July 23, 2013; (vi) the attorneys for Delaware Trust

Company, as successor trustee under that certain Indenture for 10% / 10 3/4% Senior PIK Toggle

Notes due 2018, dated as of December 13, 2013; (vii) the attorneys for the Informal Committee

of Noteholders; (viii) the attorneys for the Revolving DIP Lenders; (ix) the attorneys for the DIP

Term Lenders; (x) the OEM Customers; (xi) the attorneys for Platinum Equity Advisors, LLC;

(xii) the Securities and Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the

United States Attorney's Office for the Southern District of New York; and it appearing that no

other or further notice need be provided; and a hearing having been held to consider the relief

requested in the Application (the "**Hearing**"); and upon the Declaration of J. Mark Allan

Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York;

and the Court being satisfied that Prime Clerk has the capability and experience to provide the

services described in the Application and that Prime Clerk does not hold an interest adverse to

the Debtors or the estates respecting the matters upon which it is to be engaged; and it appearing that the employment of Prime Clerk is in the best interests of the Debtors, their estates and creditors; and sufficient cause appearing therefor, it is

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that the Debtors are authorized to retain Prime Clerk as Administrative Advisor effective *nunc pro tunc* to the Commencement Date on the terms and conditions of the Engagement Agreement annexed hereto as **Exhibit "1,"** as modified herein, and Prime Clerk is authorized to perform the bankruptcy administration services described in the Application and set forth in the Engagement Agreement; and it is further

ORDERED that Prime Clerk is authorized to take such other action to comply with all duties set forth in the Application; and it is further

ORDERED that Prime Clerk shall be compensated for fees and reimbursed for reasonable and necessary expenses and will file interim and final fee applications for allowance of its compensation and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)), and the United States Trustee Fee Guidelines (collectively, the "**Fee Guidelines**"); and it is further

ORDERED that the Debtors shall indemnify Prime Clerk under the terms of the Engagement Agreement, as modified pursuant to this Order; and it is further

ORDERED that all requests by Prime Clerk for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided however*, that in no event shall Prime Clerk be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct; and it is further

ORDERED that in the event that Prime Clerk seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Prime Clerk's own applications, both interim and final, and these invoices and time records shall be subject to the Fee Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code; and it is further

ORDERED that Prime Clerk shall not be entitled to reimbursement by the Debtors for any fees, disbursements, and other charges of Prime Clerk's counsel other than those incurred in connection with a request of Prime Clerk for payment of indemnity; and it is further

ORDERED that notwithstanding any provision to the contrary in the Engagement Agreement, any dispute relating to the services provided by Prime Clerk shall be referred to arbitration consistent with the terms of the Engagement Agreement only to the extent that this Court does not have, retain, or exercise jurisdiction over the dispute; and it is further

ORDERED that the Debtors and Prime Clerk are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application; and it is further

ORDERED that notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that in the event of any inconsistency between the Engagement Agreement and the Order, the Order shall govern; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2015
      New York, New York

                            _____
                            UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Engagement Agreement**



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of December 29, 2014 between Prime Clerk LLC ("*Prime Clerk*") and Chassix Holdings, Inc. (together with its affiliates and subsidiaries, the "*Company*").

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Prime Clerk agrees to provide the Company with consulting services regarding a consent solicitation and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders, including legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) (all such services collectively, the "*Services*").

   (b) The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "*Company Parties*") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c) The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

   (d) While onsite at a Company facility, Prime Clerk and its employees shall at all times abide in all material respects by the rules and regulations that apply generally to all employees and visitors at the Company, a copy of which shall be provided to Prime Clerk upon request. Prime Clerk agrees to promptly replace any employee who in the Company's sound judgment, the Company requests the removal of due to such employee's inability or unwillingness to fulfill the obligations and commitments set forth herein. In such an event, the Company shall not be charged for Prime Clerk's time for any services that must be repeated due to the replacement of personnel as contemplated herein.

