**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                            :
In re                                       :        **Chapter 11**
                                            :
**CHASSIX HOLDINGS, INC.,** *et al.,*       :        **Case No. 15-10578 (MEW)**
                                            :
                                            :        **(Jointly Administered)**
                **Debtors.**[1]            :
                                            :
---------------------------------------------------------x

## INTERIM ORDER AUTHORIZING DEBTORS TO
## (A) OBTAIN POSTPETITION FINANCING PURSUANT TO
## 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND
## 364(e), (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363,
## (C) GRANT CERTAIN PROTECTIONS TO PREPETITION SECURED PARTIES
## PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (D) SCHEDULE A FINAL
## HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c)

Upon the motion (the "**Motion**"), dated March 12, 2015, of Chassix Holdings,

Inc. ("**Chassix Holdings**"), Chassix, Inc. ("**Chassix**") and certain of their direct and indirect

subsidiaries, each as debtor and debtor-in-possession (collectively, including Chassix Holdings

and Chassix, the "**Debtors**"), in the above captioned chapter 11 cases (the "**Chapter 11 Cases**")

pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and

364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the

"**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

Rules (the "**Local Rules**") for the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), seeking:

(1)    authority for the Debtors other than Chassix Holdings and UC Holdings, Inc. (collectively, the "**Borrowers**") to obtain postpetition financing consisting of (i) a senior secured non-amortizing asset based revolving credit facility in the principal amount of $150,000,000, including sub-facilities for swingline loans in an amount equal to $10,000,000 and letters of credit in an amount equal to $15,000,000 (the "**DIP ABL Facility**"), from PNC Bank, National Association, as Agent (in such capacity, the "**DIP ABL Agent**"), for itself or, if it elects to syndicate the loan, for a syndicate of banks, financial institutions and other institutional lenders (collectively, the "**DIP ABL Lenders**") and (ii) a senior secured non-amortizing new money term loan credit facility in the aggregate principal amount of $100,000,000 (the "**DIP Term Loan Facility**," and together with the DIP ABL Facility, the "**DIP Facilities**") from Cantor Fitzgerald Securities, as Agent (in such capacity, the "**DIP Term Loan Agent**" and together with the DIP ABL Agent, the "**DIP Agents**") for a syndicate of Prepetition Secured Noteholders (as defined below and such group, the "**DIP Term Loan Lenders**" and together with the DIP ABL Lenders, the "**DIP Lenders**");

(2)    authority for Debtor Chassix Holdings together with Debtor UC Holdings, Inc. ("**UC Holdings**") and each direct or indirect subsidiary of UC Holdings that is a guarantor (collectively, the "**DIP Loan Parties**") under (i) that certain Secured Notes Indenture (as amended or modified from time to time, the "**Prepetition Secured Indenture**") between Chassix and U.S. Bank National

Association ("**U.S. Bank**"), as trustee (in such capacity, the "**Prepetition Indenture Trustee**"), dated July 23, 2013, and (ii) that certain Amended and Restated Loan, Security and Guaranty Agreement (as amended or modified from time to time, the "**Prepetition ABL Credit Agreement**") among UC Holdings, the Borrowers, BMO Harris Bank N.A. ("**BMO**"), as agent (in such capacity, the "**Prepetition ABL Agent**") and the lenders from time to time party thereto (the "**Prepetition ABL Lenders**"), dated July 23, 2013, to guarantee on a secured basis the Borrowers' obligations in respect of the DIP Facilities;[2]

(3)      authority for the Borrowers to execute and enter into the DIP Documents (as defined below) and to perform all such other and further acts as may be necessary or appropriate in connection with the DIP Documents;

(4)      authority for the Borrowers to immediately use proceeds of the DIP ABL Facility and proceeds of the DIP Term Loan Facility upon entry of this interim order (the "**Interim Order**"), in order to refinance in full the indebtedness outstanding under the Prepetition ABL Credit Agreement, including the cash collateralization of all outstanding letters of credit or letters of credit guaranties thereunder and any interest accrued through the date of discharge, and, upon such discharge, receive the simultaneous release and termination of the Prepetition

---

[2] Chassix Holdings is not initially a guarantor of the DIP ABL Facility. Within 30 days after the closing of the DIP ABL Facility, Debtors shall cause Chassix Holdings to deliver to the DIP ABL Agent such customer identification information as the DIP ABL Agent shall require in order to comply with CIP regulations, and upon the DIP ABL Agent's satisfactory review of the same, at the DIP ABL Agent's option, shall cause Chassix Holdings to become a guarantor by execution of a joinder to the DIP ABL Credit Agreement. To the extent that Chassix Holdings, at the option of the DIP ABL Agent, does not become a guarantor under the DIP ABL Credit Agreement, the provisions of the DIP Orders adversely impacting Chassix Holdings or requiring or directing Chassix Holdings to take certain actions or incur certain obligations shall be of no force and effect, and Chassix Holdings will not be considered a DIP Loan Party with respect to the DIP ABL Facility.

3

WEIL:\95256444\11\58399.0011

ABL Lenders' liens, claims and encumbrances in accordance with this Interim Order, and provide working capital to the Debtors;

(5)     authority for the Debtors to (i) use the Cash Collateral (as defined below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined below), in each case in accordance with the relative priorities set forth more fully below, but subject in all respects to the Carve Out (as defined below), and (ii) provide adequate protection on the terms set forth in this Interim Order to (a) those purchasers and holders of 9 1/4% Senior Secured Notes due 2018 (the "**Prepetition Secured Notes**") issued by Chassix under the Prepetition Secured Indenture, whose liens and security interests are being primed by the DIP Facilities, and (b) the Prepetition ABL Agent and the Prepetition ABL Lenders in respect of contingent obligations that comprise a portion of the unpaid amounts of the Prepetition ABL Debt (as defined below);

(6)     approval of the intercreditor arrangements (the "**Intercreditor Arrangements**") set forth in **Exhibit "1"** annexed to this Interim Order as among the DIP ABL Facility, the DIP Term Loan Facility and the Prepetition Secured Indenture with respect to the DIP ABL Priority Collateral (as defined below) and the DIP Term Loan Priority Collateral (as defined below), and other property of the Debtors, if any, on which a lien is granted pursuant to the DIP Documents and this Interim Order (collectively, the "**DIP Collateral**");

(7)     the granting of *pari passu* superpriority claims under section 364(c)(1) of the Bankruptcy Code to the DIP Lenders payable from, and having recourse to, all

4

prepetition and postpetition property of the Debtors' chapter 11 estates and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject to the Carve Out (as defined below) and the terms of this Interim Order;

(8)      subject only to and effective upon entry of the Final Order, the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise;

(9)      modification of the automatic stay set forth in section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Documents and this Interim Order;

(10)      a waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including under Bankruptcy Rule 6004); and

(11)      that the Bankruptcy Court schedule a final hearing (the "**Final Hearing**"), pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held within 30 days of entry of this Interim Order to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Order**").

The interim hearing on the Motion having been held on March 13, 2015 (the "**Interim Hearing**"); and based upon all of the pleadings filed with the Bankruptcy Court, the evidence presented at the Interim Hearing and the entire record herein; and there being no objections to the relief sought in the Motion that have not previously been withdrawn, waived, settled, or resolved; ~~and the Bankruptcy Court having noted the appearance of all parties in interest;~~ and it appearing that the relief **granted in this Order** ~~requested in the Motion~~ is in the best interests of the Debtors and the Debtors' estates and creditors; and the Debtors having

5

provided notice of the Motion as set forth in the Motion and it appearing that no further or other

notice of the Motion need be given; and after due deliberation and consideration, and sufficient

cause appearing therefor:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

(1)      *Jurisdiction*.  The Bankruptcy Court has core jurisdiction over the Chapter

11 Cases, the parties affected by the Motion, and the Debtors' property pursuant to 28 U.S.C. §§

157(b) and 1334.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408

and 1409.

(2)      *Notice*.  Notice of the Motion, the relief requested therein and the Interim

Hearing was served by the Debtors on (i) the Office of the United States Trustee for Region 2

(the "**U.S. Trustee**"); (ii) the holders of the five largest secured claims against the Debtors (on a

consolidated basis); (iii) the holders of the forty (40) largest unsecured claims against the

Debtors (on a consolidated basis); (iv) the attorneys for BMO; (v) the attorneys for U.S. Bank

National Association, as trustee under the Prepetition Secured Indenture; (vi) the attorneys for

Delaware Trust Company, as successor trustee under the Unsecured Notes Indenture (defined

below); (vii) the attorneys for the Informal Committee of  Noteholders; (viii) the attorneys for

the DIP ABL Lenders; (ix) the attorneys for the DIP Term Loan Lenders; (x) the OEM

Customers; (xi) the attorneys for Platinum Equity Advisors, LLC; (xii) the Securities and

Exchange Commission; (xiii) the Internal Revenue Service; and (xiv) the United States

Attorney's Office for the Southern District of New York (collectively, the "**Notice Parties**").

Under the circumstances, the notice given by the Debtors of the interim relief requested in the

Motion and of the Interim Hearing constitutes due and sufficient notice thereof and complies

6

with Bankruptcy Rules 4001(b) and (c) and 9014, and Local Rule 4001-2, and no further notice of the relief sought at the Interim Hearing is necessary or required.

(3)    *Creditors' Committee Formation*.  No statutory committee of unsecured creditors has yet been appointed in any of these Chapter 11 Cases (the "**Creditors Committee**").

(4)    *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations contained in paragraph 25 below), **and without the subparagraphs of this paragraph 4 constituting findings of fact of orders of the Court,** the Debtors admit, stipulate, and agree that:

(a)    as of the commencement of the Debtors' Chapter 11 Cases on March 12, 2015 (the "**Commencement Date**"), the Debtors were indebted and liable to the Prepetition ABL Lenders  and to the holders of the Prepetition Secured Notes (the "**Prepetition Secured Noteholders**") as follows:

(i)    to the Prepetition ABL Agent and the Prepetition ABL Lenders, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $135,000,000, in respect of loans and advances made and the cash collateralization of all outstanding letters of credit or letters of credit guaranties thereunder, plus, unliquidated amounts including interest thereon and fees, expenses, charges and other obligations incurred in connection therewith as provided under the Prepetition ABL Credit Agreement (the "**Prepetition ABL Debt**");

(ii)    the Borrowers' obligations under the Prepetition ABL Credit Agreement are guaranteed by UC Holdings and certain of its direct and indirect subsidiaries (collectively, the "**Prepetition Loan Parties**"), and the Prepetition ABL Credit Agreement is, subject to certain exclusions described in the Prepetition ABL Credit Agreement,

7

secured by a first-priority lien on substantially all existing and future accounts receivable, inventory, cash, deposit accounts, investments in cash and cash equivalents, and other permitted investments, letter of credit rights relating to inventory and the accounts receivable of the Prepetition Loan Parties and all proceeds of the foregoing (collectively, the "**Prepetition ABL Priority Collateral**").   Subject to certain exclusions described in the Prepetition ABL Credit Agreement, the Prepetition ABL Credit Agreement is also secured by a second-priority lien on substantially all real estate assets, intellectual property, equipment, capital stock (limited in the case of  any foreign subsidiaries, to 65% of the voting stock of the Debtors' first tier foreign subsidiaries) and certain other collateral of the Prepetition Loan Parties other than the Prepetition ABL Priority Collateral (collectively, the "**Notes Priority Collateral**" and together with the Prepetition ABL Priority Collateral, the "**Prepetition Collateral**," and such liens and security interests, collectively the "**Prepetition ABL Security Interests**").   The Prepetition ABL Security Interests (i) are valid, binding, perfected, enforceable liens and security interests in the Prepetition Collateral, (ii) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iii)    to the Prepetition Secured Noteholders, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of $375,000,000, plus accrued and unpaid interest thereon, fees, expenses (including, without limitation, any attorneys', accountants', appraisers', and financial advisors' fees that are chargeable or reimbursable under the Prepetition Secured Indenture and related documents or pursuant to existing engagement letters as of the Commencement Date with certain Prepetition Secured Noteholders in connection with transactions contemplated hereby), charges and other obligations incurred prior to the Commencement Date in respect of the Prepetition Secured Notes (the

WEIL:\95256444\11\58399.0011

"**Prepetition Secured Notes Debt**" and together with the Prepetition ABL Debt, the "**Prepetition Indebtedness**");

(iv)    the Prepetition Secured Notes Debt is guaranteed by the Prepetition Loan Parties and the Prepetition Secured Notes are secured by a first-priority lien on all Notes Priority Collateral and a second-priority lien on all Prepetition ABL Priority Collateral (collectively, the "**Notes Security Interests**" and together with the Prepetition ABL Security Interests, the "**Prepetition Security Interests**").  The Notes Security Interests (i) are valid, binding, perfected, enforceable liens and security interests in the Prepetition Collateral, (ii) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject, and (C) valid, perfected and unavoidable liens permitted under the Prepetition Financing Documents (as defined below) to the extent such permitted liens are senior to or pari passu with the liens of the Prepetition Indenture Trustee and the Prepetition Secured Noteholders on the Prepetition Collateral;

(b)    the Prepetition Indebtedness constitutes the legal, valid, binding, non-avoidable and enforceable obligations of the Debtors, other than Chassix Holdings, and the Prepetition Security Interests are valid, binding, properly perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral, subject to the terms set forth in that certain Intercreditor Agreement (the "**Prepetition Intercreditor Agreement**") between BMO, in its capacity as ABL Collateral Agent, and U.S. Bank, in its capacity as Notes Collateral Agent, dated July 23, 2013;

WEIL:\95256444\11\58399.0011

(c)        The Debtors' obligations under the Indenture (as amended or modified from time to time, the "**Unsecured Notes Indenture**") with Delaware Trust Company, as successor trustee, pursuant to which Chassix Holdings issued $150 million in aggregate principal amount of 10%/10.75% of Senior PIK Toggle Notes due 2018 (collectively with all other expenses, charges and other obligations incurred in connection therewith as provided under the Unsecured Notes Indenture, the "**Unsecured Notes Indebtedness**") constitutes the legal, valid, binding, and enforceable obligations of the Debtors and the other DIP Loan Parties.

