

**SEAN E. O'DONNELL**
+1 212.872.1093/fax: +1 212.872.1002
sodonnell@akingump.com

May 20, 2015

VIA ELECTRONIC COURT FILING

The Honorable Michael E. Wiles
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 617
New York, NY 10004-1408

    Re:    In re Chassix Holdings, Inc., et al. (No. 15-10578)

Dear Judge Wiles:

    On behalf of the Committee of Unsecured Creditors (the "Creditors' Committee"), we respectfully request a status conference with the Court concerning discovery and the need to adjourn the confirmation schedule in the above-referenced action.

**The Debtors' Breakneck Confirmation Schedule and
the Two Key Issues in these Cases**

    The Debtors commenced these cases with a highly ambitious confirmation schedule, with the goal of having the Debtors emerge from chapter 11 in approximately 3 months. And since its appointment, the Creditors' Committee has endeavored to assist the Debtors in achieving their goal of an expeditious emergence. To this end, the Creditors' Committee spent the first month after it was appointed working intimately with the Debtors in addressing critically important issues such as the Debtors' DIP Financing, the Debtors' accommodation agreements with the OEM's, and crucial trade motions, all of which were consensually resolved well within the Debtors' ambitious schedule.

    But since the start of these cases, there have been two looming issues that the Creditors' Committee must assess in order to discharge its fiduciary duties to creditors: (1) the $450 million to $550 million enterprise valuation by the Debtors' financial advisors Lazard Frères & Co. LLC, and (2) the reasonableness of the Global Settlement that is incorporated into the Plan of Reorganization, which includes, among other things, a full release of all potential causes of action (including those for fraud, gross negligence and willful misconduct) that the Debtors may have against Platinum Equity Advisors LLC and the Debtors' directors and officers concerning



May 20, 2015
Page 2

the payment of a "special dividend" of more than $100 million to Platinum Equity in December 2013.[1]

      Based on its preliminary analysis and the limited discovery it has received to date, the Creditors' Committee has serious concerns that (1) Lazard may have materially underestimated the Reorganized Debtors' enterprise value by no less than $150 million (at the midpoint of the Debtors' valuation range), and (2) the Global Settlement should not be approved by this Court, given that there may be valuable claims arising from the payment of the Special Dividend that are being released in exchange for only nominal consideration.  As the Creditors' Committee has repeatedly told the Debtors, it must be afforded a reasonable opportunity to investigate these complex issues in order to discharge its fiduciary duty of assessing the proposed Plan.

**The Debtors' Lack of Cooperation Concerning Privilege Assertions**

      Unfortunately, to date, the Creditors' Committee has not received the requisite cooperation from the Debtors and we question whether a June 30th confirmation hearing remains viable.  For example, one of the most critical categories of information that the Creditors' Committee has sought in discovery consists of communications between the Debtors and Platinum Equity relating to the special dividend, including communications made during the Debtors' investigation into potential claims that they may have against Platinum.  And since at least April 23, when counsel for the Creditors' Committee and the Debtors met to try and resolve various discovery issues, the Creditors' Committee has asked the Debtors to supply a list of the categories of communications between Platinum and the Debtors that the Debtors believe may be protected by a direct or common interest privilege.  In response, the Debtors stated only that they intend to withhold "any communications" between Chassix and Platinum "that relate to matters where there is no adversity between Platinum and Chassix, including operational issues," but refused to state whether they were withholding communications relating to the special dividend on this basis, or whether the reference to "any communications" included communications that were not legal in nature or did not include an attorney.  Despite the Creditors' Committee's repeated requests since that meeting, the Debtors have still refused to provide an answer to this question.

      On April 24, the Creditors' Committee also asked the Debtors to provide a list of the Platinum representatives who the Debtors' communicated with during their investigation into the

---

[1] At the Debtors' request, the Creditors' Committee delayed investigating these issues during the first month of the Chapter 11 cases, focusing instead on the Debtors' more immediate operational issues (*i.e.*, the DIP Financing, trade motions, OEM accommodations agreement, etc.).



