

**DEBORAH NEWMAN**
+1 212.872.7481/fax: +1 212.872.1002
dnewman@akingump.com

*CONFIDENTIAL*
*TO BE FILED UNDER SEAL*

June 1, 2015

Honorable Michael E. Wiles
United States Bankruptcy Court
for the Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

Re:    *In re Chassix Holdings, Inc., et al.* (No. 15-10578)

Dear Judge Wiles:

On behalf of the Official Committee of Unsecured Creditors (the "Committee") of
Chassix Holdings, Inc. ("Holdings") and its various debtor-subsidiaries (collectively, the
"Debtors"), and in accordance with Local Rule 7007-1(b), we respectfully request a conference
to resolve certain discovery disputes between the Committee and the Debtors.[1]

**The Debtors Should be Compelled to Produce a 30(b)(6) Witness Who Is Prepared to
Testify on Each of the Six Topics Noticed by the Committee**

It is well-established that a party may request a 30(b)(6) deposition on any topic, so long
as there is "any possibility that the sought-after information may be relevant to the subject-matter
of the action." *Dealer Computer Servs., Inc. v. Curry*, No. 12-cv-3457, 2013 WL 499520, at *1
(S.D.N.Y. Feb. 7, 2013). The requesting party merely has to identify, with "reasonable
particularity," the issues and topics that will be addressed at the deposition. *Soroof Trading Dev.
Co. v. GE Fuel Cell Sys., LLC*, No. 10-cv-1391, 2013 WL 1286078, at *2 (S.D.N.Y. Mar. 28,
2013). Once the requesting party does so, the corporate deponent carries the "affirmative duty"
to present "such number of persons as will be able to give complete, knowledgeable and binding
answers" on its behalf. *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 268 (2d. Cir. 1999).
Moreover, courts regularly compel 30(b)(6) depositions on topics that "go to the heart" of the
dispute. *Dealer Computer Servs.*, 2013 WL 499520, at *5. As the Court noted at the status
conference held on May 22, "the point of the 30(b)(6) is . . . not only to get the most

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Proposed Disclosure
Statement for the Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the
"Disclosure Statement") [Docket No. 324].



Honorable Michael E. Wiles
June 1, 2015
Page 2

knowledgeable person, but to make sure that the person has at least looked at the things necessary to refresh his or her recollection so you get meaningful testimony."  Transcript of hearing held on May 22, 2015, 46:18-22.

Consistent with the Court's direction at the May 22 conference, the Committee has served the Debtors with a 30(b)(6) deposition notice that includes only the following limited topics[2]:

Topic 1:     The Debtors' financial condition at or around the time of (a) the Special Dividend and (b) the Debtors' decision to make the Special Dividend;

Topic 2:     Any analysis relating to the Special Dividend;

Topic 3:     The Debtors' financial projections;

Topic 4:     The Debtors' current enterprise value;

Topic 5:     Chassix's analysis, evaluation, negotiations and/or communications concerning the Global Settlement; and

Topic 6:     Transfers of value from the Debtors to Platinum.

Each of these topics is defined with reasonable particularity, and goes straight to the heart of the Committee's investigation of the Global Settlement and/or the valuation of the Debtors. The Debtors, however, have refused to produce a 30(b)(6) witness on any topic other than "the Debtors' financials and projections at the time of the Special Dividend."[3]  There is no basis for this refusal.  The Debtors should be directed to either designate one or more of the existing deposition witnesses as a 30(b)(6) witness on each of the remaining topics, or to produce another corporate representative to testify on these topics.[4]

---

[2] The Committee's 30(b)(6) deposition notice to the Debtors is attached as Exhibit A.

[3] A copy of the Debtors' responses and objections to the Committee's 30(b)(6) deposition notice is attached as Exhibit B.

[4] The Committee proposed to the Debtors that if the Debtors produced all of the requested named deponents, and certain of those deponents were also serving as 30(b)(6) witnesses, then the Committee would agree that the depositions of those witnesses acting in both an individual and corporate capacity would not exceed seven hours.  The Debtors did not agree to that proposal.



