| | |
|---|---|
| PEPPER HAMILTON LLP<br>Henry J. Jaffe (DE No. 2987)<br>Hercules Plaza, Suite 5100<br>1313 Market Street, P.O. Box 1709<br>Wilmington, DE 19899-1709<br>Telephone: (302) 777-6500<br>Facsimile: (302) 421-8390<br>E-mail: jaffeh@pepperlaw.com<br>Counsel for SKF USA Inc. | **Hearing Date: 6/30/15 @ 10:00 a.m. (ET) (as to the Limited Objection of SKF USA Inc. to Confirmation of Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code; the hearing date on the Cure Objection and Limited Objection to the Debtors' Proposed Assumption of Certain of Debtors' Executory Contracts with SKF USA Inc. will be on a date to be determined)** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case No. 15-10578 (MEW) |
| CHASSIX HOLDINGS, et al., | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Re: D.I. No. 323, 490, 491** |
| | : | |

**CONSOLIDATED: (A) LIMITED OBJECTION OF SKF USA INC. TO CONFIRMATION OF DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE; AND (B) CURE OBJECTION AND LIMITED OBJECTION TO THE DEBTORS' PROPOSED ASSUMPTION OF CERTAIN OF DEBTORS' EXECUTORY CONTRACTS WITH SKF USA INC.**

SKF USA Inc. ("SKF") hereby submits this consolidated: (A) Limited Objection to confirmation of the *Second Amended Joint Plan Of Reorganization Under Chapter 11 of the Bankruptcy Code* (D.I. 323) (the "Plan"); and (B) Cure Objection and Limited Objection to the Debtors' proposed assumption of certain executory contracts with SKF (collectively, the "Consolidated Objection") and in support hereof, SKF respectfully states as follows:

**Relevant Background**

1. As of the date that the above-referenced debtors (the "Debtors" and, each a "Debtor") filed their voluntary chapter 11 bankruptcy petitions (the "Petition Date"), SKF and certain of the Debtors were parties to certain executory contracts (collectively, the "SKF

Executory Contracts"). Among the SKF Executory Contracts (each of which is unexpired) is: (i) an executory contract between SKF and Debtor Chassix Co. of Michigan, LLC ("Chassix Michigan") primarily for the sale of bearings products, purchase order number P420607 ("Chassix of Michigan Contract"), and for which Exhibit 2 of the Plan Supplement (as defined in the Plan, the "Plan Supplement") lists a pre-petition cure amount of $1,357,215.80, although SKF believes that this scheduled cure amount inadvertently includes $6,703 owed to SKF by Debtor Automotive, LLC under a separate contractual arrangement, and that the correct pre-petition cure amount owed to SKF under the Chassix of Michigan Contract is $1,350,512.80[1] (the "Chassix of Michigan Pre-Petition Cure Amount"); and (ii) an executory contract between SKF d/b/a SKF Sealing Solutions and SMW Automotive, LLC ("SMW Automotive") primarily for the sale of seals products, purchase order number P424147 (the "SMW Contract"), and for which Exhibit 2 of the Plan Supplement lists a pre-petition cure amount of $62,098.65 (the "SMW Pre-Petition Cure Amount" and, together with the Chassix of Michigan Pre-Petition Cure Amount, the "SKF Pre-Petition Cure Amounts").

2. Following the Petition Date, SKF has continued to perform and provide the applicable Debtors with products under the SKF Executory Contracts and has resulting post-petition, ordinary course administrative expense priority claims against such Debtors.[2]

---

[1] SKF has no objection to having the pre-petition portion only of the cure claim of SKF arising under the Chassix of Michigan Contract reduced to the amount of $1,350,512.80, subject to SKF's other objections regarding, inter alia, the Debtors' obligations to cure any post-petition defaults existing under the Chassix of Michigan Contract as of the date that such contract is assumed and the Debtors' obligations to assume (and thereafter timely satisfy) all accrued obligations existing under such contract as of the date of assumption.

