Emanuel C. Grillo, Esq.  
Christopher Newcomb, Esq.  
**BAKER BOTTS L.L.P.**  
30 Rockefeller Plaza  
New York, New York 10112  
Tel.: 212.408.2500  
Fax.: 212.408.2501  

HEARING DATE: July 2, 2015  
HEARING TIME: 10:00 am  

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CHASSIX HOLDINGS, INC., *et al.*, | Lead Case No. 15-10578 (MEW) |
| Debtors.[1] | Jointly Administered |

**SUPPLEMENTAL OBJECTION OF BENEFIT STREET CREDIT ALPHA MASTER FUND LTD. AND PECM STRATEGIC FUNDING LP TO DEBTORS' MODIFIED SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

TO THE HONORABLE MICHAEL E. WILES,  
UNITED STATES BANKRUPTCY JUDGE

Benefit Street Credit Alpha Master Fund Ltd. and PECM Strategic Funding LP (collectively, the "Benefit Street Funds"), as holders of Unsecured Notes[2], by and through their undersigned counsel, file this supplemental objection (this "Supplemental Objection") to confirmation of the Debtors' Modified Second Amended Joint Plan of Reorganization under

---

[1] The debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each debtor's federal tax identification number, are: Automotive Properties of New York, LLC (4323); Chassix Holdings, Inc. (9249); UC Holdings, Inc. (5026); Chassix, Inc. (5728); Diversified Machine, Inc. (8762); Diversified Machine Bristol, LLC (5409); Chassix Georgia Machining, LLC (1940); DMI Columbus, LLC (1833); Diversified Machine Montague, LLC (4771); Diversified Machine, Milwaukee LLC (0875); DMI Edon LLC (1847); Mexico Products I, LLC (3039); DMI China Holding LLC (4331); Concord International, Inc. (3536); SMW Automotive, LLC (9452); Automotive, LLC (2897); Chassis Co. of Michigan, LLC (2692); AluTech, LLC (0012) (collectively, the "Debtors").

[2] Any capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Objection of the Benefit Street Funds filed on June 19, 2015 [Docket No. 518] (the "Benefit Street Objection"), or the Modified Plan (as defined herein) as applicable.

Chapter 11 of the Bankruptcy Code (as subsequently amended, the "<u>Modified Plan</u>"). The Benefit Street Funds incorporate by reference the Benefit Street Objection. In support of the Supplemental Objection, the Benefit Street Funds respectfully state as follows:

1. The modifications and amendments to the Plan pursuant to the Modified Plan do not change the fundamental fact that there are two groups of estates in these cases with two distinct sets of assets and claims that are subject to two very different outcomes under the Modified Plan: (i) the operating debtors will truly reorganize and (ii) Holdings will be liquidated without its separate and unique assets, that is the claims against Platinum, ever undergoing the independent scrutiny required by the bankruptcy process. Indeed, the sole reason to include Holdings in the Modified Plan is to deliver the releases under the Global Settlement to Platinum without satisfying the *Metromedia* standards for those releases.

2. On or about June 23, the Debtors filed their Modified Plan and Supplement to Disclosure Statement Setting Forth Modifications to Second Amended Joint Plan of Reorganization (the "<u>Supplemental Disclosure</u>"). In addition to the material and tangible benefits provided to creditors of the Debtors' operating entities, the Modified Plan purports to improve the treatment of Class 4 Claims by (i) increasing the amount of New Warrants to be issued by the Reorganized UC Holdings from 5% to 8%; and (ii) making a cash distribution in the amount of $4 million to all holders of Class 4 Claims. (See Supplemental Disclosure at 4; Modified Plan at §4.4.) Virtually all of that consideration as well as the original consideration comes from the Debtors. Platinum, as beneficiary of a release and exculpation by the Debtors and those others granting releases, makes a cash contribution to the Global Settlement of $1,000,000 under the Modified Plan and alleges to waive any claim for reimbursement from the Debtors of Restructuring Expenses up to $1,250,000 that have not been, and typically would not

2

be, authorized by the Bankruptcy Court.[3] (See *id.*) The Official Committee of Unsecured Creditors, whose majority consists of holders of trade claims that have doubled their distributions under the Modified Plan, not surprisingly supports the Modified Plan.

3. Like its predecessors, the Modified Plan does not structurally or economically require the reorganization of Holdings. In fact, Holdings will be dissolved (see Modified Plan at §§ 5.17(f) and 5.18) and Reorganized UC Holdings, not Holdings, will issue the New Common Stock of the Reorganized Debtors (and thus, the New Warrants). (See Modified Plan at §5.7(a).) Accordingly, the Debtors and Platinum have not demonstrated how the release and the Global Settlement are *important* to the Plan. *See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-142 (2d Cir. 2005).