2. **Rates, Expenses and Payment**

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "*Rate Structure*"). The Company agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder; *provided, however,* that travel and lodging expenses shall be incurred in accordance with the Company's travel policy, a copy of which shall be provided to Prime Clerk upon request.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

# Prime Clerk

(c) Prime Clerk will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $25,000. Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

## 3.  Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**") and selects Prime Clerk as its claims and noticing agent, the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4.  Confidentiality

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed,

2

**Prime Clerk** ↻

lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

5. **Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

6. **Bank Accounts**

Solely at the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

7. **Term and Termination**

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

**Prime Clerk**

8. **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

9. **Indemnification**

   (a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the *"Indemnified Parties"*) from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, *"Losses"*) resulting from, arising out of or related to Prime Clerk's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

   (b) Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

   (c) The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

   (d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

   (a) The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, *"SOFAs and Schedules"*). Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

   (b) The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

4



(c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.



16. **Integration; Severability; Modifications; Assignment**

   (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

   (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

   (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

   (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

17. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**Prime Clerk**

## 18. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>830 3rd Avenue, 9th Floor<br>New York, NY 10022<br>Attn: Shai Waisman<br>Tel: (212) 257-5450<br>Email: swaisman@primeclerk.com |
| If to the Company: | Chassix Inc.<br>300 Galleria Officentre, Suite 501<br>Southfield, MI 48034<br>Attn: *Mark Allen*<br>Tel: *(248) 728-8636*<br>Email: *mark.allan@chassix.com* |
| With a copy to: | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attn: Ray C. Schrock, P.C.<br>Tel: (212) 310-8210<br>Email: ray.schrock@weil.com |

**Prime Clerk**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

Prime Clerk LLC

By: _____

Title:

Chassix Holdings, Inc.

By: _____

Title:

8

# Rates

### Claim and Noticing Rates[1]

| Title | Hourly Rate |
| --- | --- |
| Analyst | $45 |
| The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | |
| Technology Consultant | $110 |
| The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | |
| Consultant | $135 |
| The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. | |
| Senior Consultant | $160 |
| The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. | |
| Director | $190 |
| The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. | |

### Solicitation, Balloting and Tabulation Rates

| | Hourly Rate |
| --- | --- |
| Solicitation Consultant | $185 |
| The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Analyst prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. | |
| Director of Solicitation | $210 |
| The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. | |

[1] Prime Clerk does not charge overtime for any professional services it performs on weekends, holidays or after standard business hours. Additional professional services not covered by this rate structure will be charged at hourly rates, including any outsourced services performed under our supervision and control.

Prime Clerk

### Printing and Noticing Services

| | |
|---|---|
| Printing | $0.10 per page[1] |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

### Case Website

| | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

### Client Access

| | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

### Data Administration and Management

| | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

---

[1] Volume discounts will be applied to large mailings

Prime Clerk

**On-line Claim Filing Services**

| | |
|---|---|
| On-line claim filing | No charge |

**Call Center Services**

| | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | Set-up fee waived, $0.34 per minute |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

**Disbursement Services**

| | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |

Prime Clerk

**<u>Exhibit B</u>**

**Frishberg Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                                                       :
In re                                                  :        **Chapter 11**
                                                       :
**CHASSIX HOLDINGS, INC.,** *et al.*,                  :        **Case No. 15-_____ (___)**
                                                       :
                                                       :        **(Joint Administration Pending)**
                        **Debtors.**[1]                :
                                                       :
-------------------------------------------------------x

**DECLARATION OF MICHAEL J. FRISHBERG IN SUPPORT**
**OF DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. § 327(a),**
**FED. R. BANKR. P. 2014(a) AND 2016(a), AND LOCAL RULES 2014-1 AND**
**2016-1 FOR AUTHORITY TO EMPLOY AND RETAIN PRIME CLERK LLC AS**
**ADMINISTRATIVE ADVISOR *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

I, Michael J. Frishberg, under penalty of perjury, declare as follows:

1.      I am the Co-President and Chief Operating Officer of Prime Clerk LLC ("**Prime**

**Clerk**"), a chapter 11 administrative services firm whose offices are located at 830 3rd Avenue,

9th Floor, New York, New York 10022.  Except as otherwise noted, I have personal knowledge

of the matters set forth herein, and if called and sworn as a witness, I could and would testify

competently thereto.