(d)        the Prepetition Indebtedness and the Prepetition Security Interests are not and shall not be subject to any attachment, contest, attack, rejection, recoupment, reduction, defense, counterclaim, setoff, offset, recharacterization, avoidance or other claim (as "claim" is defined by section 101(5) of the Bankruptcy Code), impairment, disallowance, counterclaim, subordination (whether equitable, contractual, or otherwise, except for any lien subordination contemplated herein), cause of action or any other challenge of any nature under the Bankruptcy Code (including, without limitation, under chapter 5 of the Bankruptcy Code), under applicable nonbankruptcy law or otherwise (including, without limitation, any applicable state Uniform Fraudulent Transfer Act or Uniform Fraudulent Conveyance Act);

(e)        in accordance with the terms and conditions set forth in this Interim Order and the DIP Documents, a portion of the Debtors' initial draw under the DIP Facilities will be immediately used to discharge in full the non-contingent indebtedness outstanding under the Prepetition ABL Credit Agreement, including the cash collateralization of all outstanding letters of credit or letter of credit guarantees thereunder and any interest accrued through the date of discharge; and, subject to the terms and conditions herein (including, without limitation, the priming liens granted hereunder, the Carve Out, and expiration of the Challenge

10

Period (as defined below)), adequate protection replacement liens at any time granted to the Prepetition ABL Agent and the Prepetition ABL Lenders by the Bankruptcy Court shall, unless otherwise ordered by the Bankruptcy Court), (i) continue to secure the unpaid portion of any Prepetition ABL Debt (including, without limitation, any Prepetition ABL Debt subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid to the Debtors or the DIP Lenders and the liens securing the Prepetition ABL Debt shall have not been avoided), and (ii) be (A) junior and subordinate in all respects to the DIP Lenders' liens on and security interests in the DIP Collateral (as defined below and including, without limitation, the DIP Liens granted under this Interim Order and the DIP Documents), (B) senior in priority to the Adequate Protection Liens (as defined below) on the DIP ABL Priority Collateral granted to the Prepetition Indenture Trustee under this Interim Order and (C) junior in priority to the Adequate Protection Liens (as defined below) on the DIP Term Loan Priority Collateral  granted under this Interim Order to the Prepetition Indenture Trustee (collectively, such liens and security interests of the Prepetition Secured Parties are hereinafter referred to as the "**Contingent Adequate Protection Liens**")), and any such reinstated Prepetition ABL Debt described in clause (i) of this subparagraph is hereinafter referred to as the "**Contingent Prepetition ABL Debt**");

(f)      In the event that the Prepetition ABL Agent or any Prepetition ABL Lenders (each in their capacities as such) are ordered by the Bankruptcy Court to disgorge, refund or in any manner repay to the Debtors or their estates any amounts (the **"Disgorged Amounts"**) leading to Contingent Prepetition ABL Debt, the Disgorged Amounts, unless otherwise ordered by the Bankruptcy Court, shall be placed in a segregated interest bearing account in which the Prepetition ABL Agent (on behalf of the Prepetition ABL Lenders) shall

11

have the first lien upon, pending a further final, non-appealable order of a court of competent jurisdiction regarding the distribution of such Disgorged Amounts (either returning the Disgorged Amounts to the Prepetition ABL Agent and the Prepetition ABL Lenders, distributing such amounts to the Debtors or otherwise); provided that, to the extent the Disgorged Amounts are returned to the Prepetition ABL Agent or any Prepetition ABL Lender, they shall receive such amounts plus any interest accrued at the non-default rate set forth in the Prepetition ABL Credit Agreement;

(g)     none of the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Indenture Trustee, the Prepetition Secured Noteholders (collectively, the "**Prepetition Secured Parties**"), the DIP Agents or the DIP Lenders are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition ABL Credit Agreement, the Prepetition Secured Indenture, the Prepetition Intercreditor Agreement (collectively with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented, or otherwise modified, the "**Prepetition Financing Documents**"), or the DIP Documents;

(h)     the Debtors do not have any claims, challenges, counterclaims, causes of action, defenses, recoupment, disgorgement, or setoff rights related to the Prepetition Indebtedness or the Prepetition Financing Documents, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Prepetition Secured Parties, and the Debtors waive, for themselves and their non-Debtor subsidiaries and affiliates, any right to challenge or contest in any way the perfection, validity, and enforceability

12

of the Prepetition Security Interests or the validity or enforceability of the Prepetition
Indebtedness and the Prepetition Financing Documents;

(i)    the liens granted to the DIP Agents on behalf of the DIP Lenders
shall be valid, enforceable and non-avoidable liens against the Debtors and the DIP Loan Parties;
and

(j)    subject to the reservation of rights set forth in paragraph 25 below,
including the expiration of the Challenge Period, the Debtors and the DIP Loan Parties hereby
absolutely and unconditionally forever waive, discharge and release each of the Prepetition ABL
Agent, the Prepetition Indenture Trustee and the Prepetition Secured Parties and each of their
respective present and former predecessors, successors, assigns, affiliates, members, partners,
managers, current and former equity holders, agents, attorneys, financial advisors, consultants,
officers, directors, employees and other representatives thereof (all of the foregoing, solely in
their respective capacities as such, collectively, the "**Prepetition Secured Party Releasees**") of
any and all "claims" (as defined in the Bankruptcy Code), counterclaims, actions, causes of
action (including, without limitation, causes of action in the nature of "lender liability"),
defenses, demands, debts, accounts, contracts, liabilities, setoff, recoupment or other offset rights
against any and all of the Prepetition Secured Party Releasees, whether arising at law or in
equity, relating to and/or otherwise in connection with the applicable Prepetition Indebtedness,
the Prepetition Security Interests, Prepetition Collateral or the debtor-creditor relationship among
any of the applicable Prepetition ABL Agent, Prepetition Indenture Trustee or the Prepetition
Secured Parties, on the one hand, and the Debtors, on the other hand, from the beginning of time
until immediately preceding the entry of this Interim Order, including, without limitation, (i) any
recharacterization, subordination, avoidance or other claim arising under or pursuant to section

13

105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law or municipal law and (ii) any right or basis to challenge or object to the amount, validity or enforceability of the applicable Prepetition Indebtedness or any payments made on account of the applicable Prepetition Indebtedness, or the validity, enforceability, priority or non-avoidability of the applicable Prepetition Security Interests securing the applicable Prepetition Indebtedness.

(k)    effective upon entry of this Interim Order, the Debtors hereby absolutely and unconditionally forever waive, discharge and release each of the DIP Agents and the DIP Lenders and each of their respective present and former predecessors, successors, assigns, affiliates, members, partners, managers, current and former equity holders, agents, attorneys, financial advisors, consultants, officers, directors, employees and other representatives thereof (all of the foregoing, solely in their respective capacities as such, collectively, the "**DIP Party Releasees**") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, actions, causes of action (including, without limitation, causes of action in the nature of "lender liability"), defenses, demands, debts, accounts, contracts, liabilities, setoff, recoupment or other offset rights against any and all of the DIP Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the applicable DIP Obligations, DIP Liens, DIP Collateral or the debtor-creditor relationship among any of the applicable DIP ABL Agent, DIP Term Loan Agent, DIP ABL Lenders or the DIP Term Loan Lenders, on the one hand, and any of the Debtors, on the other hand, from the beginning of time until immediately preceding the entry of this Interim Order, including, without limitation, (i) any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law or

14

municipal law and (ii) any right or basis to challenge or object to the amount, validity or enforceability of the applicable DIP Obligations or any payments made on account of the applicable DIP Obligations, or the validity, enforceability, priority or non-avoidability of the applicable DIP Liens securing the applicable DIP Obligations; provided that, nothing herein shall relieve the DIP Party Releasees from fulfilling their obligations or commitments with the DIP Facilities or operate as a release related thereto.

(l)      In no event shall the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable.

(5)      *Cash Collateral*.   For purposes of this Interim Order, the term "**Cash Collateral**," including, without limitation, all cash proceeds of Prepetition Collateral, shall have the meaning ascribed in section 363(a) of the Bankruptcy Code.

(6)      *Use of Cash Collateral*.  The Debtors are hereby authorized, subject to the terms and conditions of the DIP Documents, this Interim Order,  and in accordance with the Budget and the 13-Week Projection (each defined below), to use the Cash Collateral, during the period from the Commencement Date through termination of the DIP Obligations pursuant to the DIP Documents, solely for working capital and general corporate purposes, including, without limitation, in connection with the Debtors' transfer of funds to their non-Debtor foreign subsidiaries if authorized **by separate Order of this Court and** under the Budget and the 13-Week Projection; provided that upon the request of the Debtors, the Prepetition Secured Parties are directed to promptly turn over to the Debtors any and all Cash Collateral they may have received or may hold.   The Debtors' right to use the Cash Collateral shall terminate automatically, provided that, notwithstanding anything to the contrary herein or in the DIP ABL

15

Credit Agreement, the DIP ABL Agent shall be required to comply with the notice requirement in subsection (c) of this paragraph (6), on the earlier of:

(a)    the Scheduled Termination Date, as defined in the DIP ABL Credit Agreement (as defined below);

(b)    the Maturity Date, as defined in the DIP Term Loan Agreement (as defined below); and

(c)    the occurrence of an Event of Default under any DIP Documents; pursuant to which, either the DIP ABL Agent in respect of an Event of Default under the DIP ABL Credit Agreement or the DIP Term Loan Agent in respect of an Event of Default under the DIP Term Loan Agreement (as defined below), provides the Debtors, with a copy to the Debtors' counsel, five (5) days' prior written notice (which shall run concurrently with any notice provided under the applicable DIP Documents);

(7)    *Findings Regarding the DIP Facilities and Use of Cash Collateral*.

(a)    *Good Cause*.  Good cause has been shown for entry of this Interim Order.

(b)    The Debtors have an immediate need to obtain the financing provided under the DIP Facilities and use the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, maintain business relationships with vendors, suppliers and customers, to satisfy payroll obligations, to discharge in full the Prepetition ABL Debt, to make capital expenditures, to pay for certain costs and expenses related to the Debtors' Chapter 11 Cases, and to satisfy other working capital and operational needs of the Debtors.  The access of the Debtors to sufficient working capital and liquidity made available through the use of Cash Collateral, incurrence of

16

new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtors' estates and to a successful reorganization of the Debtors.

   (c)  The Debtors are unable to obtain financing, under existing circumstances, on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors (i) granting the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens (as defined below) and the Superpriority Claims (as defined below), in each case on the terms and conditions set forth in this Interim Order and the DIP Documents, and (ii) discharging the Prepetition ABL Debt in full upon entry of this Interim Order, such discharge being a requirement by the DIP ABL Agent for the DIP ABL Facility (and absent discharging the Prepetition ABL Debt in full upon entry of the Interim Order, would be unable to obtain the consent of the Prepetition ABL Lenders to the provisions of this Interim Order).

   (d)  The terms of the DIP Facilities and the use of the Cash Collateral pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are appropriate under the circumstances, and constitute reasonably equivalent value and fair consideration.

   (e)  The DIP Facilities have been negotiated in good faith and at arm's length among the Debtors, the DIP ABL Agent, the DIP Term Loan Agent, and the DIP Lenders, and all of the Debtors' obligations and indebtedness **authorized by this Interim Order and**

17

arising under, in respect of or in connection with the DIP Facilities and the DIP Documents, including, without limitation, (i) all loans made to, and all letters of credit issued for the account of the Debtors pursuant to that certain Superpriority Secured Debtor-In-Possession ABL Loan, Security and Guaranty Agreement, dated as of March 12, 2015 (as amended, supplemented, refinanced or otherwise modified from time to time not in violation of this Interim Order) among the Debtors, the lenders from time to time party thereto, the DIP ABL Agent and the other parties from time to time party thereto, substantially in the form attached as **Exhibit "C"** to the Motion (the "**DIP ABL Credit Agreement**"), (ii) all loans made to the Debtors pursuant to the Superpriority Secured Debtor-In-Possession Term Loan, Security and Guaranty Agreement, dated as of March 12, 2015 (as amended, supplemented, refinanced or otherwise modified from time to time not in violation of this Interim Order) among the Debtors, the lenders from time to time party thereto, the DIP Term Agent and the other parties from time to time party thereto, substantially in the form attached as **Exhibit "D"** to the Motion (the "**DIP Term Loan Agreement**" and, together with the DIP ABL Credit Agreement, including, in each case, any exhibits attached thereto and including, without limitation, all security agreements, all related or ancillary documents and agreements, and any mortgages contemplated thereby, the "**DIP Documents**"),   and (iii) any obligations and indebtedness of the Debtors arising under or in connection with the DIP Documents and this Interim Order now and hereafter owing to the DIP Agents or any DIP Lender (all of the foregoing in clauses (i), (ii) and (iii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP ABL Agent and the DIP ABL Lender in respect of the DIP ABL Facility, and the DIP Term Loan Agent and the DIP Term Loan Lenders in respect of the DIP Term Loan Facility, each in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth

18

therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)        Based upon the record before the Bankruptcy Court, the terms of the use of Cash Collateral and the adequate protection granted in this Interim Order have been negotiated at arms' length and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors and are consistent with the Debtors' fiduciary duties.

(g)        *Discharge of the Prepetition ABL Debt.*  Immediately following the entry of this Interim Order and as part of the initial borrowing under the DIP Facilities, the Debtors shall be required to use a portion of the proceeds from the DIP ABL Facility and the DIP Term Loan Facility, in accordance with the DIP Documents and this Interim Order, to discharge in full the Prepetition ABL Debt then outstanding.  The Prepetition ABL Security Interests shall be automatically released and terminated upon such discharge.  The Prepetition ABL Agent shall deliver or cause to be delivered, at the Debtors' cost and expense, any termination statements, releases and/or assignments in favor of the DIP ABL Agent, the DIP ABL Lenders or other documents, in each case as reasonably requested by the Debtors or the DIP ABL Agent in order to effectuate and/or evidence the release and termination of the Prepetition ABL Security Interests.

(h)        The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2.  Absent granting the interim relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Facilities and the use of the Cash Collateral

19

in accordance with this Interim Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

        (8)        *Superpriority Claims*.

        (a)        Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority senior administrative expense claims against the Debtors (the "**Superpriority Claims**"), which Superpriority Claims in respect of the DIP ABL Facility and the DIP Term Loan Facility shall rank *pari passu* with each other, with priority (except in respect of the Carve Out) over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Superpriority Claims shall be payable from and have recourse to all unencumbered property of the Debtors and their estates and all proceeds thereof.    Any payments, distributions or other proceeds received on account of such Superpriority Claims shall be promptly delivered to the applicable DIP Agent (on a *pari passu* basis) to be applied or further distributed by the applicable DIP Agent on account of the applicable DIP Obligations in such order as is specified in this Interim Order and the applicable DIP Documents.    The Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b)      For purposes hereof, the "**Carve Out**" shall mean an amount equal to the sum of: (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses of up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) allowed and unpaid claims for unpaid fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors or the Creditors' Committee, if any, whose retention is approved by the Bankruptcy Court pursuant to section 327 and 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**"), subject to the terms of this Interim Order, the Final Order and any other interim or other compensation order entered by the Bankruptcy Court that are incurred (A) at any time before or on the first business day following delivery by any DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice (the "**Pre-Trigger Date Fees**"), subject to (x) a monthly cap of $50,000 (the "**Committee Monthly Cap**")  with respect to Professional Fees incurred by Professional Persons retained by a Creditors' Committee, if any, and (y) any limits by this Interim Order or the Final Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigations of claims and defenses against any Prepetition Secured Parties pursuant to this Interim Order or the Final Order; and (B) after the first business day (the "**Trigger Date**") after the occurrence and during the continuance of an Event of Default (as defined in the DIP ABL Credit Agreement or the DIP Term Loan Agreement) and delivery of notice (the "**Carve Out Trigger Notice**") thereof (which may be by email) to the Debtors, the Debtors' counsel, the United States Trustee, and lead counsel for a Creditors' Committee, if any,

WEIL:\95256444\11\58399.0011

in an aggregate amount not to exceed $2,000,000 (the amount set forth in this clause (iii)(B) being the "**Post-Carve Out Trigger Notice Cap**" and together with the Committee Monthly Cap, the "**Carve Out Cap**"); <u>provided</u> that, nothing herein shall be construed to impair the ability of any party to the DIP  Documents to object to the fees, expenses, reimbursement or compensation described in clauses (iii) and (iv) above, on any grounds.

(c)    The DIP ABL Agent may impose a reserve against the Borrowing Base (as defined in the DIP ABL Credit Agreement) in an amount equal to the estimated total amount of all items that comprise the Carve Out for the tenor of the case, including Professional Fees in an amount determined by the DIP ABL Agent in its sole discretion (the "**Carve Out Reserve**").  Initially, and without limiting the DIP ABL Agent's discretion to increase the Carve Out Reserve in its sole discretion, the Carve Out Reserve shall consist of the sum of (i) the Professional Fees and U.S. Trustee fees, each as set forth in the 13-Week Projection for the months of March and April 2015, (ii) $100,000 for fees and expenses of a Chapter 7 trustee; (iii) $250,000 reserve for legal fees and expenses incurred by the Prepetition ABL Agent (on behalf of the Prepetition ABL Lenders) in connection with its defense of any unsuccessful investigation, prosecution or cause of action commenced by the Creditors' Committee or a party-in-interest prior to the expiration of the Challenge Period, solely as it relates to the Prepetition ABL Agent and Prepetition ABL Lenders' Prepetition Security Interests (the "**Prepetition ABL Facility Reserve**"), and (iv) the Post-Carve Out Trigger Notice Cap, and on the 25th day of each month, commencing March 25, 2015, the Carve Out Reserve will be adjusted (x) to relieve any amounts which were previously subject to the Carve Out Reserve but which were subsequently paid, (y) to increase (or decrease) the Carve Out Reserve for the prior month's Professional Fees and U.S. Trustee fees based on actual billings and (z) to increase the Carve Out Reserve by the

22

amount of the Professional Fees and the U.S. Trustee fees set forth in the 13-Week Projection for the subsequent month.

(d)     For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Documents, except as otherwise set forth in paragraph 25 below, all liens and claims securing the DIP Facilities, the Superpriority Claims, and any adequate protection liens granted to any parties entitled thereto shall be subject to the Carve Out, it being understood and agreed that the Carve Out shall be allocated 100% against the DIP ABL Priority Collateral.