May 20, 2015
Page 3

special dividend and the outside dates of those communications—which is basic information that would be required on any privilege log, even if the Debtors were to contend that the communications themselves are privileged. The Creditors' Committee has reiterated this request on numerous occasions, including by email on April 26, April 27, April 28, April 29, May 4, and May 5, and during a call with the Debtors on May 6. Throughout this period, the Debtors refused to provide any clarity regarding this issue, refused to produce a category privilege log, and refused even to commit to any date certain for the production of a privilege log.

Nevertheless, in a final attempt to gain clarity and perhaps resolve at least some of these open items, the Creditors' Committee wrote a letter to the Debtors on May 8 and enclosed a schedule of the limited categories of information for which it sought clarity. The Debtors responded by letter on May 12 but, incredibly, refused to complete the category schedule (consisting of only 9 categories) and yet again refused to address (1) whether the Debtors were withholding communications with Platinum that were not legal in nature or did not include an attorney, (2) whether the Debtors were withholding communications with Platinum relating to the Special Dividend, and (3) whether the Debtors considered the identity of the parties to communications relating to the Debtors' investigation and the dates of those communications to be privileged information.[2] In their letter, the Debtors also state: "Notwithstanding our position regarding the claims analysis, we are in discussions with our client and considering whether to voluntarily provide the Committee with certain information regarding the work performed. This may well depend on the nature of and specific items raised as objections, if any, to the dividend recapitalization transaction." Like many of the Debtors' statements concerning privilege, we don't know what this means and it appears that we may not know until sometime after June 19, when confirmation objections are due. Moreover, the Debtors have still not produced any privilege log, and have refused to provide one "prior to completion" of the Debtors' production. There simply is not enough time in the schedule to further delay identifying and resolving any privilege disputes that may exist.

**The Debtors' Delayed Document Production**

Another problem is that the Debtors' document production is still ongoing. On May 16, the Debtors sent an email claiming to have met a May 15 deadline for "substantial" completion of document discovery, but stating "we anticipate that there will some [sic] small percentage of additional documents produced over the next 7-10 days, including some that upon review required redaction for privilege." On May 17, we replied, asking why it would take 7-10 days to

---

[2] A copy of the Creditors' Committee's May 8 letter and accompanying schedule is attached as Exhibit A. A copy of the Debtors May 12 letter is attached as Exhibit B.



May 20, 2015
Page 4

produce the additional documents if it was only a small percentage, but the Debtors have refused to respond. This delay means that the Debtors will not be finished with their production until as late as May 26—which is the day before depositions are currently scheduled to begin. The Debtors' delay in production and their repeated refusal to engage with the Creditors' Committee on privilege issues prejudices the committee's ability to prepare and take depositions within the current schedule.

**Deposition Scheduling**

Yet another example of the Debtors' lack of cooperation concerns the scheduling of depositions. Since mid-April the Creditors' Committee has been seeking confirmation that the Debtors will make available certain witnesses with information relating to the Debtors' enterprise value or the Debtors' financial condition at the time of the Special Dividend available for depositions on or before June 1, so there is sufficient time for the parties and their financial advisors to review this testimony in advance of the June 8 deadline for submitting opening expert reports. The calendar presented to the Court during our last discovery conference plainly provided that the June 8 deadline for exchanging opening expert reports was "[c]ontingent on [the] existence of [an] agreement that CFO and other witnesses with financial information will be made available between May 27, 2015 and June 1, 2015."[3] The parties discussed this calendar with the Court extensively, and at no point did the Debtors raise any objection to this provision. But now the Debtors are flatly refusing to confirm that they will abide by this request.

Given these facts, we no longer believe that the current confirmation schedule is achievable without severely prejudicing the ability of the Creditors' Committee to fulfill its fiduciary duties. We therefore respectfully request a status conference, at the Court's convenience, to discuss these discovery issues and the need to adjourn the confirmation schedule.

                                          Respectfully submitted,

                                          */s/ Sean E. O'Donnell*

                                          Sean E. O'Donnell

---

[3] A copy of the schedule presented at the April 24, 2015 hearing is attached as Exhibit C.