Honorable Michael E. Wiles
June 1, 2015
Page 3

**The Debtors Should be Compelled to Produce the Deposition Witnesses Requested by the Committee**

The Committee has sought depositions of the following 6 witnesses, in addition to the four trial witnesses that have been designated by the Debtors and 30(b)(6) witnesses for the Debtors and Platinum Equity LLC ("Platinum"):[5]

|   | <u>Witness</u> | <u>Role</u> |
|---|---|---|
| 1 | Robert Remenar | The CEO of Debtor Chassix, Inc. ("Chassix") when the Special Dividend was issued. |
| 2 | Mark Allan | Chassix's current CEO, and Global Chief Operating Officer when the Special Dividend was issued. |
| 3 | Eva Kalawski | Platinum's general counsel and the sole director of Holdings, the Debtor entity that paid the Special Dividend, when the Special Dividend was paid.  Ms. Kalawski approved the payment of the Special Dividend on behalf of Holdings. |
| 4 | Mark Yassinger | A Platinum principal who was involved in Platinum's agreement to "waive or caused to be waived any stock loss in respect of the stock of UC Holdings and Chassix Holdings," in exchange for the full releases of Platinum contemplated by the Global Settlement.  Disclosure Statement at 55. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[6] |

---

[5] The Debtors have designated the following individuals as trial witnesses:  (1) David Woodward (the Debtors' CFO); (2) Brendan Joyce (an advisor to the Debtors at FTI Consulting); (3) Brad Frederick (the Debtors' former CFO); and (4) Howard Tucker (an Ernst & Young LLP employee who prepared a tax analysis in connection with Platinum's agreement to waive any stock loss regarding the Debtors).

[6] *See* Ex. C (PE_0026733)



Honorable Michael E. Wiles
June 1, 2015
Page 4

| 5 | Carol Kemmer | Chassix's Vice President of Financial Planning and Analysis when the Special Dividend was issued. Ms. Kemmer was instrumental in the creation of internal projections that are significantly lower than the projections made available to ratings agencies in connection with the bond offering that funded the Special Dividend. |
| 6 | Safi Hamid | The current Head of Sales and Business Development. |

Platinum has agreed to produce Ms. Kalawski and Mr. Yassinger for depositions, as well as two witnesses who will testify in a 30(b)(6) capacity.  The Debtors have agreed to produce only their four trial witnesses and Ms. Kemmer.  They have not agreed to produce Mr. Remenar, Mr. Allen, or Mr. Hamid, although they have made it clear that these witnesses are available for depositions the week of June 8 in the event that the Court orders them to do so.

The Debtors' position is untenable.  As set forth below, Mr. Remenar and Mr. Allan have knowledge of issues that are highly relevant to the Debtors' precarious financial condition at the time of the Special Dividend.  And Mr. Hamid is intimately familiar with the Debtors' current operations and future prospects, which are incorporated into the projections on which the Plan value is premised.

For example, in numerous emails sent during the six months leading up to the payment of the Special Dividend, Mr. Remenar expressed substantial concerns regarding Chassix's financial condition and its ability to continue as a going concern. ███████████████████████████████████████████████████████████████████████████████████████ .″[7]  Additionally, Mr. Remenar's emails show a pattern of pressure by Platinum to inflate the company's external projections. ███████████████████████████████████████████████████████████████████████████████████████████████████ .″[8]

Like Mr. Remenar, Mr. Allan repeatedly raised numerous concerns about the company's performance and disconnects between company management and Platinum. ███████████████████████████

---

[7] See Ex. D (CHASSIX00021699).

[8] See Ex. E (CHASSIX00000789).



Honorable Michael E. Wiles
June 1, 2015
Page 5



Finally, as Chassix's current Head of Sales and Business Development, Mr. Hamid has unique and specific knowledge regarding, among other things, the auto industry and the assumptions used in management's projections.  Mr. Hamid's knowledge regarding these issues is essential to any assessment of the reliability of the projections and the assumptions underlying them.