[2] As of June 15, 2015, SKF holds (i) unpaid, accrued post-petition claims against SMW under the SMW Contract in the aggregate amount of no less than $37.397.70; and (ii) unpaid, accrued post-petition claims against Chassix of Michigan under the Chassix of Michigan Contract in the aggregate amount of no less than $1,542,770.08. These amounts are likely to fluctuate, perhaps substantially, through the Assumption Date of each such contract and, at this juncture, it is unknown whether and to what extent post-petition defaults will exist under these contracts as of the Assumption Date.

3. On April 24, 2015, the Debtors filed the Plan and the *Proposed Disclosure Statement for Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (Docket No. 324) (the "Disclosure Statement").

4. On April 24, 2015, the Court entered its *Order (I) Approving Proposed Disclosure Statement and Form and Manner of the Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of Debtors' Plan of Reorganization* (Docket No. 327), approving the Disclosure Statement and, among other things, setting a hearing (the "Confirmation Hearing") on confirmation of the Plan for June 30, 2015 at 10:00 a.m.

5. On June 12, 2015, the Debtors filed the Plan Supplement (Docket No. 490). Exhibit 2 to the Plan Supplement, inter alia: (a) specifically identified the SKF Executory Contracts as contracts that would be assumed by Debtor Chassix of Michigan and Debtor SMW Automotive respectively (Plan Supplement, Exh. 2, p. 38); (b) identified the Chassix of Michigan Pre-Petition Cure Amount (together with an additional $6,703 owed to SKF and not arising under the Chassix of Michigan Contract) as a pre-petition cure amount and the proposed cure amount that the Debtors would pay to satisfy all defaults existing under the Chassix of Michigan Contract as of the effective date of the assumption of such contract (the "Assumption Date") (Plan Supplement, Exh. 2, p. 38); (c) identified the SMW Pre-Petition Cure Amount as a pre-petition cure amount and the proposed cure amount that the Debtors would pay to satisfy all defaults existing under the SMW Contract as of the Assumption Date (Plan Supplement, Exh. 2, p.38); (d) provides that, absent an objection of any counterparty to an assumed executory contract the cure amounts set forth in the Schedule of Assumed Contracts would constitute the total cure amount for such contract (Plan Supplement, Exh. 2, Global Notes to Schedules of

-3-

Assumed Contracts and Rejected Contracts, at ¶ 14); (e) provides that the assumption of any executory contract pursuant to the Plan would, subject to the satisfaction of the cure amount, "result in the full release and satisfaction" of all claims or defaults existing as of the Assumption Date (Plan Supplement, Exh. 2, Global Notes to Schedules of Assumed Contracts and Rejected Contracts, at ¶ 15); and (f) provides that all executory contracts listed on the Debtors' Schedule of Assumed Contracts "are being assumed subject to Customary Trade Terms, defined as the most favorable payment terms in place between the Debtors and the contract counterparty in the two (2) years preceding the Commencement Date" (Plan Supplement, Exh. 2, Global Notes to Schedules of Assumed Contracts and Rejected Contracts, at ¶ 4).

6. Also on June 12, 2015, and the Debtors filed a form of cure notice (Docket No. 491) (the "Cure Notice") to be served on counterparties to executory contracts with the Debtors containing substantially the same information as set forth in Exhibit 2 of the Plan Supplement and providing procedures for such counterparties to initiate a so-called Cure Dispute.

**Limited Objection to Plan, Cure Objection and Limited Objection to
Assumption of SKF Executory Contracts**

**I.    Executory Contracts Must Be Assumed Not Later Than the Plan's Effective Date**

7. In general, SKF has no objection to Debtors' assumption of the SKF Executory Contracts, subject to the correction of certain defects in the Plan, the Plan Supplement and the Cure Notice highlighted in this Consolidated Objection.

8. The Plan is objectionable because (among other things), it does not provide all of the necessary protections granted by section 365 of the Bankruptcy Code to parties whose contracts may be assumed by the Debtors. First, the Plan impermissibly seeks to permit the Debtors to extend beyond the timeframe permitted by § 365(d)(2) of the Bankruptcy Code a

-4-

decision on whether the Debtors will assume or reject a contract where there is a "Cure Dispute" between the creditor and the Debtors. That is, the Plan reserves for Debtors the right to make a final decision regarding executory contracts subsequent to the date the Confirmation Order is entered, and even subsequent to the Plan's effective date (the "Effective Date"). It is well settled, however, that the date of confirmation is the final deadline for a Chapter 11 debtor to make its § 365(a) election to assume or reject an executory contract. 11 U.S.C. § 365(d)(2); *Florida Dep't. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 46 (2008) (". . . the decision whether to reject a contract or lease must be made before confirmation."). The Plan needs to be modified to require that the Debtors assume or reject their executory contracts and unexpired leases, even where a Cure Dispute exists, no later than the Effective Date.