4. Similarly, the Debtors and Platinum fail to demonstrate how the changes in the terms of the Global Settlement, in which Platinum as an insider contributes only $1 million, satisfies even the modest standards of Bankruptcy Rule 9019 (without regard to the heightened scrutiny standards to be applied to insiders). Other than the Preliminary Objection by the Committee, there has been no assessment of the causes of action to be released as part of the Global Settlement despite the importance of their valuation in respect of Holdings. *See Texas Extrusion Corp. v. Lockheed Corp. (In the Matter of Texas Extrusion Corp.)*, 844 F.2d 1142, n. 23 (5th Cir 1988) (requiring valuation of a major lawsuit for compliance with section 1129(a)(7) when creditors are not paid in full). Under Rule 9019, any settlement requires an "informed judgment" after a "diligent investigation" before it can be approved. *See In re C.R. Stone Concrete Contractors, Inc.*, 346 B.R. 32, 49 (Bankr. D. Mass. 2006) (*quoting Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir. 1992) (settlement for nuisance value

---

[3] Courts in this District have disapproved of such plan payments characterizing them as a recipe for "serious mischief". *See, e.g., Davis v. Elliot Mgmt. Corp. (In re Lehman Brothers Holdings, Inc.)*, 508 B.R. 283, 293 (S.D.N.Y. 2014).

3

rejected). Furthermore, that informed judgment must also be independent. *See In re Remsen Partners, Ltd.*, 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003) ("[T]he court may not simply rubber stamp the recommendation of a trustee or debtor in possession but, instead, must make an independent 'full and fair assessment of the wisdom of the proposed compromise.'") (citation omitted).

5. Notwithstanding the recent approval of the Committee, an independent judgment is still sorely lacking with respect to the Global Settlement. As noted in the Benefit Street Objection, Debtors' counsel who purports to have conducted an investigation, also represents Platinum and/or its affiliates in other matters. In addition, both the Informal Committee of Noteholders and the Official Committee of Unsecured Creditors represent stakeholders with greater interests and numbers at the operating Debtors -- not Holdings. In each case, it appears that decisions to approve the settlement at Holdings had little or nothing to do with the value of the claims at Holdings itself, but rather with the results of the settlement at the operating Debtors to be reorganized.

6. In the case of the Creditors' Committee, this conclusion becomes self-evident from the recent turn of events. Approximately two weeks ago, the Committee filed the Preliminary Objection in which it stated that the "nominal consideration" to be paid to Holdings' creditors under the Plan is "nowhere close to the value of the claims against Platinum." Now, the Creditors' Committee apparently believes that $1,000,000 from Platinum[4] satisfies the reasonableness standard of Rule 9019 despite its prior conclusion that "***any one of these causes of action***, if successfully litigated, would likely result in a substantial recovery to the creditors of Chassix Holdings." (Emphasis added.) This represents an extraordinary change of position for

---

[4] Little or no weight should be given to the alleged waiver of Restructuring Expenses as they lack any foundation for payment under the Bankruptcy Code as noted in paragraph 2, n.3 above.

4

$1,000,000 in cash and the other "nominal consideration" payable under the Plan. More likely, it reflects (i) the fact that distributions to the creditors at the operating Debtors are materially improved and (ii) the likely unwillingness of the Debtors to sever Holdings and the Global Settlement from the Modified Plan.

7.  Finally, much of the remaining cash distribution (and additional New Warrants) from the Reorganized Debtors should be disregarded as well. As noted in the Benefit Street Objection, there is substantial overlap between the Secured Noteholders at the operating Debtors and the Unsecured Noteholders at Holdings -- most of whom serve as part of the Informal Committee. To the extent that the Secured Noteholders allow the Debtors to fund distributions to Class 4 Claimants from their collateral, they effectively receive back 80% of that cash. Accordingly, the true impact of the settlement is minimal as the Informal Committee effectively recycles most of that cash within its group and thus, it does not amount to much of a settlement at all. Regardless, this cash, like the additional New Warrants, represent consideration delivered by the Reorganized Debtors -- not Platinum -- purportedly in satisfaction of claims against Platinum.

8.  What these Chapter 11 Cases have lacked has been a complete and independent review of the assets and claims of Holdings separate and apart from the interests of the operating Debtors. Nothing other than the releases in favor of Platinum requires this Court to confirm the Modified Plan with respect to Holdings. The Modified Plan can be confirmed with respect to all other Debtors and New Common Stock and New Warrants to be issued by Reorganized UC Holdings can be placed in trust while the remaining claims that Holdings may have against Platinum or any other third party are fully and completely investigated and litigated to the extent necessary. There is no other plan or agenda for Holdings as it will only be dissolved post-

5

confirmation.  Accordingly, no prejudice arises in respect of any of the other Debtors or any of their respective creditors.

WHEREFORE, the Benefit Street Funds respectfully request that this Court deny confirmation of the Modified Plan as to Holdings and grant such other relief as is just and proper.

Dated: June 26, 2015
New York, New York

>Respectfully submitted,

>/s/ Emanuel C. Grillo
>Emanuel C. Grillo
>Christopher Newcomb
>BAKER BOTTS L.L.P.
>30 Rockefeller Plaza
>New York, New York 10112
>Tel.:  212.408.2500
>Fax.:  212.408.2501
>
>*Attorneys for the Benefit Street Funds*

Active 19786095.1