2.      This Declaration is made in support of the application (the "**Application**")[2] of

Chassix Holdings, Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**"), and certain of their

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012).  The direct and indirect international subsidiaries of Chassix Holdings are not debtors in these chapter 11 cases.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

affiliates and subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, including Chassix Holdings and Chassix, the "**Debtors**") for authority to

employ and retain Prime Clerk LLC as Administrative Advisor *nunc pro tunc* to the

Commencement Date, which was filed contemporaneously herewith.

     3.     Prime Clerk is comprised of leading industry professionals with significant

experience in both the legal and administrative aspects of large, complex chapter 11 cases.

Prime Clerk's professionals have experience in noticing, claims administration, solicitation,

balloting and facilitating other administrative aspects of chapter 11 cases and experience in

matters of this size and complexity.  Prime Clerk's professionals have acted as debtor's counsel

or official claims and noticing agent in many large bankruptcy cases in this District and in other

districts nationwide.  Prime Clerk's active cases include: *In re dELiA*s, Inc.*, No. 14-23678

(RDD) (Bankr. S.D.N.Y.); *In re Aereo, Inc.*, No. 14-13200 (SHL) (Bankr. S.D.N.Y.); *In re

Dendreon Corp.*, No. 14-12515 (PJW) (Bankr. D. Del.); *In re ALCO Stores, Inc.*, No. 14-34941

(SGJ) (Bankr. N.D. Tex.); *In re Inversiones Alsacia S.A.*, No. 14-12896 (MG) (Bankr.

S.D.N.Y.); *In re SIGA Tech., Inc.*, No. 14-12623 (SHL) (Bankr. S.D.N.Y.); *In re NII Holdings,

Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y.); *In re Trump Entertainment Resorts, Inc.*, No. 14-

12103 (KG) (Bankr. D. Del.); *In re Mineral Park, Inc.*, No. 14-11996 (KJC) (Bankr. D. Del.); *In

re Entegra Power Group LLC*, No. 14-11859 (PJW) (Bankr. D. Del.); *In re Windsor Petroleum

Transp. Corp.*, No. 14-11708 (PJW) (Bankr. D. Del.); *In re Crumbs Bake Shop, Inc.*, No. 14-

24287 (MBK) (Bankr. D.N.J.); *In re Tactical Intermediate Holdings, Inc.*, No. 14-11659 (KG)

(Bankr. D. Del.); *In re MIG, LLC*, No. 14-11605 (KG) (Bankr. D. Del.); *In re FL 6801 Spirits

LLC*, No. 14-11691 (SCC) (Bankr. S.D.N.Y.).

     4.     As Administrative Advisor, Prime Clerk will perform the bankruptcy

administration services specified in the Application and set forth in that certain engagement agreement dated as of December 29, 2014 (the "**Engagement Agreement**"). In performing such services, Prime Clerk will charge the Debtors the rates set forth in the Engagement Agreement, which is annexed as an exhibit to the Proposed Order.

5.      Prime Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Prime Clerk and its professional personnel:

(a)      are not creditors, equity security holders, or insiders of the Debtors;

(b)      are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of the Debtors; and

(c)      do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

6.      I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "**Potential Parties in Interest**") in these chapter 11 cases. The list of Potential Parties in Interest was provided by the Debtors and included the Debtors, the Debtors' affiliates and subsidiaries, current and former directors and officers of the Debtors, shareholders, secured creditors, the Debtors' 40 largest unsecured creditors on a consolidated basis, the Debtors' major vendors, and other parties. The results of the conflict check were compiled and reviewed by Prime Clerk professionals under my supervision. At this time, and as set forth in further detail herein, Prime Clerk is not aware of any relationship that would present a disqualifying conflict of interest. Should Prime Clerk discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Prime Clerk will use reasonable efforts to promptly file a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Prime Clerk, nor any of its professionals,

WEIL:\95271010\1\35076.0003

has any materially adverse connection to the Debtors, their creditors or other relevant

parties.  Prime Clerk may have relationships with certain of the Debtors' creditors as vendors or

in connection with cases in which Prime Clerk serves or has served in a neutral capacity as

Claims and Noticing Agent and/or Administrative Advisor for another chapter 11 debtor.

8.      Certain of Prime Clerk's professionals were partners of or formerly employed by

firms that are providing or may provide professional services to parties in interest in these cases.