(e)     *Budget/13-Week Projection.*  Attached as **Exhibit "2"** hereto and incorporated by reference herein is the weekly statement of receipts and disbursements of the Debtors and their domestic subsidiaries on a consolidated basis for the 21 weeks commencing with the first week following the Commencement Date (the "**Budget**"), including (i) individual line items for "Cash Receipts", "Vendors", "Lease, rent and utilities", "Payroll and benefits", "Taxes", "Capital and tooling", "Funding to rest of world entities", "DIP fees and interest", "Professional fees", "U.S. Trustee fees", "Other", "Net Cash Inflow / (Outflow)" and (ii) the anticipated uses of the DIP Term Loan Facility and the DIP ABL Facility for such period, in form and substance reasonably satisfactory to the DIP ABL Lenders and the Majority Lenders; provided that, to the extent that payment in full in cash of all DIP Term Loan Obligations has not occurred within such 21-week period, the Debtors shall deliver to the DIP Agents an updated budget covering the period through the Maturity Date (as defined in the DIP Term Loan Credit Agreement), which shall be in the same form as the Budget and shall be reasonably satisfactory to the DIP ABL Lenders and the Majority Lenders (as defined in the DIP Term Loan Credit Agreement), and such updated budget shall become the "Budget" for all purposes under the DIP

23

Documents.  **The inclusion of line items in the Budget with respect to the payment of obligations incurred pre-petition shall not by itself authorize the payment of such obligations and such pre-petition obligations may be paid only as expressly authorized in this Order or in other Orders of this Court.**  The Debtors shall also deliver to the DIP Agents no later than 5:00 p.m. on Friday of each calendar week, commencing with the first such date following the Commencement Date, (a) a projected statement of receipts and disbursements of the Debtors and their  consolidated domestic subsidiaries on a weekly basis for the following 13 calendar weeks which shall be in the same form as the Budget and shall be reasonably satisfactory to the DIP Agents (the "**13-Week Projection**"); and (b) a variance report on a weekly basis setting forth (1) actual cash receipts and disbursements for the week ending on the previous Friday, (2) all variances, on an individual line item basis and an aggregate basis, as compared to the Budget and the previously delivered 13-Week Projection on a weekly and cumulative basis, and (3) a certified explanation, in reasonable detail, for any material variance (the "**Variance Report**").

## THE DIP ABL FACILITY

(9)    *Authorization of the DIP ABL Facility Documents and the DIP ABL Facility.*

(a)    The Debtors are hereby authorized and directed to execute, deliver, enter into, and perform all obligations under the DIP ABL Credit Agreement, and the DIP Loan Parties are authorized to guarantee all of the Borrowers outstanding obligations under the DIP ABL Credit Agreement (the "**DIP ABL Obligations**").

(b)    The Borrowers are hereby authorized to make an initial draw under the DIP ABL Facility pursuant to the DIP ABL Credit Agreement, and the DIP Loan Parties are

24

hereby authorized to guaranty such borrowings of money and letters of credit, in an initial

aggregate principal amount of up to $125,000,000 of the DIP ABL Facility (subject to any

limitations on borrowings thereunder), in accordance with this Interim Order and the DIP ABL

Facility Documents (as defined below), which amount shall be used for all purposes permitted

under the DIP ABL Facility Documents, including, without limitation, a portion of which shall

be used together with proceeds from the DIP Term Loan Facility to discharge in full the

Prepetition ABL Debt, providing working capital for the Debtors, for other general corporate

purposes and to pay interest, fees, and expenses in accordance with this Interim Order and the

DIP ABL Facility Documents.

(c)      In furtherance of the foregoing and without further approval of the

Bankruptcy Court, each Debtor is authorized and directed to perform, and is authorized and

directed to cause the DIP Loan Parties to perform, all acts and to execute, deliver and perform all

instruments and documents (including, without limitation, the execution or recordation of

security agreements, mortgages, and financing statements), and to pay all fees, that may be

reasonably required or necessary for the Debtors' performance of their obligations under the DIP

ABL Facility, including, without limitation:

(i)      the execution, delivery and performance of the DIP ABL

Credit Agreement and any exhibits attached thereto, including, without limitation, all security

agreements and all related or ancillary documents and agreements and any mortgages

contemplated thereby (collectively, the "**DIP ABL Facility Documents**");

(ii)      the execution, delivery and performance of the guarantees by

the DIP Loan Parties of the obligations of the Borrowers under the DIP ABL Facility

Documents;

(iii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP ABL Facility Documents, in each case in such form as the Debtors and the DIP ABL Agent may agree, and no further approval of the Bankruptcy Court shall be required for amendments, waivers, consents or other modifications to and under the DIP ABL Facility Documents (and any reasonable fees paid in connection therewith) that do not (A) shorten the maturity or the scheduled termination date thereunder, or (B) increase the commitments, the rate of interest (other than invoking the default rate upon an Event of Default), or the letter of credit fees payable thereunder,

(iv)    the non-refundable payment to the DIP ABL Agent and the DIP ABL Lenders, as the case may be, of the reasonable fees and expenses set forth in the DIP ABL Facility Documents, including, without limitation, any upfront or backstop commitment, administrative, syndication or collateral agency fee, and the fees and expenses of the professionals retained as provided for in the DIP ABL Facility Documents, without the need to file retention motions or fee applications, or to provide notice to any party; and

(v)    the performance of all other acts required under or in connection with the DIP ABL Facility Documents.

(d)    Upon execution and delivery of the DIP ABL Facility Documents, the DIP ABL Facility Documents shall constitute valid, binding and unavoidable obligations of the Debtors and the DIP Loan Parties, enforceable against each Debtor and the other DIP Loan Parties in accordance with the terms of this Interim Order and the DIP ABL Facility Documents. No obligation, payment, transfer or grant of security under the DIP ABL Facility Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation,

26

under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim or counterclaim.

(10)    *DIP ABL Facility Liens.*    As security for the DIP ABL Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP ABL Agent of any property, the following security interests and liens are hereby granted to the DIP ABL Agent, for its own benefit and the benefit of the DIP ABL Lenders, subject only to the Carve Out (all such liens and security interests granted to the DIP ABL Agent, for its benefit and for the benefit of the DIP ABL Lenders, pursuant to this Interim Order and the DIP Documents, the "**DIP ABL Facility Liens**"):

(a)    First Lien on DIP ABL Priority Collateral.    Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP ABL Agent, for the benefit of the DIP ABL Lenders, shall have a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in the prepetition and postpetition assets of the Debtors defined as DIP ABL Priority Collateral in the DIP ABL Credit Agreement (the "**DIP ABL Priority Collateral**"), which shall include, without limitation, the Debtors' existing and future accounts receivable, inventory, cash, deposit accounts, investments in cash and cash equivalents and other permitted investments (other than capital stock of subsidiaries), letter of credit rights relating to inventory, accounts receivable and all proceeds of the foregoing, subject only to validly perfected, enforceable and unavoidable liens, arising on or before the Commencement Date, that are

27

expressly allowed to have priority by operation of statute or rule of law ("**Other Priority**

**Liens**") (for clarity, the prepetition liens securing the Prepetition Indebtedness shall not

constitute Other Priority Liens), <u>provided</u> that the DIP ABL Priority Collateral shall not include

the identifiable cash proceeds of the DIP Term Loan Collateral (as defined below) that are held

in a segregated deposit account used only for the purposes of holding such proceeds.  All of the

Debtors' claims, causes of action or other avoidance claims under sections 502(d), 544, 545, 547,

548, 549, 550 or 553 of the Bankruptcy Code, or any other avoidance actions under the

Bankruptcy Code (collectively, "**Avoidance Actions**") or any successful Avoidance Actions,

whether by judgment, settlement or otherwise shall not be considered  DIP ABL Priority

Collateral, but, subject only to and effective **only if so stated in** ~~upon entry of~~ the Final Order,

any proceeds thereof or property recovered, unencumbered or otherwise the subject of successful

Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")

shall constitute DIP ABL Priority Collateral, <u>provided</u> that, ~~the~~ **any such** lien on Avoidance

Proceeds securing the DIP ABL Obligations and the lien on Avoidance Proceeds securing the

DIP Term Loan Obligations shall rank *pari passu* with each other.

(11)    *Adequate Protection of Prepetition ABL Lenders*.  Until the indefeasible

discharge of the Prepetition ABL Debt (which shall be deemed to have occurred upon the

expiration of the Challenge Period (as defined below) if no adversary proceeding or contested

matter is timely and properly asserted, in accordance with paragraph 25 hereof, with respect to

the Prepetition ABL Debt or against the Prepetition ABL Agent or the Prepetition ABL Lenders

(in their capacities as such)), the Prepetition ABL Lenders are entitled, pursuant to sections 361,

363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the

Prepetition Collateral, including the Cash Collateral, for and equal in amount to any aggregate

28

diminution in the value of the Prepetition ABL Lenders' interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition ABL Agent's security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition ABL Debt and the Contingent Prepetition ABL Debt.  As adequate protection, the Prepetition ABL Agent and the Prepetition ABL Lenders are hereby granted the following (collectively, the "**Prepetition ABL Adequate Protection Obligations**"):

(a)    _Prepetition ABL Adequate Protection Liens_.  The Prepetition ABL Agent (for itself and for the benefit of the Prepetition ABL Lenders) is hereby granted in the amount of diminution in value of the Prepetition ABL Lenders' interest in its Cash Collateral that results from the Debtors' use thereof and the amount of any Contingent Prepetition ABL Debt, a replacement security interest in and lien upon all of the DIP Collateral, subject and subordinate only to (i) the security interests and liens granted to (x) the DIP Agents for the benefit of the DIP Lenders, and (y) the Prepetition Secured Noteholders in respect of the DIP Term Loan Priority Collateral pursuant to this Interim Order and the DIP Documents and any liens on the DIP Collateral, (ii) the Carve Out, (iii) the Prepetition Secured Noteholders Adequate Protection Liens (as defined below), and (iv) Other Priority Liens (such liens securing the Prepetition ABL Adequate Protection Obligations, the "**Prepetition ABL Adequate Protection Liens**").  The Prepetition ABL Adequate Protection Liens shall secure (i) solely in the event that the Prepetition ABL Debt is not discharged as provided in this Interim Order, an amount equal to any diminution in value of the Prepetition ABL Lenders' interest in its Cash

29

Collateral that results from the Debtor's use thereof, and (ii) the amount of any Contingent Prepetition ABL Debt.

(b)    In the event that the conditions precedent to the granting of the Prepetition ABL Adequate Protection Liens are satisfied, the Prepetition ABL Agent and the Prepetition ABL Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Prepetition ABL Adequate Protection Liens.  Whether or not the Prepetition ABL Agent and the Prepetition ABL Lenders shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.

(c)    Prepetition ABL Sections 503(b) and 507(b) Claim.    The Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, is hereby granted, subject to the Carve Out, a superpriority claim as provided for in sections 503(b) and 507(b) of the Bankruptcy Code for any remaining Prepetition ABL Debt and all Contingent Prepetition ABL Debt, immediately junior to the Superpriority Claims held by the DIP Agents and the DIP Lenders and senior to the superpriority claim held by the Prepetition Indenture Trustee and the Prepetition Secured Noteholders in respect of the DIP ABL Priority Collateral; provided that, unless otherwise expressly agreed to in writing by each DIP Agent, the Prepetition ABL Agent and the Prepetition ABL Lenders shall not receive or retain any payments, property or other

30

amounts in respect of the superpriority claims under sections 503(b) and 507(b) of the Bankruptcy Code granted hereunder or under the Prepetition ABL Credit Agreement unless and until the DIP Obligations have indefeasibly been paid in cash in full in accordance with the DIP Documents (the "**ABL Adequate Protection Claim**"); and provided further, that the Prepetition ABL Lenders hereby irrevocably waive the section 503(b) claim granted to them by this Interim Order upon the expiration of the Challenge Period with no challenge having been brought or, if such a challenge is brought, upon the entry of a final judgment resolving such challenge in favor of the Prepetition ABL Lenders; and provided further, that unless the initial draw on the DIP ABL Facility and the DIP Term Loan Facility is used to discharge the outstanding Prepetition ABL Debt, as authorized and directed herein, no further borrowings under the DIP ABL Facility or the DIP Term Loan Facility shall be permitted (other than for other expenditures that the Debtors choose to pay simultaneously therewith or for other expenditures consented to by the Prepetition ABL Agent).

## THE DIP TERM LOAN FACILITY

(12)    *Authorization of the DIP Term Loan Documents and the DIP Term Loan Facility*.

(a)    The Debtors are hereby authorized and directed to execute, deliver, enter into, and perform all obligations under the DIP Term Loan Agreement and related documents, including, without limitation, any exhibits attached thereto, all security agreements, all guarantees, all related or ancillary documents and agreements, and any mortgages contemplated thereby, as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, the "**DIP Term Loan Documents**"), and the DIP Loan Parties are authorized to

31

guarantee all of the Borrowers' outstanding obligations under the DIP Term Loan Documents (the "**DIP Term Loan Obligations**").

(b)     The Borrowers are hereby authorized to borrow a portion of the DIP Term Loan Facility in an amount not to exceed an aggregate principal amount of up to $80,000,000 (subject to any limitations on borrowings thereunder), in accordance with this Interim Order and the DIP Term Loan Documents, which amount shall be used solely for purposes permitted under the DIP Term Loan Documents, including, without limitation, discharging the Prepetition ABL Debt, providing working capital for the Debtors, and paying interest, fees, and expenses in accordance with this Interim Order and the DIP Term Loan Documents.

(c)     In furtherance of the foregoing and without further approval of the Bankruptcy Court, each Debtor is authorized and directed to perform, and is authorized and directed to cause the DIP Loan Parties to perform, all acts and to execute, deliver and perform all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Term Loan Facility, including, without limitation:

(i)     the execution, delivery and performance of the DIP Term Loan Documents;

(ii)     the execution, delivery and performance of the guarantees by the DIP Loan Parties of the Borrowers' obligations under the DIP Term Loan Documents;

(iii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Term Loan

32

Documents, in each case in such form as the Debtors and the DIP Term Loan Agent may agree, and no further approval of the Bankruptcy Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Term Loan Documents (and any reasonable fees paid in connection therewith) that do not (A) shorten the maturity of the extensions of credit or scheduled termination date thereunder, or (B) increase the commitments or the rate of interest payable thereunder;

(iv)   the non-refundable payment to the DIP Term Loan Agent and the DIP Term Loan Lenders, as the case may be, of the fees and any amounts due (or that may become due) in respect of the indemnification obligations in connection with the DIP Term Loan Documents and reasonable fees and expenses as may be due from time to time under the DIP Term Loan Documents, including, without limitation, any upfront or backstop commitment, administrative or collateral agency fee, and the fees and expenses of the professionals retained as provided for in the DIP Term Loan Documents, without the need to file retention motions or fee applications, or to provide notice to any party; and

(v)   the performance of all other acts required under or in connection with the DIP Term Loan Documents.

(d)   Upon execution and delivery of the DIP Term Loan Documents, the DIP Term Loan Documents shall constitute valid, binding and unavoidable obligations of the Debtors and the other DIP Loan Parties, enforceable against each Debtor and each DIP Loan Party in accordance with the terms of this Interim Order and the DIP Term Loan Documents.  No obligation, payment, transfer or grant of security under the DIP Term Loan Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation,

33

under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent

Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject

to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance,

impairment, cross-claim or counterclaim.

(13)    *DIP Term Loan Liens.*   As security for the DIP Term Loan Obligations,

effective and perfected upon the date of this Interim Order and without the necessity of the

execution by the Debtors (or recordation or other filing) of security agreements, control

agreements, pledge agreements, financing statements, mortgages or other similar documents, or

the possession or control by the DIP Term Loan Agent of any property, the following security

interests and liens are hereby granted to the DIP Term Loan Agent, for its own benefit and the

benefit of the DIP Term Loan Lenders (all property identified in clauses (a), (b), (c) and (d)

below being collectively referred to as the "**DIP Term Loan Collateral**"), subject only to the

payment of the Carve Out as provided for herein (all such liens and security interests granted to

the DIP Term Loan Agent, for its benefit and for the benefit of the DIP Term Loan Lenders,

pursuant to this Interim Order and the DIP Documents, the "**DIP Term Loan Liens**" and,

together with the DIP ABL Liens, the "**DIP Liens**"):

(a)    First Lien on Unencumbered Property.   Pursuant to section

364(c)(2) of the Bankruptcy Code, the DIP Term Loan Agent, for the benefit of the DIP Term

Loan Lenders, shall have a valid, binding, continuing, enforceable, fully-perfected first-priority

lien on, and security interest in, all tangible and intangible prepetition and postpetition property

of the Debtors, whether existing on or as of the Commencement Date or otherwise thereafter

acquired, including as a result of the discharge of the Prepetition ABL Debt, that is not subject to

valid, perfected, non-avoidable and enforceable liens (collectively, the "**Unencumbered**

34

**Property**"), including, without limitation, any and all cash and cash collateral of the Debtors (whether maintained with the DIP Term Loan Agent or otherwise) and any investment of such cash and cash collateral, general intangibles, intercompany loans, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, all issued and outstanding capital stock of each subsidiaries, other rights to payment whether arising before or after the Commencement Date (including, without limitation, postpetition intercompany claims against the Debtors, the DIP Loan Parties and any non-Debtor affiliates), and the proceeds, product, offspring or profits of all of the foregoing, as set forth in the DIP Term Loan Documents, <u>provided</u> that, for the avoidance of doubt, the Unencumbered Property shall not include the DIP ABL Priority Collateral.