# Exhibit A



**SEAN E. O'DONNELL**
+1 212.872.1093/fax: +1 212.872.1002
sodonnell@akingump.com

May 8, 2015

VIA EMAIL

Richard Slack
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

    Re:    In re Chassix Holdings, Inc., et al. (No. 15-10578)

Dear Mr. Slack:

    On behalf of the Committee of Unsecured Creditors, we are making this final request for clarity from the Debtors on their position respecting the applicability of the common interest privilege or the work product doctrine to certain documents and communications relating to the Debtors' Plan of Reorganization and, in particular, the Debtors' release of claims concerning the payment of more than $100 million to Platinum Equity Advisors LLC ("Platinum") as a special dividend (the "Special Dividend").  As you know, since at least our meeting on April 23, 2015, we have been asking the Debtors to provide us with a category privilege log, prior to the completion of your document production, because of the limited time we have to complete discovery prior to the June 30th confirmation hearing.  The Debtors have yet to provide such a category log or provide sufficient clarity on this important issue.  In fact, to date, the Debtors have yet to commit to *any* date that they will provide such a log to us.

    Enclosed is a schedule, setting forth what we understand to be some of the more critical issues concerning privilege for which we need clarity.  As you will see, the first column of the schedule identifies the particular issues for which we are seeking clarity.  The second column sets forth what we believe to be the Debtors' stated position, if any, with respect to the issues presented and the third column provides for the Debtors' response to these issues.  None of the issues on the schedule are new.  They are issues for which we have sought clarity from you since at least our April 23rd meeting.

    Accordingly, we ask that you please complete the enclosed schedule and return it to us before close of business on Monday, May 11, 2015.  In the meantime, please know that the Committee continues to reserve all rights, remedies, claims and defenses respecting these issues,



May 8, 2015
Page 2

including without limitation, the right to object to the start of the confirmation hearing on June 30.

    Thank you.

Sincerely,

Sean E. O'Donnell

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                            :
**In re:**                                  :    Chapter 11
                                            :
**CHASSIX HOLDINGS, INC.,** *et al,*        :    Case No. 15-10578 (MEW)
                                            :
                    **Debtors.**            :    (Jointly Administered)
---------------------------------------------------------------x

| Category Description | Creditors Committee's understanding of the Debtors' position | Debtors' position |
|---|---|---|
| <u>Any</u> communications between Chassix's internal and external lawyers, on the one hand, and any board member or officer who is also a Platinum employee, on the other hand, involving legal advice. | Immune from discovery on the basis of the attorney-client privilege. | |
| <u>Any</u> communications between Chassix and Platinum that relate to matters where there is "no adversity" between Platinum and Chassix, including operational issues, where the communication was legal in nature and was a communication with an attorney for Chassix or Platinum.<br><br>Please identify in what instances, if any, the Debtors believe there is adversity between Platinum and Chassix. | Immune from discovery on common interest privilege grounds. | |
| <u>Any</u> communications between Chassix and Platinum that relate to matters where there is no adversity between Platinum and Chassix, including operational issues, where the communication was not legal in nature or was not a communication with an attorney for Chassix or Platinum. | Unclear | |
| Communications between the Debtors and/or the Debtors' counsel, on the one hand, and Platinum and/or Platinum's counsel, on the other hand, relating to the Debtors' investigation into the Special | Unclear | |

1

| Category Description | Creditors Committee's understanding of the Debtors' position | Debtors' position |
|---|---|---|
| Dividend, or the Special Dividend itself. | | |
| The identity of the individuals who conducted the Debtors' investigation into the Special Dividend. | Unclear | |
| The time period in which the Debtors' were conducting an investigation into the Special Dividend. | Unclear | |
| The identity of the individuals who were contacted in connection with the Debtors' investigation into the Special Dividend. | Unclear | |
| Any documents or communications relating to the Debtors' investigation into the Special Dividend, to the extent the Debtors' intend to use this investigation to argue that the Global Settlement should be approved or that the proposed Plan should be confirmed.<br><br>Please confirm whether the Debtors intend to use the investigation to argue that the Global Settlement should be approved or that the proposed Plan should be confirmed. | Unclear | |
| Any communications dated prior to March 12, 2014 among the parties to the RSA. | Unclear | |

# Exhibit B

15-10578-mew    Doc 416    Filed 05/20/15    Entered 05/20/15 11:12:03    Main Document
Pg 10 of 19