These issues are clearly relevant to the matters that will be litigated at confirmation.  The Debtors' financial condition at the time of the Special Dividend and the reliability of the projections on which the Special Dividend was premised are crucially important to any assessment of the merits of the claims that the Global Settlement proposes to release. Additionally, the Debtors' current financial condition is central to an assessment of the valuation on which the Plan is based.  Accordingly, the Committee respectfully requests that the Court order the Debtors to promptly produce Messrs. Remenar, Allan, and Hamid.

**The Depositions Should Take Place at the Office of the Party that Has Noticed Them**

It is well-established that "the party noticing the deposition usually has the right to choose the location."  *See, e.g.*, *Trs. of the Local 813 Ins. Trust Fund v. Indus. Recycling Sys.*, No. 12-CV-1522, 2013 WL 6178579 at *5 (E.D.N.Y. Nov. 25, 2013).  Here, given the document-heavy nature of the depositions that the Committee seeks to take, the speed at which the Committee must prepare for and take them, and the fact that certain of the deponents are located in Los Angeles (which poses its own logistical obstacles), the Committee has noticed each of the depositions to take place at the offices of its counsel.   The Debtors have insisted, however, that certain depositions of their choosing occur at the offices of Debtors' counsel. Unfortunately, the constraints of this case make such a concession extremely burdensome for the Committee.  The Committee thus requests that the Court order the Debtors to produce each of their deposition witnesses at the offices of Committee counsel.

***

---

[9] *See* Ex. F (CHASSIX00016495).
[10] *See* Ex. G (CHASSIX00034054).



Honorable Michael E. Wiles
June 1, 2015
Page 6

     In light of the foregoing, we respectfully request a conference at the Court's earliest convenience to resolve these matters further.


     Respectfully submitted,

     */s/ Deborah Newman*

     Deborah Newman

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CHASSIX HOLDINGS, INC., *et al.*, | Case No. 15-10578 (MEW) |
| Debtors. [1] | (Jointly Administered) |

## AMENDED NOTICE OF DEPOSITION OF CHASSIX

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure (made applicable to the above-captioned Chapter 11 cases by Rules 7026, 7030 and 9014 of the Federal Rules of Bankruptcy Procedure), the Official Committee of Unsecured Creditors (the "Committee") of Chassix Holdings, Inc. and its various debtor-subsidiaries (collectively, the "Debtors"), by and through their undersigned attorneys, will take the deposition upon oral examination of the Debtors at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, on June 8, 2015. The deposition shall be taken before a notary public or other officer authorized by law to administer oaths, shall be recorded by stenographic means, and will be videotaped. Testimony will be taken for all purposes permitted by the Federal Rules of Civil Procedure.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012). The direct and indirect international subsidiaries of Chassix Holdings, Inc. are not debtors in these chapter 11 cases.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the Debtors shall

designate one or more officers, directors, managing agents, or other people who consent to testify

on its behalf regarding the matters set forth in Exhibit A attached hereto.


Dated: New York, NY                    Akin Gump Strauss Hauer & Feld, LLP
May 26, 2015

                                             By:  */s/ Sean E. O'Donnell*_____

                                             Sean E. O'Donnell
                                             Deborah Newman
                                             One Bryant Park
                                             New York, NY 10011
                                             Telephone: 212-872-1000
                                             Facsimile: 212-872-1002
                                             *Counsel for the Committee*

**EXHIBIT A**

**DEFINITIONS**

1.　　"<u>Bristol Facility</u>" means the automotive casting, machining, and assembly facility operated by Chassix and located at 51650 Country Road 133, Bristol Indiana.

2.　　"<u>CD4 Contracts</u>" means any and all contracts by, between, or among any Debtor or any affiliate of any Debtor related to the manufacture, creation, or maintenance of any products or component parts related to the global CD4 midsize car automobile platform, including any drafts thereof, as well as any documents and communications related to any such contracts.

3.　　"<u>Chassix</u>" means (i) the entity known as Chassix Holdings, Inc., its direct or indirect subsidiaries, including, but not limited to, each of the Debtors in the captioned bankruptcy case; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (iv) anyone acting or purporting to act on behalf of the entities within (i) or (iii).