9. Pursuant to section 8.1 of the Plan, as of the Effective Date, all executory contracts and unexpired leases of the Debtors are assumed, except for those (i) previously assumed or rejected by Court order, (ii) specifically designated to be rejected by the Schedule of Rejected Contracts or otherwise, (iii) subject to a separate assumption or rejection motion prior to the Confirmation Date, or (iv) subject to a pending objection regarding assumption, cure or adequate assurance of future performance (each deemed a "Cure Dispute"). *Plan,* at § 8.1.

10. The Debtors proposed by section 8.2 of the Plan that within fourteen days of the Confirmation Hearing they would file, as part of the Plan Supplement, a Schedule of Assumed Contracts and would serve their Cure Notice on counterparties to executory contracts and unexpired leases. Where a contract counterparty files and serves an objection asserting a Cure Dispute within fifteen days of being served with the Schedule of Assumed Contracts, "such Cure Dispute shall be scheduled for a hearing by the Bankruptcy Court. Following resolution of the Cure Dispute by Final Order of the Bankruptcy Court, the applicable contract or lease shall be deemed assumed effective as of the Effective Date, provided that the Debtors reserve the right

-5-

to reject any contract or lease following entry of a Final Order of the Bankruptcy Court resolving the applicable Cure Dispute by filing a notice indicating such rejection within three (3) Business Days of the entry of such Final Order."

11. This procedure allows the Debtors to extend the date of assumption or rejection well beyond the Confirmation Hearing and even beyond the Effective Date. Where a counterparty initiates a Cure Dispute, the Debtors remain in control of when the Cure Dispute will get resolved and, once resolved, whether they will ultimately assume the contract. The Debtors may be able to continue or delay the hearing to resolve the Cure Dispute until a time well after the Effective Date that is singularly advantageous to them, including potentially when the utility of assuming the agreement has past and they deem it advisable to reject instead. During this time of limbo, the contract counterparty would be obligated to continue performance, without any assurance that the contract or lease is being assumed and even though the Debtors' Plan had already been confirmed and the Debtors had since emerged from bankruptcy. Moreover, contract counterparties could be forced to incur the time and expense required to litigate a Cure Dispute, only to have the Debtors reject it upon a resolution of the Cure Dispute.

12. These concerns apply directly to the Debtors' potential assumption of the SKF Executory Contracts. As noted above, Exhibit 2 to the Plan Supplement identified the SKF Executory Contracts as contracts that would be assumed by Debtors Chassix of Michigan and SMW Automotive respectively, and the Debtors listed the SKF Executory Contracts in the Cure Notice. As more fully stated herein, however, SKF objects to the assumption of the SKF Executory Contracts on the terms set forth in the Plan, the Plan Supplement and the Cure Notice. SKF therefore could have the assumption of its contracts delayed past the confirmation date of the Plan and perhaps even past the Effective Date through the Debtors' maneuvering, a result not permitted by the Bankruptcy Code.

13. The Plan should be revised to require the Debtors to determine with finality by the Effective Date the executory contracts and unexpired leases to be assumed and rejected and that such assumptions and rejections must actually occur on or before the Effective Date. To the extent a Cure Dispute is asserted by a counterparty to a contract or lease being assumed, this dispute can be resolved consensually or by Court order after the Effective Date (and the Debtors can easily reserve for any disputed portion of the cure amount asserted by the creditor), but the assumption should not be conditioned on or effected by such resolution.