Such firms include Weil, Gotshal & Manges LLP; Kirkland & Ellis LLP; O'Melveny & Myers

LLP; Mayer Brown LLP; Willkie Farr & Gallagher LLP; Togut, Segal & Segal LLP; Fried,

Frank, Harris, Shriver & Jacobson LLP; Bracewell & Giuliani LLP; Proskauer Rose LLP;

McKinsey & Company; KPMG LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano &

Company, Inc., and Kurtzman Carson Consultants LLC.  Except as disclosed herein, these

professionals did not work on any matters involving the Debtors while employed by their

previous firms.  Moreover, these professionals were not employed by their previous firms when

these chapter 11 cases were filed.

9.      Shai Waisman is the Chief Executive Officer of Prime Clerk.  From

approximately May 1997 until December 2003, Mr. Waisman was an associate of Weil, Gotshal

& Manges LLP ("**Weil**"), the attorneys for the Debtors, and was a Partner of Weil from January

2004 until his departure in 2011. During his tenure at Weil, Mr. Waisman was neither involved

with, nor advised the Debtors, with respect to any aspect of their businesses, or their strategy,

preparation, or filing of their Chapter 11 cases.

10.     Stephen Karotkin is a partner of Weil, the attorneys for the Debtors.  Mr.

Karotkin's son, Joshua Karotkin, has been an employee of Prime Clerk since April 2014.  Joshua

Karotkin holds no equity interest in Prime Clerk and receives no compensation based upon Prime

Clerk's revenue.

11.     Benjamin Steele, a Vice President of Prime Clerk, was formerly an associate at Kirkland & Ellis LLP.  While there, he represented Carlyle Strategic Partners ("**Carlyle**") in connection with Carlyle's 2009 acquisition (with certain other entities) of substantially all of the assets of Metaldyne Corporation ("**Metaldyne**") during Metaldyne's chapter 11 cases.  During his representation of Carlyle, Mr. Steele also provided advice to Diversified Machine, Inc. ("**DMI**"), a debtor in these chapter 11 cases, which was then owned by Carlyle and which acquired certain Metaldyne assets from Carlyle.  Since Carlyle's sale of DMI in 2011, Mr. Steele has not had any connection to DMI.

12.     Prime Clerk has and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, Prime Clerk and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' chapter 11 cases in matters unrelated to these cases.  Prime Clerk may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

13.     Prime Clerk and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms and financial advisors.  Such firms engaged by Prime Clerk or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest.  All engagements where such firms represent Prime Clerk or its personnel in their individual capacities are unrelated to these chapter 11 cases.

14.     From time to time, Prime Clerk partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types

WEIL:\95271010\1\35076.0003

of investment funds (the "**Investment Funds**"), through which such individuals indirectly

acquire a debt or equity security of many companies, one of which may be one of the Debtors or

their affiliates, often without Prime Clerk's or its personnel's knowledge.  Each Prime Clerk

partner or employee generally owns substantially less than one percent of such Investment Fund,

does not manage or otherwise control such Investment Fund and has no influence over the

Investment Fund's decision to buy, sell or vote any particular security.  The Investment Fund is

generally operated as a blind pool, meaning that when the Prime Clerk partners or employees

make an investment in the Investment Fund, he, she or they do not know what securities the

blind pool Investment Fund will purchase or sell, and have no control over such purchases or

sales.

15.     From time to time, Prime Clerk partners or employees may personally directly

acquire a debt or equity security of a company which may be one of the Debtors or their

affiliates.  Prime Clerk has a policy prohibiting its partners and employees from using

confidential information that may come to their attention in the course of their work.  In this

regard, all Prime Clerk partners and employees are barred from trading in securities with respect

to which they possess confidential information.

16.     To the best of my knowledge, neither Prime Clerk nor any of its partners or

employees represents any interest materially adverse to the Debtors' estates with respect to any

matter upon which Prime Clerk is to be engaged.  Based on the foregoing, I believe that Prime

Clerk is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy

Code

WEIL:\95271010\1\35076.0003

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on March 12, 2015

/s/ Michael J. Frishberg
Michael J. Frishberg
Co-President and Chief Operating Officer
Prime Clerk LLC

WEIL:\95271010\1\35076.0003