(b)    <u>First Lien on DIP Term Loan Priority Collateral</u>.   Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Term Loan Agent, for the benefit of the DIP Term Loan Lenders, shall have a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in all assets of the Debtors and the DIP Loan Parties that do not constitute the DIP ABL Priority Collateral (the "**DIP Term Loan Priority Collateral**"), subject to the Intercreditor Arrangements and any Other Priority Liens.  The DIP Term Loan Priority Collateral is also encumbered by a second-priority lien (junior to the DIP Term Loan Liens) held in favor of the Prepetition Indenture Trustee for the benefit of the Prepetition Secured Noteholders.

(c)    <u>Priming Liens on Prepetition Collateral</u>.   Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Term Loan Agent, for the benefit of the DIP Term Loan Lenders, shall have a valid, binding, continuing, enforceable, fully-perfected first-priority

35

senior priming lien on, and security interest upon all pre- and post-petition property of the Debtors and the DIP Loan Parties that constitutes DIP Term Loan Priority Collateral.  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, adequate protection liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable interest of other parties arising out of liens, if any on such property existing immediately prior to the Commencement Date.

(d)    <u>Junior Liens on the DIP ABL Priority Collateral</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Term Loan Agent, for the benefit of the DIP Term Loan Lenders, shall have a valid, binding, continuing, enforceable, fully-perfected second-priority lien (junior to the DIP ABL Facility Liens) on, and security interest in, the DIP ABL Priority Collateral, subject only to the Intercreditor Arrangements and any Other Priority Liens. The DIP ABL Priority Collateral is also encumbered by a third-priority lien (junior to the DIP ABL Facility Liens and the DIP Term Loan Liens) held in favor of the Prepetition Indenture Trustee for the benefit of the Prepetition Secured Noteholders, subject to the Intercreditor Arrangements and any Other Priority Liens.

(e)    Notwithstanding the foregoing clauses (a), (b), (c) and (d), the DIP Term Loan Collateral under this Interim Order shall exclude Avoidance Actions, but, subject only to and effective ~~upon entry of~~ **if so ordered in** the the Final Order, shall include Avoidance Proceeds, <u>provided</u>, <u>however</u>, that the lien on Avoidance Proceeds securing the DIP Term Loan Obligations and ~~the~~ **any such** lien on Avoidance Proceeds securing the DIP ABL Obligations shall rank *pari passu* with each other.

36

(14)    *Adequate Protection of Prepetition Secured Noteholders.*    The Prepetition

Secured Noteholders are entitled, pursuant to sections 361, 363(e), 364(d)(1) and 507 of the

Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, including

any Cash Collateral, for and equal in amount to any aggregate diminution in the value of the

Prepetition Secured Noteholders' interests in the Prepetition Collateral, including, without

limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other

decline in value) of Cash Collateral, the Notes Priority Collateral, the ABL Priority Collateral,

and any other Prepetition Collateral, the priming of the Prepetition Secured Noteholders' security

interests and liens in the Prepetition Collateral by the DIP Agents and the DIP Lenders pursuant

to the DIP Documents and this Interim Order and the imposition of the automatic stay pursuant

to section 362 of the Bankruptcy Code.    As adequate protection, the Prepetition Indenture

Trustee and the Prepetition Secured Noteholders are hereby granted the following (collectively,

the "**Prepetition Secured Noteholders Adequate Protection Obligations**" and, together with

the Prepetition ABL Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)    Prepetition Secured Noteholder Adequate Protection Liens. The

Prepetition Indenture  Trustee, on behalf of itself and for the benefit of the Prepetition Secured

Noteholders, is hereby granted (effective and perfected upon the date of this Interim Order and

without the necessity of the execution by the Debtors of mortgages, security agreements, pledge

agreements, financing statements or other agreements), in the amount of such diminution, the

following liens: (i) a second-priority lien on the DIP Term Loan Priority Collateral, junior to the

lien and security interests granted to the DIP Term Loan Agent for the benefit of the DIP Term

Loan Lenders and (ii) a fourth-priority lien on the DIP ABL Priority Collateral, junior to the lien

and security interests granted to (x) the DIP ABL Agent for the benefit of the DIP ABL Lenders,

37

(y) the DIP Term Loan Agent for the benefit of the DIP Term Loan Lenders and (z) the Prepetition ABL Adequate Protection Liens (such liens securing the Prepetition Secured Noteholders' Adequate Protection Obligations, collectively, the "**Prepetition Secured Noteholders Adequate Protection Liens**" and, together with the Prepetition Adequate Protection Liens and Contingent Adequate Protection Liens, the "**Adequate Protection Liens**"). The Prepetition Secured Noteholders Adequate Protection Liens shall also be junior in all respects to the Carve Out, any Other Priority Liens, and, solely in respect of the DIP ABL Priority Collateral, junior in all respects to the Contingent Adequate Protection Liens.

(b)     The Prepetition Indenture Trustee and the Prepetition Secured Noteholders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Prepetition Secured Noteholders Adequate Protection Liens.  Whether or not the Prepetition Indenture Trustee and the Prepetition Secured Noteholders shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.

(c)     The Debtors are authorized and directed under sections 361, 363 and 364 of the Bankruptcy Code to make adequate protection payments which shall include (a) ongoing payments, when due or as soon as practicable thereafter, of all reasonable and documented costs, fees and expenses incurred either prior to or after the Commencement Date of

38

Paul, Weiss, Rifkind, Wharton & Garrison LLP, AlixPartners and, as reasonably agreed to by the Debtors and in accordance with the Budget,  other legal (foreign and domestic), environmental and industry advisors, each in its capacity as advisor, to the Informal Committee of Noteholders, and in each case, incurred in connection with the Debtors, the Chapter 11 Cases or the transactions contemplated hereby; and (b) continued maintenance and insurance of the Prepetition Collateral and the DIP Collateral as required under the Prepetition Financing Documents and the DIP Documents (collectively, the "**Adequate Protection Payments**").

(15)    *Prepetition Secured Noteholders' Section 507(b) Claim*.  The Prepetition Indenture Trustee, on behalf of itself and the Prepetition Secured Noteholders, is hereby granted, subject to the Carve Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the Superpriority Claims held by the DIP Agents and the DIP Lenders; provided that, unless otherwise expressly agreed to in writing by the DIP Agents, the Prepetition Indenture Trustee and the Prepetition Secured Noteholders shall not receive or retain any payments, property or other amounts in respect of the superpriority claims granted hereunder or under the Prepetition Financing Documents unless and until the DIP Obligations have indefeasibly been paid in cash in full in accordance with the DIP Documents (the "**Prepetition Secured Noteholders Adequate Protection Claim**" and, together with the Prepetition ABL Adequate Protection Claim, the "**Adequate Protection Claims**").

(16)    *Sufficiency of Adequate Protection*. Under the circumstances and given that the Adequate Protection Liens, the Adequate Protection Claims and the Adequate Protection Payments (collectively, the "**Adequate Protection Obligations**") are consistent with the Bankruptcy Code; the Bankruptcy Court finds that such adequate protection is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.  Except as expressly provided

39

herein, nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Prepetition Secured Party, the DIP Agents or any DIP Lenders including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).

(17)    *Limitation on Charging Expenses Against Collateral.*    Subject to and effective only upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of these Chapter 11 Cases or any future proceeding that may result therefrom, including a case under Chapter 7 of the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the DIP Agents and the DIP Lenders or the Prepetition Indenture Trustee and the Prepetition Secured Noteholders, as the case may be with respect to their respective interests, and no consent shall be implied from any action, inaction or acquiescence by the DIP Agents, the DIP Lenders, the Prepetition Indenture Trustee or the Prepetition Secured Noteholders.    In no event shall the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties be subject to (i) the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code or (ii) the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral.

40

WEIL:\95256444\11\58399.0011

(18)      *Payment of Fees and Expenses.*  Except as set forth in this paragraph 18,

no payments (including professional fees and expenses) with respect to the DIP Obligations or

the Adequate Protection Obligations shall be subject to Bankruptcy Court approval or required to

be maintained in accordance with the U.S. Trustee Guidelines, and no recipient of any such

payments shall be required to file any interim or final fee applications with the Bankruptcy Court

or otherwise seek Bankruptcy Court's approval of any such payments.

(19)      *Credit Bid.*  The DIP Agents, the DIP Lenders and the Prepetition Secured

Parties, respectively, shall have the respective right to credit bid (in the case of the DIP Term

Loan Obligations, with the consent of the Majority Lenders (as defined in the DIP Term Loan

Agreement)) a portion of or all of their respective claims in connection with a sale of the

Debtors' assets under section 363 of the Bankruptcy Code or under a plan of reorganization,

unless the Bankruptcy Court, for cause, orders otherwise.  For the avoidance of doubt, no party

other than the DIP ABL Agent may credit bid for any DIP ABL Priority Collateral unless the

DIP ABL Obligations have been paid in full in cash.

(20)      *Protection of DIP Lenders' Rights.*

(a)      The automatic stay provisions of section 362 of the Bankruptcy

Code shall be vacated and modified (and any stay of such vacation or modification under

Bankruptcy Rule 4001(a)(3) is waived) without further order of the Bankruptcy Court to the

extent necessary to permit the DIP Agents and the DIP Lenders to exercise all rights and

remedies provided for in the DIP Documents and Interim Order without further order of or

application or motion to the Bankruptcy Court, provided that, such rights and remedies that are

exercisable only upon the occurrence of an Event of Default (as defined in the DIP Documents

and as set forth in paragraph 23 of this Interim Order), but subject in all respects to the Carve Out

41

Cap, shall require the applicable DIP Agent to give five (5) days' prior written notice (which five days' notice period (the "**Default Notice Period**") shall run concurrently with any notice provided under the DIP Documents) to the U.S. Trustee, the Debtors, the Prepetition Indenture Trustee, the Prepetition ABL Agent, the other DIP Agent, and the Creditors' Committee, if any, of such DIP Agent's intent to exercise such rights and remedies; <u>provided</u> that, the Debtors shall not have the right to contest the enforcement of the remedies set forth in this Interim Order and the DIP Documents on any basis other than an assertion that an Event of Default has not occurred or has been cured within the cure periods expressly set forth herein or in the applicable DIP Documents; and <u>provided</u> further that during the Default Notice Period, the Debtors shall have no authority to borrow under the respective DIP Facility unless the applicable DIP Agent otherwise consents with respect to its DIP Facility, and each DIP Agent may terminate its respective DIP Facility and declare the respective DIP Obligations to be immediately due and payable, and **unless otherwise ordered by the Court** the Debtors' authority to use Cash Collateral shall be as set forth in the 13-Week Projection and limited solely to payment of expenses critical to preservation of the Debtors' estates and the payment of the fees, costs and expenses to administer these Chapter 11 Cases, as agreed by each respective DIP Agent in its sole discretion.  The Debtors and the Prepetition Secured Parties shall waive any right to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Agents and the DIP Lenders set forth in this Interim Order and in the DIP Documents.  For the avoidance of doubt, notwithstanding anything to the contrary in this Interim Order, immediately after the occurrence of a Triggering Event (as defined in the DIP ABL Credit Agreement), the DIP ABL Agent may place the

42

Debtors on dominion of funds as provided in the DIP ABL Credit Agreement without the requirement of five days' prior written notice.

(b)    The DIP Agents' or any DIP Lender's delay or failure to exercise rights and remedies under the applicable DIP Documents or this Interim Order shall not constitute a waiver of such DIP Agent's or such DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.

(c)    Except as otherwise expressly set forth in this Interim Order, the Debtors irrevocably waive any right, without the prior written consent of the DIP Agents, (a) to grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens or security interests in any DIP Collateral, whether senior, equal or subordinate to the DIP Agents' liens and security interests; (b) to use or seek to use Cash Collateral or; (c) (b) to modify or affect any of the rights of the DIP Agents or the DIP Lenders under this Interim Order or the DIP Documents by any plan of reorganization confirmed in these Chapter 11 Cases or subsequent order entered in these Chapter 11 Cases.

(21)    *Perfection of DIP Liens.*

(a)    The DIP Agents and the DIP Lenders are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as its true and lawful attorney, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over deposit accounts and securities accounts or any other asset, in each case, in order to validate and perfect the liens and security interests granted to them in the DIP Documents and this Interim Order.  Whether or not the DIP Agents

WEIL:\95256444\11\58399.0011

on behalf of the respective DIP Lenders, each in their discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over deposit accounts and securities accounts or any other assets, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the reasonable request of the DIP Agents, without any further consent of any party, the DIP Agents, the Debtors, each DIP Lender and the Prepetition Secured Parties are authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agents to further perfect the DIP Liens.

(b)       A certified copy of this Interim Order may, in the discretion of the DIP Agents, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording. For the avoidance of doubt, the automatic stay provisions of section 362(a) of the Bankruptcy Code shall be modified (and any stay of such modification under Bankruptcy Rule 4001(a)(3) is waived) to the extent necessary to permit the DIP Agents to take all actions, as applicable, referenced in this subparagraph (b) and in the immediately preceding subparagraph (a).

(c)       Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the

44

applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect

with respect to the granting of post-petition liens on such leasehold interest or the proceeds of

any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders in accordance with

the terms of the DIP Documents or this Interim Order.

(22)    *Preservation of Rights Granted Under this Interim Order*.

(a)    Except as expressly provided herein or in the DIP Documents, no

claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order

and the DIP Documents to the DIP Agents, the DIP Lenders and the Prepetition Secured

Noteholders shall be granted or allowed while any portion of the DIP Obligations or the

Adequate Protection Obligations (with respect to the Prepetition ABL Adequate Protection

Obligations, only if the Challenge Period has not expired) remain outstanding, and the DIP Liens

and the Adequate Protection Liens (with respect to the Prepetition ABL Adequate Protection

Liens, only if the Challenge Period has not expired) shall not (i) be subject to or junior to (A) any

lien or security interest that is avoided and preserved for the benefit of the Debtors and their

estates under section 551 of the Bankruptcy Code or (B) any liens arising after the

Commencement Date, including, without limitation, any liens or security interests granted in

favor of any federal, state, municipal or other domestic or foreign governmental unit (including

any regulatory body), commission, board or court for any liability of the Debtors, or

(ii) subordinate to or made *pari passu* with any other lien or security interest, whether under

sections 363 or 364 of the Bankruptcy Code or otherwise.