**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Richard W. Slack**
+1 (212) 310-8017
richard.slack@weil.com

May 12, 2015

VIA E-MAIL

Sean O'Donnell
Akin Gump Strauss Hauer & Feld LLP
Partner
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
T+1 212.872.1093
F+1 212.872.1002

Re: Chassix: Privilege Issues

Dear Sean:

We write in response to your letter dated May 8, 2015. Contrary to your assertions, Debtors' positions on the privilege issues regarding communications involving both Chassix and Platinum Equity Advisors, LLC have been repeatedly discussed between us and set forth in various communications. As I explained at our all-hands meeting on April 23, 2015, privileged communications involving Chassix and Platinum prior to the bankruptcy filing remain privileged because Platinum, as the 100% owner of Chassix, shared a common interest with Chassix on all matters other than certain specific transactions between Chassix and Platinum. We also told you that the attorney-client privilege covered communications between Chassix's internal and external lawyers, on the one hand, and any board member or officer who is also a Platinum employee, on the other hand, involving legal advice, opinion or assessment. Finally we had indicated to you at this meeting that, as a third independent basis for assertion of privilege, upon agreement on a Plan supported by Chassix and other parties, which was confirmed in a plan support agreement to which Platinum was a party, communications with respect to the Plan and its confirmation were also subject to common interest protection.

After this all-hands meeting, our firms exchanged emails which clearly set out the above parameters. Item 5 of your colleague's April 23rd email set out what was Akin's understanding of our communication at the all-hands meeting with respect to privilege; our response the next day clarified that understanding with respect to privileged communications. A copy of our April 24th email response is attached for ease of reference. In that email we wrote:

WEIL:\95333387\1\35076.0003

Sean O'Donnell  **Weil, Gotshal & Manges LLP**
May 12, 2015
Page 2

> We intend to withhold on common interest privilege grounds any communications between Chassix and Platinum that relate to matters where there is no adversity between Platinum and Chassix, including operational issues. We have expressly agreed to provide emails with Platinum with respect to the negotiation of the plan with Platinum.
>
> You raised the issue of the RSA for the first time at our meeting tonight. Our view is that after the RSA, there is a common interest among the signatories.

Further, as I explained to Debbie and Sunny during our May 6, 2015 conference call, Debtors regard the analysis of potential claims performed by their lawyers related to the dividend recapitalization transaction as privileged and attorney work-product. Debtors also regard any legal advice related to the claims analysis as protected by the attorney-client privilege.

Notwithstanding our position regarding the claims analysis, we are in discussions with our client and considering whether to voluntarily provide the Committee with certain information regarding the work performed. This may well depend upon the nature of and specific items raised as objections, if any, to the dividend recapitalization transaction.

Although we have set out our position in writing and in detail for weeks, we note that you have yet to indicate whether you disagree with these positions and the basis for any such disagreement. If you disagree with any of the above positions, we ask that you let us know the basis upon which you disagree along with specific support for your positions. We will of course consider anything you send us. Accordingly, given the time limitations by which we all must abide, please let us know as soon as possible whether you object, and the basis for your objection, if any, to our assertion of the work-product doctrine or attorney-client privilege with respect to communications with Platinum and the legal claims analysis.

Finally, we disagree with your implication that we are required to provide you with a category privilege log prior to the completion of our production. As your colleague acknowledged during our conference call on May 6, 2015, such logs are typically provided after expedited production is complete.

Thank you in advance for your prompt attention to the above.

Sincerely,

*Richard W. Slack* /MB

Richard W. Slack

2

**Bell, Michael**

| | |
|---|---|
| **From:** | Slack, Richard |
| **Sent:** | Friday, April 24, 2015 9:57 AM |
| **To:** | Gulati, Sunny; Goldstein, Marcia; Schrock, Ray; Bell, Michael |
| **Cc:** | Preis, Arik; O'Donnell, Sean; Newman, Deborah; Lintner, Clarissa |
| **Subject:** | RE: Chassix |

This summary is accurate in many respects and not accurate in many others. Comments/corrections in red below.

**From:** Gulati, Sunny [mailto:sgulati@akingump.com]
**Sent:** Thursday, April 23, 2015 8:52 PM
**To:** Goldstein, Marcia; Schrock, Ray; Slack, Richard; Bell, Michael
**Cc:** Preis, Arik; O'Donnell, Sean; Newman, Deborah; Lintner, Clarissa
**Subject:** Chassix

All,

I'm confirming the following based on our meeting today.