4.　　"<u>Debtors</u>" means (i) the debtors in the case titled *In re Chassix Holdings, Inc*., et al., chapter 11 No. 15-10578 (MEW) (Bankr. S.D.N.Y.) and any direct or indirect subsidiaries; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (iv) anyone acting or purporting to act on behalf of the entities within (i) or (iii).

5.        "Disclosure Statement" means the Proposed Disclosure Statement for Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 324] filed by the Debtors on April 24, 2015 in the Debtors' Chapter 11 cases, including any prior or subsequent versions and/or any drafts thereof.

6.        "Global Settlement" means the global release and settlement of numerous Debtor-creditor and inter-creditor issues with the Debtors' equity sponsor, Platinum Equity, and certain of the Debtors' other creditors, as described in the Disclosure Statement.

7.        "Milwaukee Facility" means the automotive castings facility formerly operated by Chassix and located at 2039 South Lenox Street, Milwaukee, Wisconsin.

8.        "Platinum" means (i) Platinum Equity Advisors LLC, and any affiliated entities or investment funds; (ii) any of its or their officers, directors, partners, employees, members, or managers; (iii) any of its or their board of directors and any committee or subcommittee of any board of directors; and (iv) anyone acting or purporting to act on behalf of the entities within (i) or (iii) above.

9.        "Ratings Agency" means Standard & Poor's, Moody's, Fitch Group, or any entity registered as a "nationally recognized statistical rating organization" pursuant to Rule 17g-1 of the Securities Exchange Act of 1934.

10.        "Special Dividend" means the special dividend paid to Platinum Equity on or around December 13, 2013, which was funded by a portion of the proceeds of the Unsecured Notes.

11.        "Unsecured Notes" means the Chassix Holdings 10%/10.75% Senior PIK Toggle Notes due 2018.

## DEPOSITION TOPICS

1.     Chassix's financial condition (a) at or around the time of the Special Dividend and (b) Chassix's decision to make the Special Dividend.  For the avoidance of doubt, the term "financial condition" as used in this paragraph shall encompass financial projections, cash flow analyses, solvency analyses, and all incorporated assumptions or considerations, such as Ratings Agency actions and operational problems or issues that arose in 2013 or 2014, and had the ability to materially affect Chassix's assets, liabilities or cash flows.  Such operational problems or issues shall specifically include operational problems or issues of the type relating to the "operational and financial difficulties" described in Section IV of the Disclosure Statement, such as problems and issues with the CD4 Contracts, the Bristol Facility, the decision to cease operations at the Milwaukee facility, and any analysis or assessment of potential liabilities or causes of action that could arise as a result of the decision to cease operations at the Milwaukee facility.

2.     Any analysis relating to the Special Dividend, including but not limited to any analyses of the Special Dividend's legality or lack thereof or the Debtors' solvency or capital adequacy at the time that the Special Dividend was made.

3.     The Debtors' financial projections.

4.     The Debtors' current enterprise value, including any analyses, projections and/or assumptions on which such enterprise value is based, and/or any analyses or assessments performed by the Debtors in forming a view as to the Debtors' current enterprise value, including those described in Sections VII(A) and VII(C) of the Disclosure Statement, and/or any communications with Platinum respecting the Debtors' enterprise value.

5.      Chassix's analysis, evaluation, negotiations and/or communications concerning the Global Settlement, including Chassix's decision to enter into the Global Settlement, and any analysis or assessment of the merits of the causes of action proposed to be released by the Global Settlement and/or the consideration proposed to be provided in exchange for the releases therein, including the value of any net operating losses (NOLs) proposed to be provided as consideration for such releases.

6.      All transfers of value from the Debtors to Platinum, including all management fees, financing fees, success bonuses, or similar payments.