II. **Assumption Must be *Cum Onere*: Debtors Must Cure All Defaults Existing Under Assumed Executory Contracts as of the Date of Assumption and Assume All Other Obligations Arising Under Such Contracts and Debtors Are <u>Not</u> Permitted to Unilaterally Alter Such Contracts to Conform with the Debtor's So-Called "Customary Trade Terms"**

14. The Plan provides that subject to resolution of any Cure Dispute, upon assumption of any executory contract and unexpired lease to be assumed the Debtors (or the reorganized Debtors) shall satisfy any monetary amounts in default with respect thereto. *Plan,* at § 8.3.

15. With one minor exception (which actually favors the Debtors), SKF appears to be in agreement with the Debtors as to the monetary amounts necessary to cure **<u>pre-petition defaults</u>** under the SKF Executory Contracts. However, the Debtors' cure obligations include all defaults *as of the time of assumption*. As such, defaults that must be cured include both pre-petition and post-petition defaults. *In re Stoltz*, 315 F.3d 80 (2d Cir. 2002); *In re Liljeberg Eners., Inc.*, 304 F.3d 410 (5th Cir. 2002); *In re Overland Park Fin. Corp.*, 236 F.3d 1246 (10th Cir. 2001); *In re Building Block Child Care Ctrs., Inc.*, 234 B.R. 762 (9th Cir. BAP 1999); *In re Tel-A-Communications Consultants, Inc.*, 50 B.R. 250 (Bankr. D. Conn. 1985); *In re North American Rental*, 54 B.R. 574 (Bankr. D. N.H. 1985). To the extent there are post-petition defaults that exist under SKF Executory Contracts <u>as of the Assumption Date</u>, those defaults

must be cured. And, clearly because such assumption would occur at a future date, it is impossible for SKF to know what post-petition defaults will exist under each of the SKF Executory Contracts on the Assumption Date.

16. Furthermore, amounts that have accrued that are not in default must also be assumed and satisfied under an assumed contract as and when such obligations come due. It is well-settled that, where a debtor-in-possession elects to assume an executory contract under Bankruptcy Code section 365, it assumes the contract *cum onere*; that is, the Debtor may only assume the entire contract, with all of the benefits, burdens and obligations attendant thereto. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984) (holding that, "[s]hould the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* . . . and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate"); *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 24 (2d Cir. 1996) (same); *AGV Prod., Inc. v. Metro-Goldwyn-Mayer, Inc.*, 115 F. Supp. 2d 378, 391 (S.D.N.Y. 2000) (holding that, "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens"). In either event, adequate assurance of future performance must be provided to ensure that the non-debtor parties to the Debtors' executory contracts are not "left holding the bag" for defaults and accruals existing at the time such contracts are assumed and assigned – these obligations must be assumed and paid by the debtor.

17. Moreover, and equally troubling, is the Debtors' subtle attempt (through notes to its Schedule of Assumed Contracts and a paragraph in its Cure Notice) to unilaterally modify certain assumed executory contracts with its contract counterparties by seeking to make <u>all</u> assumed contracts subject to "Customary Trade Terms" (which, as defined by the Debtors, are the most favorable payment terms in place between the Debtors and the contract counterparty in

the two years preceding the bankruptcy filing date) whether or not such assumed contracts actually contain such terms. The Court should categorically reject the "Customary Trade Terms" language proposed by the Debtors with respect to assumed executory contracts and leases. These contracts must be assumed *cum onere* and any attempt by the Debtors to use the Plan as a mechanism to modify these agreements without the consent of such the Debtor's contract counterparties must be rejected.

18. As such, assumption of SKF's Pre-Petition Contracts cannot be permitted without the Debtors satisfying all requirements attendant to assumption as set forth in Bankruptcy Code section 365(b), including the obligation to: (a) cure all defaults existing as of the Assumption Date; (b) assume all accrued obligations under such SKF Executory Contracts that are not in default, but which nonetheless exist, as of the Assumption Date and also provide adequate assurance that such obligations will thereafter be satisfied as and when they come due; and (c) take each assumed contract *cum onere*, with all of its then existing terms and conditions, and not be permitted to unilaterally modify its terms through proposed Customary Trade Terms or otherwise.