(b)    In addition to the Events of Default set forth in the DIP

Documents, unless all DIP Obligations and all Adequate Protection Obligations shall have been

indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of

45

Default under the DIP Documents and terminate the right of the Debtors to use Cash Collateral

hereunder if any of the Debtors seek, or if there is entered, unless the DIP Agents have otherwise

consented:   (i) any modification or extension of this Interim Order without the prior written

consent of the DIP Agents, the Prepetition Indenture Trustee, and the Prepetition Secured

Noteholders, and no such consent shall be implied by any other action, inaction or acquiescence

by the DIP Agents, the Prepetition Indenture Trustee, and the Prepetition Secured Noteholders,

(ii) an order converting or dismissing these Chapter 11 Cases; (iii) an order appointing a Chapter

11 trustee in these Chapter 11 Cases or any other representative or other similar appointment,

(iv) an order appointing an examiner with enlarged powers in these Chapter 11 Cases, (v) an

order providing for a change of venue with respect to these Chapter 11 Cases and such order

shall not have been reversed or vacated within ten (10) days; (vi) an order approving a plan of

reorganization or the sale of all or substantially all of the DIP Collateral (except to the extent

permitted under the DIP Documents) or the Prepetition Collateral (except to the extent permitted

under the Prepetition Financing Documents) shall have been entered which does not provide for

the repayment in full in cash of all DIP Obligations (other than any contingent obligations not yet

due and payable) and all Adequate Protection Obligations (with respect to the Prepetition ABL

Adequate Protection Obligations, so long as the Challenge Period has not expired) upon the

consummation thereof.  If an order dismissing these Chapter 11 Cases under section 1112 of the

Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance

with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, priming

liens, security interests and replacement security interests granted to the DIP Agents, the DIP

Lenders and the Prepetition Secured Parties, including, without limitation, the DIP Liens, the

Adequate Protection Liens, the Prepetition Secured Noteholders Adequate Protection Claims and

Adequate Protection Payments, the 507(b) claims, and the other administrative expense claims granted pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order (and that such Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Agents, the DIP Lenders and the Prepetition Secured Parties, including, without limitation, the DIP Liens, the Adequate Protection Liens, the Prepetition Secured Noteholders Adequate Protection Claims and Adequate Protection Payments, the 507(b) claims, and the other administrative expense claims, liens and security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest, including the priorities set forth herein and in the DIP Documents) until all DIP Obligations and all Adequate Protection Obligations (with respect to the Prepetition ABL Adequate Protection Obligations, so long as the Challenge Period has not expired) shall have been paid and satisfied in full and (y) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above; <u>provided</u> that the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition Obligations or under the Prepetition Financing Documents unless and until the DIP Obligations have indefeasibly been paid in cash in full in accordance with the DIP Documents.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agents, the Prepetition ABL Agent or the Prepetition Indenture Trustee, as applicable, of the effective date of such reversal, modification, vacation or stay or (ii) the validity, priority or enforceability

47

of any lien or priority authorized or created hereby or pursuant to the DIP Documents with

respect to any DIP Obligations or the Adequate Protection Obligations.  Notwithstanding any

such reversal, modification, vacation or stay, any use of Cash Collateral, the DIP Obligations or

the Adequate Protection Obligations incurred by the Debtors to the DIP Agents, the DIP

Lenders, or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of

written notice by the DIP Agents, the Prepetition ABL Agent or the Prepetition Indenture

Trustee of the effective date of such reversal, modification, vacation or stay shall be governed in

all respects by the original provisions of this Interim Order, and the DIP Agents, the DIP

Lenders, and the Prepetition Secured Parties shall be entitled to all the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and

pursuant to the DIP Documents.

(d)    Except as expressly provided in this Interim Order or in the DIP

Documents, the DIP Obligations and the Adequate Protection Obligations, including the DIP

Liens, the Superpriority Claims, the 507(b) claims, the Adequate Protection Liens, the Adequate

Protection Claims, the Adequate Protection Payments and all other rights and remedies of the

DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of

this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or

discharged by (i) the entry of an order converting any of these Chapter 11 Cases to a case under

Chapter 7, dismissing these Chapter 11 Cases, approving the sale of any DIP Collateral pursuant

to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents,

or except to the extent that a release of such liens is authorized under the Intercreditor

Arrangements) or by any other act or omission or (ii) the entry of an order confirming a plan of

reorganization in these Chapter 11 Cases (except an acceptable plan to the DIP Agents and DIP

48

Lenders under the DIP Documents) and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Chapter 11 Cases, in any successor cases, or in any superseding Chapter 7 cases under the Bankruptcy Code, and the DIP Obligations and the Adequate Protection Obligations, including the DIP Liens, the Superpriority Claims, the 507(b) claims, the Adequate Protection Liens, the Adequate Protection Claims, the Adequate Protection Payments, the other administrative expense claims granted pursuant to this Interim Order and all other rights and remedies of the DIP Agents, the DIP Lenders and the Prepetition Secured Parties granted under the DIP Documents and this Interim Order shall continue in full force and effect and shall be binding on any Chapter 7 trustee, Chapter 11 trustee, any litigation trust representative, other or similar party hereinafter appointed or elected for the estates of the Debtors until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash as set forth herein and the DIP Documents.

(23)    *Exculpation.*  Nothing in this Interim Order, the DIP Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Agent or any DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. In addition, (a) the DIP Agents and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all

49

risk of loss, damage, or destruction of the DIP Collateral shall be borne by the Debtors; provided that, (i) the foregoing shall not apply to any act or omission by the DIP Agents or the DIP Lenders that constitutes gross negligence or willful misconduct by the DIP Agents or the DIP Lenders as finally determined by a court of competent jurisdiction.

(24)    *Effect of Stipulations on Third Parties*.

(a)    The stipulations and admissions contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon each Debtor and their subsidiaries and any of their respective successors and assigns (including, without limitation, any Chapter 7 or Chapter 11 trustee appointed or elected for a Debtor), and each person or entity party to the DIP Documents in accordance with their respective terms and the terms of this Interim Order, in all circumstances.

(b)    The stipulations and admissions contained in this Interim Order, including without limitation, in paragraph 4 of this Interim Order, shall be binding on a permanent basis upon all other parties in interest, including without limitation, the Debtors, as debtors-in-possession, and the Debtors' estates, any Chapter 7 trustee, and any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (including the Creditors' Committee, if any) and any other person or entity acting on behalf of the Debtors' estates, unless (a) such committee or any other party-in-interest, in each case, with requisite standing granted by the Bankruptcy Court, has timely and properly filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 25) by no later than the date that is the later of (i) in the case of any such adversary proceeding or contested matter filed by a party-in-interest with requisite standing other than the Creditors' Committee, 60 days' after the date of entry of the Final Order, (ii) in the case of any such adversary proceeding

50

or contested matter filed by the Creditors' Committee, 60 days after the appointment of the Creditors' Committee, (iii) any such later date agreed to in writing by the Prepetition ABL Agent or the Prepetition Indenture Trustee, as applicable, and (iv) such longer period as the Bankruptcy Court orders for cause shown prior to the expiration of such period (the "**Challenge Period**"), (1) challenging the validity, enforceability, priority, extent, or amount of the obligations under the Prepetition Financing Documents (the "**Prepetition Obligations**") or the liens, subject to valuation under section 506 of the Bankruptcy Code, on the Prepetition Collateral securing the Prepetition Obligations or (2) otherwise asserting or prosecuting any avoidance actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Claims and Defenses**") against the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Collateral, and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding or contested matter; provided that, (i) as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Commencement Date and (ii) any challenge or claim shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be forever deemed waived, released and barred. If no such adversary proceeding or contested matter is timely and properly filed in respect of the Prepetition Obligations, (x) the Prepetition ABL Obligations to the extent not heretofore repaid and the other Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, subordination, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent

51

Chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Obligations, as

the case may be, shall be deemed to have been, as of the Commencement Date, and to be, legal,

valid, binding, perfected and of the priority specified in paragraph 4(b), not subject to defense,

counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Obligations,

the Prepetition Secured Parties, and the liens on the Prepetition Collateral granted to secure the

Prepetition Obligations, as the case may be, shall not be subject to any other or further challenge

by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any

other party-in-interest, and such committee or party-in-interest shall be enjoined from seeking to

exercise the rights of the Debtors' estates, including without limitation, any successor thereto

(including, without limitation, any estate representative or a Chapter 7 or 11 trustee appointed or

elected for any of the Debtors) with respect thereto.  If any such adversary proceeding or

contested matter is timely and properly filed, the stipulations and admissions contained in

paragraph 4 of this Interim Order shall nonetheless remain binding and preclusive (as provided in

the second sentence of this subparagraph) on any statutory or non-statutory committees

appointed or formed in the Chapter 11 Cases and any other party-in-interest, except as to any

such findings and admissions that were expressly and successfully challenged in such adversary

proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  In

the event that there is a timely successful challenge, pursuant and subject to the limitations

contained in this paragraph 24, to the validity, enforceability, extent, perfection or priority of the

Prepetition ABL Debt, the Bankruptcy Court shall have the power to unwind or otherwise

modify, after notice and hearing, the discharge of the Prepetition ABL Debt or a portion thereof

(which might include payment of the Disgorged Amounts or re-allocation of interest, fees,

principal or other incremental consideration paid in respect of the Prepetition ABL Debt or the

52

avoidance of liens and/or guarantees with respect to the Debtors), as the Bankruptcy Court shall determine. **If the validity, enforceability, extent perfection or priority of the Prepetition ABL Debt is successfully challenged as noted above, the provisions of this Order regarding adequate protection liens shall be adjusted as the Bankruptcy Court shall determine.** Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or any liens granted by any Debtor to secure any of the foregoing.

(25)    *Limitation on Use of DIP Facilities and DIP Collateral.* (a) Notwithstanding anything herein or in any other order by the Bankruptcy Court to the contrary, no borrowings, letters of credit, Cash Collateral, Collateral, Carve Out or the Carve Out Cap may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Prepetition Financing Documents, or the liens or claims granted under this Interim Order, the DIP Documents or the Prepetition Financing Documents, (ii) assert any Claims and Defenses or causes of action against the DIP Agents, the DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Secured Noteholders, or the Prepetition Indenture Trustee, or their respective agents, affiliates, representatives, attorneys or advisors, (iii) prevent, hinder or otherwise delay the DIP Agents' assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Financing Documents or this Interim Order, (iv) seek, except in response to the final relief requested in the

53

Motion, to modify any of the rights granted to the DIP Agents, the DIP Lenders, the Prepetition

ABL Agent, the Prepetition ABL Lenders, the Prepetition Indenture Trustee, or the Prepetition

Secured Noteholders hereunder or under the DIP Documents, the Prepetition Financing

Documents or the Prepetition Secured Indenture, in each of the foregoing cases without such

parties' prior written consent or (v) pay any amount on account of any claims arising prior to the

Commencement Date unless such payments are (1) approved by an order of this Court (including

hereunder) and (2) in accordance with the DIP Documents and the 13-Week Projection; provided

that, in accordance with the Carve Out, advisors to the Creditors' Committee may investigate the

liens granted pursuant to the Prepetition Financing Documents during the Challenge Period at an

aggregate expense for such investigation, but not litigation, prosecution, objection or challenge

thereto, not to exceed $50,000.

(26)    *Intercreditor Arrangements*.    The Bankruptcy Court approves the

Intercreditor Arrangements annexed hereto as **Exhibit "1"** and authorizes the Debtors to execute

and perform under any related documents and to perform all such other and further acts as may

be necessary or appropriate to comply with and fulfill the obligations under the Intercreditor

Arrangements.   Notwithstanding anything to the contrary herein or in any other order of the

Bankruptcy Court, in determining the relative priorities and rights of any Prepetition Secured

Party as against any other Prepetition Secured Party (including, without limitation, the relative

priorities and rights of the Prepetition Secured Parties with respect to the Adequate Protection

Liens granted hereunder), such priorities and rights shall continue to be governed by the

Prepetition Financing Documents.  The Intercreditor Arrangements shall survive the conversion

or dismissal of any of the Chapter 11 Cases or any relief from the automatic stay granted in the

Chapter 11 Cases.

(27)    *Proofs of Claim.*  None of the DIP Agent, DIP Lenders, or the Prepetition

Secured Parties will be required to file proofs of claim in any of Chapter 11 Cases or any

successor case, and the Debtor's stipulations in this Interim Order shall be deemed to constitute a

timely filed proof of claim.  Any order entered by the Bankruptcy Court in connection with the

establishment of a bar date for any claim (including without limitation administrative claims) in

the Chapter 11 Cases or any successor case shall not apply to the DIP Agent, the DIP Lenders, or

the Prepetition Secured Parties.

(28)    *Rights of Access and Information.*  Without limiting the rights of access

and information afforded the DIP Agents and DIP Lenders under the DIP Documents or the

Prepetition Secured Parties under the Prepetition Financing Documents, the Debtors shall be, and

hereby are, required to afford representatives, agents and/or employees of the DIP Agent, the

DIP Lenders and the Prepetition Secured Parties reasonable access to the Debtors' premises and

their books and records in accordance with the DIP Documents and the Prepetition Financing

Documents, as the case may be, and shall reasonably cooperate, consult with, and provide to

such persons all such information as may be reasonably requested.  In addition, the Debtors

authorize their independent certified public accountants, financial advisors, restructuring

advisers, investment bankers and consultants to cooperate, consult with, and provide to the DIP

Agents, and the Prepetition Indenture Trustee (and so long as an Event of Default has occurred

and is continuing, each Prepetition Secured Party and DIP Lender) all such information as may

be reasonably requested with respect to the business, results of operations and financial condition

of the Debtors.

(29)    *Order Governs.*  In the event of any inconsistency between the provisions

of this Interim Order or the Final Order, if and when entered, and the DIP Documents, the

55

provisions of this Interim Order or the Final Order, as applicable, shall govern.  Additionally, to the extent that there may be an inconsistency between the terms of this Interim Order or the Final Order, if and when entered, and the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures, if and when entered, the terms of this Interim Order or Final Order, as applicable, shall govern.

(30)    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Interim Order, including all findings herein and the Intercreditor Arrangements, shall be binding upon all parties-in-interest in the Chapter 11 Cases on a permanent basis, including without limitation, the DIP Agents, the DIP Lenders, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and the Debtors and their respective successors and assigns (including any Chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors, or similar responsible person or similar designee or litigation trust hereinafter appointed or elected for the estates of the Debtors) and shall inure to the benefit of the DIP ABL Agent, the DIP Term Loan Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns, including after conversion or dismissal of any of the Chapter 11 Cases; provided that, except to the extent expressly set forth in this Interim Order, the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any Chapter 7 trustee, chapter 11 trustee or similar responsible person or similar designee or litigation trust hereunder appointed for the estates of the Debtors.

WEIL:\95256444\11\58399.0011

(31)    *Limitation of Liability*.  In determining to make any loan under the DIP

Documents, permitting the use of Cash Collateral or in exercising any rights or remedies as and

when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agents, the DIP

Lenders and the Prepetition Secured Parties shall not be deemed to be in control of the operations

of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to

the operation or management of the Debtors (as such terms, or any similar terms, are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 29

U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing

in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to

impose or allow the imposition upon the DIP Agents, the DIP Lenders, or the Prepetition

Secured Parties of any liability for any claims arising from the prepetition or postpetition

activities of any of the Debtors and their affiliates (as defined in section 101(2) of the

Bankruptcy Code).

(32)    *Effectiveness*.  This Interim Order ~~shall constitute findings of fact and
conclusions of law and~~ shall take effect immediately upon execution hereof as of the

Commencement Date, and there shall be no stay of execution of effectiveness of this Interim

Order.  Any stay of the effectiveness of this Interim Order under Bankruptcy Rule 6004 or

otherwise is waived.

(33)    *Final Hearing*.  The Final Hearing on the Motion shall be held on April 7**,
2015 at 11:00 a.m. (Eastern Time)**, before the Bankruptcy Court.

(34)    *Final Hearing Notice*.  The Debtors shall promptly mail copies of this

Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having

been given notice of the Interim Hearing, and to any other party that has filed a request for

WEIL:\95256444\11\58399.0011

notices with the Bankruptcy Court and to the Creditors' Committee after the same has been

appointed, or Creditors' Committee counsel, if the same shall have been appointed.  Any party-

in-interest objecting to the relief sought at the Final Hearing shall serve and file written

objections with the Bankruptcy Court in accordance with General Order M-399, and served upon

(i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue,

New York, New York 10153 (Attn: Marcia L. Goldstein, Esq. and Ray C. Schrock, Esq.); and

(ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Eastern Time)**

**on March 30, 2015**.

Dated: March 13, 2015
       New York, New York

s/Michael E. Wiles_____
United States Bankruptcy Judge

WEIL:\95256444\11\58399.0011

## EXHIBIT 1 – INTERCREDITOR ARRANGEMENTS

*Capitalized terms used in this Exhibit I and not defined in this Exhibit shall have the meanings*

*assigned to such terms in this Interim Order.*

1.      **DEFINITIONS.**

"Access Agreement" – means that certain Access Agreement by and among Chassix, Inc., as

Supplier, UC Holdings, Inc., PNC Bank, National Association and Cantor Fitzgerald Securities,

as the DIP Agents, and General Motors LLC, Ford Motor Company, Nissan North America, Inc.,

and FCA US LLC f/k/a Chrysler Group LLC, as Customers.

"DIP ABL Secured Parties" – means the "Secured Parties" (as defined in the DIP ABL Credit

Agreement).