1. **Debtor Document Production**: The Debtors will produce approximately 2000 documents tonight, and approximately 15000 to 20000 over the next 24 to 48 hours. The Debtors are not yet in a position to assess the volume of document hits resulting from the searches we proposed on Monday, but will give us an estimate of when they expect to be in a position to do so by tomorrow morning. The Debtors have agreed that they will produce on a rolling basis and substantially complete production on or before May 15.

   This is generally accurate, but obviously substantial completion on that day will depend in part on the reasonableness of the UCC going forward.

2. **Debtor Professionals**: The Debtors will run a keyword search on communications between the following:

   a. Weil and the professionals retained by the Ad Hoc Group or Platinum Equity, Louis Samson of Platinum Equity, as well as certain of the professionals retained by the OEM parties (we did not reach agreement on which ones, but the Debtors will provide us with proposed OEM professionals by tomorrow morning). The Committee has requested for the Debtors to also search for and produce responsive communications between Weil and Platinum, but the Debtors have refused to conduct this search (this is an issue we will be raising with the Court tomorrow);

   The parties agreed that we would search the emails of Ray, Marcia and Matt, who were the principal Weil lawyers involved in the Plan negotiations. The parties agreed that we would search the domain names for the professionals retained by the Ad Hoc Group or Platinum Equity, Louis Samson of Platinum Equity and "Chassix" (as proposed by you in your protocol). The parties agreed to further discuss the search for professionals retained by the OEM parties after Weil identifies the ones most active.

   We do not recall a request during the meeting for us to search for all emails between Weil and Platinum, but we believe based on privilege issues that such emails are virtually all likely to be

1

privileged – other than the ones with Louis Sampson who was designated to negotiate the Plan issues for Platinum (and for which we have agreed to search).

   b. FTI and Lazard and any Professionals retained by the Ad Hoc Group or Platinum, the members of the Ad Hoc Group, Platinum, and certain of the professionals retained by the OEMs (to be proposed by the Debtors by tomorrow morning).

   We have agreed to work with you to facilitate the production of documents from FTI and Lazard (whose documents are not in our control) with similar (but not identical) restrictions as set forth above related to searches of Weil emails.

3. **Debtor Directors**: The Debtors do not dispute that they have a legal obligation to produce documents from their Directors, and will work with Milbank to facilitate this production within the agreed upon timeframe (i.e., rolling production with substantial completion on or before 5/15).

   We have not agreed that we have a "legal obligation" to produce these documents under the circumstances here, but agree that we will work to facilitate production of any responsive documents (and we never discussed by any particular date, but we have no problem trying to facilitate the production by May 15) and if there remains an open issue, we will work with you to resolve it.

4. **Specific Document Requests**: The Debtors were not in a position tonight to discuss our requests for specific documents, and will get back to us by tomorrow morning with their position on each document. We have added a request for the NOL analysis conducted by the Debtors' auditors or any other analysis respecting the value of the NOLS, and the Debtors will provide us with their position on such documents by tomorrow morning as well.

   We need to try to set a time to talk in the morning. I do not know if we will be in a position to get back to you on the NOL issue by tomorrow morning.

5. **Common Interest Privilege**: The Committee requested that the Debtors circulate a list of the categories of communications between Platinum and the Debtors that they believe may be protected by a direct or common interest privilege, and the other categories of communications that may be protected by the common-interest privilege (including the parties who are covered and the start and end dates for any applicable privilege), as well as the dates during which the Debtors were investigating potential claims against Platinum. The Debtors refused to provide such a written list. Our understanding is as follows:

   - The Debtors intend to withhold on privilege grounds any communications between Chassix's internal and external lawyers, on the one hand, and any board member or officer who is also a Platinum employee, on the other hand, involving legal advice;

   - The Debtors intend to withhold on common interest privilege grounds any communications between Chassix and Platinum that relate to operational issues that involve legal advice;

   - The Debtors have not yet determined whether they will be asserting a common interest privilege with respect to communications among the RSA parties. Please provide us with your position on this issue by tomorrow morning.