# EXHIBIT B

## Gulati, Sunny

| | |
|---|---|
| **From:** | Bell, Michael <michael.bell@weil.com> |
| **Sent:** | Friday, May 29, 2015 11:49 AM |
| **To:** | Gulati, Sunny; Slack, Richard William (External) |
| **Cc:** | CHASSIX AKIN LIT GROUP; Levine, Richard |
| **Subject:** | RE: Chassix |

Sunny,

The following constitute Debtors' responses and objections to the Committee's amended 30(b)(6) deposition notice.

Debtors object to the amended notice for the same reasons that Debtors objected to the Committee's original notice served on May 23, 2015.   On May 24, 2015, we served responses and objections to that initial notice, observing, among other things, that the proposed topics were compound, such that there were dozens of topics imbedded in them.  In particular, we noted that your request for a witness with knowledge of the "financial condition" of the Debtors was overly broad and vague and ambiguous because the definition of "financial condition" contained in the notice would require a witness to have knowledge of every facet of the Company's business, finances and operations and be prepared to answer countless and unbounded questions concerning anything about the Company.

On May 26, 2015, after not hearing back from you regarding our responses and objections and certain other issues, we scheduled a meet and confer.  During the meet and confer, you stated that our objections to some of your initial topics in the notice were "well taken" and that you would be serving an amended notice to resolve them.  We thus hoped to receive an amended notice that significantly narrowed the scope of information that you intend to seek from a 30(b)(6) witness.  Unfortunately, your amended notice is not responsive to our initial objections and does nothing to address them.  None of the changes made to the topics contained in your initial notice limits the scope of the information sought, and the amended notice now includes an untimely <u>additional</u> topic that would increase the burden placed on Debtors.

Lastly, we object to the 30(b)(6) notices to the extent that they are overbroad and unduly burdensome in the context of a 9019 hearing on the Platinum release. The whole point of a 9019 analysis is not to have a mini-trial on the merits and to avoid the expense and burden of a trial on the merits and the discovery that would be required for a trial on the merits.  Moreover, this is not the prosecution of a claim against Platinum. Platinum is not defending itself (and need not in a 9019 hearing) against a claim, and it is inappropriate for the Committee to treat the confirmation hearing as if it were trying a claim against Platinum.

Subject to the foregoing general objections and the specific objections set forth below,  we will produce Brad Frederick as 30(b)(6) witnesses to testify as to the company's financials and projections at the time of the special dividend.  Pursuant to our agreement, any testimony that Mr. Frederick is called upon to offer as a 30(b)(6) witness will be taken on the same day as testimony to be given in his individual capacity at a single deposition.  Further, per the Court's instruction at the hearing on May 22, 2015, Debtors will refresh Mr. Frederic's own recollection of the relevant facts, but will not prepare him to testify as to other information within Debtors' organization.


Debtors' specific objections are as follows:

<span style="color:red">1.  Chassix's financial condition (a) at or around the time of the Special Dividend and (b) Chassix's decision to make the Special Dividend. For the avoidance of doubt, the term "financial condition" as used in this paragraph shall encompass financial projections, cash flow analyses, solvency analyses, and all incorporated assumptions or</span>

considerations, such as Ratings Agency actions and operational problems or issues that arose in 2013 or 2014, and had the ability to materially affect Chassix's assets, liabilities or cash flows. Such operational problems or issues shall specifically include operational problems or issues of the type relating to the "operational and financial difficulties" described in Section IV of the Disclosure Statement, such as problems and issues with the CD4 Contracts, the Bristol Facility, the decision to cease operations at the Milwaukee facility, and any analysis or assessment of potential liabilities or causes of action that could arise as a result of the decision to cease operations at the Milwaukee facility.

We object to topic number 1 as compound, overbroad, and vague and ambiguous. We further object, as set forth above, to the definition of "financial condition" contained in the notice as it would require a witness to have knowledge of every facet of the Company's business, finances and operations and be prepared to answer countless and unbounded questions concerning anything about the Company.   We also object to this topic as vague and ambiguous to the extent that it seeks a witness regarding matters that "had the ability to materially affect Chassix's assets, liabilities or cash flows."  As noted above, we will produce Mr. Frederick to answer questions regarding the company's financials and projections at the time of the special dividend.