### III. The Plan's Release, Discharge And Injunction Provisions Are Inconsistent With Debtors' Obligations Under Section 365 Of The Bankruptcy Code

19. The Plan, Plan Supplement and Cure Notice are also objectionable because they contain release, discharge and injunction provisions that could be interpreted to relieve Debtors of their indisputable section 365 obligations, including cure obligations and the obligation to adequately assure future performance, under executory contracts that they will assume under the Plan.

20. Specifically, without limitation and in contravention of section 365 of the Bankruptcy Code, the Plan provides that "[a]ssumption and assignment of any executory

-9-

contract or unexpired lease … shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary ... arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption and/or assignment." *Plan,* at § 8.3.  The term "Cure" is defined at section 1.32 to mean "the payment of Cash by the Debtors, or the distribution of other property … to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code." *Plan*, at § 1.32.  The Plan Supplement and the Cure Notice contain similar provisions.

21. However, under the express terms of section 365 of the Bankruptcy Code none of the obligations arising under an assumed executory contract are released and discharged upon its assumption.  Rather, in connection with an assumption, all defaults are cured and all other obligations arising under such contract are assumed in their entirety and come due and payable as and when provided under the contract and applicable non-bankruptcy law.

22. As currently drafted, the Plan, Plan Supplement and Cure Notice run afoul of Section 365 of the Bankruptcy Code.  Under section 365 of the Bankruptcy Code, not only are accrued obligations not released or discharged, but section 365 expressly requires*, as a condition of assumption*, that the debtor (as well as any assignee) provide adequate assurance of future performance.  See 11 U.S.C. § 365(b)(1)(C), (f)(2)(B).

23. To correct this defect, the Plan, Plan Supplement and the Cure Notice must make it clear that, in addition to curing all defaults existing under an assumed executory contract as of the Assumption Date, all contractual and other obligations arising under assumed contracts that are not in default as of the Assumption Date shall remain valid and enforceable and shall not

-10-

be released, impaired, enjoined or otherwise adversely effected by the Plan or Confirmation Order.

24. With respect to the amounts that are payable to SKF upon the Assumption Date of the SKF Executory Contracts, SKF must be paid the SKF Pre-Petition Cure Amounts together with all other amounts that are then in default as of the Assumption Date (which simply cannot be determined as of the present date) and the Debtors must assume, and pay as they come due, all accrued amounts that are not yet in default as of the Assumption Date.

## IV. The Plan's Terms Leave Unclear How and When Administrative Claims Will Be Paid

25. Likely the result of simple oversight rather than an intent to leave administrative claimants unpaid indefinitely or incapable of allowance, the Plan leaves it unclear how "Allowed Administrative Claims" will be paid.

26. Section 2.1 of the Plan addresses the payment of Allowed Administrative Claims:

> Except to the extent that a holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors agree to different treatment, the Debtors (or the Reorganized Debtors, as the case may be) shall pay to each holder of an Allowed Administrative Claim Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Claim becomes an Allowed Claim; <u>provided</u> that Allowed Administrative Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtors, as Debtors in Possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors or the Reorganized Debtors, as the case may be, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Plan, at § 2.1.

27. Thus, to the extent an administrative claimant holds an "Allowed Administrative Claim," it will receive payment on the later of the Effective Date or upon the claim becoming an "Allowed Claim," except that if the Allowed Administrative Claim represents a liability incurred by the Debtors (or Reorganized Debtors) in their ordinary course of business, it will be paid consistent with past practice and in accordance with the terms of any applicable agreement.

28. The problem with this provision is that the definition of the term "Allowed," as found in section 1.5 of the Plan, does not appear to create a mechanism to permit post-petition Administrative Claims to become allowed and, thus, seemingly also prevents such claims from ever being paid.

29. Section 1.5 of the Plan provides, in relevant part, that the term "Allowed" means:

> (a) With respect to any Claim or Interest, proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, (i) as to which no objection to allowance has been interposed in accordance with Section 7.2 hereof, such Claim to the extent asserted in such proof of Claim, (ii) as to which an objection has been interposed, such Claim or Interest to the extent that it has been allowed in whole or in part by a Final Order, or (iii) any Claim or Interest expressly allowed hereunder.
>
> (b) With respect to any Claim as to which no proof of claim was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, such Claim to the extent that it has been listed in the Schedules as liquidated in amount and not disputed or contingent.