"Discharge of DIP ABL Obligations" - means (A) termination of all commitments of the DIP

ABL Secured Parties under the DIP ABL Facility Documents and (B) with respect to (i) any DIP

ABL Obligations (other than contingent indemnification and contingent expense reimbursement

obligations, in each case, for which no claims have been asserted), payment in full in cash of all

DIP ABL Obligations, and, with respect to letters of credit or letter of credit guaranties

outstanding under the DIP ABL Facility Documents, either (x) cancellation and return to the DIP

ABL Agent of all letters of credit or letter of credit guaranties outstanding under the DIP ABL

Facility Documents or (y) delivery of cash collateral in respect thereof in a manner consistent

with the DIP ABL Credit Agreement; and (ii) any DIP ABL Obligations that are contingent in

nature (other than DIP ABL Obligations consisting of LC Obligations or Secured Bank Product

Obligations (each as defined in the DIP ABL Credit Agreement) of a DIP Loan Party, which are

1

addressed in subparagraph B(i) above), the depositing of cash with the DIP ABL Agent in an

amount equal to 100% of any such DIP ABL Obligations that have been liquidated or, if such

DIP ABL Obligations are unliquidated in amount and represent a claim which has been asserted

against the DIP ABL Agent or a DIP ABL Secured Party and for which an indemnity has been

provided by the DIP Loan Parties in any of the DIP ABL Facility Documents, in an amount that

is equal to such claim or the DIP ABL Agent's good faith estimate of such claim; provided that

the Discharge of DIP ABL Obligations shall not be deemed to have occurred if such payments

are made with the proceeds of other DIP ABL Obligations that constitute an exchange or

replacement for or a Refinancing of such DIP ABL Obligations.

"Discharge of DIP Term Loan Obligations" - means (A) termination of all commitments under

the DIP Term Loan Documents, and (B) payment in full in cash of all DIP Term Loan

Obligations and satisfaction and discharge of the DIP Term Loan Credit Agreement (other than

obligations that expressly survive such satisfaction and discharge or legal or covenant

defeasance).

"Discharge of Prepetition Secured Notes Obligations" - means payment in full in cash of all

Prepetition Secured Notes Obligations, satisfaction and discharge of the Prepetition Secured

Indenture or legal or covenant defeasance of the Prepetition Secured Indenture (other than

obligations that expressly survive such satisfaction and discharge or legal or covenant

defeasance).

"Discharge of Fixed Asset Obligations" – means, collectively, the Discharge of DIP Term Loan

Obligations and Discharge of Prepetition Secured Notes Obligations.

"Enforcement Notice" – means a written notice delivered, at a time when an event of default has occurred and is continuing under the DIP ABL Facility Documents, the DIP Term Loan Documents or the Prepetition Secured Indenture, by the DIP ABL Agent, the DIP Term Loan Agent or the Prepetition Indenture Trustee, as applicable, to the other parties, specifying the relevant event of default.

"Fixed Asset Obligations" – means, collectively, the DIP Term Loan Obligations and the Prepetition Secured Notes Obligations.

"Fixed Asset Secured Parties" – means, collectively, the Prepetition Indenture Trustee, the Prepetition Secured Noteholders, the DIP Term Loan Agent and the DIP Term Loan Lenders.

"Premises" – means any real property owned or leased by the DIP Loan Parties at which any DIP Collateral is located.

"Prepetition Secured Notes Documents" – means Prepetition Secured Indenture and the other Senior Secured Notes Documents (as defined in the Prepetition Secured Indenture).

"Prepetition Secured Notes Obligations" – means all obligations outstanding under the Prepetition Secured Notes.

"Proceeds" means (a) all "proceeds," as defined in Article 9 of the UCC, with respect to the DIP Collateral, and (b) whatever is recoverable or recovered when any DIP Collateral is sold, exchanged, collected or disposed of, whether voluntarily or involuntarily.

"Refinance" means, in respect of any indebtedness, to refinance, extend, renew, defease, amend,

3

increase, modify, supplement, restructure, refund, replace or repay, or to issue other indebtedness

or enter alternative financing arrangements, in exchange or replacement for such indebtedness, in

whole or in part, including by adding or replacing lenders, creditors, agents, borrowers and/or

guarantors, including any increase in the principal amount of the loans and commitments

provided thereunder, and including in each case, but not limited to, after the original instrument

giving rise to such indebtedness has been terminated.  "Refinanced" and "Refinancing" have

correlative meanings.

"Secured Party Representative" means, collectively, the DIP ABL Agent, the DIP Term Loan

Agent and the Prepetition Indenture Trustee.

"UCC" means the Uniform Commercial Code of any applicable jurisdiction.

4

**2.**     **Exercise of Remedies on DIP ABL Priority**
           **Collateral by Fixed Asset Secured Parties**

(a) Until the Discharge of DIP ABL Obligations, the Fixed Asset Secured Parties:

(i)     will not exercise or seek to exercise any rights, powers, or remedies with

respect to any DIP ABL Priority Collateral;

(ii)     will not, directly or indirectly, contest, protest or object to or hinder any

judicial or non-judicial foreclosure proceeding or action (including any partial or

complete strict foreclosure) brought by the DIP ABL Agent or any other DIP

ABL Lender relating to the DIP ABL Priority Collateral or any other exercise by

the DIP ABL Agent or any other DIP ABL Lender of any other rights, powers and

remedies relating to the DIP ABL Priority Collateral, including any sale, lease,

exchange, transfer or other disposition of the DIP ABL Priority Collateral,

whether under the DIP ABL Facility Documents, applicable law, or otherwise;

(iii)     will not object to the forbearance by the DIP ABL Agent or the DIP ABL

Lenders from bringing or pursuing any enforcement action with respect to the DIP

ABL Priority Collateral;

(iv)     except as may be permitted by Section 2(c), irrevocably, absolutely and

unconditionally waive any and all rights the Fixed Asset Secured Parties may

have as a junior lien creditor or otherwise to object (and seek or be awarded any

relief of any nature whatsoever based on any such objection) to the manner in

which the DIP ABL Agent or the DIP ABL Lenders (i) enforce or collect (or

attempt to collect) the DIP ABL Obligations or (ii) realize or seek to realize upon

5

or otherwise enforce the DIP ABL Facility Liens, regardless of whether any
action or failure to act by or on behalf of the DIP ABL Agent or the DIP ABL
Lenders is adverse to the interest of the Fixed Asset Secured Parties.  Without
limiting the generality of the foregoing, the Fixed Asset Secured Parties shall be
deemed to have irrevocably, absolutely and unconditionally waived any right to
object (and seek to be awarded any relief of any nature whatsoever based on any
such objection), at any time prior or subsequent to any disposition of any of the
DIP ABL Priority Collateral, on the ground(s) that any such disposition of the
DIP ABL Priority Collateral (x) would not be or was not "commercially
reasonable" within the meaning of the UCC and/or (y) would not or did not
comply with any other requirement under the UCC or under any other applicable
law governing the manner in which a secured creditor is to realize on its
collateral;

(v)    subjection to Section 2(c), acknowledge and agree that no covenant,
agreement or restriction in the documents evidencing the liens and claims of the
Fixed Asset Secured Parties shall be deemed to restrict in any way the rights and
remedies of the DIP ABL Agent or the DIP ABL Lenders with respect to the DIP
ABL Priority Collateral; and

(vi)    subject to Section 2(c), agree that none of them shall object (or support
any other Person objecting) to any motion by the DIP ABL Agent or the other
DIP ABL Lenders seeking relief from the automatic stay in respect of the DIP
ABL Priority Collateral;

provided that, in the case of (i), (ii) and (iii) above, the liens granted to secure the Fixed Asset

6

Obligations shall attach to any Proceeds resulting from actions taken by the DIP ABL Agent or

any DIP ABL Security Party with respect to the DIP ABL Priority Collateral in accordance with

the Intercreditor Arrangements (including the priorities described in Section 2) after application

of such Proceeds to the extent necessary to meet the requirements of a Discharge of DIP ABL

Obligations.

(b)    Until the Discharge of DIP ABL Obligations, the DIP ABL Agent and the other DIP

ABL Lenders shall have the right to enforce rights, exercise remedies (including set-off

and the right to credit bid their debt) and, in connection therewith (including voluntary

dispositions of DIP ABL Priority Collateral by the Debtors after an Event of Default

under the DIP ABL Facility Documents) make determinations regarding the release,

disposition or restrictions with respect to the DIP ABL Priority Collateral (including,

without limitation, exercising remedies under account control agreements and lockbox

agreements) without any consultation with, notice to or the consent of the Fixed Asset

Secured Parties; provided that the liens securing the obligations owed to the Fixed Asset

Secured Parties shall remain on the Proceeds (other than those properly applied to the

DIP ABL Obligations) of such DIP ABL Priority Collateral released or disposed of (for

clarity, to the extent that the DIP ABL Agent or DIP ABL Lenders acquire DIP ABL

Priority Collateral via credit bid, then there shall be no Proceeds and the liens of the

Fixed Assets Secured Parties on the DIP ABL Priority Collateral that is subject to such

credit bid shall be discharged).  In exercising rights, powers and remedies with respect to

the DIP ABL Priority Collateral, the DIP ABL Agent and the DIP ABL Lenders may

enforce the provisions of the DIP ABL Facility Documents and exercise rights, powers

and/or remedies thereunder and/or under applicable law or otherwise, all in such order

7

and in such manner as they may determine in the exercise of their sole discretion. Such

exercise and enforcement shall include, without limitation, the rights of an agent

appointed by them to sell or otherwise dispose of the DIP ABL Priority Collateral upon

foreclosure, to incur expenses in connection with such sale or disposition and to exercise

all the rights and remedies of a secured creditor under the UCC.

(c)    Notwithstanding anything to the contrary contained herein, any Fixed Asset Secured

Party may:

(i) take any action (not inconsistent with the terms of the Intercreditor

Arrangements and not adverse to the priority status of the DIP Liens on the DIP

ABL Priority Collateral, or the rights of the DIP ABL Agent or any of the DIP

ABL Secured Parties to exercise rights, powers, and/or remedies in respect

thereof) in order to create, perfect, preserve or protect (but not enforce) its DIP

Liens and Adequate Protection Liens on any of the DIP ABL Priority Collateral;

(ii) file any necessary or appropriate responsive or defensive pleadings in

opposition to any motion, claim, adversary proceeding or other pleading made by

any person objecting to or otherwise seeking the disallowance of the claims or

DIP Liens of the Fixed Asset Secured Parties, including any claims secured by the

DIP ABL Priority Collateral, if any, in each case in accordance with the terms of

the Intercreditor Arrangements;

(iii) unless such Fixed Asset Secured Party would not be permitted under the

Intercreditor Arrangements to take such action in its capacity as a secured

creditor, file (A) any pleadings, objections, motions or agreements which assert

rights or interests available to unsecured creditors of the Debtors, in each case, in

8

accordance with the terms of the Prepetition Financing Documents and the DIP

Documents, as applicable, and applicable law; provided that in the event that any

Fixed Asset Secured Party becomes a judgment Lien creditor in respect of the

DIP ABL Priority Collateral as a result of its enforcement of its rights as an

unsecured creditor with respect to the Fixed Asset Obligations, such judgment

Lien shall be subject to the terms of the Intercreditor Arrangements for all

purposes (including in relation to the DIP ABL Obligations) as the other liens

securing the Fixed Asset Obligations are subject to the Intercreditor Arrangements

and (B) any pleadings, objections, motions or agreements which assert rights or

interests available to secured creditors solely with respect to the Fixed Asset

Collateral; and

(iv) vote on any plan of reorganization, file any proof of claim, impose a default

rate or late fees, collect and apply monies deposited from time to time in their

accounts to the extent constituting Fixed Asset Collateral against the Fixed Asset

Obligations, make other filings and make any arguments and motions (including

in support of or opposition to, as applicable, the confirmation or approval of any

plan of reorganization) that are, in each case, in accordance with the terms of the

Intercreditor Arrangements.

(d) Nothing in the Intercreditor Arrangements shall prohibit the receipt by any Fixed Asset

Secured Parties of the required payments of interest, principal, adequate protection

payments and other amounts owed in respect of the Fixed Asset Obligations, so long as

such receipt is not the direct or indirect result of the exercise by the Fixed Asset Secured

Parties of rights or remedies as a secured creditor (including set-off) with respect to the

9

DIP ABL Priority Collateral or enforcement in contravention of the Intercreditor

Arrangements of any lien held by any of them.  Nothing in the Intercreditor

Arrangements impairs or otherwise adversely affects any rights or remedies any Fixed

Asset Secured Party may have against the Debtors and the DIP Loan Parties under the

DIP Term Loan Documents or the Prepetition Financing Documents.

**3.**    **Exercise of Remedies on DIP Term Loan Priority
Collateral by DIP ABL Agent**

(a) Until the Discharge of Fixed Asset Obligations, the DIP ABL Agent and the DIP ABL

Secured Parties:

(i)    will not exercise or seek to exercise any rights, powers, or remedies with

respect to any DIP Term Loan Priority Collateral;

(ii)    will not, directly or indirectly, contest, protest or object to or hinder any

judicial or non-judicial foreclosure proceeding or action (including any partial or

complete strict foreclosure) brought by any Fixed Asset Secured Party relating to

the DIP Term Loan Priority Collateral or any other exercise by any Fixed Asset

Secured Party of any other rights, powers and remedies relating to the DIP Term

Loan Priority Collateral, including any sale, lease, exchange, transfer or other

disposition of the DIP Term Loan Priority Collateral, whether under the DIP

Term Loan Facility Documents, applicable law, or otherwise;

(iii)    will  not object to the forbearance by the DIP Term Loan Agent or any

Fixed Asset Secured Party from bringing or pursuing any enforcement action with

respect to the DIP Term Loan Priority Collateral;

(iv)    except as may be permitted by Section 3(c), irrevocably, absolutely and

10

unconditionally waive any and all rights the DIP ABL Agent or any DIP ABL
Lender may have as a junior lien creditor or otherwise to object (and seek or be
awarded any relief of any nature whatsoever based on any such objection) to the
manner in which the DIP Term Loan Agent or the Fixed Asset Secured Parties (i)
enforce or collect (or attempt to collect) the Fixed Asset Obligations or (ii) realize
or seek to realize upon or otherwise enforce the liens on the DIP Term Loan
Priority Collateral, regardless of whether any action or failure to act by or on
behalf of the DIP Term Loan Agent or the Fixed Asset Secured Parties is adverse
to the interest of the DIP ABL Agent or the DIP ABL Lenders.  Without limiting
the generality of the foregoing, the DIP ABL Agent and the DIP ABL Lenders
shall be deemed to have irrevocably, absolutely and unconditionally waived any
right to object (and seek to be awarded any relief of any nature whatsoever based
on any such objection), at any time prior or subsequent to any disposition of any
of the DIP Term Loan Priority Collateral, on the ground(s) that any such
disposition of the DIP Term Loan Priority Collateral (x) would not be or was not
"commercially reasonable" within the meaning of the UCC and/or (y) would not
or did not comply with any other requirement under the UCC or under any other
applicable law governing the manner in which a secured creditor is to realize on
its collateral;

(v)        subject to Section 3(c), acknowledge and agree that no covenant,
agreement or restriction in the documents evidencing the liens and claims of the
DIP ABL Lenders shall be deemed to restrict in any way the rights and remedies
of the DIP Term Loan Agent or the Fixed Asset Secured Parties with respect to

11

the DIP Term Loan Priority Collateral; and

(vi)    subject to Section 3(c), agree that none of them shall object (or support any other Person objecting) to any motion by the DIP Term Loan Agent or the other Fixed Asset Secured Parties seeking relief from the automatic stay in respect of the DIP Term Loan Priority Collateral;

provided that, in the case of (i), (ii) and (iii) above, the liens granted to secure the DIP ABL Obligations shall attach to any Proceeds resulting from actions taken by the DIP Term Loan Agent or any Fixed Asset Secured Party with respect to the DIP Term Loan Priority Collateral in accordance with the Intercreditor Arrangements (including the priorities described in Section 3) after application of such Proceeds to the extent necessary to meet the requirements of a Discharge of Fixed Asset Obligations.

(b)    Until the Discharge of Fixed Asset Obligations, the DIP Term Loan Agent and the other Fixed Asset Secured Parties shall have the right to enforce rights, exercise remedies (including set-off and the right to credit bid their debt) and, in connection therewith (including voluntary dispositions of DIP Term Loan Priority Collateral by the Debtors after an Event of Default under the DIP Term Loan Facility Documents) make determinations regarding the release, disposition or restrictions with respect to the DIP Term Loan Priority Collateral (including, without limitation, exercising remedies under account control agreements and lockbox agreements) without any consultation with, notice to or the consent of the DIP ABL Agent or the DIP ABL Lenders; provided that the liens securing the obligations owed to the DIP ABL Lenders shall remain on the Proceeds (other than those properly applied to the Fixed Asset Obligations) of such DIP Term Loan Priority Collateral released or disposed of. In exercising rights, powers and remedies with respect to the DIP Term Loan Priority

12

Collateral, the DIP Term Loan Agent and the Fixed Asset Secured Parties may enforce the

provisions of the DIP Term Loan Facility Documents and exercise rights, powers and/or

remedies thereunder and/or under applicable law or otherwise, all in such order and in such

manner as they may determine in the exercise of their sole discretion.  Such exercise and

enforcement shall include the rights of an agent appointed by them to sell or otherwise dispose

of the DIP Term Loan Priority Collateral upon foreclosure, to incur expenses in connection

with such sale or disposition and to exercise all the rights and remedies of a secured creditor

under the UCC.