   We had a long conversation where we explained our position on privilege in detail. The first bullet above is accurate. The second is close. We intend to withhold on common interest privilege grounds any communications between Chassix and Platinum that relate to matters where there is no adversity

2

between Platinum and Chassix, including operational issues. We have expressly agreed to provide emails with Platinum with respect to the negotiation of the plan with Platinum.

You raised the issue of the RSA for the first time at our meeting tonight. Our view is that after the RSA, there is a common interest among the signatories.

6. **Discovery and Confirmation Schedule**: The parties were unable to reach any agreement on the calendar. The Debtors have taken the position that they will not serve any expert reports relating to the Plan Settlement until after the Committee has filed its opening expert reports, and that the Debtors may file a supplemental expert report on valuation after the Committee files its opening expert reports as well. We believe there should be a mutual exchange of opening expert and rebuttal expert reports, and that the parties should agree to disclose, on a date prior to the exchange of opening reports, the experts that will be submitting reports and the topics on which they will be opining.

This is flatly inaccurate. There was a general agreement on much of the schedule we discussed yesterday. With respect to experts, the UCC has taken the position that the Debtors need to prepare expert reports in response to objections before those objections filed and before the debtors have any idea what the basis for those objections might be. Our proposal would have the Debtor submitting an expert report on valuation issues in connection with the Plan at the same time the UCC submits expert reports on any issues upon which they plan to object. The parties would then both submit reply expert reports and then engage in expert depositions. As we have said, it is not our current intention to put on any expert on the dividend recap issues absent an objection and absent seeing the basis for any objection.

Based on the foregoing, we are expecting an initial production of documents tonight and, by tomorrow morning: (i) the Debtors' written position regarding our requests for specific documents; (ii) the Debtors' position, in writing, regarding the applicability, if any, of the common interest privilege or work product doctrine to communications among RSA parties, along with the time period for such applicable privilege and the basis for the privilege assertion; (iii) the proposed list of OEM professionals for whom the Debtors will use to search for and produce responsive communications with Weil; (iv) an estimate of when the Debtors' will be in a position to discuss our remaining proposed document searches; and (v) the time period for which the Debtors began and concluded their investigation of Platinum relating to the Special Dividend.

We disagree with that there was any agreement on providing any of the above in writing (but we have obviously addressed much of this above), but look forward to discussing many of these issues with you.

Please let us know as soon as possible if you believe this doesn't accurately reflect the substance of our discussion today.

3

# Exhibit C

15-10578-mew    Doc 416    Filed 05/20/15    Entered 05/20/15 11:12:03    Main Document
Pg 17 of 19

No. 15-10578 (Bankr. S.D.N.Y)

**CALENDAR**

**April 2015**

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 12 | 13<br>Initial discovery requests | 14 | 15 | 16 | 17 | 18 |
| 19 | 20<br>(A) Responses to initial discovery requests and (B) Begin rolling production of documents | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

**CALENDAR**

**May 2015**

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15<br>Substantial completion of document discovery | 16 |
| 17 | 18 | 19 | 20 | 21 | 22<br>Disclosure of initial fact witness list | 23 |
| 24 | 25 | 26 | 27<br>Start of Fact Depositions<br><br>Disclosure of expected expert witnesses and topics | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

**CALENDAR**

**June & July 2015**

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  | **June 1** | **2** | **3** | **4** | **5** | **6** |
| **7** Close of Fact Depositions | **8** UCC's and Debtors' Expert Reports Due[1] | **9** | **10** | **11** | **12** | **13** |
| **14** UCC's and Debtors' Rebuttal Expert Reports Due | **15** | **16** | **17** Start of Expert Depositions | **18** | **19** | **20** |
| **21** Close of Expert Depositions | **22** | **23** Objections to Confirmation Due | **24** | **25** | **26** | **27** Reply to Confirmation Objections Due |
| **28** | **29** | **30** Confirmation Hearing | **July 1** | **July 2** | **July 3** | **July 4** |
| **July 5** | **July 6** | **July 7** | **July 8** | **July 9** | **July 10** |  |

---

[1] Contingent on existence of agreement that CFO and other witnesses with financial information will be made available between May 27, 2015 and June 1, 2015.