2. Any analysis relating to the Special Dividend, including but not limited to any analyses of the Special Dividend's legality or lack thereof or the Debtors' solvency or capital adequacy at the time that the Special Dividend was made..

We object to topic number 2 on multiple grounds. First, it expressly requests a person to discuss the "legality" of the special dividend -- which calls for legal advice on its face -- and is the ultimate issue.  We will not provide a witness on that topic.  Second, as for the request to provide a witness with respect to "any analyses of … the Debtors' solvency at the time of the special dividend," we request that you clarify what specific analyses are referred to in this topic.  We are, as stated above, prepared to provide Mr. Frederick who can discuss the company's financials and projections at the time of the special dividend.

3. The Debtors' financial projections.

We object to topic number 3 as overbroad and vague and ambiguous. The term "financial projections" is undefined and would call for a person to discuss any financial projection ever prepared by the Company at any time. We request that you identify the specific financial projections about which you want someone to testify, and we will respond to the revised request, as we indicated back on May 24.

4. The Debtors' current enterprise value, including any analyses, projections and/or assumptions on which such enterprise value is based, and/or any analyses or assessments performed by the Debtors in forming a view as to the Debtors' current enterprise value, including those described in Sections VII(A) and VII(C) of the Disclosure Statement, and/or any communications with Platinum respecting the Debtors' enterprise value.

We object to topic number 4 as compound, as seeking testimony on matters not relevant to any claim or defense, and, as you have stated to the Court, the enterprise value of Chassix will be a matter for expert testimony. We intend to have an expert, Andrew Yearley, testify on the enterprise value of the Company. We are prepared to provide his deposition during expert depositions.

5. Chassix's analysis, evaluation, negotiations and/or communications concerning the Global Settlement, including Chassix's decision to enter into the Global Settlement, and any analysis or assessment of the merits of the causes of action proposed to be released by the Global Settlement and/or the consideration proposed to be provided in exchange for the releases therein, including the value of any net operating losses (NOLs) proposed to be provided as consideration for such releases.

Topic 5 is compound, overbroad, and vague and ambiguous. It also seeks testimony on matters protected by the attorney-client privilege.  You are essentially asking for a person to be prepared to testify concerning  every aspect of the

2

current plan. This is far too broad a topic. Subject to the foregoing, certain of the witnesses scheduled to be deposed will be able to answer questions about various of the topics impeded in Topic 5, including the NOLs.

6. <span style="color:red">All transfers of value from the Debtors to Platinum, including all management fees, financing fees, success bonuses, or similar payments.</span>

We object to Topic 6, which is new, as blatantly untimely, compound, overbroad, and seeking testimony on matters not relevant to any claim or defense. We further object that Topic 6 is vague and ambiguous because the term "transfers of value" is undefined and susceptible to a multitude of interpretations.



**Michael D. Bell**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
+1 212 310 8460 Direct
+1 718 607 3737 Mobile
+1 212 310 8007 Fax

---

**From:** Gulati, Sunny [mailto:sgulati@akingump.com]
**Sent:** Tuesday, May 26, 2015 9:15 PM
**To:** Slack, Richard; Bell, Michael
**Cc:** CHASSIX AKIN LIT GROUP
**Subject:** Chassix

Please find attached an Amended 30(b)6 Notice of Deposition of Chassix.

Please also let us know if Safi Hamid will be available for his deposition on June 1 or June 2, and if the Debtors will be making Bob Remenar and Brad Frederick available or if we should serve them with subpoenas.

In addition, please let us know whether the Debtors intend or do not intend to use their investigation into the Special Dividend to argue that the Global Settlement should be approved or that the proposed Plan should be confirmed. Thanks.

**Sunny Gulati**
**AKIN GUMP STRAUSS HAUER & FELD** LLP

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.1045 | Internal: 31045
Fax: +1 212.872.1002 | sgulati@akingump.com | akingump.com | Bio

---

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit C - Redacted

Exhibit D - Redacted

<u>Exhibit E - Redacted</u>

Exhibit F - Redacted

Exhibit G - Redacted