Plan, at § 1.5 (a)-(b).

30. The definition of Allowed therefore is hinged on the filing of a proof of claim or the Debtors' scheduling of a claim, but there is no bar date for administrative claims in this case and holders of post-petition administrative claims are not required or able to file proofs of claim for such post-petition claims nor are their post-petition claims scheduled. *See Notice of Deadline for Filing Proofs of Claim* (Docket No. 264). In short, there is no proper mechanism under the Plan for post-petition administrative claims to become allowed claims entitled to payment in the ordinary course of business or otherwise under the Plan.

31. SKF certainly hopes (and believes) that the Debtors did not intend to effectively bar the allowance and payment of post-petition administrative claims through this mismatched Plan language. In fact, this lack of intent would seem to be evidenced by the provision in section 2.1 of the Plan that administrative claims "representing liabilities incurred in the ordinary course of business by the Debtors … shall be paid by the Debtors … in the ordinary course of business, consistent with past practice and in accordance with the terms and conditions of any agreements governing, instruments evidencing or other documents relating to such transactions."

32. The disconnect between the definition of "Allowed" under the Plan and the process by which administrative claimants are to be paid creates a situation where, under the literal terms of the Plan, an administrative claimant would first need to file a proof of claim (or somehow have that <u>post-petition</u> claim be scheduled) and then obtain allowance of that claim in order to receive payment. This cannot be what the Debtors intend, as evidenced by Section 2.1 of the Plan, the lack of a requirement (under the Bankruptcy Code) that post-petition

administrative claimants file a proof of claim, and the lack of an administrative claims bar date.[3] The fact that the Debtors likely did not intend this result, however, does not mean that these critical errors in the Plan do not need to be remedied; in fact, it is absolutely essential that they be fixed.

33. SKF submits that the Plan should be modified to correct this inconsistency by revising the definition of term "Allowed" in the Plan to provide that Administrative Claims may treated as Allowed: (a) without the filing of a proof of claim, motion for the allowance of an administrative claim or any other pleading, where they represent a liability incurred by the Debtors in the ordinary course of the Debtors' business and are paid or acknowledged as valid by the Debtors; or (b) upon the filing of a motion by a creditor seeking the allowance of an administrative expense priority claim and the allowance of such claim in whole or in part by a Final Order of the Bankruptcy Court.

## V. The Mere Institution of an Avoidance Action Should Not Result in Disallowance of the Defendant's Claims, but Rather Such Claims Should be Deemed "Disputed" Pending Resolution of the Action

34. The Plan provides that where the Debtors or Reorganized Debtors have instituted a proceeding asserting a cause of action under various sections of Chapter 5 of the Bankruptcy Code, all claims held by the defendant shall be deemed "disallowed claims pursuant to section 502(d) of the Bankruptcy Code" and the holders of such claims shall not be entitled to vote on the Plan. Plan, at § 7.7. Those claims will continue to be disallowed for all purposes until the avoidance action has been settled or resolved by Order of this Court and any sums due to the Debtors or Reorganized Debtors from the defendant have been paid. Id.

---

[3] Likewise, Section 7.1 is problematic for holders of administrative claims because it provides that "Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim
(continued...)

-14-

35. This proposed treatment of avoidance action defendants' claims is inappropriate. First, this treatment does not align with section 502(d), which only operates to disallow the claims of a party once they have been adjudicated to have liability under the avoidance provisions. *See, e.g., Rhythms Netconnections Inc. v. Cisco Systems Inc. (In re Rhythms Netconnections Inc.,)*, 300 B.R. 404, 408 (Bankr. S.D.N.Y. 2003) (Section 502(d) is "designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts *adjudicated* to belong to the bankruptcy estate.") (emphasis added); *Seta Corp. of Boca, Inc. v. Atlantic Computer Systems (In re Atlantic Computer Systems)*, 173 B.R. 858, 862 (S.D.N.Y. 1994) (section 502(d) requires a determination of the claimant's liability before its claims are disallowed, and in the event of an adverse determination, the provision of some opportunity to turn over the property); *In re Marketing Resources International Corp.*, 35 B.R. 353, 356 (Bankr. E.D. Pa. 1984) ("[A]pplication of section 502(d) is premature since judgment has not yet been entered on the debtor's actions under §§ 547 and 542. Section 502(d) embraces the situation where the debtor or the trustee successfully prosecutes an action against a party under one of the sections designated in that section. In the event the party refuses to comply with the judgment, the court must disallow that party's claim to prevent it from sharing in the distribution of the bankruptcy estate. Thus, in the case confronting us § 502(d) is not yet operative since no judgment has yet been entered on the debtor's claims.") (internal citations omitted). A section 502(d) action, even where brought as an adversary proceeding, is an objection to a claim, and the defendant to the underlying adversary action holds a disputed claim, not a disallowed claim. *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*,