(c)    Notwithstanding anything to the contrary contained herein, the DIP ABL Agent and any

DIP ABL Secured Party may:

(i) take any action (not inconsistent with the terms of the Intercreditor Arrangements and

not adverse to the priority status of the DIP Liens on the DIP Term Loan Priority Collateral, or

the rights of the DIP Term Loan Agent or any of the Fixed Asset Secured Parties to exercise

rights, powers, and/or remedies in respect thereof) in order to create, perfect, preserve or protect

(but not enforce) its DIP Liens and Adequate Protection Liens on any of the DIP Term Loan

Priority Collateral;

(ii) file any necessary or appropriate responsive or defensive pleadings in opposition to

any motion, claim, adversary proceeding or other pleading made by any person objecting to or

otherwise seeking the disallowance of the claims or DIP Liens of the DIP ABL Secured Parties,

including any claims secured by the DIP Term Loan Priority Collateral, if any, in each case in

accordance with the terms of the Intercreditor Arrangements;

(iii)    unless such DIP ABL Agent or DIP ABL Secured Party would not be permitted

under the Intercreditor Arrangements to take such action in its capacity as a secured creditor, file

13

(A) any pleadings, objections, motions or agreements which assert rights or interests available to

unsecured creditors of the Debtors in accordance with the terms of the DIP Documents and

applicable law; provided that in the event that any DIP ABL Secured Party becomes a judgment

Lien creditor in respect of the DIP Term Loan Priority Collateral as a result of its enforcement of

its rights as an unsecured creditor with respect to the DIP ABL Obligations, such judgment Lien

shall be subject to the terms of the Intercreditor Arrangements for all purposes (including in

relation to the Fixed Asset Obligations) as the other liens securing the DIP ABL Obligations are

subject to the Intercreditor Arrangements and (B) any pleadings, objections, motions or

agreements which assert rights or interests available to secured creditors solely with respect to

the DIP ABL Collateral; and

(iv) vote on any plan of reorganization, file any proof of claim, make other filings and

make any arguments and motions (including in support of or opposition to, as applicable, the

confirmation or approval of any plan of reorganization) that are, in each case, in accordance with

the terms of the Intercreditor Arrangements.

(d) Nothing in the Intercreditor Arrangements shall prohibit the receipt by the DIP ABL Agent

or any DIP ABL Lender of the required payments of interest, principal, adequate protection

payments and other amounts owed in respect of the DIP ABL Obligations, so long as such

receipt is not the direct or indirect result of the exercise by the DIP ABL Agent or any DIP

ABL Lender of rights or remedies as a secured creditor (including set-off) with respect to the

DIP Term Loan Priority Collateral or enforcement in contravention of the Intercreditor

Arrangements of any Lien held by any of them.  Nothing in the Intercreditor Arrangements

impairs or otherwise adversely affects any rights or remedies the DIP ABL Agent or any DIP

ABL Lender may have against the Debtors and the DIP Loan Parties under the DIP ABL

14

Documents.

4.    **Bailee for Perfection**

Each Secured Party Representative agrees to hold that part of the DIP Collateral that is in its

possession or control to the extent that possession or control thereof is taken to perfect a lien

thereon as gratuitous bailee and agent for the benefit and on behalf of the other Secured Party

Representatives (to the extent that such Secured Party Representative has been granted a lien on

such DIP Collateral pursuant to DIP ABL Facility Documents, the Prepetition Secured Notes

Documents and DIP Term Loan Documents, respectively) (such bailment and agency being

intended, among other things, to satisfy the requirements of Sections 8-106(d)(3), 8-301(a)(2), 9-

104(a) and 9-313(c) of the UCC) and any assignee solely for the purpose of perfecting the

applicable security interest granted under the DIP ABL Facility Documents, the Prepetition

Secured Notes Documents and DIP Term Loan Documents, respectively.  The Fixed Asset

Secured Parties hereby appoint the DIP ABL Agent as their agent for the purposes of perfecting

their security interest in all Deposit Accounts and Securities Accounts (in each case, other than

the DIP Term Loan Collateral Account and the Prepetition Secured Notes Collateral Account

(each as defined in the DIP ABL Credit Agreement as in effect on the date hereof)) of the DIP

Loan Parties.  The DIP ABL Agent and the DIP ABL Secured Parties hereby appoint the

Prepetition Indenture Trustee and the DIP Term Loan Agent, as applicable, as their agent for the

purposes of perfecting their security interest in all intercompany notes of the DIP Loan Parties.

Upon the Discharge of DIP ABL Obligations or the Discharge of DIP Term Loan Obligations, as

applicable, the applicable Secured Party Representative shall deliver the remaining DIP

Collateral in its possession together with any necessary endorsements, <u>first</u>, (i) in the case of DIP

15

Term Loan Priority Collateral, to the Prepetition Indenture Trustee and (ii) in the case of DIP

ABL Priority Collateral, to the DIP Term Loan Agent, to the extent the applicable Obligations

remain outstanding, and second, (i) in the case of DIP Term Loan Priority Collateral, to the

applicable DIP Loan Party or as otherwise required by law and (ii) in the case of DIP ABL

Priority Collateral, to the Prepetition Indenture Trustee, to the extent the applicable Obligations

remain outstanding and third, in the case of DIP ABL Priority Collateral, to the applicable DIP

Loan Party or as otherwise required by law, in each case, so as to allow such Person to obtain

possession or control of such DIP Collateral.

**5.     IP License**

For the purposes of enabling the DIP ABL Agent to exercise rights and remedies under the

Interim Order, the Fixed Asset Secured Parties and each DIP Loan Party hereby grants (to the

full extent of their respective rights and interests) the DIP ABL Agent and its agents,

representatives and designees an irrevocable, non-exclusive, royalty-free, rent-free license and

lease (which will be binding on any successor or assignee of any DIP Term Loan Priority

Collateral) to use all of the DIP Term Loan Priority Collateral (including, without limitation, all

intellectual property) to collect all accounts included in DIP ABL Priority Collateral, to copy,

use, or preserve any and all information relating to any of the DIP ABL Priority Collateral, and

to complete the manufacture, packaging, advertising for sale and sale of (i) work-in-process, (ii)

raw materials and (iii) complete inventory.

**6.     Access Rights**

Upon the occurrence of any Event of Default (as defined in the DIP ABL Credit Agreement), the

DIP ABL Agent and its agents, representatives and designees shall have an irrevocable, non-

16

exclusive right to have access to, and a rent-free right to use, the applicable parcel of Premises

that constitutes DIP Term Loan Priority Collateral and to use any DIP Term Loan Priority

Collateral located thereon (the "**Right of Access**"), for a period of up to 60 days, commencing

upon the date the DIP ABL Agent provides written notice of the intent to exercise the Right of

Access to the DIP Term Loan Agent, for the purpose of (i) arranging for and effecting the sale or

disposition of DIP ABL Priority Collateral located on such parcel, including the manufacture,

production, completion, packaging and other preparation of such DIP ABL Priority Collateral for

sale or disposition, (ii) selling (by public auction, private sale or a "store closing", going out of

business sale or similar sale, whether in bulk, in lots or to customers in the ordinary course of

business or otherwise and which sale may include augmented inventory of the same type sold in

any DIP Loan Party's business), (iii) storing or otherwise dealing with the DIP ABL Priority

Collateral, in each case without notice to, the involvement of or interference by the Fixed Asset

Secured Parties or liability to the Fixed Asset Secured Parties; provided that, (on a plant by plant

basis) in the event that any of the Debtors' customers exercise their respective rights of access

pursuant to the Access Agreement at any plant, then the Right of Access of the DIP ABL Agent

and its agents, representatives and designees with respect to such plant shall terminate 60 days

following the first day on which a customer exercises its access right at such plant.  During any

such Event of Default (as defined in the DIP ABL Credit Agreement), the DIP ABL Agent and

its representatives (and persons employed on their behalf), may continue to operate, service,

maintain, process, manufacture, package and sell the DIP ABL Priority Collateral, as well as to

engage in bulk sales of DIP ABL Priority Collateral.  The DIP ABL Agent shall take proper and

reasonable care under the circumstances of any DIP Term Loan Priority Collateral that is used by

the DIP ABL Agent and repair and replace any damage (ordinary wear-and-tear excepted)

WEIL:\95256444\11\58399.0011

caused by the DIP ABL Agent or its agents, representatives or designees and the DIP ABL

Agent shall comply with all applicable laws in all material respects in connection with its use or

occupancy of the DIP Term Loan Priority Collateral.  The DIP ABL Agent and the DIP ABL

Secured Parties shall reimburse the Fixed Asset Secured Parties for any injury or damage to

Persons or property (ordinary wear-and-tear excepted) directly caused by the acts or omissions of

Persons under its control; provided, however, that the DIP ABL Agent and the DIP ABL Secured

Parties will not be liable for any diminution in the value of the Premises caused by the absence of

the DIP ABL Priority Collateral therefrom.  In no event shall the DIP ABL Secured Parties or the

DIP ABL Agent have any liability to the Fixed Asset Secured Parties hereunder as a result of any

condition (including any environmental condition, claim or liability) on or with respect to the

DIP Term Loan Priority Collateral existing prior to the date of the exercise by the DIP ABL

Agent) of its rights under the Interim Order.  The DIP ABL Agent and the Fixed Asset Secured

Parties shall cooperate and use reasonable efforts to ensure that their activities described above

do not interfere materially with the activities of the other as described above, including the right

of Fixed Asset Secured Parties to show the DIP Term Loan Priority Collateral to prospective

purchasers and to ready the DIP Term Loan Priority Collateral for sale.  The Fixed Asset

Secured Parties shall not foreclose or otherwise sell or dispose of any of the DIP Term Loan

Priority Collateral unless the buyer agrees in writing to acquire the DIP Term Loan Priority

Collateral subject to the terms of these Intercreditor Arrangements and agrees to comply with the

terms of this section 5.  The DIP ABL Agent and the DIP ABL Secured Parties shall have the

right to bring an action to enforce their rights under this Section 5 including, without limitation,

an action seeking possession of the applicable DIP Collateral and/or specific performance.

Notwithstanding the foregoing, in no event shall the Fixed Asset Secured Parties have any

18

liability or obligation to the DIP ABL Agent, the DIP ABL Lenders or any of their respective

agents, representatives and designees to pay for any costs and expenses (whether actual or

accrued) incurred in connection with the DIP ABL Agent's, any DIP ABL Lender's or any of

their respective agents', representatives' and designees' exercise of Right of Access.

**7.**    **Application of Proceeds/Turnover**

(a) <u>Revolving Nature of DIP ABL Obligations</u>.  The Fixed Asset Secured Parties

acknowledge and agree that the DIP ABL Credit Agreement includes a revolving

commitment and that the amount of the DIP ABL Obligations that may be outstanding at

any time or from time to time may be increased or reduced and subsequently reborrowed

in accordance with the terms of the DIP Documents and the Interim Order or Final Order,

as applicable.

(b) <u>Application of Proceeds of Collateral</u>.

i.  So long as the Discharge of DIP ABL Obligations has not occurred, all

DIP ABL Priority Collateral or Proceeds thereof received in connection

with the sale or other disposition of, or collection on, such DIP ABL

Priority Collateral as a result of the exercise of remedies by any Secured

Party Representative or any DIP ABL Secured Parties or Fixed Asset

Secured Parties, shall be delivered to the DIP ABL Agent and shall be

applied or further distributed by the DIP ABL Agent to or on account of

the DIP ABL Obligations in such order, if any, as specified in the relevant

DIP ABL Facility Documents or as a court of competent jurisdiction may

otherwise direct.  Upon the Discharge of DIP ABL Obligations, the DIP

19

ABL Agent shall deliver to the DIP Term Loan Agent any DIP ABL Priority Collateral and Proceeds of DIP ABL Priority Collateral received or delivered to it pursuant to the preceding sentence, in the same form as received, with any necessary endorsements, to be applied by the DIP Term Loan Agent to the Fixed Asset Obligations in such order as specified in the DIP Term Loan Agreement or as a court of competent jurisdiction may otherwise direct.

ii. So long as the Discharge of Fixed Asset Obligations has not occurred, all DIP Term Loan Priority Collateral or Proceeds thereof received in connection with the sale or other disposition of, or collection on, such DIP Term Loan Priority Collateral as a result of the exercise of remedies by any Secured Party Representative or any Fixed Asset Secured Parties or DIP ABL Secured Parties, shall be delivered to the DIP Term Loan Agent and shall be applied by the DIP Term Loan Agent to the DIP Term Loan Obligations in such order as specified in the relevant DIP Term Loan Documents or as a court of competent jurisdiction may otherwise direct. Upon the Discharge of DIP Term Loan Obligations, the DIP Term Loan Agent shall deliver to the Prepetition Indenture Trustee any DIP Term Loan Priority Collateral and Proceeds of DIP Term Loan Priority Collateral received or delivered to it pursuant to the preceding sentence, in the same form as received, with any necessary endorsements to be applied by the Prepetition Indenture Trustee to the Prepetition Secured Notes Obligations in such order as specified in the Prepetition Secured Notes

20

Documents or as a court of competent jurisdiction may otherwise direct.

(c) <u>Payments Over</u>.  So long as neither the Discharge of DIP ABL Obligations nor the

Discharge of Fixed Asset Obligations has occurred, any DIP Collateral received by any

Secured Party Representative or any Fixed Asset Secured Parties or DIP ABL Secured

Parties in connection with the exercise of any right, power, or remedy (including set-off)

relating to the DIP Collateral in contravention of the Interim Order shall be segregated

and held in trust and forthwith paid over to the appropriate Secured Party Representative

for the benefit of the Fixed Asset Secured Parties or the DIP ABL Secured Parties, as

applicable, in the same form as received, with any necessary endorsements or as a court

of competent jurisdiction may otherwise direct.  Each Secured Party Representative is

hereby authorized by the other Secured Party Representative to make any such

endorsements as agent for the other Secured Party Representative or any Fixed Asset

Secured Parties or DIP ABL Secured Parties, as applicable.  This authorization is coupled

with an interest and is irrevocable until the Discharge of DIP ABL Obligations and

Discharge of Fixed Asset Obligations.

(d) <u>Application of Payments</u>.  Subject to the other terms of the Interim Order and Final

Order, as applicable, all payments received by (a) the DIP ABL Agent or the DIP ABL

Secured Parties may be applied, reversed and reapplied, in whole or in part, to the DIP

ABL Obligations to the extent provided for in the DIP ABL Facility Documents and (b)

the Fixed Asset Secured Parties may be applied, reversed and reapplied, in whole or in

part, to the Fixed Asset Obligations to the extent provided for in the DIP Term Loan

Documents.

21

(e)   The DIP ABL Agent, for itself and on behalf of the DIP ABL Lenders, and the Fixed

Asset Secured Parties further agree that, prior to an issuance of any Enforcement Notice,

any Proceeds of DIP Collateral, whether or not deposited in an account subject to an

account control agreement, which are used by any Debtor to acquire other property which

is DIP Collateral shall not (solely as between the DIP ABL Agent, the DIP ABL Lenders

and the Fixed Asset Secured Parties) be treated as Proceeds of DIP Collateral for

purposes of determining the relative priorities in the DIP Collateral which was so

acquired.  In addition, unless and until the Discharge of DIP ABL Obligations occurs, the

Fixed Asset Secured Parties each hereby (i) consents to the application, prior to the

receipt by the DIP ABL Agent of an Enforcement Notice issued by the DIP Term Loan

Agent or the Prepetition Indenture Trustee, of cash or other Proceeds of DIP Collateral,

deposited in accounts subject to an account control agreement that constitute DIP ABL

Priority Collateral to the repayment of DIP ABL Obligations under DIP ABL Facility

Documents, (ii) agrees that such cash or other Proceeds shall be treated as DIP ABL

Priority Collateral and (iii) unless the DIP ABL Agent has actual knowledge to the

contrary or unless such funds are identifiable Proceeds of DIP Term Loan Priority

Collateral, any claim that payments made to the DIP ABL Agent through accounts that

are subject to such account control agreements are Proceeds of or otherwise constitute

DIP Term Loan Priority Collateral is waived by the Fixed Asset Secured Parties;

provided that after the receipt by the DIP ABL Agent of an Enforcement Notice issued by

the DIP Term Loan Agent or the Prepetition Indenture Trustee, all identifiable Proceeds

of DIP Term Loan Priority Collateral shall be treated as DIP Term Loan Priority

Collateral.