---

(continued...)

is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim." *See Plan, § 7.1.*

-15-

340 B.R. 180 (Bankr. S.D.N.Y. 2006), vacated on other grounds and remanded, 379 B.R. 425, 441 (S.D.N.Y. 2007). Thus, the mere filing of an avoidance action does not render a defendant's claims disallowed under section 502(d), yet that is what the Debtors propose to do under the Plan.

36. Furthermore, this proposed treatment could result in those defendants not receiving distribution on their claim solely because the Debtors have commenced an avoidance action against them. Unlike disputed claims under section 7.4 of the Plan, the Debtors do not propose to establish any reserve for disallowed claims. Thus there is no pool of funds being preserved to pay the claims of avoidance action defendants, to the extent their claims are or will become allowed. Section 7.7 of the Plan therefore results in avoidance action defendants bearing the risk that once the avoidance action is resolved there will not be sufficient funds to pay their allowed claims.

37. This treatment is inappropriate, and should be corrected so that the claims of avoidance action defendants are deemed disputed pending the resolution of the avoidance action. Consistent with section 7.4 of the Plan, this would require the Debtors to establish a reserve to potentially satisfy those claims once the avoidance action is resolved.

WHEREFORE, SKF respectfully requests that the Court (i) deny confirmation of the Plan absent the inclusion of language in the Plan, the Plan Supplement and any Order confirming or approving same that expressly provides: (a) clarification that Debtors must make an election so that they actually assume or reject each unexpired executory contract and unexpired lease no later than the Effective Date of the Plan, (b) that, in addition to pre-petition cure amounts owed to non-debtor executory contract counterparties, upon assumption the Debtors shall pay to the non-debtor counterparty any post-petition defaults existing as of the Assumption Date of each such agreement, (c) that the non-debtor executory contract

counterparties shall be entitled to payment in full on any obligation that has accrued, but is not in default, as of the Assumption Date of each such agreement, and such obligations shall be paid in the ordinary course of business, (d) that the Debtors' assumption of any executory contracts or unexpired leases shall not be subject to "Customary Trade Terms" as defined in the Plan Supplement, but rather shall be assumed subject to the actual terms and conditions of such agreements then in effect as of the Assumption Date, (e) clarification that the Plan's release, injunction, discharge or other provisions will not relieve Debtors of their ongoing obligations under assumed executory contracts, which obligations must be assumed in their entirety, (f) that the definition of the term "Allowed" under the Plan is modified to provide that Administrative Claims are Allowed, (1) without the filing of a proof of claim, motion for allowance of an administrative claim or any other pleading, where they represent a liability incurred by the Debtors in the ordinary course of the Debtors' business and are paid or acknowledged as valid by the Debtors, or (2) upon the filing of a motion by a creditor seeking allowance of an administrative expense priority claim and the allowance of such claim in whole or in part by a Final Order of the Bankruptcy Court, and (g) that the commencement of an avoidance action by the Debtors against a claimholder shall result only in the claimholder's claim(s) being deemed "disputed" such that the Debtors shall be required to establish a reserve to satisfy such claims,

consistent with section 7.4 of the Plan, pending resolution of the avoidance action, and (ii) grant such other and further relief as is just and appropriate.

Dated: June 17, 2015                          PEPPER HAMILTON LLP


/s/ Henry J. Jaffe
Henry J. Jaffe (DE Bar No. 2987)
Hercules Plaza
Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Counsel for SKF USA Inc.*