22

In the event that directly or indirectly some or all of the DIP ABL Priority Collateral and

some or all of the DIP Term Loan Priority Collateral are disposed of in a single

transaction or series of related transactions in which the aggregate sales price is no

allocated between DIP ABL Priority Collateral and DIP Term Loan Priority Collateral

being sold (including in connection with or as a result of the sale of the capital stock of a

Debtor which shall be treated as a sale of assets), then the portion of the aggregate sales

price determined to be Proceeds of DIP ABL Priority Collateral on the one hand, and DIP

Term Loan Priority Collateral on the other hand, shall be allocated based upon, in the

case of (i) any DIP ABL Priority Collateral consisting of inventory, no less than the book

value as assessed on the date of such disposition, (ii) any DIP ABL Priority Collateral

consisting of accounts receivable, no less than the book value as assessed on the date of

such disposition, and (iii) all other DIP ABL Priority Collateral and DIP Term Loan

Priority Collateral, fair market value of such DIP ABL Priority Collateral and DIP Term

Loan Priority Collateral, as determined in good faith by Debtors in their reasonable

judgment.

## 8.    Release of DIP ABL Priority Collateral

If, in connection with (A) any exercise of remedies, or (B) any sale, transfer or other disposition

of all or any portion of the DIP ABL Priority Collateral, so long as such sale, transfer or other

disposition is then not prohibited by the DIP ABL Facility Documents (or is otherwise consented

to by the requisite DIP ABL Lenders), or by the DIP Term Loan Documents (or is otherwise

consented to by the requisite DIP Term Loan Lenders) irrespective of whether an Event of

Default (as defined in the DIP ABL Credit Agreement) has occurred and is continuing, the DIP

23

ABL Agent, on behalf of any of the DIP ABL Secured Parties, releases any of its liens on any part of the DIP ABL Priority Collateral (or if such liens are automatically released pursuant to the DIP ABL Facility Documents upon such sale, transfer or other disposition), then the liens, if any, of the Fixed Asset Secured Parties on the DIP ABL Priority Collateral sold or disposed of in connection therewith, shall be automatically, unconditionally and simultaneously released; provided that the Proceeds of such DIP ABL Priority Collateral are applied to reduce DIP ABL Obligations and the Fixed Asset Secured Parties shall retain a lien on such Proceeds in accordance with the terms of the Interim Order and the DIP Documents (for clarity, to the extent that the DIP ABL Agent or DIP ABL Lenders acquire DIP ABL Priority Collateral via credit bid, then there shall be no Proceeds and the liens of the Fixed Assets Secured Parties on the DIP ABL Priority Collateral that is subject to such credit bid shall be discharged). The Fixed Asset Secured Parties promptly shall, at the sole cost and expense of the Debtors and the DIP Loan Parties, execute and deliver to the DIP ABL Agent or such DIP Loan Party such termination statements, releases and other documents as the DIP ABL Agent or such Debtor or the DIP Loan Party may reasonably request in writing to effectively confirm such release.

**9.    Insurance**

(a) Unless and until the Discharge of DIP ABL Obligations has occurred and subject to the terms of, and the rights of the DIP Loan Parties under, the DIP ABL Facility Documents, the DIP ABL Agent, on behalf of the DIP ABL Secured Parties, shall have the sole and exclusive right to adjust settlement for any insurance policy covering the DIP ABL Priority Collateral in the event of any loss thereunder and to approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation)

24

affecting such DIP ABL Priority Collateral.  Until the Discharge of DIP ABL Obligations has occurred, (i) all Proceeds of any such policy and any such award (or any payments with respect to a deed in lieu of condemnation) if in respect of the DIP ABL Priority Collateral and to the extent required by the DIP ABL Facility Documents shall be paid to the DIP ABL Agent for the benefit of the DIP ABL Secured Parties pursuant to the terms of the DIP ABL Facility Documents (including, without limitation, for purposes of cash collateralization of letters of credit) and thereafter, if the Discharge of DIP ABL Obligations has occurred, and subject to the rights of the DIP Loan Parties under the DIP Term Loan Agreement, to the Fixed Asset Secured Parties to the extent required under the DIP Term Loan Agreement and then, to the extent the Discharge of Fixed Asset Obligations has occurred, to the owner of the subject property or such other Person as may be entitled thereto or as a court of competent jurisdiction may otherwise direct, and (ii) if the Fixed Asset Secured Parties shall, at any time, receive any Proceeds of any such insurance policy or any such award or payment with respect to DIP ABL Priority Collateral, it shall segregate and hold in trust and forthwith pay such Proceeds over to the DIP ABL Agent.

(b)    Unless and until the Discharge of Fixed Asset Obligations has occurred, subject to the terms of, and the rights of the DIP Loan Parties under, the DIP Term Loan Documents, the Fixed Asset Secured Parties shall have the sole and exclusive right to adjust settlement for any insurance policy covering the DIP Term Loan Priority Collateral in the event of any loss thereunder and to approve any award granted in any condemnation or similar proceeding (or any deed in lieu of condemnation) affecting such DIP Term Loan Priority Collateral.  Until the Discharge of Fixed Asset Obligations has occurred, (i) all

25

Proceeds of any such policy and any such award (or any payments with respect to a deed in lieu of condemnation) if in respect of the DIP Term Loan Priority Collateral and to the extent required by the DIP Term Loan Documents shall be paid to the Fixed Asset Secured Parties pursuant to the terms of the DIP Term Loan Documents and thereafter to the owner of the subject property, such other Person as may be entitled thereto or as a court of competent jurisdiction may otherwise direct, and (ii) if the DIP ABL Agent or any DIP ABL Secured Parties shall, at any time, receive any Proceeds of any such insurance policy or any such award or payment with respect to DIP Term Loan Priority Collateral, it shall segregate and hold in trust and forthwith pay such Proceeds over to the Fixed Asset Secured Parties.

(c)   To effectuate the foregoing, and to the extent that the pertinent insurance company agrees to issue such endorsements, the DIP ABL Agent and the DIP Term Loan Agent shall each receive separate lender's loss payable endorsements naming themselves as loss payee and additional insured, as their interests may appear, with respect to any policies which insure the DIP Collateral.  To the extent any Proceeds are received for business interruption or for any liability or indemnification and those Proceeds are not in whole or in part compensation for a casualty loss with respect to the DIP Term Loan Priority Collateral, such Proceeds shall be applied first, to repay the DIP ABL Obligations (to the extent required pursuant to the DIP ABL Facility Documents), second, to the extent no DIP ABL Obligations are outstanding, to repay the Fixed Asset Obligations (to the extent required by the DIP Term Loan Documents), and third, to the owner of the subject property, such other Person as may be entitled thereto or as a court of competent jurisdiction may otherwise direct.

26

10.    **Amendments**

The DIP ABL Facility Documents and DIP Term Loan Documents may be amended, supplemented or otherwise modified in accordance with their terms, all without affecting the lien subordination or other provisions of the Interim Order or the lien and claim priorities set forth in the Interim Order.  The DIP ABL Obligations may be Refinanced without notice to, or the consent of, the Fixed Asset Secured Parties and without affecting the lien subordination or other provisions of the Interim Order, and the Fixed Asset Obligations may be Refinanced without notice to, or consent of, the DIP ABL Agent or the DIP ABL Secured Parties and without affecting the lien subordination and other provisions of the Interim Order so long as such Refinancing is on terms and conditions that would not violate the DIP Term Loan Documents or the DIP ABL Facility Documents (as applicable), each as in effect on the date hereof (or, if less restrictive to the DIP Loan Parties, as in effect on the date of such amendment or Refinancing) or the Interim Order; provided that, in each case, (x) the DIP Loan Parties shall deliver a notice to the DIP ABL Agent or the DIP Term Loan Agent, as applicable, stating that the DIP Loan Parties has entered into new DIP ABL Facility Documents or DIP Term Loan Documents, as the case may be, and identifying the agent under such Credit Documents (the "New Agent") and (iii) the New Agent shall acknowledge in writing that it is bound by the terms of the Interim Order; provided further, however, that, if such Refinancing debt is secured by a lien on any DIP Collateral the holders of such Refinancing debt shall be deemed bound by the terms hereof regardless of whether or not such joinder is provided.  For the avoidance of doubt, the sale or other transfer of indebtedness is not restricted by the Interim Order but the provisions of the Interim Order shall be binding on all holders of DIP ABL Obligations and Fixed Asset Obligations.  Notwithstanding the foregoing, (i) the DIP ABL Secured Parties will not be entitled

27

to agree (and will not agree) to any amendment to or modification of the DIP ABL Facility Documents, whether in a Refinancing or otherwise, that is inconsistent with the terms of the Interim Order and (ii) the Fixed Asset Secured Parties will not be entitled to agree (and will not agree) to any amendment to or modification of the DIP Term Loan Documents, whether in a Refinancing or otherwise, that is inconsistent with the terms of the Interim Order.

## 11.    **Asset Dispositions of DIP ABL Priority Collateral**

The Fixed Asset Secured Parties shall not oppose (or support, directly or indirectly, any other Person seeking to oppose) any motion by a DIP Loan Party that is supported by the DIP ABL Secured Parties (i) for any disposition of any DIP ABL Priority Collateral free and clear of liens or other claims, under Sections 363 or 1129 of the Bankruptcy Code or otherwise, or (ii) to approve any procedures for the disposition of any DIP ABL Priority Collateral of any of the DIP Loan Parties, and the Fixed Asset Secured Parties will be deemed to have irrevocably, absolutely, and unconditionally consented under Section 363 of the Bankruptcy Code (and otherwise) to any sale of any DIP ABL Priority Collateral supported by the DIP ABL Secured Parties and to have released their liens on such assets; provided that to the extent the Proceeds of such DIP ABL Priority Collateral are not applied to reduce DIP ABL Obligations the Fixed Asset Secured Parties shall retain a lien on such Proceeds in accordance with the terms of the Interim Order.

28

12. **Subrogation**

(a)  With respect to the value of any payments or distributions in cash, property or other assets that any of the Fixed Asset Secured Parties actually pays over to the DIP ABL Agent or the DIP ABL Secured Parties under the terms of the Interim Order and Final Order, as applicable, the Fixed Asset Secured Parties shall be subrogated to the rights of the DIP ABL Secured Parties; provided that the Fixed Asset Secured Parties hereby agree not to assert or enforce all such rights of subrogation they may acquire as a result of any payment hereunder until the Discharge of DIP ABL Obligations has occurred.  The Debtors and the DIP Loan Parties acknowledge and agree that, to the extent permitted by applicable law, the value of any payments or distributions in cash, property or other assets received by the Fixed Asset Secured Parties that are paid over to the DIP ABL Secured Parties pursuant to the Interim Order or Final Order, as applicable, shall not reduce any of the Fixed Asset Obligations.  Notwithstanding the foregoing provisions of this Section 12, none of the Fixed Asset Secured Parties shall have any claim against any of the DIP ABL Secured Parties for any impairment of any subrogation rights herein granted to the Fixed Asset Secured Parties.

(b)  With respect to the value of any payments or distributions in cash, property or other assets that any of the DIP ABL Secured Parties actually pays over to the Fixed Asset Secured Parties under the terms of the Interim Order and Final Order, as applicable, the DIP ABL Secured Parties shall be subrogated to the rights of the Fixed Asset Secured Parties; provided that the DIP ABL Agent, on behalf of the DIP ABL Secured Parties, hereby agrees not to assert or enforce all such rights of subrogation it may acquire as a

29

result of any payment hereunder until the Discharge of Fixed Asset Obligations has

occurred.  The Debtors and the DIP Loan Parties acknowledge and agree that, to the

extent permitted by applicable law, the value of any payments or distributions in cash,

property or other assets received by the DIP ABL Secured Parties that are paid over to the

Fixed Asset Secured Parties pursuant to the Interim Order or Final Order, as applicable,

shall not reduce any of the DIP ABL Obligations.  Notwithstanding the  foregoing

provisions of this Section 12, none of the DIP ABL Secured Parties shall have any claim

against any of the Fixed Asset Secured Parties for any impairment of any subrogation

rights herein granted to the DIP ABL Secured Parties.

**Exhibit 2**

**Budget**

**Chassix**
**DIP Budget - 13 Week Cash Flow Forecast**
*($000's)*

| | Ch. 11 | | | | Final Order | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Select Period** | **Week 1** 13-Mar | **Week 2** 20-Mar | **Week 3** 27-Mar | **Week 4** 3-Apr | **Week 5** 10-Apr | **Week 6** 17-Apr | **Week 7** 24-Apr | **Week 8** 1-May | **Week 9** 8-May | **Week 10** 15-May | **Week 11** 22-May | **Week 12** 29-May | **Week 13** 5-Jun | **13 Weeks** |
| **Memo: Sales** | 23,443 | 23,443 | 23,443 | 23,443 | 30,998 | 30,998 | 30,998 | 30,998 | 28,418 | 28,418 | 28,418 | 28,418 | 22,872 | 354,307 |
| **Cash Receipts** | **10,153** | **20,347** | **21,380** | **37,900** | **32,893** | **18,893** | **21,062** | **24,127** | **51,587** | **21,286** | **21,130** | **22,157** | **54,297** | **357,211** |
| **Disbursements** | | | | | | | | | | | | | | |
| Vendors | (8,741) | (22,709) | (17,209) | (16,607) | (22,953) | (22,953) | (22,953) | (22,815) | (15,896) | (15,896) | (15,896) | (14,396) | (16,179) | (235,205) |
| Lease, rent and utilities | - | (821) | (30) | (3,589) | - | (860) | - | (30) | (3,595) | - | (838) | (30) | (3,604) | (13,397) |
| Payroll and benefits | - | (5,441) | (3,498) | (7,926) | (4,928) | (5,774) | (3,134) | (7,948) | (3,185) | (5,117) | (3,185) | (5,117) | (5,345) | (60,599) |
| Taxes | (271) | (11) | (11) | (9) | (269) | (9) | (9) | (9) | (271) | (11) | (395) | (11) | (11) | (1,293) |
| Capital and tooling | (4,140) | (2,070) | (2,070) | (2,070) | (2,571) | (2,571) | (2,571) | (2,571) | (2,421) | (2,421) | (2,421) | (2,421) | (1,956) | (32,272) |
| Funding to rest of world entities | - | - | - | - | - | - | - | - | (5,000) | - | - | - | (5,000) | (10,000) |
| DIP fees and interest | (5,963) | - | - | - | (3,345) | - | - | (894) | - | - | - | (948) | - | (11,149) |
| Professional fees | - | (500) | (500) | (500) | (125) | (125) | (2,045) | (125) | (1,113) | (263) | (3,840) | (238) | (38) | (9,415) |
| U.S. Trustee fees | - | - | - | - | (9) | - | - | - | - | - | - | - | - | (9) |
| Other | 1,574 | (532) | (726) | (453) | (315) | (421) | (315) | (721) | (435) | (494) | (403) | (459) | (739) | (4,440) |
| **Total Disbursements** | **(17,540)** | **(32,084)** | **(24,044)** | **(31,153)** | **(34,515)** | **(32,713)** | **(31,027)** | **(35,113)** | **(31,917)** | **(24,202)** | **(26,979)** | **(23,620)** | **(32,872)** | **(377,779)** |
| **Net Cash Inflow / (Outflow)** | **(7,387)** | **(11,738)** | **(2,665)** | **6,747** | **(1,622)** | **(13,819)** | **(9,965)** | **(10,986)** | **19,670** | **(2,916)** | **(5,849)** | **(1,463)** | **21,425** | **(20,568)** |
| **Revolving DIP facility** | **65,751** | **77,488** | **80,153** | **73,406** | **49,188** | **63,007** | **72,972** | **83,958** | **64,288** | **67,204** | **73,053** | **74,516** | **53,091** | **53,091** |
| **Inflow # 1:  proceeds from DIP Term Loan** | - | - | - | - | 20,000 | - | - | - | - | - | - | - | - | - |
| **Inflow # 2:  funds from successor bank (L/C's)** | - | - | - | - | 5,840 | - | - | - | - | - | - | - | - | - |